**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**

IN RE:

LSC Liquidation, Inc.

                 Debtor(s).

_____/

Case No. 15-45784-mbm

Chapter   11

Hon. Marci B. McIvor

United States Steel Corporation

                 Appellant,

    v.

Gene R. Kohut, solely in his capacity as
Liquidating Trustee for the LSC Liquidating Trust

                 Appellee.

_____/

Adv. No. 17-04293

**NOTICE OF TRANSMITTAL OF NOTICE OF APPEAL/MOTION TO WITHDRAW THE REFERENCE**

       I hereby certify that the attached documents are transmitted to the United States District Court for the Eastern District of Michigan, which constitutes the Notice of Appeal.

☒    Notice of Appeal

☒    Bankruptcy Matter Civil Cover Sheet

☒    Order on Appeal

☐    Notice of Deficiency

☒    Motion for Leave to Appeal

☐    Motion to Withdraw the Reference

☐    Other:

**NOTE:**

☒ There is a previous civil matter in this bankruptcy.  That matter was given civil case number 2:16-cv-11325-NGE-EAS and assigned to District Judge Nancy G. Edmunds

☐ This is a new matter and not previously assigned to a District Court Judge.

☐ The Appellant has not paid the filing fee.

Dated:  09/15/2017

Clerk, United States Bankruptcy Court

By:  /s/Jennifer J. Mahar
       Deputy Clerk

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| LSC Liquidation, Inc., *et al.*[1] | Case No. 15-45784-mbm |
| Debtors. | Hon. Marci B. McIvor |

_____/

| | |
|---|---|
| Gene R. Kohut, solely in his capacity as Liquidating Trustee for the LSC Liquidating Trust, | |
| Plaintiff, | Adv. Proc. No. 17-04293-mbm |
| v. | Hon. Marci B. McIvor |
| United States Steel Corporation, a Delaware corporation, | |
| Defendant. | |

_____/

## DEFENDANT'S MOTION FOR LEAVE TO APPEAL ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant United States Steel Corporation, by and through its counsel, hereby files this motion pursuant to Rule 8004 of the Federal Rules of Bankruptcy Procedure for leave to appeal the Bankruptcy Court's *Order Denying Defendant's Motion for Summary Judgment* (Dkt. #38).

---

[1] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC, Case No. 15-45788-mbm.

The basis for this Motion is set forth in the Brief in Support, which is filed herewith.

Dated:  September 14, 2017                    Respectfully submitted,

                                              **CLARK HILL PLC**

                                              */s/ John R. Stevenson*
                                              Joel D. Applebaum (P36774)
                                              John R. Stevenson (P70241)
                                              151 S. Old Woodward Avenue, Suite 200
                                              Birmingham, Michigan 48009
                                              (248) 642-9692
                                              japplebaum@clarkhill.com
                                              jstevenson@clarkhill.com

                                              *Counsel for United States Steel Corporation*

2

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:                                          Chapter 11

LSC Liquidation, Inc., *et al.*[2]              Case No. 15-45784-mbm

              Debtors.                          Hon. Marci B. McIvor
_____/

Gene R. Kohut, solely in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

              Plaintiff,                         Adv. Proc. No. 17-04293-mbm

v.                                               Hon. Marci B. McIvor

United States Steel Corporation, a
Delaware corporation,

              Defendant.
_____/


## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR LEAVE
## TO APPEAL ORDER DENYING DEFENDANT'S MOTION FOR
## <u>SUMMARY JUDGMENT</u>

---

[2] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC, Case No. 15-45788-mbm.

# **TABLE OF CONTENTS**

INDEX OF AUTHORITIES .................................................................. ii

STATEMENT OF ISSUE PRESENTED ............................................... iv

INTRODUCTION ................................................................................1

FACTUAL BACKGROUND .................................................................2

ARGUMENT .....................................................................................18

    A.  The Principal Question Presented In The Appeal— Whether Plaintiff's Claims Against Defendant In The Adversary Proceeding Were "Expressly Reserved" In The Combined Plan And Disclosure Statement So As To Avoid The *Res Judicata* Effect Of The Confirmation Order—Is One Of Law. ......................................19

    B.  The Principal Question Is Controlling. .....................................19

    C.  There Is Substantial Ground For Difference Of Opinion About The Principal Question. ................................................................20

    D.  An Immediate Appeal Will Materially Advance The Ultimate Termination Of The Litigation. .................................................21

CONCLUSION ..................................................................................22

## INDEX OF AUTHORITIES

### Cases

*Bittinger v. Tecumseh Prods. Co.*,
  123 F.3d 877 (6th Cir. 1997) ..................................................................8

*Browning v. Levy*,
  283 F.3d 761 (6th Cir. 2002) ...................................................... passim

*In re A.P. Liquidating Co.*,
  283 B.R. 456 (Bankr. E.D. Mich. 2002) ...........................................10

*In re Ampace Corp.*,
  279 B.R. 145 (Bankr. D. Del. 2002)........................................... 17, 21

*In re Chattanooga Wholesale Antiques, Inc.*,
  930 F.2d 458 (6th Cir. 1991) ..................................................................7

*In re City of Memphis*,
  293 F.3d 345 (6th Cir. 2002) ...............................................................19

*In re Mickey's Enterprises, Inc.*,
  165 B.R. 188 (Bankr. W.D. Tex. 1994) ..............................................11

*In re Micro-Time Management Systems, Inc.*,
  Nos. 91-2260, 91-2261, 1993 WL 7524, at *3 (6th Cir. January 12, 1993) ............
  .................................................................................................. passim

*In re Pen Holdings, Inc.*,
  316 B.R. 495 (Bankr. M.D. Tenn. 2004)............................................17

*In re SmarTalk Teleservices, Inc. Securities Litigation*,
  487 F. Supp. 2d 914 (E.D. Ohio 2007)........................................ 17, 21

*In re Treasure Isles HC, Inc.*,
  462 B.R. 645 (6th Cir. BAP 2011) .............................................. 18, 19

*In re USN Communications, Inc.*,
  280 B.R. 573 (Bankr. D. Del. 2002)........................................... 17, 21

*Kaye v. Carlisle Tire & Wheel Co.*,
  No. 3:07-00336, 2008 WL 821521, *5-6 (M.D. Tenn. March 27, 2008) ..... 16, 21

*Official Committee of Unsecured Creditors of Crowley, Milner & Co. v. Callahan
  (In re Crowley, Milner & Co.)*,
  299 B.R. 830, 851-52 (Bankr. E.D. Mich. 2003) ......................... 17, 21

ii

*Prologo v. Flagstar Bank, FSB*,
    471 B.R. 115 (D. Md. 2012)...................................................................19

*Sanders Confectionery Products, Inc. v. Heller Fin., Inc.*,
    973 F.2d 474 (6th Cir. 1992) .............................................................7, 9

*Simon v. Amir (In re Amir)*,
    436 B.R. 1 (6th Cir. BAP 2010) .................................................... 18, 19

*Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*,
    320 B.R. 861 (E.D. Mich. 2005) ................................................. passim

## Statutes

11 U.S.C. § 1123(b) .......................................................... 13, 15

11 U.S.C. § 1141(a) ............................................................7, 9

28 U.S.C. § 1292(b) .................................................................18

28 U.S.C. § 157(a) .................................................................10

28 U.S.C. § 157(c) .................................................................10

28 U.S.C. § 158(a)(3)..............................................................18

## STATEMENT OF ISSUE PRESENTED

1.      Whether leave to appeal the Bankruptcy Court's Order denying Defendant's Motion for Summary Judgment based on *res judicata* should be granted where: (1) the question of whether Plaintiff's preference and fraudulent transfer claims against Defendant were "expressly reserved" in the Combined Joint Plan of Liquidation and Disclosure Statement so as to avoid the *res judicata* effect of the Confirmation Order is one of law; (2) the question is controlling; (3) there is, at a minimum, a substantial ground for difference of opinion about the question, based, in part, on the Sixth Circuit's holding *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002) and the United States District Court for the Eastern District of Michigan's holding in *Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861 (E.D. Mich. 2005); and (4) an immediate appeal will materially advance the ultimate termination of the litigation.

        Defendant says:  "Yes."

## INTRODUCTION

In *Defendant's Motion for (I) Summary Judgment on Counts I-III of the Complaint and (II) Partial Summary Judgment on Count IV of the Complaint* (Dkt. #17), Defendant United States Steel Corporation ("U.S. Steel" or "Defendant") moved for summary judgment in its favor on the preference claim, the fraudulent transfer claim, and the recovery claim asserted by Plaintiff in the adversary proceeding on the grounds that such claims were not "expressly reserved" in the Combined Plan and Disclosure Statement and, therefore, are barred by the *res judicata* effect of the Confirmation Order.  Specifically, Defendant argued that the claims were not preserved since the Combined Plan and Disclosure Statement neither mentions Defendant nor describes the facts giving rise to any claim against Defendant.  Despite controlling Sixth Circuit precedent and a prior opinion of Judge McIvor (the bankruptcy judge in this adversary proceeding) finding that preference and fraudulent transfer claims were barred by the *res judicata* effect of a confirmed plan which reserved causes of action under Chapter 5 of the Bankruptcy Code, which opinion was affirmed on appeal, the Bankruptcy Court rejected Defendant's argument and found that the doctrine of *res judicata* does not preclude Plaintiff from pursuing the preference and fraudulent transfer claims against Defendant because the reservation of rights clause preserved Plaintiff's

1

right to pursue Chapter 5 causes of action, which include preference and fraudulent transfer litigation.

Defendant seeks leave to appeal the Bankruptcy Court's *Order Denying Defendant's Motion for Summary Judgment*. The Court should grant leave since all of the factors that courts consider in determining whether to grant leave to appeal strongly support granting leave. First, the question of whether Plaintiff's claims against Defendant in the adversary proceeding were "expressly reserved" in the Combined Plan and Disclosure Statement so as to avoid the *res judicata* effect of the Confirmation Order is one of law. There are no factual issues in dispute. Second, the question is controlling. Third, there is, at a minimum, a substantial ground for difference of opinion about the question based, in part, on the Sixth Circuit's holding in *Browning v. Levy*, 283 F.3d 761 (6th Cir. 2002) and the United States District Court for the Eastern District of Michigan's holding in *Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861 (E.D. Mich. 2005). Finally, an immediate appeal will materially advance the ultimate termination of this litigation.

## FACTUAL BACKGROUND

## I.   The Bankruptcy Case

On April 13, 2015 (the "Petition Date"), Lee Steel Corporation ("Lee Steel" or the "Debtor"), Taylor Industrial Properties, LLC, and 4L Ventures, LLC

2

(collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (this "Court").  On April 15, 2015, this Court authorized the joint administration of the Debtors' chapter 11 cases in Case No. 15-45784-mbm (the "Bankruptcy Case").  *See* Dkt. No. 41.[3]

On April 23, 2015, the United States Trustee appointed a Committee of Unsecured Creditors (the "Committee").  *See* Dkt. No. 69.

## II.    The Combined Plan and Disclosure Statement

On September 30, 2015, the Debtors and the Committee filed the Combined Joint Plan of Liquidation and Disclosure Statement (Dkt. No. 370) (the "Combined Plan and Disclosure Statement" or, separately, the "Plan" and the "Disclosure Statement"), a copy of which is attached hereto as **Exhibit A**.

The Plan provided for the establishment of a Liquidating Trust.  *Plan Article 6.*  Section G of the Disclosure Statement titled "Estate Claims; Other Events of Significance" contains a general reservation of Causes of Action[4] and Estate

---

[3] Unless otherwise indicated, all references herein to the court docket refer to the court docket in the Bankruptcy Case.

[4] "Causes of Action" means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to, all rights and causes of action permitted under chapter 5 of the Bankruptcy Code, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of

3

Litigation[5]:

> Pursuant to the Plan and Disclosure Statement, the Debtors for the benefit of the Committee and the Liquidating Trust and its Beneficiaries, will preserve all rights, interest, and standing to investigate and pursue, whether through negotiation or litigation, any and all Causes of Action and Estate Litigation.

*Disclosure Statement* at p. 4.

The Plan further provide for the transfer of the Causes of Action and Estate

Litigation to the Liquidating Trust:

> On the Effective Date, the Debtors and Committee shall transfer and convey all right, title, and interest in the Causes of Action, Estate Litigation, and the Unsecured Carve-Out to the Liquidating Trust, which Assets shall automatically and irrevocably vest in the Liquidating Trust without further action on the part of the Debtors, the Committee, the Liquidating Trustee, or the Court, and with no reversionary interest in the Debtors or Committee, except as otherwise provided in the Plan.

*Plan § 6.3.*

**Nowhere in the Plan or the Disclosure Statement, however, is any**

**potential Cause of Action or potential Estate Litigation against U.S. Steel**

---

the Chapter 11 Cases, including through the Effective Date, that belong to the Debtors.  Plan § 1.12.

[5] "Estate Litigation" means all rights to and proceedings arising from or relating to: (i) all Claims, (ii) objections to Claims, (iii) Causes of Action, including but not limited to, any litigation or claims that can be instituted or asserted by the Estate, the Liquidating Trust, or by any party on behalf of or for the benefit of the Estate or Liquidating Trust, including, but not limited to, preference claims, fraudulent conveyance or avoidance actions, or any other claim of or cause of action of any kind whatsoever arising under chapter 5 of the Bankruptcy Code.  Plan § 1.35.

**mentioned or expressly reserved.** *See Plan*; *Disclosure Statement*.

On October 5, 2015, the Court granted the Disclosure Statement preliminary approval. *See* Dkt. No. 379.

On October 9, 2015, the Combined Plan and Disclosure Statement was served on creditors for voting. *See* Dkt. No. 395.

On November 24, 2015, the Court granted final approval of the Disclosure Statement and confirmed the Plan. *See* Order Granting Final Approval of Disclosure Statement and Confirming Debtors' and Committee's Combined Joint Plan of Liquidation (Dkt. No. 470) (the "Confirmation Order"), a copy of which is attached hereto as **Exhibit B**.

The Effective Date of the Plan was deemed to have occurred on April 1, 2016. *See* Dkt. No. 778. The Trustee's appointment as Liquidating Trustee became effective as of the Effective Date. *Confirmation Order ¶ 8.*

## III. The Adversary Proceeding

On April 11, 2017, the Trustee filed the Complaint (Dkt. #1 in Adv. Pro. 17-04293) against U.S. Steel, a copy of which is attached hereto as **Exhibit C**, thereby commencing the adversary proceeding (the "Adversary Proceeding"). In the Complaint, the Trustee alleges that during the ninety-day period before the Petition Date U.S. Steel received payments totaling $1,036,684.77 from Lee Steel (the "Transfers"). *Complaint ¶ 13.*

The Trustee asserts four Counts against U.S. Steel in the Complaint.   In Count I of the Complaint, the Trustee seeks to avoid the Transfers as preferential transfers under section 547(b) of the Bankruptcy Code (the "Preference Claim"). In Count II of the Complaint, the Trustee seeks to, alternatively, avoid the Transfers as fraudulent transfers under section 548(a)(1)(B) of the Bankruptcy Code (the "Fraudulent Transfer Claim").   In Count III of the Complaint, the Trustee seeks to recover the Transfers from Defendant under section 550(a) of the Bankruptcy Code (the "Recovery Claim").   In Count IV of the Complaint, the Trustee seeks to have a proof of claim in the amount of $25,628.00 filed by U.S. Steel against the Debtor disallowed under section 502(d) of the Bankruptcy Code (the "502(d) Objection") or, if it is permitted, reduced to $15,234.75 (the "Overstated Objection").

On May 24, 2017, Defendant filed United States Steel Corporation's Answer and Affirmative Defenses to Complaint (Dkt. No. 5 in the Adversary Proceeding) (the "Answer"), a copy of which is attached hereto as **Exhibit D**.  In the Answer, Defendant asserts that Plaintiff's claims are barred, in whole or in part, by the doctrine of *res judicata*.  *Answer ¶ 53*.[6]

---

[6] Defendant also denied that the Bankruptcy Court has constitutional authority to enter final judgments or orders on the causes of action asserted in the Complaint without the parties' consent and indicated that it did not consent to the entry of final judgments or orders by the Bankruptcy Court.  *Answer ¶ 1.*

6

**IV.    The Motion for Summary Judgment**

On June 29, 2017, Defendant filed *Defendant's Motion for (I) Summary Judgment on Counts I-III of the Complaint and (II) Partial Summary Judgment on Count IV of the Complaint* (Dkt. #17 in Adv. Pro. 17-04293) (the "Motion for Summary Judgment"), a copy of which is attached hereto as **Exhibit E**.   In the Motion for Summary Judgment, Defendant argued that the Claims in Counts I-III of the Complaint are barred by *res judicata* and since Plaintiff's 502(d) Objection is premised on the avoidability of the Transfers or the recoverability of such Transfers, and such claims are barred by *res judicata*, Plaintiff's 502(d) Objection must also fail.

As discussed in the Motion for Summary Judgment, in the bankruptcy context, the Sixth Circuit has explained that

> an order confirming a plan of reorganization constitutes a judgment and a final adjudication on the merits of a bankruptcy proceeding. **An order confirming a plan of reorganization bars litigation of the claims raised in the bankruptcy proceedings and also bars any claims that could have been raised in the bankruptcy proceedings or the confirmation proceedings not expressly reserved in the plan of reorganization or the order confirming the plan of reorganization**.

*In re Micro-Time Management Systems, Inc.*, Nos. 91-2260, 91-2261, 1993 WL 7524, at *3 (6th Cir. January 12, 1993) (citing *Sanders Confectionery Products, Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992); 11 U.S.C. § 1141(a)) (other citations omitted) (emphasis added); *see also In re Chattanooga Wholesale*

7

*Antiques, Inc.*, 930 F.2d 458, 462 (6th Cir. 1991) ("Confirmation of a plan of reorganization by the bankruptcy court has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings.").

*Res judicata*, or claim preclusion, has four elements:

1) a final decision on the merits by a court of competent jurisdiction;

2) a subsequent action between the same parties or their privies;

3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and

4) an identity of the causes of action.

*Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002) (citing *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)) (internal quotations omitted).

Defendant argued that since all of the elements of *res judicata* are met with respect to the claims asserted in Counts I-III of the Complaint, and such claims were not "expressly reserved" in the Combined Plan and Disclosure Statement, the claims in Counts I-III of the Complaint are barred by *res judicata*.

Defendant argued that all of the elements of *res judicata* are met with respect to the claims asserted in Counts I-III of the Complaint.

The first element of *res judicata*, that there was a final decision on the merits by a court of competent jurisdiction, is satisfied since the Confirmation Order is a

8

final judgment in the bankruptcy proceeding. *See Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) ("As a general rule, the confirmation of a plan of reorganization constitutes a final judgment in bankruptcy proceedings."); *Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861, 865 (E.D. Mich. 2005) ("It is clear from this record that the confirmation by the bankruptcy court of G&P's Amended Combined Plan of Reorganization and Disclosure Statement constitutes a 'final judgment in bankruptcy proceedings.'") (citing, *Browning*, 283 F.3d at 772).

The second element of *res judicata*, that the subsequent action is between the same parties or their privies, is satisfied since U.S. Steel was a party to the bankruptcy proceeding and the Trustee is the successor-in-interest to the Debtor.

U.S. Steel, as a creditor of the Debtor, was a party to the bankruptcy proceeding. *See Slone*, 320 B.R. at 865 ("It is undisputed that a creditor of the debtor qualifies as a party for res judicata purposes.") (citing *Sanders*, 973 F.2d at 480-81; 11 U.S.C. § 1141(a)). Although not a "party" to the pre-confirmation bankruptcy proceeding, the Liquidating Trust, as the Debtor's legal successor, is in privity with the Debtor. *See Plan § 6.5* ("To the fullest extent permitted by law, upon the transfer of a Liquidating Trust Asset to the Liquidating Trust, the Debtors shall irrevocably transfer to the Liquidating Trust, as its legal successor, all rights of the Debtors and their Estates…."). Therefore, the Adversary Proceeding is

between a party to the bankruptcy proceeding and a party in privity with the Debtor, and the second element is met.

The third element, that the issues in the subsequent action were litigated or should have been litigated in the prior action, is satisfied since the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim could have been brought in the bankruptcy proceeding.

"An order confirming a plan of reorganization bars litigation of the claims raised in the bankruptcy proceedings and **also bars any claims that could have been raised in the bankruptcy proceedings or the confirmation proceedings** not expressly reserved in the plan of reorganization or the order confirming the plan of reorganization." *Micro-Time Mgmt. Systems, Inc.*, 1993 WL 7524, at *3 (emphasis added); *see also Browning*, 283 F.3d at 772-73 (determining that claims should have been raised or reserved since they were "related to" the bankruptcy case and, therefore, could have been heard by the bankruptcy court); *In re A.P. Liquidating Co.*, 283 B.R. 456 (Bankr. E.D. Mich. 2002) (concluding that because plaintiff's claims are related to the chapter 11 bankruptcy proceeding, they should have been raised before plan confirmation) (citing *Browning*).

The Preference Claim, the Fraudulent Transfer Claim, and Recovery Claim are all claims that could have been heard by the Bankruptcy Court prior to the confirmation of the Plan. *See* 28 U.S.C. § 157(a), (c). Accordingly, third element

is met.  *See Slone*, 320 B.R. at 866 (third element of res judicata is met since preference and fraudulent transfer claims should have been litigated in the initial Chapter 11 bankruptcy proceeding).

"The final element of res judicata—that there be an 'identity of claims'—is satisfied if 'the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts.'"  *Browning*, 283 F.3d at 773-74 (citation omitted).

The Plan provides for the treatment of creditors' claims against the Debtor, including U.S. Steel's claim against the Debtor.  *See Plan § 5.3* (Class 3: Allowed General Unsecured Claims).  Both the Trustee's claims asserted in Counts I-III of the Complaint (*i.e.*, the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim) and U.S. Steel's claim against the Debtor arose from the prepetition purchase by the Debtor of steel from U.S. Steel.  Thus, they both arise from the same core of operative facts.  *See*, *e.g.*, *In re Mickey's Enterprises, Inc.*, 165 B.R. 188, 192 (Bankr. W.D. Tex. 1994) (finding fourth element of res judicata satisfied where both debtor's preference claim against defendant and defendant's scheduled claim against debtor arose from the pre-petition purchase by debtor of gasoline from defendant); *see also Slone*, 320 B.R. at 867 (fourth element of res judicata satisfied for preference and fraudulent transfer claims).  Thus, the fourth element is met.

11

Moreover, Defendant argued that the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim against U.S. Steel were not "expressly reserved" in the Combined Plan and Disclosure Statement or the Confirmation Order. While the Combined Plan and Disclosure Statement contains a general reservation of rights, such reservation is insufficient under *Micro-Time Mgmt. Systems* and *Browning* to avoid the *res judicata* effect of the confirmation of the Plan on the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim in this Circuit. Therefore, the claims are barred by *res judicata*, and U.S. Steel is entitled to summary judgment in its favor on Counts I-III of the Complaint.

There is an exception to the general rule regarding the *res judicata* effects of a confirmed Chapter 11 plan. *Res judicata* will not bar the post-confirmation prosecution of a claim "expressly reserved" in the Chapter 11 plan or confirmation order. *See Browning*, 283 F.3d at 774 ("Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding.").

In *Browning*, the Sixth Circuit held, however, that "a general reservation of rights does not suffice to avoid res judicata." *Id*. at 774. In that case, the debtor sued its former counsel post-confirmation for legal malpractice and other breaches of duty, alleging that the law firm had fraudulently induced the debtor to accept a settlement agreement, which led to the debtor's financial hardships. *Id*. at 768. The disclosure statement filed in connection with the plan of reorganization

contained the following "omnibus reservation of rights":

> In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under section 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code.

*Browning*, 283 F.3d at 769.  The defendant moved for summary judgment, arguing that the reservation in the disclosure statement was insufficient to overcome the *res judicata* effect of the confirmation order.  *Id*. at 774.  The Sixth Circuit agreed, finding that the blanket reservation contained in the disclosure statement did not defeat the application of *res judicata* to the claims.  *Id*.  The Sixth Circuit explained that:

> [The debtor]'s blanket reservation was of little value to the bankruptcy court and the other parties to the bankruptcy proceeding because it did not enable the value of [the debtor]'s claims to be taken into account in the disposition of the debtor's estate.  **Significantly, it neither names [the defendant] nor states the factual basis for the reserved claims.**  We therefore conclude that [the debtor]'s blanket reservation does not defeat the application of res judicata to its claims against [the defendant].

*Id*. at 775 (emphasis added); *see also Micro-Time Mgmt. Systems, Inc.*, 1993 WL 7524, at *3 ("An order confirming a plan of reorganization bars litigation of the claims raised in the bankruptcy proceedings and also bars any claims that could have been raised in the bankruptcy proceedings or the confirmation proceedings not **expressly reserved** in the plan of reorganization or the order confirming the

plan of reorganization.") (emphasis added).

Thus, Defendant argued that, under *Micro-Time Mgmt. Systems* and *Browning*, it is clear that in order to reserve a claim in this Circuit, such claim must be **expressly reserved** in the plan or confirmation order, which entails, at a minimum, listing the name of a defendant and the facts giving rise to the claim.

In *Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861 (E.D.Mich. 2005), on facts strikingly similar to those here, the United States District Court for the Eastern District of Michigan in a thorough and reasoned opinion affirmed Judge McIvor's holding that a blanket reservation of rights provision in the plan was insufficient to avoid the *res judicata* effect of a plan.  In that case, Eric Slone, the liquidating agent of the debtor, ("Sloan") filed a lawsuit against M2M Int'l, Inc. ("M2M") seeking to recover based on an alleged preferential payment, fraudulent conveyance, breach of contract, unjust enrichment, and conversion.   *Id*. at 863.   Like the disclosure statement in *Browning*, the combined plan of reorganization and disclosure statement ("G&P's Plan") contained a general reservation of rights:

> Notwithstanding the confirmation of the Plan, except as stated herein, the Reorganized Debtor shall retain all causes of action which the Debtor and/or the Debtor in Possession may have under the Bankruptcy Code, including, but not limited to, causes of action under Chapter 5 of the Bankruptcy Code.

*Id*. at 868.   M2M filed a motion for summary judgment contending that (1) the

14

debtor did not retain any of the causes of action within the complaint after confirmation of the plan under 11 U.S.C. § 1123(b) and (2) Slone's claims were barred by res judicata as a result of the confirmation of G&P's Plan. *Id.* at 863-64. After concluding that (1) Slone's claims were barred by res judicata, and (2) G&P's Plan did not preserve his claims against M2M, this Court granted M2M's motion for summary judgment. *Id.* at 864. Slone appealed to the District Court.

Finding the above-quoted reservation "virtually identical" to the blanket reservation that was at issue in *Browning*, the District Court concluded that the reservation of rights was "an insufficient basis upon which to avoid the res judicata effect of the Plan." *Id.* at 868. The District Court noted that "[i]t is significant that G&P's Amended Plan fails to (1) name M2M, (2) describe the specific cause of action, or (3) identify the factual basis for any claim against the Defendant, **as required by** *Browning*." *Slone*, 320 B.R. at 868 (citations omitted) (emphasis added).

As can be seen in the Side-By-Side Comparison of Reservations of Causes of Action, attached to the Motion for Summary Judgment as **Exhibit 5**, the general preservation of Causes of Action and Estate Litigation in Section G of the Disclosure Statement is virtually identical to the blanket reservations of rights that were rejected by the Sixth Circuit in *Browning* and the District Court in *Slone* as insufficient to avoid the *res judicata* effect of the plan. Importantly, the general

15

preservation in the Combined Plan and Disclosure Statement neither mentions U.S. Steel nor describes the facts giving rise to any claim against U.S. Steel.  As such, Defendant argued that, as with the blanket reservations in *Browning* and *Slone*, it is "insufficiently specific" to avoid the *res judicata* effect of the Plan.

On July 13, 2017, Plaintiff filed *Plaintiff's Response to Defendant's Motion for (I) Summary Judgment on Counts I-III of the Complaint and (II) Partial Summary Judgment on Count IV of the Complaint* (Dkt. #25 in Adv. Pro. 17-04293) (the "Response"), a copy of which is attached hereto as **Exhibit F**.  In the Response, Plaintiff argued that all the elements of *res judicata* are not satisfied and, even if all of the elements of *res judicata* were satisfied, the causes of action against Defendant were expressly reserved under the Plan.

On August 24, 2017, Defendant filed *Reply to Plaintiff's Response to Defendant's Motion for (I) Summary Judgment on Counts I-III of the Complaint and (II) Partial Summary Judgment on Count IV of the Complaint* (Dkt. #35 in Adv. Pro. 17-04293) (the "Reply"), a copy of which is attached hereto as **Exhibit G**.  In the Reply, Defendant argued that the elements of *res judicata* have been met and that Plaintiff's claims were not "expressly reserved" under the Plan. Significantly, in the Reply, Defendant cites three additional cases from this Circuit, other than *Slone*, in which courts have noted that cases in which courts have permitted preference claims to be generally reserved are contrary to the Sixth

16

Circuit's holding in *Browning*. *See Reply* at pp. 7-8, n. 14 (citing *Kaye v. Carlisle Tire & Wheel Co.*, No. 3:07-00336, 2008 WL 821521, *5-6 (M.D. Tenn. March 27, 2008) (finding Sixth Circuit held in *Browning* that "absent an express reservation in a confirmed plan or related disclosure statement of the right to bring *specific* actions against *identified* defendants, the res judicata doctrine bars any new claims" and deeming *Browning* "applicable and binding" on issue of whether § 547 and § 548 claims are adequately reserved in plan and disclosure statement, notwithstanding plaintiff/appellant's reliance on *In re Pen Holdings, Inc.*, 316 B.R. 495 (Bankr. M.D. Tenn. 2004)); *In re SmarTalk Teleservices, Inc. Securities Litigation*, 487 F. Supp. 2d 914, 925 n. 3 (E.D. Ohio 2007) (finding *In re USN Communications, Inc.*, 280 B.R. 573 (Bankr. D. Del. 2002) and *In re Ampace Corp.*, 279 B.R. 145 (Bankr. D. Del. 2002) "contrary to the Sixth Circuit's decision in *Browning*"); *Slone*, 320 B.R. at 869 ("While these other courts [*USN Communications* and *Ampace*] may have disagreed with *Browning*, their decisions – unlike *Browning* – do not control this appeal."); *Official Committee of Unsecured Creditors of Crowley, Milner & Co. v. Callahan (In re Crowley, Milner & Co.)*, 299 B.R. 830, 851-52 (Bankr. E.D. Mich. 2003) (identifying *USN Communications* and *Ampace* as courts that have "rejected the specificity requirement of Browning" but noting that "this Court is constrained to follow the binding precedent in Browning")).

## V.     The Hearing on Defendant's Motion for Summary Judgment

On August 29, 2017, the Bankruptcy Court held a hearing on the Defendant's Motion for Summary Judgment.[7]    At the hearing, the Bankruptcy Court found that the doctrine of *res judicata* does not preclude Plaintiff from pursuing the preference and fraudulent transfer claims against Defendant because the reservation of rights clause preserved Plaintiff's right to pursue Chapter 5 causes of action, which include preference and fraudulent transfer litigation.[8]

## VI.    The Bankruptcy Court's Order

On August 31, 2017, the Bankruptcy Court entered its *Order Denying Defendant's Motion for Summary Judgment* (Dkt. #38 in Adv. Pro. 17-04293), a copy of which is attached hereto as **Exhibit H**.

## ARGUMENT

An interlocutory order of a bankruptcy court may be appealed with leave of the court.  *See* 28 U.S.C. § 158(a)(3).  "The decision to grant leave to appeal is a discretionary one which should be guided and instructed, but not constrained, by the standards set forth in 28 U.S.C. § 1292(b)."  *In re Treasure Isles HC, Inc.*, 462 B.R. 645, 647 (6th Cir. BAP 2011) (citing *Simon v. Amir (In re Amir)*, 436 B.R. 1, 8 (6th Cir. BAP 2010)).  "The factors to be considered in determining whether to

---

[7] Defendant has ordered a transcript of the hearing on an expedited basis.

[8] The Bankruptcy Court also found that it had constitutional authority to enter a final judgment in the proceeding.

grant leave to appeal are: (1) the question must be one of "law;" (2) it must be "controlling;" (3) there must be substantial ground for 'difference of opinion' about it; and (4) an immediate appeal must 'materially advance the ultimate termination of the litigation.'" *Id.* (citing *Amir*).

Consideration of these factors strongly supports granting Defendant leave to appeal the Bankruptcy Court's *Order Denying Defendant's Motion for Summary Judgment*.

**A.**   **The Principal Question Presented In The Appeal— Whether Plaintiff's Claims Against Defendant In The Adversary Proceeding Were "Expressly Reserved" In The Combined Plan And Disclosure Statement So As To Avoid The *Res Judicata* Effect Of The Confirmation Order— Is One Of Law.**

The principal question presented in the appeal of the Bankruptcy Court's Order is whether Plaintiff's preference and fraudulent transfer claims against Defendant were "expressly reserved" in the Combined Plan and Disclosure Statement so as to avoid the *res judicata* effect of the Confirmation Order. This is purely a question of law. Accordingly, this factor strongly weighs in favor of granting leave to appeal.

**B.**   **The Principal Question Is Controlling.**

"A legal issue is controlling if it could materially affect the outcome of the case." *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002) (citation omitted); *see also Prologo v. Flagstar Bank, FSB*, 471 B.R. 115, 129-30 (D. Md. 2012) ("An

order involves a controlling question of law when either (1) reversal of the bankruptcy court's order would terminate the action, or (2) determination of the issue on appeal would materially affect the outcome of the litigation.") (citation and internal quotations omitted).   The principal legal issued presented in this appeal is "controlling" since the reversal of the Bankruptcy Court's Order would "materially affect the outcome of the case" by resolving all of Plaintiff's claims in Counts I-III of the Complaint and Plaintiff's 502(d) Objection in Count IV of the Complaint, leaving only Plaintiff's Overstated Objection in Count IV of the Complaint.   Accordingly, this factor also strongly weighs in favor of granting leave to appeal.

## C.     There Is Substantial Ground For Difference Of Opinion About The Principal Question.

In the Sixth Circuit's *Browning* decision, the Sixth Circuit found it significant that the reservation did not name the defendant nor state the factual basis for the reserved claims.   *Browning* 283 F.3d at 775.   In the District Court's *Slone* decision, the District Court also found it significant that the plan failed to name the defendant, describe the specific cause of action, or identify the factual basis for any claim against defendant, "as required by *Browning*," *Slone*, 320 B.R,. at 868.   *Slone* affirmed Judge McIvor's decision.   These cases demonstrate, at a minimum, that there is substantial ground for difference of opinion about the principal question raised in this appeal.   Furthermore, the United States District

Court for the Middle District of Tennessee's *Kaye* decision, in which the District Court found that the Sixth Circuit held in *Browning* that "absent an express reservation in a confirmed plan or related disclosure statement of the right to bring *specific* actions against *identified* defendants, the res judicata doctrine bars any new claims" and deemed *Browning* "applicable and binding" on issue of whether § 547 and § 548 claims are adequately reserved in plan and disclosure statement, also shows that there is a substantial ground for difference of opinion about the principal question raised in this appeal. *Kaye v. Carlisle Tire & Wheel Co.*, No. 3:07-00336, 2008 WL 821521, *5-6 (M.D. Tenn. March 27, 2008); *see also In re SmarTalk Teleservices, Inc. Securities Litigation*, 487 F. Supp. 2d 914, 925 n. 3 (E.D. Ohio 2007) (finding *USN Communications* and *Ampace* "contrary to the Sixth Circuit's decision in *Browning*"); *In re Crowley, Milner & Co.*, 299 B.R. 830, 851-52 (Bankr. E.D. Mich. 2003) (identifying *USN Communications* and *Ampace* as courts that have "rejected the specificity requirement of Browning" but noting that "this Court is constrained to follow the binding precedent in Browning"). Accordingly, this factor also strongly weighs in favor of granting leave to appeal.

## D. An Immediate Appeal Will Materially Advance The Ultimate Termination Of The Litigation.

Finally, an immediate appeal will materially advance the ultimate termination of the litigation. If the immediate appeal is granted and the

21

Bankruptcy Court's Order is overturned, Counts I-III of the Complaint and Plaintiff's 502(d) Objection in Count IV of the Complaint will be resolved in Defendant's favor, leaving only Plaintiff's Overstated Objection in Count IV of the Complaint. Therefore, this factor also strongly weighs in favor of granting leave to appeal.

Furthermore, an immediate appeal would obviate the time and expense of discovery and an unnecessary trial. For this reason as well, the Court should grant leave to appeal.

## <u>CONCLUSION</u>

Defendant's Motion should be granted.

Dated:  September 14, 2017                    Respectfully submitted,


                                              **CLARK HILL PLC**

                                              */s/ John R. Stevenson*
                                              Joel D. Applebaum (P36774)
                                              John R. Stevenson (P70241)
                                              151 S. Old Woodward Avenue, Suite 200
                                              Birmingham, Michigan 48009
                                              (248) 642-9692
                                              japplebaum@clarkhill.com
                                              jstevenson@clarkhill.com

                                              *Counsel for United States Steel Corporation*

22

216211768:2 21144/194655

# EXHIBIT A

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| LEE STEEL CORPORATION. *et al.*[1] | ) | Case No. 15-45784-mbm |
| | ) | |
| Debtors. | ) | |
| | ) | Judge Marci B. McIvor |
| | ) | |

## COMBINED JOINT PLAN OF LIQUIDATION
## AND DISCLOSURE STATEMENT
### September 30, 2015

Stephen M. Gross (P35410)
Jayson B. Ruff (P69893)
Joshua A. Gadharf (P76860)
McDONALD HOPKINS PLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075
E-mail:   sgross@mcdonaldhopkins.com
             jruff@mcdonaldhopkins.com
             jgadharf@mcdonaldhopkins.com

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

Scott A. Wolfson, Esq.
Anthony Kochis, Esq.
Wolfson Bolton PLLC
3150 Livernois Rd Ste 275
Troy, MI 48083-5034
Phone: (248) 247-7103
Facsimile: (248) 247-7099
E-Mail: swolfson@wolfsonbolton.com
            akochis@wolfsonbolton.com

COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

---

[1] The Debtors include Lee Steel Corporation, Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm, and 4L Ventures, LLC, Case No. 15-45788-mbm.

{5711562:12}

I.    **COMBINED JOINT PLAN OF LIQUIDATION OF LEE STEEL CORPORATION,
TAYLOR INDUSTRIAL PROPERTIES, L.L.C., AND 4L VENTURES, LLC UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE**

### ARTICLE 1

### DEFINITIONS

Unless the context otherwise requires, the following terms, when used in the Plan of Liquidation, shall have the meanings set forth below:

**1.0    Definitions**

    **1.01    "Administrative Expense Claim"** or **"Administrative Claim"** means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under Sections 503(b) and 507(a)(2) of the Bankruptcy Code, including without limitation: (a) any actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the Debtors' businesses; (b) Claims that have been determined by a Final Order to constitute an administrative expense of the Estate; (c) compensation Claims by Professionals; (d) any fees or charges assessed against and payable by the Debtors under Section 1930 of title 28 of the United States Code and (e) any taxes due to governmental entities that the Debtors incurred after the Petition Date.

    **1.02    "Allowed"** means with reference to any Claim: any Claim (a) proof of which was filed within the applicable period of limitation fixed by the Court in accordance with Bankruptcy Rule 3003(c)(3) and as to which the Debtors or the Liquidating Trustee have not filed an objection on or before the expiration of the time period set forth for the objection to such Claim in the Plan, the Bankruptcy Code, the Bankruptcy Rules, or an order of the Bankruptcy Court fixing an objection date, or as to which, and to the extent, any objection has been determined by a Final Order in favor of the relevant Claim holder and is not subject to disallowance pursuant to Section 502(d) of the Bankruptcy Code on account of the holder of such Claim not having paid or turned over property for which such party is potentially liable under the Bankruptcy Code;  (b) listed on the Schedules, as amended, as other than disputed, contingent, or unliquidated; (c) that has been allowed by a Final Order of the Court (*provided*, *however*, that Claims allowed solely for the purpose of voting to accept or reject the Plan shall not be considered Allowed Claims hereunder); (d) the Huntington Secured Claim; (e) expressly allowed under or pursuant to the terms of the Plan; or (f) on behalf of such Claim no consideration has or will be received, in whole or in part, by the Claim holder from any other source on account of such Claim.

    **1.03    "APAs"** means, collectively, the Union Partners APA and the Hilco APA.

    **1.04    "Assets"** means all assets and property of the Debtors' Estate, regardless of whether reflected in the financial records of the Debtors, including but not limited to: equipment, cash, deposits, refunds, rebates, abatements, fixtures, real property interests, contractual interests, intangibles, claims, Causes of Action, Estate Litigation, suits, setoffs, recoupments, equitable or legal rights, interests, and remedies.

    **1.05    "Bankruptcy Code"** means title 11 of the United States Code, as amended and in effect on the Petition Date.

{5711562:12}                                    2

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 2 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 3 of 65

**1.06** **"Bankruptcy Rules"** means (a) the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under Section 2075 of title 28 of the United States Code and (b) the local rules of the Court, in each case, as in effect on the Petition Date.

**1.07** **"Bar Date"** means August 19, 2015, the date set forth in the Scheduling Order as the deadline by which all creditors shall file a proof of Claim in these Chapter 11 Cases; *provided*, *however*, the Bar Date for governmental units means October 12, 2015.

**1.08** **"Beneficiaries"** means holders of Allowed Claims in Class 3 that are entitled to receive Distributions under the Plan and/or the Liquidating Trust Agreement.

**1.09** **"Bid Procedures Order"** means the Order (A) Establishing Bidding Procedures for the Auction Sale of Substantially All of Debtors' Assets Free and Clear of Liens, Claims and Encumbrances and Transferring Liens to Proceeds; (B) Scheduling an Auction and a Sale Hearing to Consider Approval of Sale; (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts; (D) Approving the Form of Asset Purchase Agreement, Form and Manner of the Auction Notice, the Form of the Notice to Non-Debtor Co-Parties to Executory Contracts, and the Notice of the Sale Hearing entered June 9, 2015 [Docket No. 175], as amended, extended, or supplemented during the Chapter 11 Cases.

**1.10** **"Business Day"** means any day other than: (a) a Saturday; (b) a Sunday and (c) a "legal holiday" as defined in Bankruptcy Rule 9006(a).

**1.11** **"Cash"** means legal tender of the United States of America.

**1.12** **"Causes of Action"** means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to, all rights and causes of action permitted under chapter 5 of the Bankruptcy Code, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, that belong to the Debtors.

**1.13** **"Chapter 11 Cases"** means the bankruptcy cases of the Debtors (Bankruptcy Case Nos. 15-45784, 15-45785, and 15-45788, jointly administered in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division - Detroit).

**1.14** **"Claim"** means any claim against the Debtors, regardless of whether asserted and regardless of whether known, as the term "claim" is defined in Section 101(5) of the Bankruptcy Code, and shall include, but is not limited to: Administrative Expense Claims; Disputed Claims; any claims arising from or related to any Equity Interests and Equity Claims; General Unsecured Claims; Priority Claims; and Secured Claims.

**1.15** **"Class"** means each of the groups of holders of Claims or Equity Interests described in Article 5 of the Plan.

**1.16** **"Closing Date"** means September 18, 2015 the date on which the last of the Sales closed.

**1.17** **"Collateral"** means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim up to the Allowed amount of such Claim,

{5711562:12}                                           3

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 3 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 4 of 65

which Lien is not subject to avoidance or otherwise invalid under the Bankruptcy Code or other applicable law, and excluding the Causes of Action.

**1.18 "Committee"** means the Official Committee of Unsecured Creditors in these Chapter 11 Cases, appointed by the United States Trustee on April 23, 2015 [Docket No. 69].

**1.19 "Confirmation Hearing"** means the hearing held by the Court to consider the confirmation of the Plan, as it may be adjourned or continued from time to time.

**1.20 "Confirmation Order"** means an order of the Court confirming the Plan under Section 1129 of the Bankruptcy Code that has become a Final Order.

**1.21 "Court"** means the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division - Detroit.

**1.22 "CRO"** means Laura A. Marcero of Huron Consulting Services, LLC.

**1.23 "Debtors"** means Lee Steel Corporation, Taylor Industrial Properties, L.L.C., and 4L Ventures, LLC.

**1.24 "DIP Financing Order"** means the First Amended Final Order (I) Authorizing Debtors to Obtain Post-Petition Financing and Grant Security Interests and Superpriority Administrative Expense Status Pursuant to 11 U.S.C. §§ 105 and 364(c); (B) Modifying the Automatic Stay Pursuant to 11 U.S.C. § 362; and (C) Authorizing Debtors to Enter Into Agreements with the Huntington National Bank [Docket No. 317] entered August 27, 2015, as amended, extended, or supplemented during the Chapter 11 Cases.

**1.25 "Disclosure Statement"** means the Disclosure Statement filed pursuant to Section 1125 of the Bankruptcy Code with respect to the Plan of the Debtors under Chapter 11 of the Bankruptcy Code, including all exhibits, appendices, and schedules thereto, if any, as same may be amended, modified, or supplemented from time to time.

**1.26 "Disputed Claim"** means a Claim or any portion thereof: (a) listed on the Schedules as unliquidated, disputed, or contingent; (b) as to which the Debtors or the Liquidating Trustee has filed a timely objection or a request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules, which objection or request for estimation has not been withdrawn or determined by a Final Order; (c) is subject to disallowance under Section 502(d) of the Bankruptcy Code on account of the holder of such Claim not having paid or turned over property for which such party is potentially liable under the Bankruptcy Code; (d) for which the amount or classification of the Claim specified in the relevant proof of claim exceeds the amount or classification of any corresponding Claim listed in the Schedules by the Debtors; (e) for which no corresponding Claim has been listed in the Schedules by the Debtors; (f) on behalf of which Claim the Claim holder has received consideration, in whole or in part, from another source on account of such Claim; (f) that is not an Allowed Claim; or (g) that is otherwise disputed by the Debtors or the Liquidating Trustee in accordance with applicable law, and in regards to which such dispute has not been withdrawn or determined by a Final Order. Under the Plan, the Debtors and/or the Liquidating Trustee shall have the authority to object to any Disputed Claim at any time prior to making a distribution to holders of Allowed Claims in Class 3.

**1.27 "Disputed Reserve"** means the amount of Cash that would have been distributed on the Distribution Date, or in subsequent Distributions, to the holders of Disputed Claims if such

{5711562:12}                                4

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 4 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 5 of 65

Disputed Claims had in fact been Allowed on such date: (a) for liquidated Claims, in the amount asserted in a filed proof of Claim or Administrative Claim; and (b) for unliquidated Claims, the amount estimated by the Liquidating Trustee as the maximum reasonable amount that could ultimately be allowed by the Court.

      1.28   **"Distribution"** means a distribution of Cash or other property of the Estate made in accordance with the Plan or the Liquidating Trust Agreement.

      1.29   **"Distribution Date"** means the date on which the Liquidating Trustee shall make the Distribution, which shall be a date selected by the Liquidating Trustee in the Liquidating Trustee's sole discretion.

      1.30   **"Effective Date"** means a day, as determined by the Debtors, the Committee, and the Liquidating Trustee, that is the Business Day as soon as reasonably practicable after all conditions to the Effective Date in section 11.1 of the Plan have been met or waived; *provided, however*, the Debtors and the Committee reserve the right to request that the Bankruptcy Court establish a date certain for the Effective Date in the Confirmation Order.

      1.31   **"Entity" or "Entities"** means an entity as defined in Section 101(15) of the Bankruptcy Code.

      1.32   **"Equity Interests"** means: (a) any capital stock or other ownership interest in the Debtors; (b) any option, warrant, or right to purchase, sell, or subscribe for an ownership interest in, or other equity security of, the Debtors; (c) any and all redemption, conversion, exchange, voting, participation, or dividend rights or liquidation preferences relating to any of the foregoing; as they exist prior to the Effective Date.

      1.33   **"Equity Claims"** means all Claims arising in connection with an Equity Interest, including, without limitation, Claims arising from the rescission of a purchase or sale of an equity security of the Debtors, for damages arising from the purchase or sale of such security, or for reimbursement or contribution under Section 502 of the Bankruptcy Code on account of such Claim and attorneys' fees associated therewith.

      1.34   **"Estate" or "Estates"** means the bankruptcy estates of the Debtors created by Section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

      1.35   **"Estate Litigation"** means all rights to and proceedings arising from or relating to: (i) all Claims, (ii) objections to Claims, (iii) Causes of Action, including but not limited to, any litigation or claims that can be instituted or asserted by the Estate, the Liquidating Trust, or by any party on behalf of or for the benefit of the Estate or Liquidating Trust, including, but not limited to, preference claims, fraudulent conveyance or avoidance actions, or any other claim of or cause of action of any kind whatsoever arising under chapter 5 of the Bankruptcy Code.

      1.36   **"Final Order"** means an order or judgment of the Court as to which the time to appeal, petition for certiorari, seek mandamus, or move for reargument, reconsideration, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, reconsideration, or rehearing is pending; or, if an appeal, writ of certiorari, or petition for mandamus, reargument, reconsideration, or rehearing has been filed or sought with respect to any order or judgments of the Court, that order or judgment has been affirmed by the highest court to which it was appealed, or certiorari has been denied or mandamus, reargument, reconsideration, or rehearing has been denied or resulted in no modification thereof, and the time to take any further

{5711562:12}            5

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 5 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 6 of 65

appeal, petition for certiorari, or move for mandamus, reargument, reconsideration, or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure (or any analogous motion under the Bankruptcy Rules) may be filed with respect to an order or judgment shall not cause such order or judgment not to be a Final Order.

**1.37** **"General Unsecured Claim"** means an Allowed unsecured Claim that is not a Priority Claim, including Allowed rejection damage Claims asserted under the provisions of section 8.2 of the Plan.

**1.38** **"Hilco"** means, collectively, Hilco Industrial, LLC and Hilco Real Estate, LLC.

**1.39** **"Hilco APA"** means the Asset Purchase Agreement executed by Debtors as Sellers and Hilco Industrial, LLC and Hilco Real Estate, LLC as Purchasers dated August 12, 2015, as amended.

**1.40** **"Hilco Sale Order"** means the Order (I) Authorizing Debtors to Enter into Agreement for Sale of All of Debtors' Fixed Assets Located at Debtor's Romulus Facility to Hilco Industrial, LLC and Hilco Real Estate, LLC, the Successful Bidder at Auction (II) Authorizing the Sale of Substantially All of Debtors' Romulus Assets in Connection Therewith Free and Clear of All Liens, Claims, Encumbrances and Interests and Transferring Liens to Proceeds; and (III) Granting Related Relief [Docket No. 292] entered August 12, 2015.

**1.41** **"Huntington"** means The Huntington National Bank.

**1.42** **"Huntington Secured Claim"** means all Claims for professional fees, costs, and default interest held by Huntington as provided in the DIP Financing Order, which are estimated at $750,000.

**1.43** **"Impaired"** shall have the meaning ascribed to it in Section 1124 of the Bankruptcy Code.

**1.44** **"Liabilities"** means the all the liabilities of the Debtors' Estate, whether or not reflected in the financial records of the Debtors.

**1.45** **"Lien"** has the meaning ascribed to that term in Section 101(37) of the Bankruptcy Code, except that a lien that has been or may be avoided shall not constitute a Lien for the purposes of the Plan.

**1.46** **"Liquidating Trust"** means that Liquidating Trust established pursuant to the Plan in which the Liquidating Trust Assets shall vest as set forth in the Plan on the Effective Date.

**1.47** **"Liquidating Trust Agreement"** means that agreement that governs the operation and management of the Liquidating Trust, in a form substantially similar to Appendix A to the Plan.

**1.48** **"Liquidating Trust Assets"** means all of the assets transferred or granted to the Liquidating Trust, consisting of: (i) the Causes of Action and Estate Litigation; (ii) the Unsecured Carve-Out; and (iii) all remaining Assets of the Debtors, if any, after the Debtors have paid all Statutory Fees due as of the Effective Date, Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims.

{5711562:12}    6
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 6 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 7 of 65

**1.49** **"Liquidating Trustee"** means Gene R. Kohut, the person vested with the authority under the Liquidating Trust to administer the Liquidating Trust.

**1.50** **"Liquidating Trust Proceeds"** means the proceeds from the collection, liquidation, sale, or other disposition of the Liquidating Trust Assets, including the proceeds received from any Causes of Action or Estate Litigation.

**1.51** **"Loan Documents"** shall have the meaning set forth in the DIP Financing Order.

**1.52** **"Mr. Taylor"** means W. Zachary Taylor.

**1.53** **"Petition Date"** means April 13, 2015, the date on which each of the respective Debtors filed their respective chapter 11 petitions and commenced the Chapter 11 Cases.

**1.54** **"Plan"** means this Combined Joint Plan of Liquidation under chapter 11 of the Bankruptcy Code as the same may be amended, modified, or supplemented from time to time in accordance with its terms.

**1.55** **"Pre-Petition Loan Documents"** shall have the meaning set forth in the DIP Financing Order.

**1.56** **"Priority Claim"** means any Allowed Claim of a kind specified in Sections 507(a) of the Bankruptcy Code other than Priority Tax Claims.

**1.57** **"Priority Tax Claim"** means any Allowed Claim of a kind specified in Section 507(a)(8) of the Bankruptcy Code.

**1.58** **"Priority Tax Claim Bar Date"** means October 12, 2015, the date that is 180 days from the Petition Date, as set forth in the Scheduling Order.

**1.59** **"Professional"** means any person or Entity employed by the Debtors or the Committee pursuant to a Final Order in accordance with Sections 327, 328, or 1103 of the Bankruptcy Code, and to be compensated for services rendered prior to and after the Effective Date pursuant to Sections 327, 328, 329, 330, or 331 of the Bankruptcy Code.

**1.60** **"Pro Rata Proportion"** means, with reference to any Distribution on account of any Allowed Claim in any Class, the ratio (expressed as a percentage) that the amount of the Allowed Claim bears to the aggregate amount of all Allowed Claims in that Class.

**1.61** **"Purchasers"** means, collectively, Hilco and Union Partners.

**1.62** **"Record Date"** means the record date for determining the entitlement to receive Distributions under the Plan on account of Allowed Claims, which shall be the Effective Date of the Plan.

**1.63** **"Released Parties"** or **"Released Party"** has the meaning ascribed thereto in section 9.1 of the Plan.

**1.64** **"Released Party Claim"** means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to, all rights and causes of action permitted under chapter 5 of the Bankruptcy Code, based in whole or in

{5711562:12}                                    7

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 7 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 8 of 65

part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

**1.65 "Sales"** means the sale and transfer of substantially all of the Debtors' real and personal property to Purchasers pursuant to the Sale Orders and APAs and the assignment to the Purchasers of the executory contracts and leases assumed by Debtors pursuant to the Sale Orders and APAs.

**1.66 "Sale Orders"** means, collectively, the Hilco Sale Order and the Union Partners Sale Order.

**1.67 "Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors in the Chapter 11 Cases pursuant to Section 521 of the Bankruptcy Code, and as such schedules and statements have been or may be supplemented or amended from time to time.

**1.68 "Scheduling Order"** means the Court's Order Establishing Deadlines and Procedures [Docket No. 123] entered on May 12, 2015.

**1.69 "Secured Claim"** means an Allowed Claim that is secured by a Lien (which is valid, perfected, and enforceable under applicable law or by reason of a Final Order) on the property in which the Estate has an interest or that is subject to a setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or to the extent of the amount subject to the setoff.

**1.70 "Taylor Released Parties"** means Mr. Taylor, his immediate family, Novi Ventures, LLC, his agents, attorneys, consultants, successors and assigns.

**1.71 "Taylor Settlement Agreement"** means the Settlement Agreement and Mutual Release by and between the Debtors and Mr. Taylor dated September 22, 2015, pursuant to which, among other things, Mr. Taylor agreed to (i) make the Taylor Settlement Payment to the Debtors, (ii) waive and release any and all claims held by the Taylor Released Parties against the Debtors and (iii) withdraw all of the Taylor Released Parties' proofs of Claim filed in the Chapter 11 Cases, in exchange for a release by the Debtors of all Causes of Action and Estate Litigation against the Taylor Released Parties, which was approved pursuant to an Order entered in the Chapter 11 Cases on September 22, 2015 [Docket No. 360].

**1.72 "Taylor Settlement Payment"** means the payment of $1,500,000 made by Mr. Taylor to the Debtors pursuant to the terms of the Taylor Settlement Agreement.

**1.73 "Unclaimed Property"** means any Distributions that are returned to the Liquidating Trustee or Liquidating Trust as: (i) undeliverable to a Beneficiary, or (ii) unclaimed by a Beneficiary, as further described in section 7.5.1.

**1.74 "Union Partners"** means Union Partners I, LLC.

**1.75 "Union Partners APA"** means the Asset Purchase Agreement executed by Debtors as Sellers and Union Partners I, LLC as Purchaser dated August 11, 2015, as amended.

**1.76 "Union Partners Sale Order"** means the Order (I) Authorizing Debtors to Enter into Agreement for Sale of Substantially All of Debtors' Working Capital Assets and All Fixed

{5711562:12} 8
15-45784-mbm Doc 370 Filed 09/30/15 Entered 09/30/15 16:13:20 Page 8 of 64
17-04293-mbm Doc 45-1 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 9 of 65

Assets Located at Debtors' Wyoming, Michigan Facility to Union Partners I, LLC the Successful Bidder at Auction (II) Authorizing the Sale of Substantially All of Debtors' Wyoming, Michigan Fixed Assets and All Working Capital Assets in Connection Therewith Free and Clear of All Liens, Claims, Encumbrances and Interests and Transferring Liens to Proceeds; and (III) Granting Related Relief [Docket No. 291] entered August 12, 2015.

    **1.77** **"United States Trustee"** means the United States Trustee appointed under Section 591 of title 28 of the United States Code to serve in the Eastern District of Michigan, Southern Division.

    **1.78** **"Unsecured Carve-Out"** means the sum of $400,000 from the proceeds of the Sales otherwise payable to Huntington as proceeds of its collateral under the DIP Financing Order but held in trust by Debtors' counsel for the benefit of Class 3 creditors to be paid to the Committee's counsel upon Court approval of the Unsecured/Lender Settlement, which shall be included in the Liquidating Trust Assets as provided in the Unsecured/Lender Settlement.

    **1.79** **"Unsecured/Lender Settlement"** means the Settlement Agreement dated September 25, 2015 between the Committee, Huntington and Debtors, which is currently subject to approval by the Court pursuant to a pending Motion in the Chapter 11 Cases [Docket No. 366].

## ARTICLE 2

### INTERPRETATION, APPLICATION OF DEFINITIONS,
### RULES OF CONSTRUCTION, AND COMPUTATION OF TIME

    Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter.  For purposes of the Plan: (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the document shall be substantially in that form or substantially on those terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means the document or exhibit as it may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Articles, Schedules, and Exhibits are references to articles, schedules, and exhibits of or to the Plan. Unless otherwise specified, the words "herein," "hereof," "hereto," "hereunder," and other words of similar meaning refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.  A capitalized term used but not defined herein shall have the meaning given to that term in the Bankruptcy Code. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of the Plan.

    The headings in the Plan are for convenience of reference only and shall not expand, limit, or otherwise affect the provisions of the Plan.  Unless otherwise indicated herein, all references to dollars are to United States dollars.

    Unless otherwise expressly provided herein, in computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

{5711562;12}                                                9

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 9 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 10 of 65

## ARTICLE 3

## ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### 3.1 Administrative Expense Claims

All Allowed Administrative Claims, including all tax claims that accrued post-petition, shall be paid by the Debtors in cash, in full, on the later of (i) on or before thirty (30) days after entry of a Final Order of the Bankruptcy Court Allowing such Administrative Claim, or (ii) if the Administrative Claim is not a Disputed Claim and is an Allowed Claim, thirty (30) days after the Effective Date.

### 3.2 Statutory Fees

All fees payable pursuant to Section 1930 of title 28 of the United States Code shall be paid (i) by the Debtors, if due and owing on or prior to the Effective Date, and (ii) by the Liquidating Trustee from the Liquidating Trust Assets, as and when due if arising after the Effective Date.

### 3.3 Professional Compensation

In the case of Administrative Claims of all Professionals, Professionals shall file final fee applications for services provided to or for the benefit of the Debtors on or before December 28, 2015, in accordance with the Scheduling Order. Subject to the provisions of this section 3.3, once approved, the Administrative Claims of Professionals shall be paid in accordance with the payment of Allowed Administrative Claims set forth above in section 3.1 of the Plan.

### 3.4 Claims Arising Under Section 503(b)(9) of the Bankruptcy Code

All requests for the payment or allowance of Claims arising Section 503(b)(9) of the Bankruptcy Code shall be discharged and forever barred and shall not be enforceable unless (a) the holder of such Claim filed a proper request for such Claim under Section 503(b) before the Bar Date and such Claim is not a Disputed Claim; or (b) the Court has previously entered an order in these Chapter 11 Cases granting a creditor an Allowed Claim arising under Section 503(b)(9) of the Bankruptcy Code.

### 3.5 Administrative Claims Bar Date

All requests for the payment or allowance of an Administrative Claim (other than the Administrative Claims of Professionals, which are dealt with in section 3.3 above, and Claims arising under Section 503(b)(9) of the Bankruptcy Code, which are dealt with in section 3.4 above) shall be discharged and forever barred and shall not be enforceable unless (a) such request for the payment of an Administrative Claim is filed and served upon Debtors on or before the Confirmation Hearing, or (b) the Court has previously entered an order in these Chapter 11 Cases granting a creditor an Administrative Claim.

### 3.6 Priority Tax Claims

All requests for the payment or allowance of Priority Tax Claims shall be discharged and forever barred and shall not be enforceable unless (a) the holder of such Claim filed a proof of Claim on or before the Priority Tax Claim Bar Date, or (b) the Court has previously entered an order in these Chapter 11 Cases granting a creditor an Allowed Priority Tax Claim.

{5711562:12}                    10

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 10 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 11 of 65

Unless the Debtors and the holder of an Allowed Priority Tax Claim agree to a different treatment, and subject to the provisions of Article 7 of the Plan, if applicable, each holder of an Allowed Priority Tax Claim shall be paid the Allowed amount of its Priority Tax Claim by the Debtors on the later of (i) thirty (30) days from the Effective Date or (ii) thirty (30) days after entry of a Final Order Allowing such Priority Tax Claim.  Prior to the Effective Date, Debtors reserve the right to dispute any asserted Priority Tax Claim pursuant to Article 7 of the Plan.

## ARTICLE 4

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim shall be deemed to be classified in a particular Class only to the extent that such Claim qualifies within the description of that Class, and shall be deemed classified in a different Class to the extent that the remainder of such Claim qualifies within the description of such different Class.  A Claim is in a particular Class only to the extent that such Claim is an Allowed Claim.

The classification of Claims and Equity Interests of the Debtors pursuant to the Plan are as follows:

| Class | Class Name | Status |
|-------|-----------|--------|
| Class 1 | Allowed Priority Claims | Not Impaired<br>Deemed to accept the Plan and not entitled to vote |
| Class 2 | Allowed Secured Claims | Impaired<br>Entitled to vote |
| Class 3 | Allowed General Unsecured Claims | Impaired<br>Entitled to vote |
| Class 4 | Equity Interests | Impaired<br>Deemed to reject the Plan and not entitled to vote |

## ARTICLE 5

## TREATMENT OF ALLOWED CLAIMS AND EQUITY INTERESTS UNDER THE PLAN; ACCEPTANCE OR REJECTION OF THE PLAN

The following treatment set forth in this Article 5 shall be accorded to Allowed Claims against, and Equity Interests in, the Debtors.

{5711562:12}                                             11

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 11 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 12 of 65

5.1     **Treatment of Claims**

### 5.1.1    Class 1: Allowed Priority Claims

Class 1 consists of all Allowed Priority Claims. Allowed Priority Claims will be paid in full under the Plan and are therefore not Impaired. Unless the Debtors and the holder of such Allowed Priority Claim agree to a different treatment, and subject to the provisions of Article 7 of the Plan, if applicable, each holder of an Allowed Priority Claim shall be paid in full on the later of (i) thirty (30) days from the Effective Date or (ii) thirty (30) days after entry of a Final Order Allowing such Claim, the Allowed amount of its Claim by the Debtors. The Debtors reserve the right to dispute any asserted Priority Claim pursuant to Article 7 of the Plan.

Class 1 is not Impaired and is deemed to accept the plan and therefore not entitled to vote to accept or reject the Plan. The Debtors do not believe that there are any Priority Claims to be included in Class 1.

### 5.1.2    Class 2: Allowed Secured Claims

Class 2 consists of Allowed Secured Claims. The only Secured Claim is the Huntington Secured Claim. The sum of $250,000.00 of the Huntington Secured Claim, is subject to a "carve-out" of the proceeds of the Sales constituting Collateral for Huntington held by the Debtors for payment of the fees of Huron Consulting Services, LLC as the CRO, subject to approval by the Court pursuant to the Unsecured/Lender Settlement. On the Effective Date, in consideration for the releases in Section 9.1 and 9.2 below, Huntington shall be deemed to waive the remaining amount due on the Allowed Huntington Secured Claim and Huntington shall be deemed to waive and release its other Claims, if any, against the Debtors.

Class 2 is Impaired and is entitled to vote to accept or reject the Plan.

### 5.13    Class 3: Allowed General Unsecured Claims

Class 3 consists of all Allowed General Unsecured Claims, including (to the extent they are Allowed Claims) (i) all holders of Claims arising from rejected executory contracts or unexpired leases, and (ii) all trade creditors. Unless the Liquidating Trustee and the holder of such Claim agree to a different treatment, and subject to the provisions of this Plan and Liquidating Trust Agreement, following resolution of (A) all Disputed Claims; (B) Causes of Action and Estate Litigation; and (C) other Estate Claims, each holder of an Allowed General Unsecured Claim shall receive a Pro Rata Proportion of the Liquidating Trust Assets remaining after the administration of the Liquidating Trust.

Class 3 is Impaired and is entitled to vote to accept or reject the Plan.

### 5.1.4    Class 4: Equity Interests

Class 4 consists of all Equity Interests and Equity Claims including warrants to purchase or acquire Equity Interests. The holders of the Equity Interests shall neither receive any distributions nor retain any property under the Plan or the Liquidating Trust Agreement. As of the Effective Date, all certificates, documents, and other instruments underlying Equity Interests, including warrants, shall be canceled.

{5711562:12}                                     12
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 12 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 13 of 65

Class 4 is Impaired, but because no distributions will be made to the holders of Class 4 Equity Interests, nor will such holders retain any property, such holders are deemed to have rejected the Plan pursuant to Section 1126(g) of the Bankruptcy Code and are not entitled to vote to accept or reject the Plan.

## ARTICLE 6

## THE LIQUIDATING TRUST

### 6.1    Formation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established for the limited purpose of: (i) administering the Liquidating Trust Assets, (ii) pursuing Estate Litigation; (iii) resolving all Disputed Claims as of the Effective Date, and (iii) making all Distributions provided for under the Plan in respect of Class 3 Allowed Claims and all other Claims that may become Class 3 Allowed Claims subsequent to the Effective Date.   The Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation section 301.7701-4(d).   The Liquidating Trust shall be governed under the laws of the State of Michigan.

### 6.2    The Dissolution of Committee; Liquidating Trustee

On the Effective Date, the Committee will dissolve, Committee members will cease to have any role arising from or relating to the Chapter 11 Cases, and the Liquidating Trustee will be Gene R. Kohut who is "disinterested" (within the meaning of section 101(4) of the Bankruptcy Code and who accepts the appointment of Liquidating Trustee).   No person shall be deemed not "disinterested" merely as a consequence of having served as a Professional in the Chapter 11 Cases.   The Liquidating Trustee shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Liquidating Trust Agreement.   The Liquidating Trustee may be removed by the Court for cause shown or pursuant to the terms of the Liquidating Trust Agreement.

### 6.3    Funding of the Liquidating Trust

On the Effective Date, the Debtors and the Committee shall transfer and convey all right, title, and interest in the Causes of Action, Estate Litigation, and the Unsecured Carve-Out to the Liquidating Trust, which Assets shall automatically and irrevocably vest in the Liquidating Trust without further action on the part of the Debtors, the Committee, the Liquidating Trustee, or the Court, and with no reversionary interest in the Debtors or Committee, except as otherwise provided in the Plan.   After payment by the Debtors of all (i) Statutory Fees due as of the Effective Date, (ii) Allowed Administrative Claims, (iii) Allowed Priority Claims, and (iv) Allowed Priority Tax Claims, the Debtors shall transfer and convey all right, title, and interest in their remaining Assets, if any, to the Liquidating Trust, which Assets shall automatically and irrevocably vest in the Liquidating Trust without further action on the part of the Debtors, the Liquidating Trustee, or the Court, and with no reversionary interest in the Debtors, except as otherwise provided in the Plan.

The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of all holders of Class 3 Allowed Claims entitled to receive distributions from the Liquidating Trust under the Plan.   The Assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries entitled to receive distributions from the Liquidating Trust under the Plan in exchange for their Allowed Claims, and then by the Beneficiaries entitled to receive distributions from the Liquidating Trust under the Plan to the Liquidating Trust in exchange for a beneficial interest in the Liquidating Trust.   Such

Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title, and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets.

Upon the transfer of the Liquidating Trust Assets to the Liquidating Trust, the Debtors and their Estates shall have no other or further rights or obligations with respect to the Liquidating Trust except as specifically set forth in the Plan; *provided, however*, that the Debtors will make reasonable efforts to cooperate with the Liquidating Trustee in achieving and effectuating the intent and purpose of the Liquidating Trust.

## 6.4    Responsibilities of Liquidating Trustee

The Liquidating Trustee will be in control of and authorized and empowered to carry out the terms and conditions of this Plan and the Liquidating Trust Agreement and will have those responsibilities created by this Plan and the Liquidating Trust Agreement upon the terms and conditions summarized therein, and will, for the benefit of the Beneficiaries, exercise the rights and powers vested in it by this Plan and the Liquidating Trust Agreement in the same manner, and use the same degree of care and skill in his service as a prudent person would exercise and use under the circumstances in the conduct of the Liquidating Trustee's own affairs, and further agrees to receive and disburse all of the Liquidating Trust Assets in accordance with the terms thereof and this Plan. More specifically, the Liquidating Trustee shall have the right, power, authority, standing, and approval, and shall be empowered to:

(a)    perform all of the obligations and agreements of the Plan and the Liquidating Trust Agreement provided for herein;

(b)    keep and maintain in a trust account for the benefit of the Liquidating Trust into which proceeds resulting from the initial receipt or from the sale or other disposition of, or from the income resulting from, all or any part of the liquidation of Debtors' Assets and/or the prosecution of Causes of Action or Estate Litigation;

(c)    keep and maintain trust accounts for the benefit of the Liquidating Trust into which accounts the Trustee may place the Disputed Reserves;

(d)    commence, continue, prosecute, litigate, and/or settle and compromise Causes of Action and Estate Litigation against the Debtors and third parties on behalf of the Liquidating Trust and for the benefit of the Beneficiaries thereof;

(e)    object to any Claims (disputed or otherwise) at any time prior to the Distribution Date and to settle, compromise, withdraw, or litigate to judgment, objections to any and all Claims, regardless of whether the Claim was scheduled by Debtors and classified as undisputed, liquidated, and non-contingent, or otherwise, and to seek subordination of any Claim under the Bankruptcy Code or any other authority;

(f)    make distributions in respect of Allowed Class 3 Claims subsequent to the Effective Date in accordance with the Plan;

(g)    take any actions necessary to the collection, receipt, or disposition of any Liquidating Trust Assets;

{5711562:12}                                     14
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 14 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 15 of 65

(h)   compromise or settle disputes with respect to warranty claims or disputes, or debt obligations owed to the Debtors, their Estates, or the Liquidating Trust (to the extent they constitute Liquidating Trust Assets);

(i)   execute and deliver all releases, satisfactions, and termination statements as may be required in connection with full payment of any debt obligation secured by any lien or security interest;

(j)   retain and/or terminate professional persons without Court approval, in the Liquidating Trustee's discretion, to assist in the duties and responsibilities ascribed to him or her under this Plan and the Liquidating Trust Agreement. The reasonable fees and expenses of all professionals retained by the Liquidating Trustee shall be paid from the Liquidating Trust Assets without Court approval;

(k)   satisfy all reporting requirements for the Liquidating Trust, and all assets held by or on behalf of the Liquidating Trust, to the relevant reporting authority;

(l)   file with the Bankruptcy Court reports regarding the liquidation or other administration of property comprising the Liquidating Trust Assets, the distributions made by the Liquidating Trust, and other matters required to be included in such report; and

(m)   except as otherwise ordered by the Court, and subject to the terms of the Plan, pay any fees and expenses incurred by the Liquidating Trust on or after the Effective Date in accordance with the Liquidating Trust Agreement and without Court approval.

(n)   dissolve the Debtors.

Subject to the other terms of the Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall also have the right, power, authority, standing, and approval to commence, continue, prosecute, litigate and/or settle and compromise Causes of Action and any other Estate Litigation or Claim against third parties. The Liquidating Trustee shall also have the right, standing, and approval to object to the allowance of any Claim at any time prior to the making of a distribution to holders of Allowed Claims in Class 3.

**6.5   Claims Against Liquidating Trust**

All persons having any claim against the Liquidating Trustee or the Liquidating Trustee's professionals in connection with its performance of the Liquidating Trustee's rights, powers, and duties as such shall only look to the Liquidating Trust and the Liquidating Trust Assets for payment or satisfaction thereof.

**6.6   Commingling of Assets**

The Liquidating Trustee shall not commingle any of the Liquidating Trust Assets with its own property or the property of any other person.

**6.7   Reliance on Others**

The Liquidating Trustee may rely upon and shall be protected in acting or refraining from acting upon any certificates, opinions, statements, instruments, or reports believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper person or

persons; *provided*, *however*, that the Liquidating Trustee shall be under a duty to have examined the same to determine whether or not such writings conform to the requirements of this Plan.

**6.8     Liability for Errors and Omissions**

The Liquidating Trust, Liquidating Trustee, and all professionals, and agents of same, shall not be liable for any error of business judgment or with respect to any action taken or omitted to be taken by it, unless it shall be proved that they or their agents shall have been grossly negligent or shall have acted with willful misconduct in ascertaining the pertinent facts or in performing any of their rights, powers, or duties according to this Plan and the Liquidating Trust Agreement. In the event gross negligence and willful misconduct is proven, the Beneficiaries shall be entitled to reimbursement of their reasonable costs, including attorney's fees. The Liquidating Trustee makes no representations as to: (i) the value or condition of the Assets of the Debtors or any part thereof, (ii) the dollar amount, if any, which may be collected as a result of pursuing Causes of Action or Estate Litigation (iii) the amount at which Liabilities may be settled, (iv) the amount of any Distributions to be made in accordance with this Plan from the Liquidating Trust Assets and (v) the security afforded by this Plan, or as to the validity, execution (except its own execution), enforceability, legality, or sufficiency of this Plan, and the Liquidating Trustee and the Liquidating Trustee's professionals shall incur no liability or responsibility in respect of such matters.

**6.9     Indemnification**

The Liquidating Trustee, as well as the Liquidating Trustee's professionals and agents, shall be indemnified by and receive reimbursement from the Liquidating Trust Assets (whether or not distributed to the Beneficiaries) against and from any and all loss, liability, cost, damage, or expense which they may incur or sustain in the exercise and performance of any of their powers and duties pursuant to this Plan and Liquidating Trust unless such loss, liability, cost, damage, or expense shall be incurred or sustained as a result of the gross negligence or willful misconduct of the Liquidating Trustee or the Liquidating Trustee's and agents. All claims of the Liquidating Trustee, the Liquidating Trustee's professionals, and the Liquidating Trustee's agents for indemnification or reimbursement under this Article 6 shall be first offset against the Liquidating Trust Assets or, at Liquidating Trustee's discretion, against any payment or distribution made or to be made in accordance with Articles 5 and 7 of this Plan.

**6.10     Tax Treatment of the Liquidating Trust**

The Liquidating Trustee may pay taxes from the Liquidating Trust Assets as appropriate. In addition, the Liquidating Trust shall require consistent valuation of the property contributed to the Liquidating Trust by the Liquidating Trustee and the Beneficiaries for all federal income tax purposes. The Liquidating Trust is intended to be treated for federal income tax purposes as a liquidating trust for the benefit of creditors or claimants within the meaning of Treasury Regulations section 301.7701-4(d) and in accordance with IRS Revenue Procedure 94-45, and, as a grantor trust under Section 677 of the Internal Revenue Code of 1986, as amended. Accordingly, the Liquidating Trust Assets in respect of holders of Class 3 Claims shall be treated for all purposes of the Internal Revenue Code as (i) a transfer of such distribution to such Class 3 creditors who are the Beneficiaries of the Liquidating Trust; and (ii) a transfer to the Liquidating Trust by the Beneficiaries, who will be treated as the grantors and deemed owners of the Liquidating Trust Assets. The Liquidating Trustee shall be responsible for filing all federal, state, and local tax returns for the Liquidating Trust as a grantor trust pursuant to applicable Treasury Regulations, including Treasury Regulation Section 1.671-4(a), and any income of the Liquidating Trust will be

{5711562:12}                                                16

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 16 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 17 of 65

treated as subject to tax on a current basis. Subject to the receipt of any definitive guidance of the IRS or the Bankruptcy Court, any claims reserve is intended to qualify and be treated as a disputed ownership fund pursuant to Proposed Treasury Regulation Section 1.468B-9. As such, any disputed claims reserve shall report and pay any taxes on its income, the Liquidating Trustee shall act as the "administrator" of the disputed ownership fund, and the disputed claims reserve shall be subject to the continuing jurisdiction of the Bankruptcy Court. Currently, no money or other property shall be distributed to any Person holding a disputed claim except to the extent that such disputed claim becomes an Allowed Claim pursuant to the Plan.

**6.11    Reports to be Filed by the Liquidating Trust**

At least annually, the Liquidating Trustee shall file with the Court reports regarding the liquidation or other administration of property comprising the Liquidating Trust Assets, the distributions made by it, and other matters required to be included in such report in accordance with the Liquidating Trust Agreement.

**6.12    Investment Authority**

The Liquidating Trustee shall have investment powers which are limited to those powers reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the trust as further described in IRS Revenue Procedure 94-45. The Liquidating Trustee may only invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary, liquid investments, such as Treasury Bills as specified in Revenue Procedure 94-45. Income earned on investments shall be deemed a part of the Liquidating Trust Assets.

**6.13    Exemption From Certain Transfer Taxes**

Pursuant to Section 1146(a) of the Bankruptcy Code, any transfers from the Debtors or the Liquidating Trust to any Entity pursuant to the Plan in the United States shall not be taxed under any law imposing a stamp tax or other similar tax. Such exemption specifically applies, without limitation, to all documents necessary to evidence and implement distributions under the Plan.

**6.14    Termination**

Termination of the Liquidating Trust shall automatically occur no later than three (3) year after the Effective Date, unless the Bankruptcy Court shall approve an extension based upon a finding that such an extension is necessary for the Liquidating Trust to complete its purpose.

**6.15    Privileges**

To the full extent permitted by law, upon the transfer of a Liquidating Trust Asset to the Liquidating Trust, the Debtors shall irrevocably transfer to the Liquidating Trust, as its legal successor, all rights of the Debtors and their Estates to exercise or waive any privilege, including the attorney-client privilege, accountant-client privilege, work-product privilege, or other privilege or immunity attaching to any document or communication (whether written or oral) as it relates to such Liquidating Trust Asset (collectively, the "Privileges"), and the Debtors and the Liquidating Trustee are authorized to take all necessary actions to effectuate the transfer of the Privileges. All such Privileges also shall vest in the Liquidating Trust and its representatives, to the full extent permitted under law. This transfer is self-executing as of the date a Liquidating Trust Asset is transferred to the Liquidating Trust; *provided*, *however*, that the Liquidating Trustee and the

{5711562;12}                                     17

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 17 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 18 of 65

Debtors are authorized and directed to take any and all necessary actions to effectuate the transfer of such Privileges. After the date a Liquidating Trust Asset is transferred to the Liquidating Trust, the Liquidating Trustee shall have the exclusive power and authority to assert or waive the Privileges.

**6.16    Claims**

On the Effective Date, the Liquidating Trustee shall have the exclusive authority for administering, disputing, objecting to, compromising, or otherwise resolving all Claims. Except as expressly provided in the Plan or any order entered in the Chapter 11 Cases prior to the Effective Date (including the Confirmation Order), the Liquidating Trustee will have and shall retain after the Effective Date any and all rights and defenses that the Debtors had with respect to any Claim as of the Petition Date.

## ARTICLE 7

## DISTRIBUTIONS UNDER THE PLAN

**7.1    Cancellation of Equity Interests**

As of the Effective Date, all certificates, documents, and other instruments underlying Equity Interests, including warrants, shall be canceled. No Distributions will be made on account of any Equity Interests.

**7.2    Distribution Date**

Subject to the provision of Article 6, the Distribution Date shall be a date selected by the Liquidating Trustee as the time reasonably subsequent to completion and final liquidation of the Debtors' Assets and completion and final resolution of Disputed Claims, Causes of Action, and Estate Litigation. At such time, the Liquidating Trustee shall distribute, consistent with the terms of Article 5, the remaining Liquidating Trust Assets to those Creditors holding Allowed Claims in Class 3 as provided for in this Plan and the Liquidating Trust Agreement. Notwithstanding the foregoing, if economically feasible in the sole discretion of the Liquidating Trustee, the Liquidating Trustee is authorized to issue interim Distributions consistent with the terms of Article 5.

**7.3    Disputed Reserves**

**7.3.1 Establishment of Disputed Reserves**

Notwithstanding the provisions of section 8.2 of the Plan, if, in the exercise of the Liquidating Trustee's business judgment, the Liquidating Trustee believes that complete and final resolution of certain Disputed Claims, Causes of Action, or Estate Litigation will take an unreasonably long period of time, and if economically feasible, the Liquidating Trustee may elect to establish in separate accounts a Disputed Reserve for each of the unresolved Disputed Claims, each of which Disputed Reserve and related accounts shall be administered by the Liquidating Trustee. Following establishment and funding of the Disputed Reserves, the Liquidating Trustee may then declare the Distribution Date and make distributions consistent with the terms of this Plan and the Liquidating Trust. Upon complete and final resolution of the Disputed Claims, the Liquidating Trustee shall make a subsequent Distribution from the Disputed Reserves consistent with any resolution and the terms of this Plan and the Liquidating Trust.

{5711562:12}    18

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 18 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 19 of 65

### 7.3.2 Maintenance of Disputed Reserves

Each Disputed Reserve shall be closed and extinguished when all Distributions and other dispositions of Cash or other property required to be made hereunder will have been made in accordance with the terms of this Plan and the Liquidating Trust Agreement.

## 7.4 Record Date for Distributions

The Liquidating Trustee shall have no obligation to recognize any Claim occurring or arising after the Record Date. In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of Claim filed with respect thereto or on the Debtors' Schedules as the holder of the Claim as of the close of business on the Record Date and upon such other evidence or record of transfer or assignment that are known to Liquidating Trustee as of the Record Date.

## 7.5 Delivery of Distributions

### 7.5.1 General Provisions; Unclaimed Property

Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Beneficiaries shall be made by the Liquidating Trustee at (i) the address of each Beneficiary as set forth in the Debtor's Schedules, unless superseded by the address set forth on Proofs of Claim filed by such Beneficiary or (ii) the last known address of such Beneficiary if no proof of Claim is filed or if the Liquidating Trustee has been notified in writing of a change of address. If any Beneficiary's Distribution is returned as Unclaimed Property, no further Distributions to such Beneficiary shall be made unless and until the Liquidating Trustee is notified of such Beneficiary's then current address, which notice must be provided to the Liquidating Trustee within sixty (60) days of the returned Distribution, at which time all missed Distributions shall be made to such Beneficiary without interest.

Amounts in respect of Unclaimed Property distributed by the Liquidating Trustee shall be returned to the Liquidating Trust until such Unclaimed Property is claimed. All claims for Unclaimed Property must be made on or before the earlier of (i) four (4) months from the date of Distribution, or (ii) one (1) year after the Effective Date, after which date the Unclaimed Property shall be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and shall revert to the Liquidating Trust free of any restrictions thereon, and the Claims of any Beneficiary, or successor to such Beneficiary, shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary.

In the event of a timely claim for Unclaimed Property, the Liquidating Trustee shall deliver the Unclaimed Property to the Beneficiary pursuant to the Plan. Nothing contained in the Plan or the Liquidating Trust Agreement shall require the Debtors, the Liquidating Trust, the Liquidating Trustee, or their respective representatives, to attempt to locate any Beneficiary.

### 7.5.2 Unfeasible/Uneconomical Distribution

While all Distributions shall be made in accordance with the provisions of the Plan, in no event shall the Liquidating Trustee be obligated to make a Distribution if, in the sole

{5711562:12}                                    19

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 19 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 20 of 65

discretion of the Liquidating Trustee, there are insufficient Liquidating Trust Assets to make a cost-efficient Distribution, taking into account the size of the Distribution to be made and the number of Beneficiaries of such Distribution, in which event such funds shall, in the discretion of the Liquidating Trustee, to be donated to Access to Bankruptcy Court.

**7.6    No Distributions Pending Allowance**

Notwithstanding any other provision hereof, unless ordered otherwise by a Final Order, if any portion of a Claim is a Disputed Claim, no payment or Distribution provided hereunder shall be made on account of the Allowed portion of the Claim unless and until the disputed portion of the Claim is Allowed.

**7.7    Distributions to Holders of Disputed Claims**

Upon resolution of the disputes on the Claims, holders of Disputed Claims shall receive distribution from their respective Disputed Reserve Account, if established.  In the event the resolution of the Disputed Claim results in an amount that exceeds the respective Disputed Reserve Account, the holder of a Disputed Claim shall have no recourse, causes of action, or Claims against the Estate, the Liquidating Trust, the Liquidating Trustee, any Estate Professional, or any professional retained by the Liquidating Trust or the Liquidating Trustee for collection or payment of any deficiency.

## ARTICLE 8

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1    Approval of Rejection**

Entry of the Confirmation Order shall constitute the approval, pursuant to Section 365(a) of the Bankruptcy Code, of the rejection of all executory contracts and unexpired leases that have not already been assumed and assigned or rejected by the Debtors, or that are the subject of a pending motion to assume or reject as of the date the Confirmation Order is entered.

**8.2    Rejection Claims**

If the rejection of an executory contract or unexpired lease pursuant to the Plan and the Confirmation Order results in damages to the non-Debtor party to such contract or lease, any claim for such damages, if not heretofore evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, the Estate, the Liquidating Trust, the Liquidating Trustee, or their properties, successors, and assigns, unless a proof of Claim is filed and served upon the Liquidating Trustee and his counsel, on or before thirty (30) days after the Effective Date.

## ARTICLE 9

### RELEASES, INJUNCTION, AND WAIVER OF CLAIMS

**9.1    Release**

On the Effective Date, the Debtors and all persons, interested parties and Entities shall be conclusively presumed to have released the following parties (but solely to the extent set forth

{5711562:12}                                        20
15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 20 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 21 of 65

below): Huntington, the Committee and its members, all Professionals, the CRO (including Huron Consulting Services LLC personnel supporting the CRO), the Liquidating Trustee, and the Taylor Released Parties, (each of the foregoing, a "Released Party" and together, the "Released Parties"), from any Released Party Claim, arising from, or in any way connected with, (A) the Chapter 11 Cases (including, without limitation, any actions taken and/or not taken with respect to the administration of the Estate or the operation of the business of the Debtors); (B) the Plan, the Liquidating Trust, or the Distributions received thereunder; (C) the Sales; (D) the negotiation, formulation, and preparation of the Plan, and (E) the right to seek repayment of any fees paid to a Professional pursuant to an Order of the Court, except to the extent any such Released Party Claim against any Released Party arises solely as a direct result of that Released Party's fraud, gross negligence, or willful misconduct.

Notwithstanding anything to the contrary contained in the Plan, none of the releases provided herein shall prejudice or otherwise affect the right of any other party in interest to object to (i) any applications for compensation filed by Professionals; (ii) any request seeking compensation under Section 503 of the Bankruptcy Code or the rights of parties under the Sale Orders or the APAs; and (iii) Causes of Action against members of the Committee.

## 9.2 Release of Released Parties by Holders of Claims

On and after the Effective Date, each holder of a Claim against the Debtors shall be deemed to have released unconditionally all the Released Parties from any and all Claims, obligations, rights, suits, damages, causes of action, remedies, and liabilities whatsoever, whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity, or otherwise, that such person or Entity would have been legally entitled to assert (whether individually or collectively), based in whole or in part upon any act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date, solely to the extent that it relates these Chapter 11 Cases, and except to the extent necessary to enforce the provisions of the Plan, the Liquidating Trust Agreement, the Sale Orders, or the APAs. Notwithstanding the foregoing, the releases contained in this section 9.2 shall not impact or impair in any way the obligations and rights of Huntington and the Taylor Released Parties arising from (i) the Settlement and Amendment Agreement dated September 4, 2015 by and between Huntington and W. Zachary Taylor and the William Zachary Taylor Living Trust, or (ii) any personal, family or consumer debt owed to Huntington.

## ARTICLE 10

## RETENTION OF JURISDICTION

## 10.1 Retention of Jurisdiction

Notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, the Court shall retain exclusive jurisdiction of all matters arising out of or relating to the Chapter 11 Cases, the Plan, the Liquidating Trust Agreement, the Confirmation Order, and the Estate pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a) To resolve any matters relating to the assumption and assignment or rejection of executory contracts or unexpired leases, and to hear, determine and, if necessary, liquidate any Claims resulting therefrom;

{5711562:12}                                      21

15-45784-mbm  Doc 370  Filed 09/30/15  Entered 09/30/15 16:13:20  Page 21 of 64
17-04293-mbm  Doc 45-1  Filed 09/14/17  Entered 09/14/17 16:48:27  Page 22 of 65

(b)    To decide and resolve any and all motions, adversary proceedings, objections to Claims, including Causes of Action, Estate Litigation, applications, contested matters, and any other matters, whether pending as of the Effective Date or brought thereafter in accordance with the terms hereof;

(c)    To consider and rule on the compromise and settlement of any Claim, Disputed Claim, Cause of Action, or Estate Litigation on behalf of the Debtors or their Estate, or the Liquidating Trust;

(d)    To ensure that Distributions to holders of Allowed Claims are accomplished as provided herein, and resolve any disputes concerning any such Distributions;

(e)    To allow, disallow, determine, liquidate, classify, estimate, or establish the priority or secured or unsecured status of any Claim (including any Administrative Expense Claim), and to resolve any and all objections to the Disputed Claims;

(f)    To hear and determine any and all applications for the allowance of compensation of Professionals for professional services rendered and expenses incurred prior to the Effective Date;

(g)    To enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and the Liquidating Trust Agreement, and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan and the Liquidating Trust Agreement;

(h)    To consider any modifications to the Plan, to cure any defect or omission, or reconcile any inconsistency, in the Plan or in any order of the Court as may be necessary to carry out the purposes and intent of the Plan and to implement and effectuate the Plan;

(i)    To resolve any cases, controversies, suits, or disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Liquidating Trust Agreement, or any person's or Entity's obligations incurred in connection with the Plan or the Liquidating Trust Agreement;

(j)    To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505, and 1146 of the Bankruptcy Code;

(k)    To enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, revoked, reversed, or vacated;

(l)    To enforce remedies upon any default under the Plan or the Liquidating Trust Agreement;

(m)    To enforce, interpret, and determine any disputes arising in connection with any orders, stipulations, judgments, and rulings entered in connection with the Chapter 11 Cases (whether or not the Chapter 11 Cases have been closed);

(n)    To resolve any cases, controversies, suits, or disputes that may arise in connection with the consummation, interpretation, or enforcement of the Plan or the Liquidating Trust Agreement, or any Estate obligations incurred in connection herewith;

{5711562:12}      22

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 22 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 23 of 65

(o) To determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust, Liquidating Trustee, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Liquidating Trust Agreement;

(p) To issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any person or Entity with the consummation of the Plan or the Liquidating Trust Agreement, or the enforcement of any rights, remedies, or obligations created under the Plan or the Liquidating Trust Agreement;

(q) To determine such other matters as may be provided for in the Confirmation Order or other orders of the Court or as may be authorized under the provisions of the Bankruptcy Code or any other applicable law;

(r) To hear any other matters if the Court's exercise of jurisdiction thereover is not inconsistent with the Bankruptcy Code or Title 28 of the United States Code;

(s) To hear and determine issues relating to discharge, releases, injunctions, covenants not to sue, and other waivers and protections provided under or relating to the Plan or the Liquidating Trust Agreement;

(t) To recover all Assets of the Debtors' Estate (excepting those Assets transferred pursuant to the APAs and the Sale Orders) for the benefit of the Liquidating Trust, wherever located; and

(u) To enter a final decree closing the Chapter 11 Cases.

**10.2 Modification of the Plan**

Any modification to the Plan shall be consistent with the terms, conditions, and requirements of Section 1127 of the Bankruptcy Code.

## ARTICLE 11

### MISCELLANEOUS PROVISIONS

**11.1 Conditions Precedent to the Effective Date**

The Effective Date will not occur, and the Plan will not be consummated, unless and until each of the following conditions have been satisfied or duly waived: (a) the Bankruptcy Court shall have entered the Confirmation Order, and the Confirmation Order shall be a Final Order; (b) no stay of the Confirmation Order shall then be in effect; (c) the Liquidating Trust Agreement shall be executed, and the Liquidating Trust shall be created; (d) sufficient proceeds from the Causes of Action shall have been received by Debtors, the Committee and/or the Liquidating Trustee to pay in full the Allowed Administrative Claims; and (e) the Plan shall not have been materially amended, altered, or modified from the Plan as confirmed by the Confirmation Order, unless such material amendment, alteration, or modification has been made in accordance with section 10.2 of the Plan. The conditions to Confirmation and the conditions to the Effective Date may be waived in whole or in part at any time only jointly by the Debtors and the Committee without an order of the Bankruptcy Court.

{5711562:12}                                    23
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 23 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 24 of 65

## 11.2 Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent a schedule or exhibit hereto or instrument, agreement, or other document executed in connection with the Plan provides otherwise, the rights, duties, and obligations arising under the Plan, and the instruments, agreements, and other documents executed in connection with the Plan, shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Michigan, without giving effect to any choice of law provisions that would require the application of the law of any other jurisdiction.

## 11.3 Notices

To be effective, all notices, requests, and demands under the Plan must be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

<div align="center">

**Liquidating Trustee**

Gene Kohut, Esq.
Kohut Law Group PLLC
17000 Kercheval Ave Ste 210
Grosse Pointe, MI 48230-1570
Phone: (313) 886-9765
Fax: (313) 432-0229
e-Mail: gene@gktrustee.com

**and**

**Counsel for the Liquidating Trustee**

Scott A. Wolfson, Esq.
Wolfson Bolton PLLC
3150 Livernois Rd Ste 275
Troy, MI 48083-5034
**Phone:** (248) 247-7103
**Fax:** (248) 247-7099
**e-Mail:** swolfson@wolfsonbolton.com

**To the Debtors**

Laura A. Marcero
Huron Consulting Services LLC
900 Wilshire Drive, Ste. 270
Troy, MI 48084
T: (248) 244-2415
Email: lmarcero@huronconsultinggroup.com

**and**

</div>

{5711562:12}                                        24
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 24 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 25 of 65

**Counsel for the Debtors**

Stephen M. Gross, Esq.
Jayson B. Ruff, Esq.
Joshua A. Gadharf, Esq.
McDonald Hopkins PLC
39533 Woodward Ave., Suite 318
Bloomfield Hills, MI 48304
T: (248) 646-5070
F: (248) 646-5075
Email: sgross@mcdonaldhopkins.com
           jruff@mcdonaldhopkins.com
           jgadharf@mcdonaldhopkins.com

**Counsel for the Committee**

Scott A. Wolfson, Esq.
Anthony J. Kochis, Esq.
Wolfson Bolton PLLC
3150 Livernois, Suite 275
Troy, MI 48083
T: (248) 247-7100
F: (248) 247-7099
Email: swolfson@wolfsonbolton.com
           akochis@wolfsonbolton.com

**11.4    Further Documents and Actions**

The Debtors and the Liquidating Trustee shall execute, and are authorized to file with the Court and deliver, such agreements and other documents or information, and to take or cause to be taken such actions, as may be necessary or appropriate to effect and further evidence the terms and conditions of the Plan and the Liquidating Trust Agreement, and to consummate the transactions and transfers contemplated by the Plan and the Liquidating Trust Agreement. The Debtors and the Liquidating Trustee and all other necessary or appropriate parties shall execute any and all documents and instruments that must be executed under or in connection with the Plan or the Liquidating Trust Agreement in order to implement the terms of the Plan or to effectuate the Distributions under the Liquidating Trust Agreement, provided that such documents and instruments are reasonably acceptable to such party or parties.

**11.5    Relationship Between the Plan and Disclosure Statement**

To the extent that the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall control.

**11.6    Reservation of Rights**

If the Plan is not confirmed by a Final Order, or if the Plan is confirmed and does not become effective, the rights of all parties in interest in the Chapter 11 Cases, including the Debtors, are and will be reserved in full, except as such rights have been modified by a prior settlement agreement approved by order of the Court. Any concessions or settlements reflected herein (if any), are made for purposes of the Plan only, and if the Plan does not become effective, no party in

{5711562:12}
25
15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 25 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 26 of 65

interest shall be bound or deemed prejudiced by any such concession or settlement except as provided by a prior settlement agreement approved by order of the Court.

**11.7   Post-Confirmation Fees and Expenses**

(a) **Debtors' Fees and Expenses**. After entry of Confirmation Order, the Debtors shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses incurred by the CRO, Debtors' Professionals and Committee Professionals, in connection with services performed on the administration of the Estate, implementation, and consummation of the Plan, and any other matters as to which the CRO, Debtors' Professionals and Committee Professionals may be engaged.  The fees and expenses of such persons or Entities shall be paid within thirty (30) days after submission of a detailed invoice submitted to the Debtors.  If a party disputes the reasonableness of any such invoice and the parties cannot amicably resolve the dispute, Debtors shall timely pay (subject to the limitations described in this section 11.7) the undisputed portion of such invoice, and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness.

(b) **Liquidation Trust Fees and Expenses.** After the Effective Date, the Liquidating Trustee shall, in the ordinary course of business and without the necessity for any approval by the Court, pay from the Liquidating Trust Assets the reasonable fees and expenses incurred by the Liquidating Trust and any professionals retained by the Liquidating Trustee or the Debtors incurred in connection with services performed on the administration of the Estate, implementation, and consummation of the Plan and the Liquidating Trust Agreement,  Causes of Action, Estate Litigation, the Claims objection/reconciliation process, and any other matters as to which the Liquidating Trust and any professional retained by the Liquidating Trustee may be engaged.  The fees and expenses of such persons or Entities shall be paid within thirty (30) days after submission of a detailed invoice submitted to the Liquidating Trustee subject to the availability of Liquidating Trust Assets, less reserves established by the Liquidating Trustee, in the Liquidating Trustee's sole discretion for the on-going administration of the Liquidating Trust.  If the Liquidating Trustee disputes the reasonableness of any such invoice and the parties cannot amicably resolve the dispute, Liquidating Trustee shall timely pay (subject to the limitations described in this section 11.7) the undisputed portion of such invoice, to and submit the dispute regarding the balance of such invoice to the Court for a determination of its reasonableness.

**11.8   Binding Effect**

The rights, benefits, and obligations of any person or Entity named or referred to in the Plan or the Liquidating Trust Agreement, or whose actions may be required to effectuate the terms of the Plan or Liquidating Trust, shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or assign of such person or Entity, including but not limited to, any trustee appointed for the Debtor under chapter 7 or 11 of the Bankruptcy Code.  The Confirmation Order shall provide that the terms and provisions of the Plan, the Liquidating Trust Agreement, and the Confirmation Order shall survive and remain effective after entry of any order which may be entered converting any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code, and the terms and provisions of the Plan and the Liquidating Trust Agreement shall continue to be effective in this or any superseding case under the Bankruptcy Code.

*[Remainder of Page Intentionally Left Blank]*

{5711562:12}                                          26

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 26 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 27 of 65

## II.   DISCLOSURE STATEMENT PLAN OF LIQUIDATION OF LEE STEEL CORPORATION, TAYLOR INDUSTRIAL PROPERTIES, L.L.C., AND 4L VENTURES, LLC UNDER CHAPTER 11 OF THE BANKRUPTCY CODE [1]

### A.   Description of Debtors and Circumstances Resulting in the Filing of the Chapter 11 Cases

Prior to the Petition Date, Lee Steel Corporation ("Lee Steel") was in the business of providing a full range of flat rolled steel, including hot rolled steel, cold rolled steel, and exposed coated products for automotive and other manufacturing industries. Lee Steel operated from special purpose facilities located in Romulus, Michigan (the "Romulus Facility") and Wyoming, Michigan (the "Wyoming Facility"), which facilities Lee Steel leased from Debtor 4L Ventures, LLC ("4L Ventures") and Debtor Taylor Industrial Properties, L.L.C. ("Taylor Industrial"), respectively. Lee Steel's corporate headquarters are located in Novi, Michigan.

Before the collapse in steel prices Lee Steel was profitable and had annual revenues of approximately $100 million. The vast majority of Lee Steel's customers were Tier 1 and Tier 2 suppliers to the automotive industry. According to their audited financial statements, the Debtors' consolidated gross sales for the fiscal year ended September 30, 2014, were $116,602,378. In the ordinary course of their business operations, the Debtors directly employed approximately 65 individuals, including approximately 23 union employees.

In the summer of 2012, the Debtors began construction of the Romulus Facility and the installation of an Eco-Pickled Surface Coil Line (the "EPS Equipment") based upon a strategy that this new "green" technology pickling equipment would both enable Lee Steel to avoid the costs of outside steel pickling processing and provide an additional income stream as it could sell its eco-friendly state of the art pickling process service to others in the industry. In order to finance the construction of the Romulus Facility, Lee Steel obtained an equipment line of credit for $12,900,000 and 4L Ventures borrowed $11,122,000 from Huntington.

However, due to unforeseen construction issues, the Debtors' construction of the Romulus Facility was delayed frequently and the Debtors incurred cost over-runs of approximately $4,000,000 on the project, which took over two years and required significant cash from Lee Steel in addition to the funding provided by Huntington. In September 2014, Lee Steel finally was able to vacate its former Detroit, Michigan facility and had relocated all of its equipment to the Romulus Facility where it began operations with the EPS Equipment.

Potential customers of the EPS Equipment began running quality trials since September 2014, because their end customers, frequently automotive companies, require parts to receive "PPAP" and other approvals before they can change processes or suppliers. Although most customers reported to Lee Steel that parts made using steel pickled on the EPS Equipment had been or would be approved, the volumes of outside pickling services being sold were minimal prior to the Petition Date, possibly due to the environmentally friendly process being more expensive than traditional processes and a reluctance to try new processes.

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in the Plan.

{5711562:12}

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 27 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 28 of 65

Since commencing operations through the Petition Date, the EPS Equipment only averaged outside sales of approximately $75,000 per month and, while Lee Steel was able to avoid the costs of having third parties pickle the steel it sells, the EPS Equipment pickling business from July 2014 through February 2015 generated losses of approximately $1.3 million.

In addition to the significantly increased debt service and the losses generated by the EPS Equipment, market prices for steel dropped significantly in late 2014 – between $90-120 per ton or 10%-20%. This trend continued in the first quarter of 2015 with pricing deteriorating another 20%.

While Lee Steel was able to maintain pricing through January 2015, because its customers' contracts are indexed or they purchase based upon current market pricing, Lee Steel's revenues dropped from $9,158,969 in January 2015 to $7,236,538 in February 2015 with similarly depressed pricing being projected for at least the next two quarters.

The losses caused by the decline in top line revenue, combined with the excessive debt service attributable to the Romulus Facility and the EPS Equipment, resulted in extreme cash flow issues and an inability to meet credit terms with suppliers, as well as obligations due under the Credit Agreement. Additionally, because of the decline in steel pricing, Lee Steel's ability to borrow on its line of credit, which was partially based upon an inventory formula, was further reduced

Although the Debtors attempted to negotiate an "out-of-court" restructuring based upon Huntington providing out of formula funding and its majority stockholder contributing funding to enable Lee Steel to make a payment to unsecured creditors, certain major unsecured creditors did not agree to terms that were feasible given the Debtors' constrained projected cash flow and projected performance based upon market conditions then existing in the steel industry.

As a result of the foregoing cash flow and debt service issues, the Debtors defaulted under the Credit Agreement and on March 25, 2015, Huntington issued a Notice of Default and Demand for Payment, which resulted in the Debtors filing the Chapter 11 Cases to maximize the value of their Assets by operating in chapter 11 while seeking a going concern sale.

**B.     Principals and Management**

The Debtors are owned by Mr. Taylor and his family. The William Zachary Taylor Living Trust owns 88% of Lee Steel, 100% of Taylor Industrial, and 80% of 4L Ventures. Thomas E. Taylor and Scott Taylor each own 6% of Lee Steel and 10% of 4L Ventures.

Prior to March 31, 2015, the Debtors were operated by the Debtors. On March 31, 2015, the Debtors appointed Laura A. Marcero of Huron Consulting Services LLC as their Chief Restructuring Officer. As of that date, Ms. Marcero took full control of all actions and operations of the Debtor.

**C.     Pre-Petition Financing; Guarantors**

Prior to the commencement of the Chapter 11 Cases, the Debtors, as borrowers, and Huntington, as lender, entered into a loan and security agreement (as amended, the "Credit Agreement"), pursuant to which Huntington financed the Debtors' business operations. In

{5711562:12}                                                    2

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 28 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 29 of 65

connection with the Loan Agreements, the Debtors granted to Huntington a first priority security interest in substantially all of the Debtors' real and personal property, and Huntington properly perfected those security interests. Without limiting the foregoing, as of the Petition Date, Huntington had properly perfected interests in, among other things, substantially all of the Debtors' real property, equipment, accounts receivable, inventory, goodwill, licenses, and contracts and proceeds thereof.[2]

As of the Petition Date, the Debtors' obligations to Huntington pursuant to the Credit Agreement were no less than $50,493,488.93, plus accrued but unpaid interest and costs. The Debtors' obligations to Huntington were cross-collateralized and guarantied by Mr. Taylor.

**D.    Post-Petition Financing**

The DIP Financing Order authorized Lee Steel to use cash for the operation of its business in the ordinary course pursuant to a budget (the "Budget") prepared by the Debtors, subject to modifications approved by Huntington and subject to a ten percent (10%) cumulative variance. As adequate protection for the Debtors' use of Huntington's cash collateral, under the DIP Financing Order, Huntington received replacement Liens in the Debtors' post-petition Assets, subject to statutory fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6), fees payable to the clerk of the Court, and certain fees of Professionals in accordance with the Budget. The DIP Financing Order further authorized the Debtors to provide adequate protection to Huntington in the form of: (a) payment of interest due on the Debtors' pre-petition obligations to Huntington and (b) payment of Huntington's fees, costs, and expenses, including, without limitation, reasonable legal and other professionals' fees and expenses, incurred during the Chapter 11 Cases.

Pursuant to the DIP Financing Order, it was an Event of Default if the Debtors failed to meet the following milestones:

1.    Entry of an order approving sale and bid procedures on or before July 13, 2015;

2.    Conclusion of an auction of all or substantially all of the Debtors' Assets on or before August 11, 2015;

3.    Entry of an order approving the sale in form and substance acceptable to Huntington on or before August 14, 2015; and

4.    Consummation of the sale on or before August 28, 2015, which was extended to September 28, 2015.

**E.    Sale of Substantially all of Debtor's Assets**

Since the outset of this Chapter 11 Cases, the Debtors' primary goal had been to effectuate a sale of substantially all of their Assets under section 363 of the Bankruptcy Code. The Debtors engaged in an exhaustive and extensive four month effort to market the Debtors' business operations as a going concern enterprise. To that end, the Debtors had discussions with dozens of interested parties, many of whom made unsolicited expressions of interest in purchasing

{5711562;12}                                     3

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 29 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 30 of 65

substantially all of the Debtors' Assets on a going concern basis, as well as equipment dealers and liquidators interested in acquiring all of the Debtors' Assets.

Consequently, on May 1, 2015, the Debtors filed their Motion for Entry of an Order Pursuant to 11 U.S.C. §§ 363 and 365, Bankruptcy Rules 2002 and 6004, and Local Rules 6004-1 and 9014-1 (A) Establishing Bidding Procedures for the Auction Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims and Encumbrances and Transferring Liens to Proceeds; (B) Scheduling an Auction and a Sale Hearing to Consider Approval of Sale; (C) Establishing Procedures for the Assumption and Assignment of Executory Contracts; (D) Approving the Form of Asset Purchase Agreement, Form and Manner of the Auction Notice, the Form of the Notice to Non-Debtor Co-Parties to Executory Contracts, and the Notice of the Sale Hearing [Docket No. 85] (the "Bid Procedures Motion"). On June 9, 2015, after a hearing, the Court granted the Bid Procedures Motion and entered the Bid Procedures Order, which established procedures for the sale by the Debtors of their Assets.

On August 12, 2015, the Court entered the Sale Orders authorizing the Sales to the Purchasers pursuant to the APAs at an aggregate base price of $39,100,000, subject to certain adjustments provided for in the APAs, and the Closing Date has occurred. The proceeds of the Sales, excluding the Unsecured Carve-Out and the Huron Carve-Out, (as defined below) were paid to Huntington, which, when combined with cash payments from the Debtors and a $500,00.00 payment from Mr. Taylor, paid all of Debtors' obligations to Huntington except for the Huntington Secured Claim. As part of the Sales, the Purchasers assumed certain Executory Contracts and Unexpired Leases of the Debtors, which further reduced the Claims against the estate.

**F.    Anticipated Future of the Company and Source of this Information and Opinion.**

The Plan is a liquidating Plan and after all Assets are collected and distributions are made under the Plan and the Liquidating Trust Agreement, the Debtors will be dissolved. Since the Closing Date, the Debtors terminated all employees (some of whom have been retained and/or hired by Union Partners), and ceased all business operations.

**G.    Estate Claims; Other Events of Significance**

Pursuant to the Plan and Disclosure Statement, the Debtors for the benefit of the Committee and the Liquidating Trust and its Beneficiaries, will preserve all rights, interest, and standing to investigate and pursue, whether through negotiation or litigation, any and all Causes of Action and Estate Litigation.

As part of their post-petition investigations into potential Causes of Action, the Debtors uncovered potential Causes of Action against the Taylor Released Parties. After good faith negotiations between the parties, the parties agreed to enter into the Taylor Settlement Agreement, pursuant to which Mr. Taylor agreed to make the Taylor Settlement Payment to the Debtors and release all of their claims against the Debtors in exchange for a release of all claims by the Debtors.

During the Chapter 11 Cases, the Debtors, the Committee and Huntington engaged in good faith arm's-length negotiations in an effort to resolve the Committee's Objection Rights under paragraph 25 of the DIP Financing Order regarding the Huntington Secured Claim, and the disposition of the Huntington Secured Claim and its Claims against the Debtors, if any. Those

{5711562:12}                                         4

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 30 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 31 of 65

negotiations resulted in the Unsecured/Lender Settlement between the Committee, Huntington and the Debtors providing that Huntington would carve-out $400,000 of the proceeds of the Sales; that the Debtors would agree to hold these sums in trust for unsecured creditors; that the Committee would waive its Objection Rights; agreement by Huntington that Huntington would vote in favor of the Plan and on the Effective Date release all of its Claims against the Debtors including the Allowed Huntington Secured Claim; Agreement by the parties that $250,000 of the Collateral consisting of the proceeds of the Sales securing Huntington's secured claim would be "carved-out" for payment of professional fees to Huron Consulting, LLC (the "Huron Carve-Out").   Pursuant to the APAs and Sale Orders, on the Closing Date, the Debtors transferred the proceeds from the Sales to Huntington in partial satisfaction of the Allowed Huntington Secured Claim and shortly thereafter paid to Huntington the remaining balance of the principal outstanding on the Huntington Secured Claim from cash held by the Debtors constituting cash collateral under the DIP Financing Order.   The Plan contemplates that, on the Effective Date, the Huntington will release all further amounts due Huntington from Debtors, which are estimated to exceed $750,000, less any proceeds paid to Huron Consulting, LLC on account of the Huron Carve-Out.

But for entry of the DIP Financing Order, entry into the Taylor Settlement Agreement, the settlement agreement between the Committee and Huntington, the sale of substantially all of their property pursuant to the APAs and the Sale Orders, and the settlement of all of Huntington's Claims against the Debtors, the Debtors assert that no other events of significance have occurred since the Petition Date that have had a substantial or material effect on the Debtors' Assets or the administration of this Chapter 11 Cases.

## H.    Summary of Debtors Liabilities to Creditors

### Administrative Expense Claims

To date, the Debtors have paid substantially all Allowed Administrative Claims as they have come due, but for claims of Professionals.   The Debtors estimate accrued Administrative Expense Claims, as of September 24, 2015 to be $1,417,333 (which includes estimated but undocumented "trailing claims" of $61,000), plus accrued and projected professional fees of $1,208,174. The Debtors project that all Allowed Administrative Expenses Claims will be paid prior to the Effective Date from cash held by Debtors or from the first proceeds of the Causes of Action.

### Priority Tax Claims

To date, the Debtors have paid all Priority Tax Claims as they have come due.   The Debtors project that all Priority Tax Claims will be paid prior to the Effective Date.

### Priority Claims

Based upon Proofs of Claim filed as of September 28, 2015, there are two Priority Claims asserting that they are entitled to priority treatment totaling $6,554.00.   The Debtors project that Allowed Priority Claims will ultimately total $6,182.00.   The Debtors reserve the right to object to any and all Priority Claims.

{5711562;12}                                                     5

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 31 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 32 of 65

Secured Claims

The only Secured Claim is the Huntington Secured Claim, which is estimated at $750,000. Pursuant to the DIP Financing Order and the Sale Orders, Huntington's Liens on the Debtors' Assets sold to the Purchasers transferred to the proceeds of the Sales. Pursuant to the APAs and Sale Orders, on and after the Closing Date, the Debtors transferred the proceeds from the Sales, and cash proceeds of Huntington's Collateral less the Unsecured Carve-Out and the Huron Carve-Out, to Huntington, which paid in full Debtors' obligations to Huntington, except for the Allowed Huntington Secured Claim. In exchange for the releases contained in Sections 9.1 and 9.2 of the Plan, Huntington has agreed to release all of its remaining Claims against the Debtors, including the Huntington Secured Claim.

General Unsecured Claims

As of September 3, 2015, based upon filed Proofs of Claim, the Debtors have total pre-petition unsecured Claims of $11,305,178, exclusive of any claims of insiders or affiliated entities of the Debtors. The Debtors reserve the right to review, investigate, and dispute any and all General Unsecured Claims.

## I.     Analysis of a Chapter 7 Liquidation.

Pursuant to the Sales, as well as sales of "non-essential property" pursuant to other orders entered in the Chapter 11 Cases, all of Debtors' Assets, but for Causes of Action and Estate Litigation (all of which will be transferred to the Liquidating Trust upon the Effective Date), were sold, leaving the Debtors as shell companies with no further Assets except proceeds of these Assets. The proceeds from the Sales were used to partially satisfy the Debtors' obligations to Huntington pursuant to the DIP Financing Order Claim, and to fund the Unsecured Carve-Out and Huron Carve-Out. The balance of the Debtors' obligations to Huntington under the DIP Financing Order, excluding the Huntington Secured Claim, were satisfied by cash, constituting cash Collateral of Huntington, generated by the Debtors' operations prior to the Closing Date. The Debtors currently hold the remaining proceeds from the Sales and the Causes of Action, which will be used to pay all Statutory Fees due as of the Effective Date, Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims. After payment of such fees and Claims, the Debtors will transfer their remaining Assets to the Liquidating Trust.

Taking into account the foregoing, the only available assets for distribution will be those Assets transferred to the Liquidating Trust, consisting of the following:

| | |
|---|---|
| Cash (as of 9/25/15) | $  978,600[3] |
| Less:  Huntington Secured Claim[4] | (750,000) |
| Remaining Balance: | $  228,600 |

---

[3] Excludes Unsecured Carve-Out of $400,000.

[4] Huntington contends that the Huntington Secured Claim is also entitled to super-priority status under Section 507(b) of the Bankruptcy Code pursuant to paragraph 19 of the DIP Financing Order.

{5711562:12}                                    6
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 32 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 33 of 65

| | |
|---|---|
| Zack Taylor Payment | 1,500,000 |
| Less: Professional Fees through August | (794,024) |
| Remaining Balance | $ 934,576 |

**Less: Chapter 7 Expenses:**

| | |
|---|---|
| Trustee Fees | (150,000) |
| Trustee Professionals | (600,000) |
| Remaining Balance: | $ 184,576 |

**Less: Chapter 11 Administrative Expenses**

| | |
|---|---|
| Administrative Claims | (1,417,333) |
| Chapter 11 Professional Fees | (1,208,174) |
| Balance (Deficit) | ($2,440,931) |
| Plus: Projected Avoidance Action Recoveries[5] | |
| Low Range: | 2,100,000 |
| High Range: | 5,000,000 |
| | |
| Recovery to Pre-Petition Creditors | 0 to $2,959,069 |
| Recovery Percentage | 0% to 18%[6] |

Accordingly, Debtors and the Committee believe that unsecured creditors will receive much more under the Plan than they would in a chapter 7 liquidation in which even chapter 11 administrative claims may not be paid in full. Because the Plan provides for the waiver of the $750,000, Huntington Secured Claim, which is not available in a chapter 7, and eliminates chapter 7 fees, expenses and delays, debtors project a recovery to unsecured creditors under the Plan of 17% (low) to 32% (high), which includes the Unsecured Carve-Out.

### 1.   Feasibility of the Plan

The Bankruptcy Code requires that the Bankruptcy Court determine that confirmation of a Plan is not likely to be followed by liquidation or the need for further financial reorganization of the debtor. The Plan already contemplates a liquidation so the goals of the Plan are completely feasible and the risk of further financial reorganization is not relevant.

### 2.   Acceptance of the Plan

As a condition to confirmation, the Bankruptcy Code requires that each Class of Impaired Claims vote to accept the Plan, except under certain circumstances. Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two thirds (2/3) in dollar amount and more than one half (1/2) in number of claims in that class, but for that purpose counts only those who actually vote to accept or to reject the Plan. Thus, for example, Class 3 votes to accept the Plan only if two thirds (2/3) in amount and

---

[5] Based on Debtors' analysis of transfers, potential ordinary course defenses, and potential new value defenses.
[6] Includes add back of $400,000 Unsecured Carve-Out.

{5711562:12}                                     7
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 33 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 34 of 65

a majority in number actually voting in such Class cast their Ballots in favor of acceptance. Holders of Claims who fail to vote are not counted as either accepting or rejecting a plan.

### 3. Best Interests Test

Even if a plan is accepted by the holders of each class of claims and interests, the Bankruptcy Code requires a Bankruptcy Court to determine that the plan is in the best interests of all holders of claims or interests that are impaired by the plan and that have not accepted the plan. The "best interests" test, as set forth in Section 1129(a)(7) of the Bankruptcy Code, requires a Bankruptcy Court to find either that all members of an impaired class of claims or interests have accepted the plan or that the plan will provide a member who has not accepted the plan with a recovery of property of a value, as of the effective date of the plan, that is not less than the amount that such holder would recover if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

### 4. Application of the Best Interests Test to the Liquidation Analysis

In the Chapter 11 Cases, the Debtors have sold substantially all of their property, with the remaining proceeds from the Sales to be distributed pursuant to the Plan. A liquidation under chapter 7 would accomplish the same result but with the additional cost of chapter 7 trustee fees and the cost of administering and proceeding with a chapter 7 case, as well as the procedural delays of making distributions in chapter 7. Also, in chapter 7 the Huntington Secured Claim of $750,000 would not be forgiven thereby reducing funds available for creditors by this amount. Therefore, the recovery available in a chapter 7 liquidation to creditors in each Impaired Class in these Chapter 11 Cases would be substantially less because of the increased payment to Huntington and the additional administrative costs associated with a chapter 7 trustee and professionals not familiar with the Debtor's case and the Causes of Action and Estate Litigation. Accordingly, the "best interests" test of Section 1129 of the Bankruptcy Code is satisfied because the members of each Impaired Class will receive greater or equal value under the Plan than they would in a chapter 7 liquidation.

Specifically, the Plan projects a recovery to holders of Allowed Class 3 General Unsecured Claims in a range of 13% to 32%, while the Debtors project that in a chapter 7 liquidation, holders of Allowed Class 3 General Unsecured Claims would receive a recovery of 0% to 12%. Therefore, recovery under the Plan is better than it would be in a chapter 7 liquidation.

Accordingly, the Debtors believe that the "best interests" test of Section 1129 of the Bankruptcy Code is satisfied because the members of each Impaired Class will receive greater or equal value under the Plan than they would in a liquidation. Although the Debtors believe that the Plan meets the "best interests test" of Section 1129(a)(7) of the Bankruptcy Code, there can be no assurance that the Bankruptcy Court will determine that the Plan meets this test.

### 5. Confirmation Without Acceptance of All Impaired Classes: The 'Cramdown' Alternative

In view of the deemed rejection by holders of Class 4 Equity Interests, the Debtors will seek confirmation of the Plan pursuant to the "cramdown" provisions of Section 1129 of the Bankruptcy Code. Specifically, Section 1129(b) of the Bankruptcy Code provides that a plan can be confirmed

{5711562:12}                                                 8
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 34 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 35 of 65

even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has accepted it. The Bankruptcy Court may confirm the Plan at the request of the Debtors if the Plan "does not discriminate unfairly" and is "fair and equitable" as to each Impaired Class that has not accepted the Plan. A plan does not discriminate unfairly within the meaning of the Bankruptcy Code if a dissenting class is treated equally with respect to other classes of equal rank.

The Debtors believe the Plan does not discriminate unfairly with respect to holders of Class 4 Equity Interests. Holders of Interests in Class 4 are not receiving any distribution under the Plan, and are not entitled to payment under the absolute priority rule until all senior creditors have been paid in full.

A plan is fair and equitable as to a class of equity interests that rejects a plan if the plan provides: (i) that each holder of an interest included in the rejecting class receive or retain on account of that interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or (ii) that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property at all.

The Debtors believe that the Plan will meet the "fair and equitable" requirements of Section 1129(b) of the Bankruptcy Code with respect to holders of Class 4 Equity Interests. No Claim or Interest holder junior to holders of Class 4 Equity Interests is receiving any recovery pursuant to their Claim or Interest, thereby satisfying Section 1129(b) with respect to Class 4.

The Debtors reserve the right to seek confirmation of the Plan through cramdown with respect to any other Class that is determined to be impaired or any creditor that has not accepted or is deemed not to have accepted the Plan pursuant to Section 1126 of the Bankruptcy Code.

## J.  Implementation of Plan

Because the Debtors ceased continuing in their business subsequent to the Closing Date, no historical financial information is being provided as part of this Disclosure Statement, nor are any financial projections being provided for any period. Similarly, in light of the fact that the Debtors have ceased all operations, no information is being provided with respect to who will be in charge of such business and the compensation to be received by them, including fringe benefits; *provided, however*, that it is contemplated that the Liquidating Trustee, will retain legal counsel and other professionals to represent, consult, and assist in the administration of the Liquidating Trust and the liquidation of the Liquidating Trust Assets.

The Debtors will not be continuing in their current business subsequent to the Effective Date, therefore there will be no tax ramifications for the Debtors as a continuing Entity. As a result of implementation of the Plan, certain of the Debtors' outstanding indebtedness will not be paid in full; however, the remaining indebtedness will not be cancelled or discharged. In general, the Internal Revenue Code, with certain exceptions, provides that a taxpayer who realizes a "discharge of indebtedness" must include the amount of discharged indebtedness in gross income to the extent that the indebtedness discharged exceeds any consideration given for such discharge. Because the Plan

{5711562:12}                                             9

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 35 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 36 of 65

does not grant the Debtors a discharge pursuant to Section 1141(d)(3) of the Bankruptcy Code, this does not apply to Debtors.

## III.      LEGAL REQUIREMENTS

### A.      Voting Procedures

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims or equity interests that are impaired under the plan.  Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the Plan.

Creditors that hold Claims in more than on Impaired Class are entitled to vote separately in each Class.  Such a creditor will receive a separate ballot for all of its Claims in each Class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately.  A creditor who asserts a Claim in more than one Class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the Plan will be counted only with respect to claims: (a) that are listed on the Debtors' Schedules other than as disputed, contingent, or unliquidated; or (b) for which a proof of Claim was filed on or before the Bar Date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from the applicable bar date or which are allowed by Court order). However, any vote by a holder of a Claim will not be counted if such Claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to Section 502 of the Bankruptcy Code and Bankruptcy Rule 3018.

Voting on the Plan by each holder of a claim or interest in an Impaired Class is important. After carefully reviewing the Plan and Disclosure Statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or reject the Plan, and then return the ballot by mail to the Debtors' counsel by the deadline established by the Court.

Any ballot that does not appropriately indicate acceptance or rejection of the Plan will not be counted.

A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtors' counsel.

### B.      Acceptance

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots.  The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two-thirds in number of equity interests of that class that actually cast ballots.  If no creditor or interest holder in an impaired class votes, then that class has accepted the plan.

{5711562:12}                                       10

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 36 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 37 of 65

**C.     Confirmation**

Section 1129(a) of the Bankruptcy Code establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the chapter 11 process.

Among several conditions for confirmation of a plan under Section 1129(a) of the Bankruptcy Code are these:

1.     Each class of impaired creditors and interests must accept the plan, as described in paragraph III.B, above.

2.     Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under chapter 7 of the Bankruptcy Code.

**D.     Modification**

The Debtors reserve the right to modify or withdraw the Plan at any time before confirmation.

**E.     Effect of Confirmation**

If the Plan is confirmed by the Court:

1.     Its terms are binding on the Debtors, all creditors, shareholders, and other parties in interest, regardless of whether they have accepted the Plan.

2.     Except as provided in the Plan, because the Debtors are corporate entities that are liquidating and not continuing in their business, (a) Claims and Equity Interests will not be discharged; and (b) Creditors and shareholders will not be prohibited from asserting their Claims against or Equity Interests in the Debtors or their Assets.

**F.     Alternatives to Confirmation and Consummation of the Plan**

The Debtors believe that the Plan affords holders of Claims the potential for the greatest recovery and, therefore, is in the best interests of such holders. If, however, the requisite acceptances are not received, or the Plan is not confirmed and consummated, the theoretical alternatives include: (i) formulation of an alternative plan of liquidation; or (ii) liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

If no plan is confirmed, the Debtors may be forced to liquidate under chapter 7 of the Bankruptcy Code, pursuant to which a chapter 7 trustee would be elected or appointed to liquidate the Debtors' assets for distribution to creditors in accordance with the priorities established by the Bankruptcy Code. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective holders of Claims against or Equity Interests in the Debtors. As noted above, however, the Debtors believe that in a liquidation under chapter 7, before creditors receive any distribution, would cause a substantial diminution in the value of the Debtors' Estate, which would result in fewer Assets available for distribution to creditors.

{5711562:12}                                    11
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 37 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 38 of 65

The Debtors could also be liquidated pursuant to the provisions of a different chapter 11 plan of liquidation.   However, any distribution to the holders of Claims under a chapter 11 liquidation plan probably would be delayed substantially and there would be no guaranty that Huntington would agree to the treatment of its Claim as contemplated by the Plan.

Accordingly, the Debtors believe that any alternative liquidation under chapter 7 or 11 is a much less attractive alternative to creditors than the Plan because of the greater return the Debtors believe is provided to creditors under the Plan.

## G.      Conclusion and Recommendation

The Debtors believe that confirmation and implementation of the Plan is preferable to any other alternative and recommends that creditors entitled to vote in favor of the Plan.

*[Remainder of Page Intentionally Left Blank]*

{5711562:12}                                    12

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 38 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 39 of 65

WHEREFORE, the Debtors, respectfully submit this Combined Plan and Disclosure Statement.

Respectfully submitted,

Lee Steel Corporation
Taylor Industrial Properties, L.L.C.
4L Ventures, LLC

Laura A. Marcero, Chief Restructuring Officer

and

/s/ Stephen M. Gross
Stephen M. Gross (P35410)
Jayson B. Ruff (P69893)
Joshua A. Gadharf (P76860)
McDONALD HOPKINS LLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI  48304
Telephone: (248) 646-5070
Facsimile:  (248) 646-5075
E-mail: sgross@mcdonaldhopkins.com
        jruff@mcdonaldhopkins.com
        jgadharf@mcdonaldhopkins.com

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

and

By: _____
Aaron Evans, solely in his capacity as Chairperson
Its:  Chairperson

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF LEE STEEL CORPORATION

{5711562:12}                                                    1
15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 39 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 40 of 65

WHEREFORE, the Debtors, respectfully submit this Combined Plan and Disclosure Statement.

Respectfully submitted,

Lee Steel Corporation
Taylor Industrial Properties, L.L.C.
4L Ventures, LLC

_____

Laura A. Marcero, Chief Restructuring Officer

and

/s/ Stephen M. Gross
Stephen M. Gross (P35410)
Jayson B. Ruff (P69893)
Joshua A. Gadharf (P76860)
McDONALD HOPKINS LLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI 48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075
E-mail: sgross@mcdonaldhopkins.com
        jruff@mcdonaldhopkins.com
        jgadharf@mcdonaldhopkins.com

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

By: _____

Aaron Evans, solely in his capacity as Chairperson
Its:  Chairperson

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS OF LEE STEEL CORPORATION

{00046371.DOC 2 }                    1

s/ Scott A. Wolfson
Scott A. Wolfson, Esq.
Anthony Kochis, Esq.
Wolfson Bolton PLLC
3150 Livernois Rd. Suite, 275
Troy, MI 48083-5034
Phone: (248) 247-7103
Facsimile: (248) 247-7099
E-Mail: swolfson@wolfsonbolton.com
         akochis@wolfsonbolton.com

COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS

{5711562:12}                                    2
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 41 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 42 of 65

# Appendix A to Combined Plan of Liquidation
Liquidation Trust Agreement

{5711562:12}                                     3
15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 42 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 43 of 65

## LSC LIQUIDATION, INC. LIQUIDATING TRUST AGREEMENT

Dated as of _____, 2015

{5713551:2}

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 43 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 44 of 65

## TABLE OF CONTENTS

ARTICLE I: CREATION AND PURPOSE ........................................................................ 2
    1.1    **Creation.** ................................................................................................ 2
    1.2    **Purpose.** ................................................................................................ 2
    1.3    **Beneficiaries.** ...................................................................................... 2

ARTICLE II: LIQUIDATING TRUSTEE ......................................................................... 2
    2.1    **Appointment.** ....................................................................................... 2
    2.2    **Duties and Powers of the Liquidating Trustee.** ................................ 2
    2.3    **Compensation; Retention of Trustee Professionals.** ........................ 3
    2.4    **Liquidating Trustee's Lien.** ............................................................... 4
    2.5    **Co-Liquidating Trustees or Separate Liquidating Trustees.** ........... 4

ARTICLE III: CONDUCT OF THE LIQUIDATING TRUSTEE ..................................... 5
    3.1    **Exercise of Duties and Responsibilities.** .......................................... 5
    3.2    **Reliance on Documents, Statements, etc.** ......................................... 5
    3.3    **Indemnification of the Liquidating Trustee; Exculpation; Limitations on Liability.** ...................................................................... 6

ARTICLE IV: NON-TRANSFERABILITY OF BENEFICIAL INTERESTS; INTERESTS BENEFICIAL ONLY; NO VOTING RIGHTS; SUCCESSORS ............................................................................................ 6

ARTICLE V: ADMINISTRATION OF THE LIQUIDATING TRUST ............................ 6
    5.1    **Right to Bring Causes of Action.** ...................................................... 6
    5.2    **Settlement of Causes of Action and Disputed Claims.** ..................... 7
    5.3    **Right to File Claims.** .......................................................................... 7
    5.4    **Investment of Moneys.** ....................................................................... 7
    5.5    **Fees and Expenses.** ............................................................................ 7
    5.6    **Reports to Beneficiaries.** .................................................................... 8
    5.7    **Books and Records.** ............................................................................ 8
    5.8    **Compliance with Securities Laws.** .................................................... 8

ARTICLE VI: TAX MATTERS ......................................................................................... 8
    6.1    **Purpose and Intent of Liquidating Trust.** ......................................... 8
    6.2    **Tax Characterization.** ......................................................................... 8
    6.3    **Tax Reporting.** .................................................................................... 9
    6.4    **Compliance with Tax Withholding Requirements.** ........................... 11

ARTICLE VII: APPLICATION AND PRIORITY OF DISTRIBUTION OF LIQUIDATING TRUST FUNDS ............................................................... 11
    7.1    **Money Held in Trust.** ......................................................................... 11
    7.2    **Right to Receive Distributions from the Liquidating Trust.** ............. 11
    7.3    **Priority of Payment from the Liquidating Trust.** .............................. 12
    7.4    **Distribution Dates.** ............................................................................. 12
    7.5    **Interim Distributions.** ......................................................................... 12
    7.6    **Final Distribution.** .............................................................................. 12

{5713551:2}

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 44 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 45 of 65

7.7  Disputed Claims. ........................................................................................... 12
7.8  Unclaimed and Undeliverable Distributions. .................................................... 13
7.9  Delivery of Distributions. .............................................................................. 13
7.10  Third Party Disbursing Agent. ...................................................................... 14

**ARTICLE VIII: RESIGNATION AND REMOVAL OF THE LIQUIDATING
  TRUSTEE** ................................................................................................... 14
8.1  Resignation. ................................................................................................ 14
8.2  Successor Liquidating Trustee. ....................................................................... 14

**ARTICLE IX: TERMINATION AND DISCHARGE** ................................................ 14
9.1  Termination. ............................................................................................... 14
9.2  Discharge. .................................................................................................. 15

**ARTICLE X: MISCELLANEOUS** ...................................................................... 15
10.1  No Third-Party Beneficiaries. ........................................................................ 15
10.2  Notices. ...................................................................................................... 15
10.3  Execution of Documents. ............................................................................... 15
10.4  Modification. ............................................................................................... 15
10.5  Severability. ................................................................................................ 15
10.6  Headings. ................................................................................................... 16
10.7  Governing Law. ........................................................................................... 16
10.8  Conflict with the Plan. .................................................................................. 16
10.9  Counterparts. .............................................................................................. 16
10.10 Enforcement and Administration. ................................................................... 16

## TABLE OF EXHIBITS

Exhibit A  Plan of Liquidation
Exhibit B  Confirmation Order

{5713551:2}

## LSC LIQUIDATION, INC. LIQUIDATING TRUST AGREEMENT

This Liquidating Trust Agreement (this "Agreement") is executed as of _____, 2015, by and among Gene R. Kohut, a member of the Kohut Law Group, PLLC, as initial liquidating trustee under this Agreement (the initial liquidating trustee or any successor, the "Liquidating Trustee"); LSC Liquidation, Inc. (f/k/a Lee Steel Corporation) ("Lee Steel"); Taylor Industrial Properties, L.L.C. ("Taylor"); 4L Ventures, LLC ("4L," and together with LSC and Taylor, the "Debtors"); and the Official Committee of Unsecured Creditors duly appointed for the Chapter 11 Cases (as defined below) (the "Committee"). Except as otherwise defined in this Agreement, and except as the context requires otherwise, the capitalized terms in this Agreement shall have the meanings ascribed to them in the Combined Joint Plan of Liquidation, dated as of September __, 2015 (as amended, modified or supplemented, the "Plan"). This trust may also be referred to as the "LSC Liquidating Trust" or by employing words of similar meaning.

### RECITALS

**WHEREAS**, on April 13, 2015 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in United States Bankruptcy Court for the Eastern District of Michigan (the "Bankruptcy Court"), thereby commencing Case Nos. 15-45784, 15-45785, and 15-45788 (the "Chapter 11 Cases");

**WHEREAS**, on April 23, 2015, the Committee was appointed and authorized to act as a representative of the unsecured creditors. The Debtors and the Committee are the joint proponents of the Plan;

**WHEREAS**, this Agreement is entered into in accordance with, and to facilitate the implementation and execution of, the Plan;

**WHEREAS**, on _____, 2015, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order"). A copy of the Plan and the Confirmation Order are attached hereto as **Exhibits A** and **B**, respectively;

**WHEREAS**, on the Effective Date, the Plan provides that all rights, title, and interests of the Debtors and the Debtors' Estates in and to the Liquidating Trust Assets shall vest in a liquidating trust. The Plan further provides that the Liquidating Trust Assets shall be administered through a liquidating trust established pursuant to the Plan. The Plan authorizes and appoints the Liquidating Trustee to receive, hold, administer, and distribute the Liquidating Trust Assets for the benefit of the Beneficiaries (as defined below) and their successors and assigns as permitted for under the Plan and this Agreement;

**WHEREAS**, the Liquidating Trust Assets include all of the Debtors' Assets as of the Effective Date of the Plan; and

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Debtors, the Committee, and the Liquidating Trustee agree as follows:

{5713551:2}

15-45784-mbm Doc 370 Filed 09/30/15 Entered 09/30/15 16:13:20 Page 46 of 64
17-04293-mbm Doc 45-1 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 47 of 65

## ARTICLE I:
## CREATION AND PURPOSE

1.1 **Creation**. The Debtors and the Committee, pursuant to the terms of the Plan, hereby establish a liquidating trust (the "Liquidating Trust") to hold, administer, liquidate, and distribute Liquidating Trust Assets and all proceeds and profits therefrom, which are hereby granted to and deposited with the Liquidating Trustee. The Liquidating Trustee accepts the Liquidating Trust Assets and shall hold the same in trust and shall administer such assets as provided under the Plan and this Agreement.

1.2 **Purpose**. The Liquidating Trust shall be established solely for the purpose of holding, administering, and liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d), all pursuant to the provisions of the Plan, with no objective to continue to or engage in the conduct of a trade or business. The purpose of this Agreement is to set forth the rights, powers, and duties of the Liquidating Trustee in receiving, holding, liquidating, and administering the Liquidating Trust Assets as provided in this Agreement and in the Plan.

1.3 **Beneficiaries**. All holders of Allowed General Unsecured Claims and, until such Claims are satisfied, the holders of other Allowed Claims to be paid by the Liquidating Trust under the Plan, are the beneficiaries of the Liquidating Trust (each is referred to as a "Beneficiary" and together the "Beneficiaries"). The interest and priority of each Beneficiary shall be as provided in the Plan.

## ARTICLE II:
## LIQUIDATING TRUSTEE

2.1 **Appointment.** On the Effective Date of the Plan, pursuant to the Confirmation Order, the Liquidating Trustee shall be appointed and authorized to act as the Liquidating Trustee under this Agreement, and by signing this Agreement, the Liquidating Trustee accepts such appointment all in accordance with the terms of this Agreement and the Plan.

2.2 **Duties and Powers of the Liquidating Trustee**. The Liquidating Trustee shall have the following duties and powers with respect to the Liquidating Trust:

(a) employ and pay professionals to assist in administration of the Liquidating Trust;

(b) receive, hold, deposit, and invest funds of the Liquidating Trust;

(c) open any accounts necessary to maintain and distribute funds in the Liquidating Trust;

(d) pay any fees, costs, and expenses of administering the Liquidating Trust;

(e) establish and maintain the Disputed Reserve;

{5713551:2}                    2

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 47 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 48 of 65

(f)      liquidate and administer assets of the Liquidating Trust, including, but not limited to, enforcing Causes of Action of the Liquidating Trust and collecting amounts due with respect to such Causes of Action;

(g)      compromise, settle, or abandon any Causes of Action of the Liquidating Trust as authorized under the Plan and this Agreement;

(h)      object to any Administrative Claims;

(i)      object to any filed or scheduled Claims (unliquidated, disputed, contingent, or otherwise);

(j)      liquidate, administer, settle, and pay any claims against the Liquidating Trust;

(k)      calculate and implement distributions from the Liquidating Trust in accordance with the Plan and this Agreement;

(l)      maintain a list of holders of Allowed General Unsecured Claims;

(m)      report to the Beneficiaries of the Liquidating Trust by filing the reports required in Section 6.11 of the Plan;

(n)      utilize Liquidating Trust Assets to pay premiums for any insurance policies that the Liquidating Trustee deems necessary, in his/her sole discretion, to insure the assets of the Liquidating Trust against loss and/or to insure the Liquidating Trustee against liability with respect to third persons;

(o)      file any necessary tax returns and utilize Liquidating Trust Assets to pay any necessary taxes;

(p)      take such actions that are necessary to dissolve the Liquidating Trust in accordance with Article IX of this Agreement; and

(q)      such other powers that are necessary and appropriate to administer the Liquidating Trust as contemplated under the Plan and this Agreement.

(r)      dissolve the Debtors.

2.3    **Compensation; Retention of Trustee Professionals**.  The Liquidating Trustee shall be compensated at a rate of $300.00 per hour, without further order of the Bankruptcy Court, for services rendered to or on behalf of the Liquidating Trust.  The Liquidating Trustee also shall be reimbursed, without further order of the Bankruptcy Court, for all reasonable out-of-pocket fees, costs, and expenses in acting under the Plan and this Agreement, including, but not limited to, reimbursement of the Liquidating Trustee's reasonable attorneys' and other professionals' fees subject to the provisions below.

The Liquidating Trustee is empowered to use available funds (as set forth in Article VII hereof): (a) to elect, appoint, engage, retain, and employ any persons as professionals and

{5713551:2}      3

15-45784-mbm  Doc 370  Filed 09/30/15  Entered 09/30/15 16:13:20  Page 48 of 64
17-04293-mbm  Doc 45-1  Filed 09/14/17  Entered 09/14/17 16:48:27  Page 49 of 65

advisors ("Trustee Professionals") in one or more capacities as is reasonably necessary to enable the Liquidating Trustee to implement this Agreement and the Plan or to assist the Liquidating Trustee in performing the Liquidating Trustee's duties hereunder; (b) to pay all costs and expenses necessary and appropriate in connection with the Liquidating Trustee's duties and powers, including payment of fees to and to reimburse the expenses of those employees, agents, or independent contractors elected, appointed, engaged, retained, or employed by the Liquidating Trustee; (c) to indemnify the Liquidating Trustee's agents, professionals, and employees from any loss (including reasonable attorneys' fees) incurred in connection with the execution and implementation of the Plan or their duties to the Liquidating Trust and/or the Liquidating Trustee other than a loss due to the indemnified party's willful misconduct, gross negligence, or fraud; and (d) to prescribe the titles, powers and duties, terms of service, and other terms and conditions of the election, appointment, engagement, retention, or employment of such persons as are reasonable and appropriate. The Liquidating Trustee shall not be responsible for the misconduct of those appointed, engaged, retained, or employed by the Liquidating Trustee with due care.

Such persons so retained need not be "disinterested" as that term is defined in the Bankruptcy Code and may include, without limitation, Kohut Law Group, PLLC, counsel, interim management, and financial advisors of the Debtors and of the Committee as well as employees, independent contractors or agents of the Debtors, the Committee, or Kohut Law Group, PLLC.

The Liquidating Trustee is hereby expressly directed to utilize Kohut Law Group, PLLC, its affiliates and personnel as Trustee Professionals (rather than utilizing other similarly situated or available personnel or professional services firms) notwithstanding that (a) the Liquidating Trustee may benefit (directly or indirectly) from the compensation paid to Kohut Law Group, PLLC and (b) other persons or entities may be available to provide the same or similar work at similar or more competitive prices. In no event shall the Liquidating Trustee or Kohut Law Group, PLLC or its affiliates be subject to a claim of a conflict of interest or breach of fiduciary duty or any other claim arising as a result of the appointment of any such person in accordance with this provision.

At least annually, the Liquidating Trustee shall file with the Court reports regarding the liquidation or other administration of property comprising the Liquidating Trust Assets, the distributions made by it, and any other information that the Liquidating Trustee believes is relevant to the liquidation or administration of the Liquidating Trust Assets.

2.4     **Liquidating Trustee's Lien**. The Liquidating Trustee shall have a first priority lien on all assets of the Liquidating Trust to secure payment of his/her compensation and reimbursement of the Liquidating Trustee's fees, costs, and expenses. The lien also shall secure the indemnification obligation of the Liquidating Trust to the Liquidating Trustee as set forth in Section 3.3 of this Agreement.

2.5     **Co-Liquidating Trustees or Separate Liquidating Trustees**. To meet any legal requirements of any jurisdiction in which any of the Liquidating Trust Assets may from time to time be located, the Liquidating Trustee shall have the power to appoint and remove one or more persons either to act as co-trustee(s) jointly with the Liquidating Trustee of all or any part of the Liquidating Trust Assets or to act as separate trustee(s) of all or any part of the Liquidating Trust Assets and to vest in such person or persons, in such capacity, such title to the Liquidating Trust

{5713551;2}                                                4

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 49 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 50 of 65

Assets or any part thereof, and such rights, powers, duties, trusts, or obligations as the Liquidating Trustee determines may be necessary for the Liquidating Trustee to perform the Liquidating Trustee's duties under this Agreement.

## ARTICLE III:
## CONDUCT OF THE LIQUIDATING TRUSTEE

3.1     **Exercise of Duties and Responsibilities**.  The Liquidating Trustee shall exercise the rights and powers vested in the Liquidating Trustee under the Plan and this Agreement, and use the same degree of care and skill in the Liquidating Trustee's exercise of such rights and powers as a prudent person would exercise or use under such circumstances in the administration of such person's own affairs, provided, however, that the duties and obligations of the Liquidating Trustee shall be determined solely by the express provisions of the Plan and this Agreement, and the Liquidating Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth in the Plan and this Agreement, and no implied covenants or obligations shall be read into the Plan or this Agreement against the Liquidating Trustee.

The provisions of this Section shall apply to any right, conduct, power, duty, or responsibility of the Liquidating Trustee under the Plan or this Agreement.  None of the provisions in the Plan or this Agreement shall be construed to require the Liquidating Trustee to expend or risk the Liquidating Trustee's own funds or otherwise incur personal financial liability in the performance of the Liquidating Trustee's duties or in the exercise of the Liquidating Trustee's rights and powers.

3.2     **Reliance on Documents, Statements, etc**. The Liquidating Trustee:

(a)     may rely upon, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other document believed by the Liquidating Trustee to be genuine and to have been signed or presented by the proper party or parties;

(b)     may consult with the Liquidating Trustee's legal counsel, and any advice or opinion of the Liquidating Trustee's legal counsel, accountants, or other professional advisors shall be full and complete authorization and protection in respect of any action taken or not taken by the Liquidating Trustee in good faith and in accordance with such advice or opinion of counsel.  Notwithstanding such authority, the Liquidating Trustee shall not be under any obligation to consult with the Liquidating Trustee's attorneys, accountants, financial advisors, and agents, and the Liquidating Trustee's determination not to do so shall not result in the imposition of liability on the Liquidating Trustee, except to the extent such determination is based on willful misconduct, gross negligence, or fraud;

(c)     shall not be liable for any action taken or not taken if in good faith and believed by the Liquidating Trustee to be authorized or within the Liquidating Trustee's discretion or rights or powers under the Plan and this Agreement; and

(d)     may exercise any of the rights and powers, or perform any of the duties under the Plan and this Agreement either directly or through agents or attorneys, and the

{5713551:2}                                               5

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 50 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 51 of 65

Liquidating Trustee shall not be responsible for any misconduct or negligence on the part of any agent or attorney appointed with due care.

3.3 **Indemnification of the Liquidating Trustee; Exculpation; Limitations on Liability**. The Liquidating Trustee, Kohut Law Group, PLLC, and their respective affiliates, officers, employees, and agents (the "Indemnified Parties") shall not be personally liable to the Liquidating Trust, to any Beneficiary, or any other person (or any predecessor or successor thereto) for any reason whatsoever, except for such liability arising primarily and directly from their own acts as shall constitute such Indemnified Party's own willful misconduct, fraud, or gross negligence. Except as aforesaid, the Indemnified Parties shall be defended, held harmless, and indemnified from time to time, but solely from the Liquidating Trust Assets, against any and all losses, claims, costs, expenses, and liabilities to which the Indemnified Parties may be subject by reason of or arising out of the Indemnified Parties' acts or omissions or consequences of such acts or omissions, with respect to the implementation or administration of the Liquidating Trust or the Plan or the discharge of the duties hereunder or under any agreement between such Indemnified Parties, the Liquidating Trust, and/or the Liquidating Trustee. Without limiting the generality of the foregoing, the Liquidating Trustee shall have no liability to any Beneficiary on account of the Liquidating Trustee's investment or non-investment of any Liquidating Trust Assets or any losses with respect to any such investments of Liquidating Trust Assets, provided that such investments are made, or the Liquidating Trustee's decision not to invest any Liquidating Trust Assets in any case is made, in accordance with Section 5.4 or otherwise in accordance with the terms of this Agreement. The Indemnified Parties shall not be obligated to give any bond or surety or other security for the performance of any of their duties, unless otherwise ordered by the Bankruptcy Court and, if so ordered, all costs and expenses of procuring any such bond shall be deemed Liquidating Trust Expenses.

## ARTICLE IV:
## NON-TRANSFERABILITY OF BENEFICIAL INTERESTS; INTERESTS BENEFICIAL ONLY; NO VOTING RIGHTS; SUCCESSORS

All interests of the Beneficiaries of this Liquidating Trust shall be uncertificated and non-transferable, except by will, intestate succession, or operation of law. The rights to a beneficial interest hereunder shall not entitle any Beneficiary to (a) any title in or to the Liquidating Trust Assets as such (which title is vested in the Liquidating Trustee) or to any right to call for a partition or division of Liquidating Trust Assets or to require an accounting, or (b) any voting rights with respect to the administration of the Liquidating Trust and the actions of the Liquidating Trustee in connection therewith. This Agreement shall bind and inure to the benefit of the parties hereto and their respective successors and permitted assigns hereunder.

## ARTICLE V:
## ADMINISTRATION OF THE LIQUIDATING TRUST

5.1 **Right to Bring Causes of Action**. The Liquidating Trustee shall be deemed a party in interest for all purposes under the Plan and Bankruptcy Code, including, but not limited to, filing objections to Claims. The Liquidating Trustee shall have the right to bring or assert any Cause of Action of the Liquidating Trust. The Liquidating Trustee also shall have the right to continue to defend or prosecute or commence any case commenced or that could have been commenced prior to the Effective Date. In any Cause of Action brought by the Liquidating

{5713551:2} 6

15-45784-mbm Doc 370 Filed 09/30/15 Entered 09/30/15 16:13:20 Page 51 of 64
17-04293-mbm Doc 45-1 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 52 of 65

Trustee, the Liquidating Trustee shall be deemed to represent all of the Beneficiaries of the Liquidating Trust, and it shall not be necessary to make any Beneficiary a party to such action.

Except as expressly provided in the Plan, no Beneficiary shall have any right to take any action, in law or equity, on account of the property of the Liquidating Trust.

5.2 **Settlement of Causes of Action and Disputed Claims**. As of the Effective Date, the Liquidating Trustee shall have authority, without further action or order of the Bankruptcy Court, to settle, compromise, abandon, or dismiss any Cause of Action or Disputed Claim. Nothing in the Plan or this Agreement shall prohibit the Liquidating Trustee from: (a) seeking an order of the Bankruptcy Court regarding the compromise, settlement, abandonment, or dismissal of any Cause of Action or Disputed Claim, or (b) dismissing or abandoning any Cause of Action that the Liquidating Trustee, in the Liquidating Trustee's sole and absolute discretion, determines may result in personal liability for the Liquidating Trustee.

In considering whether to compromise, dismiss, abandon, or settle a Cause of Action or Disputed Claim, the Liquidating Trustee shall consider the following factors:

(a)    the probability of success in the litigation;

(b)    the complexity of litigation;

(c)    the expense, inconvenience, and delay necessarily attending the litigation;

(d)    the time value of money; and

(e)    the difficulties, if any, to be encountered in collecting any judgment.

5.3 **Right to File Claims**. The Liquidating Trustee may file such proofs of claim and other papers or take such other actions as may be necessary or appropriate to have the Causes of Action or other rights of the Liquidating Trust allowed in any judicial proceeding.

5.4 **Investment of Moneys**. Except as otherwise provided in this Agreement, the Liquidating Trustee shall hold all moneys of the Liquidating Trust in segregated accounts established on the books of the Liquidating Trustee (the "Trust Accounts"), and shall invest moneys in the Trust Accounts in: (a) demand and time deposits (such as certificates of deposit), (b) other temporary liquid investments (such as U.S. treasury bills), and (c) shares of any investment company registered under the Federal Investment Company Act of 1940 whose shares are registered under the Securities Act of 1933 and whose only investments comprise: (i) obligations issued or guaranteed as to principal and interest by the U.S. government, and thus constitute direct obligations of the U.S. government, or (ii) obligations issued by state or municipal governmental bodies, the interest of which is exempt from federal income taxation and which are rated in the two highest rating categories published by Standard & Poor's Corporation.

5.5 **Fees and Expenses**. Subject to the priority of payment established under Section 7.3 of this Agreement and Article 5 of the Plan, the Liquidating Trustee shall pay all fees, costs, and expenses of administering the Liquidating Trust (including, without limitation,

{5713551:2} 7

15-45784-mbm Doc 370 Filed 09/30/15 Entered 09/30/15 16:13:20 Page 52 of 64
17-04293-mbm Doc 45-1 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 53 of 65

the Trustee Professionals' fees and expenses and any statutory fees) from the Liquidating Trust Assets, as and when such fees, costs, and expenses become due and owing.

6.6 **Reports to Beneficiaries**. At least annually, the Liquidating Trustee, on behalf of the Liquidating Trust, shall File with the Bankruptcy Court (and provide to any other party entitled to receive any such report pursuant to this Agreement) an annual report regarding the administration of property subject to its ownership and control pursuant to the Plan and this Agreement, distributions made by it, and other matters relating to the implementation of the Plan; *provided, however*, that the filing of any such report is solely to provide centralized access to information and there is no implication or suggestion that the Bankruptcy Court is supervising the Liquidating Trustee.

5.7 **Books and Records**. The Liquidating Trustee shall maintain complete and accurate records concerning all receipts and distributions to and from the Liquidating Trust, including, but not limited to, the date and amount of each distribution to the Beneficiaries.

5.8 **Compliance with Securities Laws**. Under Bankruptcy Code section 1145, the issuance of interests in a liquidating trust pursuant to a chapter 11 plan is exempt from registration under the Securities Act of 1933, as amended, and applicable state and local laws requiring registration or qualification of securities. If the Liquidating Trustee determines, with the advice of counsel, that the Liquidating Trust is required to comply with the reporting requirements of the Securities Exchange Act of 1934, as amended, or the Investment Company Act of 1940, as amended, then the Liquidating Trustee shall take any and all actions to comply with such reporting requirements and file periodic, current, and other reports in compliance therewith with the Securities and Exchange Commission.

## ARTICLE VI:
## TAX MATTERS

6.1 **Purpose and Intent of Liquidating Trust**. The primary purpose of the Liquidating Trust is to liquidate the Liquidating Trust Assets in an expeditious and commercially prudent manner, and all activities of the Liquidating Trustee will be limited to those activities reasonably necessary to, and consistent with, the accomplishment of that purpose. The Liquidating Trustee shall make continuing efforts to dispose of the Liquidating Trust Assets and shall value the Liquidating Trust Assets using consistent standards. There is no intention on the part of any party in interest to carry on a profit-making business or to unreasonably prolong the liquidation process.

6.2 **Tax Characterization**. The Liquidating Trustee shall take or cause to be taken all reasonable and necessary actions, including without limitation, timely preparation and filing of required Tax Returns for the Liquidating Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a), to carry into effect the intent that the Liquidating Trust created by the Plan and this Agreement qualify as a liquidating trust within the meaning of section 301.7701-4(d) of the Treasury Regulations, and to treat the Beneficiaries of the Liquidating Trust as the grantor-owners of the Liquidating Trust within the meaning of sections 671 through 678 of the Internal Revenue Code. In the event the Liquidating Trust shall fail or cease to qualify as a liquidating trust in accordance with Treasury Regulations Section 301.7701-4(d), the parties to this Agreement intend that the Liquidating Trustee take such action as the

{5713551:2} 8

15-45784-mbm Doc 370 Filed 09/30/15 Entered 09/30/15 16:13:20 Page 53 of 64
17-04293-mbm Doc 45-1 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 54 of 65

Liquidating Trustee shall deem appropriate to have the Liquidating Trust classified as a partnership for federal tax purposes under Treasury Regulations Section 301.7701-3 (but not a publicly traded partnership under Internal Revenue Code Section 7704), including, if necessary, creating or converting it into an Michigan limited liability partnership or limited liability company. All of the Liquidating Trust's income shall be subject to tax on a current basis.

For all U.S. federal income tax purposes, all parties (including, without limitation, the Debtors, the Liquidating Trustee, and the Beneficiaries) shall treat the transfer of the Liquidating Trust Assets to the Liquidating Trust as (a) a deemed transfer by the Debtors of the Liquidating Trust Assets directly to the Beneficiaries in full satisfaction of the Beneficiaries' claims against and interests in the Debtors and, to the extent Liquidating Trust Assets are allocable to Disputed Claims, to the Disputed Reserve, followed by (b) the deemed transfer by such Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets (other than the Liquidating Trust Assets allocable to the Disputed Claims Reserve) in exchange for interests in the Liquidating Trust. Accordingly, the Beneficiaries shall be treated for United States federal income tax purposes as the grantors and owners of their respective share of the Liquidating Trust Assets (other than Liquidating Trust Assets allocable to the Disputed Reserve). The foregoing treatment shall also apply, to the extent permitted by applicable law, for all state, provincial, territorial, and local income tax purposes.

6.3 **Tax Reporting**. The Liquidating Trustee shall prepare and provide to, or file with, the appropriate taxing authorities and other parties such notices, tax returns, and other filings, including all federal, state, and local tax returns for the Liquidating Trust, as may be required under the Internal Revenue Code, the Plan, or as may be required by applicable law of other jurisdictions including, if required under applicable law, notices required to report interest or dividend income ("Tax Reports"). The Liquidating Trustee shall treat the Liquidating Trust as a grantor trust for U.S. federal income tax purposes pursuant to Treasury Regulation section 1.671-4(a) and in accordance with the Plan. The Liquidating Trustee also will annually send to each Beneficiary a separate statement regarding the receipts and expenditures of the Liquidating Trust as relevant for all U.S. federal income tax purposes and will instruct all such Beneficiaries to use such information in preparing their U.S. federal income tax returns or to forward the appropriate information to such Beneficiary's underlying beneficial holders with instructions to utilize such information in preparing their U.S. federal income tax returns. If additional tax information is provided at the specific request of a Beneficiary (and not as required by applicable law), then such Beneficiary shall pay a reasonable fee to the Liquidating Trustee, in an amount to be then determined by the Liquidating Trustee, together with all costs and expenses incurred by the Liquidating Trustee in providing such tax information to such Beneficiary. The Liquidating Trustee shall also file (or cause to be filed) any other statement, return, or disclosure relating to the Liquidating Trust that is required by any governmental units in the U.S. and elsewhere.

In connection with the Liquidating Trustee's performance of the Liquidating Trustee's duties pursuant to this Section, the Liquidating Trustee may require any Beneficiary to furnish to the Liquidating Trustee its employer or taxpayer identification number as assigned by the IRS, together with such other information, returns, or forms as the Liquidating Trustee may determine are required, and the Liquidating Trustee may condition any distribution of Liquidating Trust Assets to any Beneficiary upon such receipt of such identification number, any other information

{5713551:2}                                                   9

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 54 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 55 of 65

and returns and forms as are required for the Liquidating Trustee to comply with IRS requirements.

The Liquidating Trustee will, in good faith, value all Liquidating Trust Assets, and shall make all such values available from time to time, to the extent relevant, and such values shall be used consistently by all parties to the Liquidating Trust (including, without limitation, the Debtors, the Liquidating Trustee, and the Beneficiaries) for all U.S. federal income tax purposes.

Allocations of Liquidating Trust taxable income among the Beneficiaries (other than taxable income allocable to the Disputed Reserve) shall be determined by reference to the manner in which an amount of cash representing such taxable income would be distributed (were such cash permitted to be distributed at such time) if, immediately prior to such deemed distribution, the Liquidating Trust had distributed all of the Liquidating Trust Assets (valued at their tax book value, and other than assets allocable to the Disputed Reserve) to the holders of the interests in the Liquidating Trust, adjusted for prior taxable income and loss and taking into account all prior and concurrent distributions from the Liquidating Trust.  Similarly, taxable loss of the Liquidating Trust shall be allocated by reference to the manner in which an economic loss would be borne immediately after a hypothetical liquidating distribution of the remaining Liquidating Trust Assets.  The tax book value of the Liquidating Trust Assets for purpose of this paragraph shall equal their fair market value on the Effective Date, adjusted in accordance with tax accounting principles prescribed by the Internal Revenue Code, the applicable Treasury Regulations, and other applicable administrative and judicial authorities and pronouncements.

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee shall (a) timely elect to treat any Disputed Reserve as a "disputed ownership fund" governed by Treasury Regulation section 1.468B-9, and (b) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  All parties (including the Liquidating Trustee, the Debtors, and the Beneficiaries) shall report for U.S. federal, state, and local income tax purposes consistently with the foregoing.

The Liquidating Trustee shall be responsible for payment, out of the Liquidating Trust Assets, of any U.S., local, or foreign taxes imposed on the Liquidating Trust or the Liquidating Trust Assets, including the Disputed Reserve.  In the event, and to the extent, any Cash retained on account of Disputed Claims in the Disputed Reserve is insufficient to pay the portion of any such U.S., local, or foreign taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such U.S., local, or foreign taxes shall be (a) reimbursed from any subsequent Cash amounts retained on account of Disputed Claims, or (b) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts otherwise distributable by the Liquidating Trustee as a result of the resolution of such Disputed Claims.

The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including the Disputed Reserve, or the Debtors under Bankruptcy Code section 505(b) for all tax returns filed for, or on behalf of, the Liquidating Trust or the Debtors for all taxable periods through the dissolution of the Liquidating Trust.

{5713551:2}                                           10

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 55 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 56 of 65

6.4     **Compliance with Tax Withholding Requirements**.  In connection with making distributions under the Plan and this Agreement, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on the Liquidating Trustee by any governmental unit, and all distributions pursuant to the Plan and this Agreement shall be subject to such withholding and reporting requirements.  Any property so withheld will then be paid by the Liquidating Trust to the appropriate authority.  The Liquidating Trustee may withhold the entire distribution due any Beneficiary until such time as such Beneficiary provides the necessary information to comply with any withholding requirements of any governmental unit, including an IRS Form W-9 containing its, his, or her employer or taxpayer identification number as assigned by the IRS, or, in the case of Beneficiaries that are not U.S. persons for federal income tax purposes, certification of foreign status on IRS Form W-8BEN, W-8IMY, or W-8ECI.  If the Liquidating Trustee requests information necessary to comply with any tax withholding or reporting requirements of any governmental unit of any Beneficiary by certified mail and (i) does not receive a response to such request within sixty (60) days, sends a second request by certified mail and again receives no response within sixty (60) days or (ii) the request is returned to the Liquidating Trustee as undeliverable and the Liquidating Trustee is unable to determine a correct address after reasonable efforts, then no further distributions shall be made to such Beneficiary unless the Liquidating Trustee is notified in writing within six (6) months after the date that the initial request was sent of such Beneficiary's necessary information (subject to the Liquidating Trustee's right to require supporting documents evidencing that the necessary information is that of the rightful Beneficiary), in which case all currently due missed distributions shall be made to such Beneficiary on the next Distribution Date subject to such withholding and reporting requirements, and shall not be supplemented with any interest, dividends or other accruals of any kind.  If the Liquidating Trustee does not receive notice of a Beneficiary's necessary information within six (6) months after the date of the initial request, then all distributions to the Beneficiary that has not provided the information necessary to comply with any tax withholding and reporting requirements of any governmental unit may be treated as an unclaimed distribution in accordance with Section 7.8 below or the amount required to be withheld may be so withheld and turned over to the applicable authority.

**ARTICLE VII:**
**APPLICATION AND PRIORITY OF DISTRIBUTION OF LIQUIDATING TRUST FUNDS**

7.1     **Money Held in Trust**.  All moneys and other assets that the Liquidating Trust receives under this Agreement, until used or applied as provided in this Agreement, shall be held in trust for the purposes for which they were received.  The Liquidating Trust shall not be obligated to pay interest on any moneys that it receives under this Agreement.  However, except as otherwise provided in this Agreement, the Liquidating Trustee shall promptly invest moneys of the Liquidating Trust as provided in Section 5.4 of this Agreement.

7.2     **Right to Receive Distributions from the Liquidating Trust**.  The amount of each Beneficiary's Allowed Claim shall represent such person's right to receive distributions from the Liquidating Trust in accordance with the priorities set forth in the Plan and this Agreement.

Prior to distribution of any portion of the Liquidating Trust Assets to any Beneficiary, the Liquidating Trustee shall first

{5713551:2}                                          11

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 56 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 57 of 65

(a)     reserve for or pay to any taxing authorities, as necessary, any taxes of the Liquidating Trust;

(b)     reserve for or pay to the Office of the U.S. Trustee any statutory fees incurred for the Debtors' Estates after the Effective Date, as may be required;

(c)     reserve for or pay the Trustee Professionals for services rendered and expenses incurred;

(d)     reserve for or pay the Liquidating Trustee's compensation and reasonable and necessary expenses incurred in fulfilling the Liquidating Trustee's obligations set forth in the Plan and in this Agreement;

(e)     reserve for or pay any additional expenses incurred in fulfilling the obligations of the Liquidating Trustee set forth in the Plan and in this Agreement and not specifically identified in this Section 7.2; and

(f)     establish a Disputed Reserve.

7.3     **Priority of Payment from the Liquidating Trust**.  After providing for the reserves set forth in Section 7.2 hereof, all proceeds from assets of the Liquidating Trust shall be distributed according to the priorities set forth in the Plan.

7.4     **Distribution Dates**.  Distributions will be made by the Liquidating Trustee or a third party disbursing agent pursuant to the terms of the Plan.

7.5     **Interim Distributions**.  On each applicable Distribution Date, the Liquidating Trustee will distribute the net available Cash in accordance with the Plan and this Agreement.

7.6     **Final Distribution**.  Upon liquidating the Liquidating Trust, and after payment of all fees, costs, and expenses of administration of the Liquidating Trust, the Liquidating Trustee shall make a final distribution of funds to the Beneficiaries (the "Final Distribution") in accordance with the Plan and this Agreement.  The Liquidating Trustee shall have no obligation to invest funds of the Liquidating Trust from and after the date of Final Distribution.

7.7     **Disputed Claims**.  If, in the exercise of the Liquidating Trustee's business judgment, the Liquidating Trustee believes that complete and final resolution of certain Disputed Claims, Causes of Action, or Estate Litigation will take an unreasonably long period of time, and if economically feasible, the Liquidating Trustee may elect to establish a reserve for the benefit of holders of Disputed Claims (the "Disputed Reserve") in separate accounts for each of the unresolved Disputed Claims, each of which Disputed Reserves and related accounts shall be administered by the Liquidating Trustee.  The Liquidating Trustee shall distribute to and maintain in the Disputed Reserve cash that would otherwise be distributable to holders of Disputed Claims, assuming such Disputed Claims would be allowed in the face amount of such Claims.  In determining the face amount of Disputed Claims, the Liquidating Trustee may rely on the Debtors' estimates as to Disputed Claims and will have no liability therefore in the absence of bad faith or gross negligence.  As Disputed Claims are resolved, the Liquidating Trustee shall make adjustments to the Disputed Reserve.  Except as otherwise agreed by the relevant parties, the Liquidating Trustee shall not be required to (a) make any partial payments

{5713551:2}                                             12

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 57 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 58 of 65

or partial distributions on account of a Disputed Claim until all such disputes in connection with such Disputed Claim have been resolved by settlement or Final Order or (b) make any distributions on account of an Allowed Claim of any Beneficiary that holds both an Allowed Claim and a Disputed Claim, unless and until all objections to the Disputed Claim have been resolved by settlement or Final Order. Following establishment and funding of the Disputed Reserves, the Liquidating Trustee may then declare the Distribution Date and make distributions consistent with the terms of the Plan and the Liquidating Trust. Upon complete and final resolution of the Disputed Claims, the Liquidating Trustee shall make a subsequent Distribution from the Disputed Reserves consistent with any resolution and the terms of the Plan and the Liquidating Trust.

The distributions held or received by the Liquidating Trustee on account of the Disputed Reserve shall (a) be deposited in a segregated bank account in the name of the Liquidating Trustee for the benefit of holders of Allowed Claims and Disputed Claims that become Allowed Claims, (b) be accounted for separately, and (c) not constitute property of the Debtors. The Liquidating Trustee shall invest Cash held in the Disputed Reserve in a manner consistent with this Agreement.

On the first Distribution Date that is at least thirty (30) days after a Disputed Claim becomes an Allowed Claim, the Liquidating Trustee shall (a) distribute to the holder of such Allowed Claim any property in the Disputed Reserve that would have been distributed to such holder on the Distribution Dates on which distributions previously were made to holders if the Allowed Claim in issue had been an Allowed Claim on such earlier Distribution Dates; and (b) distribute any remaining property held in the Disputed Claim Reserve on account of any resolved Disputed Claim in accordance with the Plan and this Agreement.

After Final Orders have been entered as to all Disputed Claims, or other final resolution has been reached with respect to all Disputed Claims, any remaining property held in the Disputed Reserve will return to the Liquidating Trust and be distributed in accordance with the Plan and this Agreement.

7.8 **Unclaimed and Undeliverable Distributions**. The Liquidating Trustee shall treat unclaimed and undeliverable distributions in accordance with Section 7.5.1 of the Plan.

7.9 **Delivery of Distributions**.

(a) **Distribution Record Date**. The Liquidating Trustee shall not have any obligation to recognize any transfer of any Claim until the record holder of such claim has provided notice to the Liquidating Trustee of such transfer.

(b) **De Minimis Distributions**. All Distributions shall be made in accordance with the provisions of the Plan, but in no event shall the Liquidating Trustee be obligated to make a Distribution if, in the sole discretion of the Liquidating Trustee, there are insufficient Liquidating Trust Assets to make a cost-efficient Distribution, taking into account the size of the Distribution to be made and the number of Beneficiaries of such Distribution, in which event such funds shall, in the discretion of the Liquidating Trustee, to be donated to Access to Bankruptcy Court.

(c) **Provision of Tax Identification Number**. If the Liquidating Trustee requests a tax identification number or other necessary tax information from any Beneficiary and does not

{5713551;2}                                    13

15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 58 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 59 of 65

receive such information, then the Liquidating Trustee may withhold payment of distributions to such Beneficiary unless and until the Liquidating Trustee is provided such information in writing, in which case all currently due missed distributions shall be made to such Beneficiary on the next Distribution Date (but shall not be supplemented with any interest, dividends, or other accruals of any kind). If the Liquidating Trustee does not receive notice of a Beneficiary's tax identification number prior to the Final Distribution Date, then all distributions that would have been made to the Beneficiary shall be treated as undeliverable or unclaimed property in accordance with Section 7.8.

7.10 **Third Party Disbursing Agent**. The Liquidating Trustee may employ, in his/her sole discretion, a Third party disbursing agent to make all distributions, and to otherwise perform all necessary action related to such distributions, required under the Plan and this Agreement.

## ARTICLE VIII:
## RESIGNATION AND REMOVAL OF THE LIQUIDATING TRUSTEE

8.1 **Resignation**. The Liquidating Trustee may resign by giving not less than thirty (30) days' prior written notice thereof to the Bankruptcy Court. The resignation shall be effective upon the earlier of (a) the successor Liquidating Trustee accepting his/her appointment as Liquidating Trustee under this Agreement or (b) thirty (30) days from the date of the notice described above.

8.2 **Successor Liquidating Trustee**. In the event of resignation or removal of the Liquidating Trustee, the former Committee members shall elect, by majority vote, any successor Liquidating Trustee. Any successor Liquidating Trustee shall execute and deliver to the resigning Liquidating Trustee a written instrument accepting such appointment, and thereafter, such successor Liquidating Trustee, without further act, shall become vested with all the estates, properties, rights, powers, and duties of the resigning Liquidating Trustee.

## ARTICLE IX:
## TERMINATION AND DISCHARGE

9.1 **Termination**. The Liquidating Trust shall terminate on the earliest of the following dates:

(a)     the date that the Liquidating Trust Assets have been liquidated and the proceeds distributed to the Beneficiaries as provided in the Plan and this Agreement;

(b)     the date that the Bankruptcy Court or another court of competent jurisdiction enters a Final Order authorizing the termination of such Liquidating Trust; and

(c)     three (3) years after the Effective Date.

Notwithstanding the foregoing, in the event the Liquidating Trustee shall have been unable, after reasonable efforts, to liquidate or otherwise dispose of the assets of the Liquidating Trust within the initial three (3) year term of this Agreement, then the Liquidating Trustee shall have the right to extend the term of such Liquidating Trust, subject to the Bankruptcy Court entering an order

{5713551:2}                                     14
15-45784-mbm   Doc 370   Filed 09/30/15   Entered 09/30/15 16:13:20   Page 59 of 64
17-04293-mbm   Doc 45-1   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 60 of 65

approving such extension based upon a finding that such extension is necessary for the Liquidating Trust to complete its purpose.

9.2    **Discharge**. The Liquidating Trustee shall be discharged of his/her duties under this Agreement on the earlier of:  (a) the date of termination as provided in Section 9.1, or (b) the date that a successor Liquidating Trustee accepts his/her appointment.

## ARTICLE X:
## MISCELLANEOUS

10.1    **No Third-Party Beneficiaries**.  Notwithstanding anything to the contrary in the Plan or this Agreement, neither the Liquidating Trustee, nor any of the Liquidating Trustee's employees, agents, counsel, or affiliates shall have any duties or responsibilities to, or fiduciary or third-party relationships with, any other person or entity, except as expressly provided in this Agreement or the Plan.  Without limiting the generality of the foregoing, the Liquidating Trustee shall have no obligation to:

(a)    provide information to any person, except as provided in this Agreement or the Plan;

(b)    preserve any right or interest of any other person; or

(c)    collect or realize upon any asset or property distributed under the Plan on account of any claim.  The Liquidating Trustee shall attempt to collect or realize upon such assets in any manner that the Liquidating Trustee, in the Liquidating Trustee's sole and absolute discretion, shall deem appropriate, and shall not incur any liability to the Debtors or any claimant of the Debtors in so doing.

10.2    **Notices**.  All communications and notices provided to the Trustee under this Agreement shall be in writing and addressed to counsel for the Liquidating Trustee or, if no such counsel is then retained, the Liquidating Trustee at Kohut Law Group, PLLC, 17000 Kercheval Avenue, Suite 210, Grosse Pointe, Michigan 48230.  Any notice, if properly addressed, shall be deemed given upon the first business day after placement in the U.S. mail, first class postage prepaid.

10.3    **Execution of Documents**.  The Liquidating Trustee may execute any and all documents necessary and appropriate to effectuate the purpose of this Agreement.

10.4    **Modification**.  This Agreement shall not be modified without further order of the Bankruptcy Court after notice to the Beneficiaries and a hearing.  Upon a motion of the Liquidating Trustee, the Bankruptcy Court or other court of competent jurisdiction may approve, without notice to the Beneficiaries, technical modifications to this Agreement which do not adversely affect the rights or interests of the Beneficiaries or which conform the terms of this Agreement to the terms of the Plan.

10.5    **Severability**.  Any provision of this Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective only to the extent such provision is unenforceable without invalidating the remaining provisions of this Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

{5713551:2}                                      15

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 60 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 61 of 65

10.6    **Headings**.  The various headings of this Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Agreement.

10.7    **Governing Law**.  This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan.

10.8    **Conflict with the Plan**.  In the event that there is any conflict between the terms of this Agreement and the Plan, the terms of the Plan shall govern.

10.9    **Counterparts**.  This Agreement may be executed in any number of counterparts. Each counterpart of this Agreement shall, for all purposes, constitute an original, and all of such counterparts, taken together, shall constitute one and the same agreement.

10.10   **Enforcement and Administration**.    The Bankruptcy Court shall retain jurisdiction to enforce and administer the provisions of this Agreement, as set forth in the Plan and herein.

[Remainder of Page Intentionally Left Blank; Signature Page Follows]

{5713551:2}

16

15-45784-mbm    Doc 370    Filed 09/30/15    Entered 09/30/15 16:13:20    Page 61 of 64
17-04293-mbm    Doc 45-1    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 62 of 65

**IN WITNESS WHEREOF**, the parties have executed this Agreement as of the date first written above.

By: _____
Stephen M. Gross (P35410)
Jayson B. Ruff (P69893)
Joshua A. Gadharf (P76860)
McDONALD HOPKINS PLC
39533 Woodward Avenue
Suite 318
Bloomfield Hills, MI  48304
Telephone: (248) 646-5070
Facsimile: (248) 646-5075
E-mail:  sgross@mcdonaldhopkins.com
          jruff@mcdonaldhopkins.com
          jgadharf@mcdonaldhopkins.com

COUNSEL FOR THE DEBTORS
AND DEBTORS IN POSSESSION

By: _____
Scott A. Wolfson, Esq.
Anthony Kochis, Esq.
Wolfson Bolton PLLC
3150 Livernois Rd Ste 275
Troy, MI 48083-5034
Phone: (248) 247-7103
Facsimile: (248) 247-7099
E-Mail:  swolfson@wolfsonbolton.com
          akochis@wolfsonbolton.com

COUNSEL TO THE OFFICIAL
COMMITTEE OF UNSECURED
CREDITORS

By:_____

GENE R. KOHUT

**LIQUIDATING TRUSTEE**

**EXHIBIT A**

[PLAN OF LIQUIDATION]

{5713551:2}

15-45784-mbm Doc 370 Filed 09/30/15 Entered 09/30/15 16:13:20 Page 63 of 64
17-04293-mbm Doc 45-1 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 64 of 65

**EXHIBIT B**
[CONFIRMATION ORDER]

# EXHIBIT B

## UNITED STATES BANKRUPTCY COURT
### EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **LSC Liquidation, Inc.** *et al.*[1] | ) | **Case No. 15-45784-mbm** |
| | ) | |
| | ) | |
| **Debtors.** | ) | **Judge Marci B. McIvor** |
| | ) | |

## ORDER GRANTING FINAL APPROVAL OF DISCLOSURE STATEMENT AND CONFIRMING DEBTORS' AND COMMITTEE'S COMBINED JOINT PLAN OF LIQUIDATION

WHEREAS, the above-captioned debtors and debtors in possession (collectively, the "Debtors" and each a "Debtor") and the Official Committee of Unsecured Creditors ("Committee") as the "proponent[s] of the plan" within the meaning of section 1129 of the Bankruptcy Code, 11 U.S.C. §§ 101-1330 (the "Bankruptcy Code"), filed their *Combined Joint Plan of Liquidation and Disclosure Statement* on September 30, 2015 [Docket # 370] (the "Plan")[2];

WHEREAS, on October 5, 2015, this Court entered its *Order Granting Preliminary Approval of the Combined Plan of Liquidation and Disclosure Statement* (the "Preliminary Approval Order")[Doc. #883] which, among other things, (a) granted preliminary approval of the Disclosure Statement, (b) established November 17, 2015 as the bar date for submitting ballots on the Plan and for filing objections to the Disclosure

---

[1] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm, and 4L Ventures, LLC, Case No. 15-45788-mbm.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan. Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

{5748683:6}

15-45784-mbm   Doc 470   Filed 11/24/15   Entered 11/24/15 16:09:45   Page 1 of 6
17-04293-mbm   Doc 45-2   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 2 of 7

Statement, (c) established November 24, 2015, as the date of the hearing to consider confirmation of the Plan (the "Confirmation Hearing");

WHEREAS, the Plan, the Preliminary Approval Order, and a ballot ("Ballot") were served in accordance with the Preliminary Approval Order, and such service is adequate as provided by Bankruptcy Rule 3017(d);

WHEREAS, prior to the Confirmation Hearing, certain creditors and parties in interest have raised concerns regarding the Plan but have agreed not to file objections and accept the Plan based upon the modifications to the Plan contained in this Order;

WHEREAS, all Creditor Classes voted to accept the Plan; and

WHEREAS, the Confirmation Hearing was held on November 24, 2015, at which time the Court heard argument from the proponent of the Plan and all other parties in interest.

NOW THEREFORE, based upon (i) the Plan and the Disclosure Statement; (ii) all of the evidence proffered or adduced at, documents filed in connection with, and arguments of counsel made at, the Confirmation Hearing; and (iii) the entire record of these chapter 11 cases; and after due deliberation thereon and good cause appearing therefor:

THE COURT HEREBY FINDS AND DETERMINES THAT:

A.     Exclusive Jurisdiction; Venue; Core Proceeding.  On April 13, 2015 the Debtors commenced these cases by filing voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  Debtor's individual chapter 11 cases are being jointly administered under the case of LSC Liquidation, Inc. Each of the Debtors was and remains qualified to be a debtor under section 109(a) of the Bankruptcy Code.  The Court

{5748683:6}
15-45784-mbm   Doc 470   Filed 11/24/15   Entered 11/24/15 16:09:45   Page 2 of 6
17-04293-mbm   Doc 45-2   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 3 of 7

has jurisdiction over these Chapter 11 Cases pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L). The Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

B.   Burden of Proof. The Debtors and Committee have met their burden of proving the elements of §§ 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence.

C.   Transmittal and Mailing of Materials; Notice. The Plan, the Ballots and the Preliminary Approval Order, were transmitted and served in compliance with the Preliminary Approval Order, and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required.

D.   Voting. Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, and the Preliminary Approval Order.

E.   Plan Compliance with the Bankruptcy Code. The Plan complies with all of the requirements for confirmation set forth in § 1129 of the Bankruptcy Code,

F.   Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, as amended.

THE COURT HEREBY ORDERS AND DECREES AS FOLLOWS:

{5748683;6}
15-45784-mbm   Doc 470   Filed 11/24/15   Entered 11/24/15 16:09:45   Page 3 of 6
17-04293-mbm   Doc 45-2   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 4 of 7

1.  <u>Disclosure Statement</u>. The Disclosure Statement is hereby granted final approval, with all objections thereto, if any, having been withdrawn or otherwise overruled.

2.  <u>Confirmation</u>.  The Plan, and each of its provisions, shall be, and hereby are, approved and confirmed; provided, however, that if there is any direct conflict between the terms of the Plan and the terms of this Confirmation Order, the terms of this Confirmation Order shall control.  The failure to specifically include any particular provisions of the Plan in this Confirmation Order shall not diminish or impair the efficacy of such provisions, it being understood that it is the intent of the Court that the Plan be confirmed and approved in its entirety.

3.  <u>Modification of Plan</u>.

Section 3.3 of the Plan is hereby modified to state as follows:

**Section 3.3** - In the case of Administrative Claims of all Professionals, Professionals shall file final fee applications for services provided to or for the benefit of the Debtors on or before thirty (30) days follwing the Effective Date. Subject to the provisions of this section 3.3, once approved, the Administrative Claims of Professionals shall be paid in accordance with the payment of Allowed Administrative Claims set forth above in section 3.1 of the Plan.

Section 6.4(l) of the Plan is hereby modified to state as follows:

**Section 6.4(l)** – file with the Bankruptcy Court, and provide the same to the United States Trustee until the Chapter 11 Cases are closed by the Bankruptcy Court, reports regarding the liquidation or other administration of property comprising the Liquidating Trust Assets, the distributions made by the Liquidating Trust, and other matters required to be included in such report; and

4.  <u>General Authorizations.</u>     The Debtors, their CRO, the Liquidating Trustee and their representatives, agents, employees and attorneys are authorized and empowered to issue, execute, deliver, file or record any agreement, document, or

{5748683:6}
15-45784-mbm   Doc 470   Filed 11/24/15   Entered 11/24/15 16:09:45   Page 4 of 6
17-04293-mbm   Doc 45-2   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 5 of 7

security, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, whether or not specifically referred to in the Plan, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

5.    <u>Governmental Approvals Not Required</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and Liquidating Trust, and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

6.    <u>Notice of Entry of Confirmation Order</u>.  On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and record interest holders, the United States Trustee, and all other parties in interest, by causing notice of entry of the Confirmation Order to be delivered to such parties by first-class mail, postage prepaid.

7.    <u>Rejection of Executory Contracts and Leases</u>.  All executory contracts and unexpired leases not previously assumed or otherwise rejected by the Debtors are hereby rejected.

{5748683:6}
15-45784-mbm    Doc 470    Filed 11/24/15    Entered 11/24/15 16:09:45    Page 5 of 6
17-04293-mbm    Doc 45-2    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 6 of 7

8.  <u>Liquidating Trust</u>.   The Liquidating Trustee's appointment shall be effective as of the Effective Date.   The Liquidating Trust Agreement attached as Appendix A to the Plan and all terms and conditions contained therein are approved.   The powers, authority, responsibilities and duties of the Liquidating Trustee are set forth and will be governed by the Liquidating Trust Agreement.

9.  The stay contemplated by Bankruptcy Rule 3020(e) shall not apply to this Confirmation Order.

10.  <u>Retention of Jurisdiction</u>.   This Court shall retain jurisdiction to hear and determine all matters arising under the Plan and from the implementation of this Confirmation Order.

Signed on November 24, 2015

                      /s/ Marci B. McIvor
                      Marci B. McIvor
                      United States Bankruptcy Judge

{5748683:6}
15-45784-mbm   Doc 470   Filed 11/24/15   Entered 11/24/15 16:09:45   Page 6 of 6
17-04293-mbm   Doc 45-2   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 7 of 7

# EXHIBIT C

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

In re:

LSC Liquidation, Inc., *et al.*[1]

    Debtors.

_____/

Gene R. Kohut, solely in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

    Plaintiff,

v.

United States Steel Corporation, a
Delaware corporation,

    Defendant.

_____/

Chapter 11

Case No. 15-45784-mbm

Hon. Marci B. McIvor

Adv. Proc. No.

Hon.

## **COMPLAINT**

Gene R. Kohut, solely in his capacity as Liquidating Trustee for the

LSC Liquidating Trust ("Liquidating Trust"), through counsel, Wolfson

Bolton PLLC, for his Complaint against United States Steel Corporation

("Defendant"), alleges:

_____

[1] Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor
Industrial Properties, L.L.C., Case No. 15-45785-mbm, and 4L Ventures,
LLC, Case No. 15-45788-mbm.

## JURISDICTION, VENUE, AND PARTIES

1.     The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2.     This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), (E), (F), (H), and (O).

3.     This is an adversary proceeding under Fed. R. Bankr. P. 7001.

4.     Venue is proper under 28 U.S.C. § 1409.

5.     Debtors filed for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.,* on April 13, 2015 ("Petition Date") in the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court").

6.     On October 13, 2015, the Bankruptcy Court entered an order authorizing Debtor Lee Steel Corporation to change its name to LSC Liquidation, Inc. [Case No. 15-45784-mbm, Docket No. 391].

7.     On November 24, 2015, the *Combined Joint Plan of Liquidation and Disclosure Statement, September 30, 2015* ("Plan") was confirmed by the *Order Granting Final Approval of Disclosure Statement and Confirming Debtors' and Committee's Combined Joint Plan of Liquidation* ("Order Confirming Plan"). [Case No. 15-45784-mbm, Docket Nos. 370 and 470].

8.     The Order Confirming Plan approved the Liquidating Trustee's appointment as trustee of the LSC Liquidating Trust as of the Effective Date (as defined in the Plan).

9.     Pursuant to the Plan, Debtors and the Liquidating Trustee filed a *Notice Of (A) Effective Date; And (B) Bar Date For Final Professional Fee Applications* on April 1, 2016. [Case No. 15-45784-mbm, Docket No. 778].

10.     Under the terms of, and as defined in, the Plan, all objections to Claims, Causes of Action, and Estate Litigation, including causes of action related to the Transfers (defined below), vested in the LSC Liquidating Trust on the Effective Date.

11.     Defendant is a Delaware corporation that conducts business in Michigan.

12.     The Liquidating Trustee consents to entry of a final order or judgment by the Bankruptcy Court.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

13.     During the ninety-day period before the Petition Date, Defendant received payments totaling $1,036,684.77 from Debtor Lee Steel Corporation as set forth on attached Exhibit A (collectively, the "Transfers").

14.    Debtor Lee Steel Corporation made or caused to be made the Transfers to Defendant.

15.    The Transfers were transfers of an interest in Debtor Lee Steel Corporation's property – namely, money from Debtor Lee Steel Corporation's bank account(s).

16.    The Transfers were to or for the benefit of Defendant.

17.    Defendant received the Transfers and deposited them in Defendant's bank account.

### COUNT I – PREFERENTIAL TRANSFERS – 11 U.S.C. § 547(b)

18.    The Liquidating Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint.

19.    Before the Petition Date, Defendant did business with Debtor Lee Steel Corporation by providing steel to Debtor Lee Steel Corporation in connection with its business operations.

20.    Defendant was a creditor of Debtor Lee Steel Corporation on the date(s) that the Transfers were made.

21.    The Transfers were made for or on account of antecedent debts owed by Debtor Lee Steel Corporation to Defendant before such Transfers were made.

22.   The Transfers were payments for steel sold by Defendant to Debtor Lee Steel Corporation.

23.   Under 11 U.S.C. § 547(f), Debtor Lee Steel Corporation is presumed to have been, and was in fact, insolvent at the time the Transfers were made as evidenced by, among other things: Debtor's significant secured and unsecured liabilities, significant capital expenditures such as an eco-friendly steel pickling line, purchase of excess steel inventory that Debtor was unable to sell, drop in steel market prices, and a general inability to pay its debts as the debts became due.

24.   Due to the size of claims and shortfall in recoverable assets in Debtor Lee Steel Corporation's bankruptcy case, creditors will not be paid the full amount of their claims.

25.   The Transfers enabled Defendant to receive more than Defendant would have received if (i) Debtor Lee Steel Corporation's case was a case under Chapter 7 of the Bankruptcy Code, (ii) the Transfers had not been made, and (iii) Defendant received payment of such debt to the extent provided for by the provisions of the Bankruptcy Code.

26.   The Transfers constitute preferential transfers that are avoidable under 11 U.S.C. § 547(b).

27.     During the ninety-day period before the Petition Date, Defendant placed undue collection pressure on Debtor Lee Steel Corporation related to the payment of Defendant's invoices.

## COUNT II – FRAUDULENT TRANSFERS – 11 U.S.C. § 548(a)(1)(B)

28.     The Liquidating Trustee incorporates by reference the allegations contained in ¶ 1 through ¶ 17 above.

29.     Count II is pled in the alternative to Count I.

30.     Debtor Lee Steel Corporation received less than a reasonably equivalent value in exchange for each of the Transfers because, among other reasons, Debtor Lee Steel Corporation was not obligated to make the Transfers or otherwise received no benefit or less than a reasonably equivalent value from Defendant in exchange for the Transfers.

31.     At all times when the Transfers were made, Debtor Lee Steel Corporation was insolvent as evidenced by, among other things: Debtor's significant secured and unsecured liabilities, significant capital expenditures such as an eco-friendly steel pickling line, purchase of excess steel inventory that Debtor was unable to sell, drop in steel market prices, and a general inability to pay its debts as the debts became due.

32.    For the reasons set forth in ¶ 31 above, Debtor Lee Steel Corporation was insolvent on the dates that the Transfers occurred or became insolvent as a result of the Transfers.

33.    For the reasons set forth in ¶ 31 above, Debtor Lee Steel Corporation was engaged in a business or transaction, or was about to engage in a business or transaction, for which Debtor Lee Steel Corporation's remaining property was an unreasonably small capital.

34.    For the reasons set forth in ¶ 31 above, Debtor Lee Steel Corporation intended to incur, or believed that it would incur, debts beyond Debtor Lee Steel Corporation's ability to pay as such debts matured.

35.    The Transfers constitute fraudulent transfers that are avoidable under 11 U.S.C. § 548(a)(1)(B).

## **COUNT III – RECOVERY UNDER 11 U.S.C. § 550**

36.    The Liquidating Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint.

37.    Defendant exercised dominion-and-control over the Transfers after the Transfers were made.

38.    Defendant is the initial transferee of the Transfers.

17-04293-mbm  Doc 45-3  Filed 09/14/17  Entered 09/14/17 19:59:43  Page 7 of 13

39. Alternatively, Defendant was either the entity for whose benefit the Transfers were made or was the immediate or mediate transferee of the initial transferee receiving the Transfers.

40. To the extent it is determined that Defendant is an immediate or mediate transferee of the Transfers, Defendant did not take for value, in good faith, or without knowledge of the voidability of the Transfers.

41. The Transfers are avoidable under either Count I or II of this Complaint and recoverable from Defendant under 11 U.S.C. § 550(a).

42. The Liquidating Trustee is entitled to a judgment recovering the Transfers under 11 U.S.C. §§ 550(a) and 551, or the value thereof, from Defendant for the benefit of Debtors' estates.

## COUNT IV – CLAIM DISALLOWANCE AND OBJECTION TO CLAIM – 11 U.S.C. § 502(d) AND FED. R. BANKR. P. 3007(b)

43. The Liquidating Trustee incorporates by reference the allegations contained in the previous paragraphs of the Complaint.

44. The Transfers are avoidable under 11 U.S.C. §§ 547 and/or 548.

45. Defendant is the transferee of the Transfers.

46. The Transfers are recoverable under 11 U.S.C. § 550.

47. Despite demand, Defendant has not paid or surrendered the Transfers.

{00048849.DOCX 3 }

8

48.    Any present or future claims of Defendant against Debtors'
estates should be disallowed under 11 U.S.C. § 502(d), including
unsecured claim no. 100 filed by Defendant with the claims agent in the
amount of $25,628.00.

49.    Under Fed. R. Bankr. P. 3007(b), an objection to claim may be
joined in an adversary proceeding.

50.    According to Debtors' books and records, Defendant was owed
$15,234.75 as of the Petition Date.  However, Defendant's unsecured claim
no. 100 filed by Defendant with the claims agent is filed in the amount of
$25,628.00.

51.    The Liquidating Trustee objects to Defendant's claim because it
is overstated.

52.    The Liquidating Trustee has asserted all of the substantive
objections of which he is currently aware with respect to the Defendant's
proof of claim no. 100.  However, other bases for objection may arise, or
the Liquidating Trustee may become aware of other bases for objection at
a later date.  Accordingly, the Liquidating Trustee expressly reserves the
right to amend, modify, or supplement this objection and to file additional
objections.

WHEREFORE, the Liquidating Trustee respectfully requests that the Court enter judgment in favor of the Liquidating Trustee and against Defendant as follows:

(A)     On Counts I and III, under 11 U.S.C. §§ 547(b), 550(a), and 551, (i) avoiding the Transfers, (ii) directing that the Transfers be set aside, and (iii) recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtor Lee Steel Corporation's estate;

(B)     On Counts II and III, under 11 U.S.C. §§ 548(a)(1)(B), 550(a), and 551, (i) avoiding the Transfers, (ii) directing that the Transfers be set aside, and (iii) recovering the Transfers, or the value thereof, from Defendant for the benefit of Debtor Lee Steel Corporation's estate;

(C)     On Count IV, under 11 U.S.C. § 502(d), disallowing any present or future claims Defendant may have against Debtor Lee Steel Corporation's estate, including unsecured claim no. 100 filed by Defendant with the claims agent in the amount of $25,628.00;

(D)     On Count IV, to the extent that Defendant's claim against the estate is permitted, sustaining the Liquidating Trustee's objection to Defendant's proof of claim;

{00048849.DOCX 3 }

10

(E)  Awarding the Liquidating Trustee all applicable interest,

attorneys' fees, costs, and disbursements from this action; and

(F)  Granting the Liquidating Trustee such other relief as the Court

deems just and equitable.

Respectfully submitted,

WOLFSON BOLTON PLLC

Dated:  April 11, 2017           By:___/s/ Anthony J. Kochis_____
                                      Scott A. Wolfson (P53194)
                                      Anthony J. Kochis (P72020)
                                 3150 Livernois, Suite 275
                                 Troy, MI  48083
                                 Telephone:  (248) 247-7105
                                 Facsimile:  (248) 247-7099
                                 E-Mail:  akochis@wolfsonbolton.com

## Exhibit A – Transfers

| Transferor | Transfer Date | Transfer Amount | Payment Form | Payment Identification |
|---|---|---|---|---|
| Lee Steel Corporation | 1/20/2015 | $211,836.31 | Check | 111425 |
| Lee Steel Corporation | 2/5/2015 | $17,771.21 | Check | 111572 |
| Lee Steel Corporation | 2/11/2015 | $11,272.05 | Check | 111626 |
| Lee Steel Corporation | 2/17/2015 | $206,249.20 | Check | 111692 |
| Lee Steel Corporation | 2/24/2015 | $179,515.19 | Check | 111771 |
| Lee Steel Corporation | 3/4/2015 | $257,384.51 | Check | 111850 |
| Lee Steel Corporation | 3/10/2015 | $152,656.30 | Check | 111908 |
| Total = $1,036,684.77 | | | | |

# **EXHIBIT D**

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                          Chapter 11

LSC Liquidation, Inc., *et al.*[1]              Case No. 15-45784-mbm

      Debtors.                         Hon. Marci B. McIvor
_____/

Gene R. Kohut, solely in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

      Plaintiff,                      Adv. Proc. No. 17-04293-mbm

v.                                              Hon. Marci B. McIvor

United States Steel Corporation, a
Delaware corporation,

      Defendant.
_____/

## UNITED STATES STEEL CORPORATION'S ANSWER
## AND AFFIRMATIVE DEFENSES TO COMPLAINT

United States Steel Corporation ("U.S. Steel" or "Defendant"), by and

through its undersigned counsel, states as follows for its answer and affirmative

defenses to the Complaint [Dkt. No. 1] filed by Gene R. Kohut, solely in his

_____

[1]The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor
Industrial Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC,
Case No. 15-45788-mbm.

215712279.3 22144/194655

17-04293-mbm   Doc 5   Filed 05/24/17   Entered 05/24/17 14:07:20   Page 1 of 9
17-04293-mbm   Doc 45-4   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 2 of 10

capacity as Liquidating Trustee for the LSC Liquidating Trust ("Liquidating Trustee" or "Plaintiff").

## JURISDICTION, VENUE, AND PARTIES

1.   Defendant admits the allegations in Paragraph 1 of the Complaint.  In further answer, Defendant denies that this Court has constitutional authority to enter final judgments or orders on the causes of action asserted in the Complaint without the parties' consent and Defendant does not consent to the entry of final judgments or orders by this Court.

2.   Defendant admits that this is a statutory core proceeding under 28 U.S.C. § 157(b)(2)(B), (F), and (H).  Defendant denies all other allegations in Paragraph 2 of the Complaint.  In further answer, Defendant denies that this Court has constitutional authority to enter final judgments or orders on the causes of action asserted in the Complaint without the parties' consent and Defendant does not consent to the entry of final judgments or orders by this Court.

3.   Defendant admits the allegation in Paragraph 3 of the Complaint.

4.   Defendant admits the allegation in Paragraph 4 of the Complaint.

5.   Defendant admits the allegation in Paragraph 5 of the Complaint.

6.   Defendant admits the allegation in Paragraph 6 of the Complaint.

7.   Defendant admits the allegation in Paragraph 7 of the Complaint.

8.   Defendant admits the allegation in Paragraph 8 of the Complaint.

2

215712279.3 22144/194655
17-04293-mbm   Doc 5    Filed 05/24/17   Entered 05/24/17 14:07:20   Page 2 of 9
17-04293-mbm   Doc 45-4   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 3 of 10

9.   Defendant admits the allegation in Paragraph 9 of the Complaint.

10.  Defendant denies the allegations in Paragraph 10 of the Complaint.

11.  Defendant admits the allegation in Paragraph 11 of the Complaint.

12.  Defendant does not have a response to Paragraph 12 of the Complaint as there are no facts alleged in Paragraph 12 for Defendant to admit or deny.   In further answer, Defendant does not consent to entry of a final order or judgment by this Court.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

13.  Defendant admits the allegations in Paragraph 13 of the Complaint.

14.  Defendant admits the allegation in Paragraph 14 of the Complaint.

15.  Defendant is without sufficient information to admit or deny the allegations in Paragraph 15 of the Complaint.  To the extent a response is required, Defendant denies said allegations.

16.  Defendant admits the allegations in Paragraph 16 of the Complaint.

17.  Defendant admits that it received the Transfers.  Defendant denies all other allegations in Paragraph 17 of the Complaint.  In further answer, Defendant states that the Transfers were automatically transferred into Defendant's lockbox.

## COUNT I – PREFERENTIAL TRANSFERS – 11 U.S.C. § 547(b)

18.  Defendant reasserts and incorporates by reference its answers to Paragraphs 1 through 17 of the Complaint as though fully set forth herein.

3

215712279.3 22144/194655

17-04293-mbm    Doc 5    Filed 05/24/17    Entered 05/24/17 14:07:20    Page 3 of 9
17-04293-mbm    Doc 45-4    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 4 of 10

19. Defendant admits the allegations in Paragraph 19 of the Complaint.

20. Defendant admits the allegations in Paragraph 20 of the Complaint.

21. Defendant admits the allegations in Paragraph 21 of the Complaint.

22. Defendant admits the allegations in Paragraph 22 of the Complaint.

23. Defendant is without sufficient information to admit or deny the allegations in Paragraph 23 of the Complaint.  To the extent a response is required, Defendant denies said allegations.

24. Defendant is without sufficient information to admit or deny the allegations in Paragraph 24 of the Complaint.  To the extent a response is required, Defendant denies said allegations.

25. Defendant is without sufficient information to admit or deny the allegations in Paragraph 25 of the Complaint.  To the extent a response is required, Defendant denies said allegations.

26. Defendant denies the allegations in Paragraph 26 of the Complaint.

27. Defendant denies the allegations in Paragraph 27 of the Complaint.

## COUNT II – FRAUDULENT TRANSFERS – 11 U.S.C. § 548(a)(1)(B)

28. Defendant reasserts and incorporates by reference its answers to Paragraphs 1 through 17 of the Complaint as though fully set forth herein.

29. Defendant does not have a response to Paragraph 29 of the Complaint as there are no facts alleged in Paragraph 29 for Defendant to admit or deny.

4

30. Defendant denies the allegations in Paragraph 30 of the Complaint.

31. Defendant is without sufficient information to admit or deny the allegations in Paragraph 31 of the Complaint. To the extent a response is required, Defendant denies said allegations.

32. Defendant is without sufficient information to admit or deny the allegations in Paragraph 32 of the Complaint. To the extent a response is required, Defendant denies said allegations.

33. Defendant is without sufficient information to admit or deny the allegations in Paragraph 33 of the Complaint. To the extent a response is required, Defendant denies said allegations.

34. Defendant is without sufficient information to admit or deny the allegations in Paragraph 34 of the Complaint. To the extent a response is required, Defendant denies said allegations.

35. Defendant denies the allegations in Paragraph 35 of the Complaint.

### COUNT III – RECOVERY UNDER 11 U.S.C. § 550

36. Defendant reasserts and incorporates by reference its answers to Paragraphs 1 through 35 of the Complaint as though fully set forth herein.

37. Defendant is without sufficient information to admit or deny the allegations in Paragraph 37 of the Complaint. To the extent a response is required, Defendant denies said allegations.

5

215712279.3 22144/194655

17-04293-mbm   Doc 5   Filed 05/24/17   Entered 05/24/17 14:07:20   Page 5 of 9
17-04293-mbm   Doc 45-4   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 6 of 10

38. Defendant admits the allegations in Paragraph 38 of the Complaint.

39. Defendant admits that it was the entity for whose benefit the Transfers were made. Defendant denies all other allegations in Paragraph 39 of the Complaint.

40. Defendant denies the allegations in Paragraph 40 of the Complaint.

41. Defendant denies the allegations in Paragraph 41 of the Complaint.

42. Defendant denies the allegations in Paragraph 42 of the Complaint.

## COUNT IV – CLAIM DISALLOWANCE AND OBJECTION TO CLAIM – 11 U.S.C. § 502(d) AND FED. R. BANKR. P. 3007(b)

43. Defendant reasserts and incorporates by reference its answers to Paragraphs 1 through 42 of the Complaint as though fully set forth herein.

44. Defendant denies the allegations in Paragraph 44 of the Complaint.

45. Defendant admits the allegation in Paragraph 45 of the Complaint.

46. Defendant denies the allegation in Paragraph 46 of the Complaint.

47. Defendant admits the allegations in Paragraph 47 of the Complaint. In further answer, Plaintiff has no legal basis to demand that Defendant pay or surrender the Transfers.

48. Defendant denies the allegations in Paragraph 48 of the Complaint.

49. Defendant does not have a response to Paragraph 49 of the Complaint as there are no facts alleged in Paragraph 49 for Defendant to admit or deny.

6

215712279.3 22144/194655

17-04293-mbm   Doc 5   Filed 05/24/17   Entered 05/24/17 14:07:20   Page 6 of 9
17-04293-mbm   Doc 45-4   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 7 of 10

50. Defendant admits that it filed an unsecured claim in the amount of $25,628.00 in this case. Defendant is without sufficient information to admit or deny the other allegations in Paragraph 50 of the Complaint. To the extent a response is required, Defendant denies said allegations.

51. Defendant does not have a response to Paragraph 51 of the Complaint as there are no facts alleged in Paragraph 51 for Defendant to admit or deny. In further answer, Defendant denies that its claim is overstated.

52. Defendant does not have a response to Paragraph 52 of the Complaint as there are no facts alleged in Paragraph 52 for Defendant to admit or deny. In further answer, Defendant denies that the Liquidating Trustee has the right to amend, modify, or supplement this objection and to file additional objections to Defendant's claim.

## AFFIRMATIVE DEFENSES

53. Plaintiff's claims are barred, in whole or in part, by the doctrine of *res judicata*.

54. Plaintiff fails, in whole or in part, to state a claim upon which relief may be granted.

55. Plaintiff's claims are barred, in whole or in part, because Plaintiff cannot satisfy one or more of the elements of 11 U.S.C. § 547(b).

7

215712279.3 22144/194655

17-04293-mbm    Doc 5    Filed 05/24/17    Entered 05/24/17 14:07:20    Page 7 of 9
17-04293-mbm    Doc 45-4    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 8 of 10

56. Any alleged preferential transfer is or may be exempt from recovery, either in whole or in part, pursuant to 11 U.S.C. § 547(c)(1).

57. Any alleged preferential transfer is or may be exempt from recovery, either in whole or in part, pursuant to 11 U.S.C. § 547(c)(2).

58. Any alleged preferential transfer is or may be exempt from recovery, either in whole or in party, pursuant to 11 U.S.C. § 547(c)(4).

59. Plaintiff's claims are barred, in whole or in part, because Plaintiff cannot satisfy one or more of the elements of 11 U.S.C. § 548(a)(1)(B).

60. Plaintiff's claims are barred, in whole or in part, by 11 U.S.C. § 548(c).

61. Plaintiff's claims may be barred, in whole or in part, by the doctrine of estoppel (including judicial, collateral, and equitable estoppel) and similar doctrines.

62. Plaintiff's claims may be barred, in whole or in part, by the doctrine of waiver.

63. Plaintiff's claims may be barred, in whole or in part, by the doctrine of laches.

64. Plaintiff's claims may be barred, in whole or in part, by the doctrine of accord and satisfaction.

65. Plaintiff's claims may be barred, in whole or in part, by the doctrine of recoupment and/or setoff.

8

215712279.3 22144/194655
17-04293-mbm    Doc 5    Filed 05/24/17    Entered 05/24/17 14:07:20    Page 8 of 9
17-04293-mbm    Doc 45-4    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 9 of 10

66. Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

67. Defendant reserves the right to assert additional affirmative defenses as they may become known through the course of this proceeding.

WHEREFORE, Defendant respectfully requests the entry of an Order: (i) dismissing the Complaint with prejudice; (ii) awarding Defendant attorneys' fees and costs incurred in defending this action; and (iii) granting such other and further relief as the Court deems just and proper.

Dated:  May 24, 2017                    Respectfully submitted,

**CLARK HILL PLC**

*/s/ John R. Stevenson*
Joel D. Applebaum (P36774)
John R. Stevenson (P70241)
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 642-9692
japplebaum@clarkhill.com
jstevenson@clarkhill.com

*Counsel for United States Steel Corporation*

9

215712279.3 22144/194655
17-04293-mbm   Doc 5   Filed 05/24/17   Entered 05/24/17 14:07:20   Page 9 of 9
17-04293-mbm   Doc 45-4   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 10 of 10

# EXHIBIT E

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                          Chapter 11

LSC Liquidation, Inc., *et al.*[1]              Case No. 15-45784-mbm

          Debtors.                      Hon. Marci B. McIvor

_____/

Gene R. Kohut, soley in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

          Plaintiff,                     Adv. Proc. No. 17-04293-mbm

v.                                              Hon. Marci B. McIvor

United States Steel Corporation, a
Delaware corporation,

          Defendant.

_____/

### DEFENDANT'S MOTION FOR (I) SUMMARY JUDGMENT ON COUNTS I-III OF THE COMPLAINT AND (II) PARTIAL SUMMARY JUDGMENT ON COUNT IV OF THE COMPLAINT

Pursuant to Fed. R. Civ. P. 56(a), made applicable to this adversary

proceeding by Fed. R. Bankr. P. 7056, Defendant, United States Steel Corporation

---

[1] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC, Case No. 15-45788-mbm.

215900775.1 22144/194655

17-04293-mbm   Doc 17   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 1 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 2 of 35

("U.S. Steel" or "Defendant"), moves (the "Motion") (i) the Court to submit proposed findings of fact and conclusions of law to the United States District Court for the Eastern District of Michigan (the "District Court") finding that Defendant is entitled to summary judgment on Counts I-III of the Complaint and partial summary judgment on Count IV of the Complaint based on the doctrine of *res judicata* and (ii) the District Court to enter the proposed order attached hereto as **Exhibit 1** granting U.S. Steel summary judgment on Counts I-III of the Complaint and partial summary judgment on Count IV of the Complaint based on *res judicata*.[2]

The bases for the Motion are stated in the *Brief in Support of Defendant's Motion for (I) Summary Judgment on Counts I-III of the Complaint and (II) Partial Summary Judgment on Count IV of the Complaint* attached hereto as **Exhibit 3**.

Counsel for Defendant requested concurrence in the relief sought herein from counsel for Plaintiff by email this morning and concurrence was denied.

WHEREFORE, Defendant respectfully requests that (i) the Court submit proposed findings of fact and conclusions of law to the District Court finding that U.S. Steel is entitled to summary judgment on Counts I-III of the Complaint and

---

[2] Defendant did not consent to this Court entering final orders and judgments in this adversary proceeding under 28 U.S.C. § 157(c)(2). *See* United States Steel Corporation's Answer and Affirmative Defenses to Complaint ¶¶ 1, 2, 12 (Dkt. No. 5).

2

215900775.1 22144/194655

17-04293-mbm   Doc 17   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 2 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 3 of 35

partial summary judgment on Count IV of the Complaint based on *res judicata* and

(ii) the District Court enter the proposed order attached hereto as **Exhibit 1**

granting U.S. Steel summary judgment on Counts I-III of the Complaint and partial

summary judgment on Count IV of the Complaint based on *res judicata*.

Dated:  June 29, 2017                    Respectfully submitted,


                                         **CLARK HILL PLC**

                                         */s/ John R. Stevenson*
                                         Joel D. Applebaum (P36774)
                                         John R. Stevenson (P70241)
                                         151 S. Old Woodward Avenue, Suite 200
                                         Birmingham, Michigan 48009
                                         (248) 642-9692
                                         japplebaum@clarkhill.com
                                         jstevenson@clarkhill.com

                                         *Counsel for United States Steel Corporation*

3

215900775.1 22144/194655

17-04293-mbm Doc 17 Filed 06/29/17 Entered 06/29/17 11:30:20 Page 3 of 34
17-04293-mbm Doc 45-5 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 4 of 35

# EXHIBIT 1

# Proposed Order

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

In re:

LSC Liquidation, Inc., *et al.*[1]                    Case No.

      Debtors.

_____/

Gene R. Kohut, soley in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

      Plaintiff,

v.

United States Steel Corporation, a
Delaware corporation,

      Defendant.

_____/

## [PROPOSED] ORDER GRANTING DEFENDANT'S
## MOTION FOR (I) SUMMARY JUDGMENT ON COUNTS I-III OF
## THE COMPLAINT AND (II) PARTIAL SUMMARY JUDGMENT
## ON COUNT IV OF THE COMPLAINT

This matter having come before the Court upon *Defendant's Motion for (I)*

*Summary Judgment on Counts I-III of the Complaint and (II) Partial Summary*

---

[1] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor
Industrial Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC,
Case No. 15-45788-mbm.

*Judgment on Count IV of the Complaint* (the "Motion"); the Court having considered the Motion and any opposition thereto; and the Court being otherwise advised:

IT IS ORDERED THAT:

1.      The Court adopts the proposed findings of fact and conclusions of law of the Honorable Marci B. McIvor of the United States Bankruptcy Court for the Eastern District of Michigan as the findings of fact and conclusions of law of this Court.

2.      The Motion is granted.

3.      Defendant United States Steel Corporation is granted summary judgment under Fed. R. Civ. P. 56(a), made applicable to this matter by Fed. R. Bankr. P. 7056, on Counts I-III of the Complaint based on the doctrine of *res judicata*.

4.      Defendant United States Steel Corporation is granted partial summary judgment under Fed. R. Civ. P. 56(a), made applicable to this matter by Fed. R. Bankr. P. 7056, on Count IV of the Complaint based on the doctrine of *res judicata*. The sole remaining objection to claim no. 100 filed by Defendant is that it is overstated.

2

215900775.1 22144/194655

17-04293-mbm Doc 17 Filed 06/29/17 Entered 06/29/17 11:30:20 Page 6 of 34
17-04293-mbm Doc 45-5 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 7 of 35

# EXHIBIT 2

# Notice of and Opportunity to Object to Motion

215900775.1 22144/194655

17-04293-mbm Doc 17 Filed 06/29/17 Entered 06/29/17 11:38:20 Page 7 of 34
17-04293-mbm Doc 45-5 Filed 09/14/17 Entered 09/14/17 16:46:27 Page 8 of 35

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| In re: | Chapter 11 |
| LSC Liquidation, Inc., *et al.*[1] | Case No. 15-45784-mbm |
| Debtors. | Hon. Marci B. McIvor |

_____/

|  |  |
|---|---|
| Gene R. Kohut, soley in his capacity as Liquidating Trustee for the LSC Liquidating Trust, |  |
| Plaintiff, | Adv. Proc. No. 17-04293-mbm |
| v. | Hon. Marci B. McIvor |
| United States Steel Corporation, a Delaware corporation, |  |
| Defendant. |  |

_____/

## NOTICE OF DEFENDANT'S MOTION FOR (I) SUMMARY JUDGMENT ON COUNTS I-III OF THE COMPLAINT AND (II) PARTIAL SUMMARY JUDGMENT ON COUNT IV OF THE COMPLAINT

PLEASE TAKE NOTICE that Defendant United States Steel Corporation ("U.S. Steel") has filed the *Defendant's Motion for (I) Summary Judgment on Counts I-III of the Complaint and (II) Partial Summary Judgment on Count IV of the Complaint* (the "Motion").

---

[1] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC, Case No. 15-45788-mbm.

**Your rights may be affected.** **You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the relief requested in the Motion, or if you want the Court to otherwise consider your views on the Motion, no later than **July 13, 2017**, you or your attorney must:

File with the court a written response or an answer, explaining your position at:[2]

<div align="center">

**Clerk of the Court**
**United States Bankruptcy Court**
**211 W. Fort Street**
**Detroit, Michigan 48226**

</div>

If you mail your response to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.   All attorneys are required to file pleadings electronically.

You must also serve a copy of your response so as to be received on or before the response deadline upon counsel to U.S. Steel at the address set forth below.

If a response or answer is timely filed and served, the clerk will schedule a hearing on the Motion and you will be served with a notice of the date, time and location of the hearing.

---

[2] Response or answer must comply with F. R. Civ. P. 8(b), (c) and (e).

<div align="center">2</div>

215900775.1 22144/194655

17-04293-mbm   Doc 45-3   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 9 of 34
17-04293-mbm   Doc 45-3   Filed 09/14/17   Entered 09/14/17 18:48:27   Page 10 of 35

**If you or your attorney do not take these steps, the Court may grant the Motion and enter the order without a hearing as set forth in Rule 9014-1(d) of the Local Rules for the United States Bankruptcy Court for the Eastern District of Michigan.**

Dated:  June 29, 2017                    Respectfully submitted,

                                                **CLARK HILL PLC**

                                                */s/ John R. Stevenson*
                                                Joel D. Applebaum (P36774)
                                                John R. Stevenson (P70241)
                                                151 S. Old Woodward Avenue, Suite 200
                                                Birmingham, Michigan 48009
                                                (248) 642-9692
                                                japplebaum@clarkhill.com
                                                jstevenson@clarkhill.com

                                                *Counsel for United States Steel Corporation*

3

215900775.1 22144/194655

17-04293-mbm   Doc 17   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 10 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 11 of 35

# EXHIBIT 3

# Brief in Support of Motion

215900775.1 22144/194655
17-04293-mbm Doc 17 Filed 06/29/17 Entered 06/29/17 11:30:20 Page 11 of 34
17-04293-mbm Doc 45-5 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 12 of 35

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LSC Liquidation, Inc., et al.[1]                    Case No. 15-45784-mbm

        Debtors.                           Hon. Marci B. McIvor
_____/

Gene R. Kohut, soley in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

        Plaintiff,                          Adv. Proc. No. 17-04293-mbm

v.                                                   Hon. Marci B. McIvor

United States Steel Corporation, a
Delaware corporation,

        Defendant.
_____/

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR (I) SUMMARY JUDGMENT ON COUNTS I-III OF THE COMPLAINT AND (II) PARTIAL SUMMARY JUDGMENT ON COUNT IV OF THE COMPLAINT

Pursuant to Fed. R. Civ. P. 56(a), made applicable to this adversary proceeding by Fed. R. Bankr. P. 7056, Defendant, United States Steel Corporation ("U.S. Steel" or "Defendant"), moves (the "Motion") (i) the Court to submit proposed findings of fact and conclusions of law to the United States District Court

---

[1] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC, Case No. 15-45788-mbm.

215900775.1 22144/194655

17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 13 of 35
17-04393-mbm   Doc 17   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 12 of 34

for the Eastern District of Michigan (the "District Court") finding that Defendant is entitled to summary judgment on Counts I-III of the Complaint and partial summary judgment on Count IV of the Complaint based on the doctrine of *res judicata* and (ii) the District Court to enter the proposed order attached hereto as **Exhibit 1** granting U.S. Steel summary judgment on Counts I-III of the Complaint and partial summary judgment on Count IV of the Complaint based on *res judicata*.

In support of this Motion, U.S. Steel respectfully states as follows:

## Relevant Facts

### I.     The Bankruptcy Case

1.      On April 13, 2015 (the "Petition Date"), Lee Steel Corporation ("Lee Steel" or the "Debtor"), Taylor Industrial Properties, LLC, and 4L Ventures, LLC (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan (this "Court"). On April 15, 2015, this Court authorized the joint administration of the Debtors' chapter 11 cases in Case No. 15-45784-mbm (the "Bankruptcy Case"). *See* Dkt. No. 41.[2]

2.      On April 23, 2015, the United States Trustee appointed a Committee

---

[2] Unless otherwise indicated, all references herein to the court docket refer to the court docket in the Bankruptcy Case.

2

215900775.1 22144/194655
17-04293-mbm   Doc 45-5   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 13 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 14 of 35

of Unsecured Creditors (the "Committee"). *See* Dkt. No. 69.

## II.    The Combined Plan and Disclosure Statement

3.    On September 30, 2015, the Debtors and the Committee filed the Combined Joint Plan of Liquidation and Disclosure Statement (Dkt. No. 370) (the "Combined Plan and Disclosure Statement" or, separately, the "Plan" and the "Disclosure Statement").

4.    The Plan provided for the establishment of a Liquidating Trust.  Plan Article 6.  Section G of the Disclosure Statement titled "Estate Claims; Other Events of Significance" contains a general reservation of Causes of Action[3] and Estate Litigation[4]:

> Pursuant to the Plan and Disclosure Statement, the Debtors for the benefit of the Committee and the Liquidating Trust and its

---

[3] "Causes of Action" means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to, all rights and causes of action permitted under chapter 5 of the Bankruptcy Code, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, that belong to the Debtors.  Plan § 1.12.

[4] "Estate Litigation" means all rights to and proceedings arising from or relating to: (i) all Claims, (ii) objections to Claims, (iii) Causes of Action, including but not limited to, any litigation or claims that can be instituted or asserted by the Estate, the Liquidating Trust, or by any party on behalf of or for the benefit of the Estate or Liquidating Trust, including, but not limited to, preference claims, fraudulent conveyance or avoidance actions, or any other claim of or cause of action of any kind whatsoever arising under chapter 5 of the Bankruptcy Code.  Plan § 1.35.

3

215900775.1 22144/194655

17-04293-mbm  Doc 17  Filed 06/29/17  Entered 06/29/17 11:30:20  Page 14 of 34
17-04293-mbm  Doc 45-5  Filed 09/14/17  Entered 09/14/17 16:48:27  Page 15 of 35

Beneficiaries, will preserve all rights, interest, and standing to investigate and pursue, whether through negotiation or litigation, any and all Causes of Action and Estate Litigation.

Disclosure Statement at p. 4.

5.    The Plan further provide for the transfer of the Causes of Action and Estate Litigation to the Liquidating Trust:

On the Effective Date, the Debtors and Committee shall transfer and convey all right, title, and interest in the Causes of Action, Estate Litigation, and the Unsecured Carve-Out to the Liquidating Trust, which Assets shall automatically and irrevocably vest in the Liquidating Trust without further action on the part of the Debtors, the Committee, the Liquidating Trustee, or the Court, and with no reversionary interest in the Debtors or Committee, except as otherwise provided in the Plan.

Plan § 6.3.

6.    **Nowhere in the Plan or the Disclosure Statement, however, is any potential Cause of Action or potential Estate Litigation against U.S. Steel mentioned or expressly reserved.** *See* Plan; Disclosure Statement.

7.    On October 5, 2015, the Court granted the Disclosure Statement preliminary approval. *See* Dkt. No. 379.

8.    On October 9, 2015, the Combined Plan and Disclosure Statement was served on creditors for voting. *See* Dkt. No. 395.

9.    On November 24, 2015, the Court granted final approval of the Disclosure Statement and confirmed the Plan. *See* Order Granting Final Approval

4

of Disclosure Statement and Confirming Debtors' and Committee's Combined Joint Plan of Liquidation (Dkt. No. 470) (the "Confirmation Order").

10. The Effective Date of the Plan was deemed to have occurred on April 1, 2016. *See* Dkt. No. 778. The Trustee's appointment as Liquidating Trustee became effective as of the Effective Date. Confirmation Order ¶ 8.

### III. The Adversary Proceeding

11. On April 11, 2017, the Trustee filed the Complaint against U.S. Steel, thereby commencing this adversary proceeding (the "Adversary Proceeding"). In the Complaint, the Trustee alleges that during the ninety-day period before the Petition Date U.S. Steel received payments totaling $1,036,684.77 from Lee Steel (the "Transfers"). Complaint ¶ 13.

12. The Trustee asserts four Counts against U.S. Steel in the Complaint. In Count I of the Complaint, the Trustee seeks to avoid the Transfers as preferential transfers under section 547(b) of the Bankruptcy Code (the "Preference Claim"). In Count II of the Complaint, the Trustee seeks to, alternatively, avoid the Transfers as fraudulent transfers under section 548(a)(1)(B) of the Bankruptcy Code (the "Fraudulent Transfer Claim"). In Count III of the Complaint, the Trustee seeks to recover the Transfers from Defendant under section 550(a) of the Bankruptcy Code (the "Recovery Claim"). In Count IV of the Complaint, the Trustee seeks to have a proof of claim in the amount of

5

$25,628.00 filed by U.S. Steel against the Debtor disallowed under section 502(d) of the Bankruptcy Code (the "502(d) Objection") or, if it is permitted, reduced to $15,234.75 (the "Overstated Objection").

13.     On May 24, 2017, Defendant filed United States Steel Corporation's Answer and Affirmative Defenses to Complaint (Dkt. No. 5 in the Adversary Proceeding) (the "Answer").   In the Answer, Defendant asserts that Plaintiff's claims are barred, in whole or in part, by the doctrine of *res judicata*. Answer ¶ 53.

## Summary Judgment Standard

14.     Under Fed. R. Civ. P. 56, made applicable to this Adversary Proceeding by Fed. R. Bankr. P. 7056, summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   The party moving for summary judgment bears the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986).   Once the movant establishes a *prima facie* showing of entitlement to summary judgment as a matter of law, the non-movant must demonstrate that there is a genuine issue of material fact for trial. *Id*. at 324.

15.     A party may move for summary judgment on all or any part of its defenses. Fed. R. Civ. P. 56(a).   "When construing a motion for partial summary judgment, the court employs the normal summary judgment standard." *Wulinger*

6

*v. Christie*, 310 F. Supp. 2d 897, 900-01 (N.D. Ohio 2004). "The effect of a partial

summary judgment ruling is to narrow the issues for further disposition." *Id*.

## Legal Argument

I. **The Claims in Counts I-III of the Complaint Are Barred by *Res Judicata*.**

16.   In the bankruptcy context, the Sixth Circuit has explained that

an order confirming a plan of reorganization constitutes a judgment and a final adjudication on the merits of a bankruptcy proceeding. **An order confirming a plan of reorganization bars litigation of the claims raised in the bankruptcy proceedings and also bars any claims that could have been raised in the bankruptcy proceedings or the confirmation proceedings not expressly reserved in the plan of reorganization or the order confirming the plan of reorganization**.

*In re Micro-Time Management Systems, Inc.*, Nos. 91-2260, 91-2261, 1993 WL

7524, at *3 (6th Cir. January 12, 1993) (citing *Sanders Confectionery Products,*

*Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir. 1992); 11 U.S.C. § 1141(a))

(other citations omitted) (emphasis added); *see also In re Chattanooga Wholesale*

*Antiques, Inc.*, 930 F.2d 458, 462 (6th Cir. 1991) ("Confirmation of a plan of

reorganization by the bankruptcy court has the effect of a judgment by the district

court and res judicata principles bar relitigation of any issues raised or that could

have been raised in the confirmation proceedings.").

17.   *Res judicata*, or claim preclusion, has four elements:

1) a final decision on the merits by a court of competent jurisdiction;

7

2) a subsequent action between the same parties or their privies;

3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and

4) an identity of the causes of action.

*Browning v. Levy*, 283 F.3d 761, 771-72 (6th Cir. 2002) (citing Bittinger v. Tecumseh Prods. Co., 123 F.3d 877, 880 (6th Cir. 1997)) (internal quotations omitted).

18.     Since all of the elements of *res judicata* are met with respect to the claims asserted in Counts I-III of the Complaint, and such claims are not "expressly reserved" in the Combined Plan and Disclosure Statement, the claims in Counts I-III of the Complaint are barred by *res judicata*.

**A.      All of the Elements of *Res Judicata* Are Met.**

19.     All of the elements of *res judicata* are met with respect to the claims asserted in Counts I-III of the Complaint.

**1.      The Confirmation Order Is a Final Judgment for Purposes of *Res Judicata*.**

20.     The first element of *res judicata*, that there was a final decision on the merits by a court of competent jurisdiction, is satisfied since the Confirmation Order is a final judgment in the bankruptcy proceeding. *See Browning v. Levy*, 283 F.3d 761, 772 (6th Cir. 2002) ("As a general rule, the confirmation of a plan of

8

reorganization constitutes a final judgment in bankruptcy proceedings."); *Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861, 865 (E.D. Mich. 2005) ("It is clear from this record that the confirmation by the bankruptcy court of G&P's Amended Combined Plan of Reorganization and Disclosure Statement constitutes a 'final judgment in bankruptcy proceedings.'") (citing, *Browning*, 283 F.3d at 772).

21.    Accordingly, the first element is met.

### 2.    The Adversary Proceeding Is a Subsequent Action Between a Party to the Bankruptcy Proceeding (U.S. Steel) and a Party in Privity with the Debtor (the Trustee).

22.    The second element of *res judicata*, that the subsequent action is between the same parties or their privies, is satisfied since U.S. Steel was a party to the bankruptcy proceeding and the Trustee is the successor-in-interest to the Debtor.

23.    U.S. Steel, as a creditor of the Debtor, was a party to the bankruptcy proceeding. *See Slone*, 320 B.R. at 865 ("It is undisputed that a creditor of the debtor qualifies as a party for res judicata purposes.") (citing *Sanders*, 973 F.2d at 480-81; 11 U.S.C. § 1141(a)). Although not a "party" to the pre-confirmation bankruptcy proceeding, the Liquidating Trust, as the Debtor's legal successor, is in privity with the Debtor. *See* Plan § 6.5 ("To the fullest extent permitted by law, upon the transfer of a Liquidating Trust Asset to the Liquidating Trust, the Debtors

9

shall irrevocably transfer to the Liquidating Trust, as its legal successor, all rights of the Debtors and their Estates….").   Therefore, the Adversary Proceeding is between a party to the bankruptcy proceeding and a party in privity with the Debtor, and the second element is met.

> **3.    The Preference Claim, Fraudulent Transfer Claim, and Recovery Claim Against U.S. Steel in Counts I-III of the Complaint Should Have Been Raised or Reserved in the Bankruptcy Proceeding.**

24.    The third element, that the issues in the subsequent action were litigated or should have been litigated in the prior action, is satisfied since the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim could have been brought in the bankruptcy proceeding.

25.    "An order confirming a plan of reorganization bars litigation of the claims raised in the bankruptcy proceedings and **also bars any claims that could have been raised in the bankruptcy proceedings or the confirmation proceedings** not expressly reserved in the plan of reorganization or the order confirming the plan of reorganization." *Micro-Time Mgmt. Systems, Inc.*, 1993 WL 7524, at *3 (emphasis added); *see also Browning*, 283 F.3d at 772-73 (determining that claims should have been raised or reserved since they were "related to" the bankruptcy case and, therefore, could have been heard by the bankruptcy court); *In re A.P. Liquidating Co.*, 283 B.R. 456 (Bankr. E.D. Mich.

<div align="center">10</div>

215900775.1 22144/194655

17-04393-mbm   Doc 17   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 21 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 22 of 35

2002) (concluding that because plaintiff's claims are related to the chapter 11 bankruptcy proceeding, they should have been raised before plan confirmation) (citing *Browning*).

26.  The Preference Claim, the Fraudulent Transfer Claim, and Recovery Claim are all claims that could have been heard by this Court prior to the confirmation of the Plan. *See* 28 U.S.C. § 157(a), (c). Accordingly, third element is met. *See Slone*, 320 B.R. at 866 (third element of res judicata is met since preference and fraudulent transfer claims should have been litigated in the initial Chapter 11 bankruptcy proceeding).

> **4.  There Is an "Identity of Claims" between the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim and the Debtors' Bankruptcy Proceeding.**

27.  "The final element of res judicata—that there be an 'identity of claims'—is satisfied if 'the claims arose out of the same transaction or series of transactions, or whether the claims arose out of the same core of operative facts.'" *Browning*, 283 F.3d at 773-74 (citation omitted).

28.  The Plan provides for the treatment of creditors' claims against the Debtor, including U.S. Steel's claim against the Debtor. *See* Plan § 5.3 (Class 3: Allowed General Unsecured Claims). Both the Trustee's claims asserted in Counts I-III of the Complaint (*i.e.*, the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim) and U.S. Steel's claim against the Debtor arose from the

11

215900775.1 22144/194655

17-04293-mbm   Doc 47   Filed 06/29/17   Entered 06/29/17 14:30:20   Page 22 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 23 of 35

prepetition purchase by the Debtor of steel from U.S. Steel. Thus, they both arise from the same core of operative facts. *See, e.g., In re Mickey's Enterprises, Inc.*, 165 B.R. 188, 192 (Bankr. W.D. Tex. 1994) (finding fourth element of res judicata satisfied where both debtor's preference claim against defendant and defendant's scheduled claim against debtor arose from the pre-petition purchase by debtor of gasoline from defendant); *see also Slone*, 320 B.R. at 867 (fourth element of res judicata satisfied for preference and fraudulent transfer claims). Thus, the fourth element is met.

**B.    The Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim Against U.S. Steel Are Not "Expressly Reserved" in the Combined Plan and Disclosure Statement or the Confirmation Order.**

29.    Moreover, the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim against U.S. Steel are not "expressly reserved" in the Combined Plan and Disclosure Statement or the Confirmation Order. While the Combined Plan and Disclosure Statement contains a general reservation of rights, such reservation is insufficient under *Micro-Time Mgmt. Systems* and *Browning* to avoid the *res judicata* effect of the confirmation of the Plan on the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim in this Circuit. Therefore, the claims are barred by *res judicata*, and U.S. Steel is entitled to summary judgment in its favor on Counts I-III of the Complaint.

12

215900775.1 22144/194655
17-04293-mbm  Doc 17   Filed 06/29/17   Entered 06/29/17 14:30:20   Page 23 of 34
17-04293-mbm  Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 24 of 35

30.     Even where all four elements of *res judicata* are met, there is an exception to the general rule regarding the *res judicata* effects of a confirmed Chapter 11 plan.  Under section 1123(b)(3)(B) of the Bankruptcy Code, a Chapter 11 plan may provide for "the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any [claim or interest belonging to the debtor or to the estate][.]"  11 U.S.C. § 1123(b)(3)(B).  Thus, *res judicata* will not bar the post-confirmation prosecution of a claim "expressly reserved" in the Chapter 11 plan or confirmation order.  *See Browning*, 283 F.3d at 774 ("Res judicata does not apply where a claim is expressly reserved by the litigant in the earlier bankruptcy proceeding.").

31.     In *Browning*, the Sixth Circuit held, however, that "a general reservation of rights does not suffice to avoid res judicata." *Id*. at 774.  In that case, the debtor sued its former counsel post-confirmation for legal malpractice and other breaches of duty, alleging that the law firm had fraudulently induced the debtor to accept a settlement agreement, which led to the debtor's financial hardships. *Id*. at 768.  The disclosure statement filed in connection with the plan of reorganization contained the following "omnibus reservation of rights":

> In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under section 542, 543, 544, 547, 548, 550, or 553 of

13

215900775.1 22144/194655

17-04293-mbm   Doc 17   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 24 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 25 of 35

the Bankruptcy Code.

*Browning*, 283 F.3d at 769.  The defendant moved for summary judgment, arguing

that the reservation in the disclosure statement was insufficient to overcome the *res*

*judicata* effect of the confirmation order.  *Id.* at 774.  The Sixth Circuit agreed,

finding that the blanket reservation contained in the disclosure statement did not

defeat the application of *res judicata* to the claims.  *Id.*  The Sixth Circuit

explained that:

> [The debtor]'s blanket reservation was of little value to the bankruptcy
> court and the other parties to the bankruptcy proceeding because it did
> not enable the value of [the debtor]'s claims to be taken into account
> in the disposition of the debtor's estate.  **Significantly, it neither
> names [the defendant] nor states the factual basis for the reserved
> claims.**  We therefore conclude that [the debtor]'s blanket reservation
> does not defeat the application of res judicata to its claims against [the
> defendant].

*Id.* at 775 (emphasis added); *see also Micro-Time Mgmt. Systems, Inc.*, 1993 WL

7524, at *3 ("An order confirming a plan of reorganization bars litigation of the

claims raised in the bankruptcy proceedings and also bars any claims that could

have been raised in the bankruptcy proceedings or the confirmation proceedings

not **expressly reserved** in the plan of reorganization or the order confirming the

plan of reorganization.") (emphasis added).

32.     Thus, under *Micro-Time Mgmt. Systems* and *Browning*, it is clear that

in order to reserve a claim in this Circuit, such claim must be **expressly reserved**

14

in the plan or confirmation order, which entails, at a minimum, listing the name of a defendant and the facts giving rise to the claim.

33.   In *Slone v. M2M Int'l, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861 (E.D.Mich. 2005), on facts strikingly similar to those here, the United States District Court for the Eastern District of Michigan in a thorough and reasoned opinion affirmed this Court's holding that a blanket reservation of rights provision in the plan was insufficient to avoid the *res judicata* effect of a plan.  In that case, Eric Slone, the liquidating agent of the debtor, ("Sloan") filed a lawsuit against M2M Int'l, Inc. ("M2M") seeking to recover based on an alleged preferential payment, fraudulent conveyance, breach of contract, unjust enrichment, and conversion.  *Id*. at 863.  Like the disclosure statement in *Browning*, the combined plan of reorganization and disclosure statement ("G&P's Plan") contained a general reservation of rights:

> Notwithstanding the confirmation of the Plan, except as stated herein, the Reorganized Debtor shall retain all causes of action which the Debtor and/or the Debtor in Possession may have under the Bankruptcy Code, including, but not limited to, causes of action under Chapter 5 of the Bankruptcy Code.

*Id*. at 868.  M2M filed a motion for summary judgment contending that (1) the debtor did not retain any of the causes of action within the complaint after confirmation of the plan under 11 U.S.C. § 1123(b) and (2) Slone's claims were barred by res judicata as a result of the confirmation of G&P's Plan.  *Id*. at 863-64.

After concluding that (1) Slone's claims were barred by res judicata, and (2) G&P's Plan did not preserve his claims against M2M, this Court granted M2M's motion for summary judgment. *Id*. at 864.  Slone appealed to the District Court.

34.     Finding the above-quoted reservation "virtually identical" to the blanket reservation that was at issue in *Browning*, the District Court concluded that the reservation of rights was "an insufficient basis upon which to avoid the res judicata effect of the Plan." *Id*. at 868.  The District Court noted that "[i]t is significant that G&P's Amended Plan fails to (1) name M2M, (2) describe the specific cause of action, or (3) identify the factual basis for any claim against the Defendant, **as required by *Browning***." *Slone*, 320 B.R. at 868 (citations omitted) (emphasis added).

35.     As can be seen in the Side-By-Side Comparison of Reservations of Causes of Action, attached hereto as **Exhibit 5**, the general preservation of Causes of Action and Estate Litigation in Section G of the Disclosure Statement is virtually identical to the blanket reservations of rights that were rejected by the Sixth Circuit in *Browning* and the District Court in *Slone* as insufficient to avoid the *res judicata* effect of the plan.  Importantly, the general preservation in the Combined Plan and Disclosure Statement neither mentions U.S. Steel nor describes the facts giving rise to any claim against U.S. Steel.  As such, as with the blanket reservations in *Browning* and *Slone*, it is "insufficiently specific" to avoid

16

the *res judicata* effect of the Plan.

36.     Accordingly, since the claims asserted in Count I-III of the Complaint
(*i.e.,* the Preference Claim, the Fraudulent Transfer Claim, and Recovery Claim)
were not "expressly reserved" under the Plan, they are barred by *res judicata* and
U.S. Steel is entitled to summary judgment in its favor as to these Counts.

## II.    The 502(d) Objection in Count IV Must Also Fail.

37.     Section 502(d) of the Bankruptcy Code provides, in relevant part, as
follows:

> Notwithstanding subsections (a) and (b) of this section, the court shall
> disallow any claim of any entity from which property is recoverable
> under section…550…of this title or that is a transferee of a transfer
> avoidable under section…547 [or] 548…of this title, unless such
> entity or transferee has paid the amount…for which such entity or
> transferee is liable under section…550…of this title.

11 U.S.C. § 502(d).

38.     Since the Trustee's 502(d) Objection is premised on the avoidability
of the Transfers under section 547 or 548 of the Bankruptcy Code (*i.e.,* the
Preference Claim or the Fraudulent Transfer Claim) or the recoverability of such
Transfers under section 550 of the Bankruptcy Code (*i.e.,* the Recovery Claim),
and such claims are barred by *res judicata*, the Trustee's 502(d) Objection must
also fail.  Thus, only the Overstated Objection in Count IV should remain.

215900775.1 22144/194655

17-04293-mbm   Doc 17   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 28 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 29 of 35

## Conclusion

WHEREFORE, U.S. Steel respectfully requests that (i) the Court submit proposed findings of fact and conclusions of law to the District Court finding that U.S. Steel is entitled to summary judgment on Counts I-III of the Complaint and partial summary judgment on Count IV of the Complaint based on *res judicata* and (ii) the District Court enter the proposed order attached hereto as **Exhibit 1** granting U.S. Steel summary judgment on Counts I-III of the Complaint and partial summary judgment on Count IV of the Complaint based on *res judicata*.

Dated: June 29, 2017

Respectfully submitted,

**CLARK HILL PLC**

*/s/ John R. Stevenson*
Joel D. Applebaum (P36774)
John R. Stevenson (P70241)
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 642-9692
japplebaum@clarkhill.com
jstevenson@clarkhill.com

*Counsel for United States Steel Corporation*

215900775.1 22144/194655

# EXHIBIT 4

# Certificate of Service

19

215900775.1 22144/194655

17-04293-mbm Doc 17 Filed 06/29/17 Entered 06/29/17 11:30:20 Page 30 of 34
17-04293-mbm Doc 45-5 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 31 of 35

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LSC Liquidation, Inc., *et al.*[1]                        Case No. 15-45784-mbm

       Debtors.                                    Hon. Marci B. McIvor

_____/

Gene R. Kohut, soley in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

       Plaintiff,                                  Adv. Proc. No. 17-04293-mbm

v.                                                           Hon. Marci B. McIvor

United States Steel Corporation, a
Delaware corporation,

       Defendant.

_____/

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on June 29, 2017, *Defendant's Motion for (I)
Summary Judgment on Counts I-III of the Complaint and (II) Partial Summary
Judgment on Count IV of the Complaint* was filed using the Court's CM/ECF

---

[1] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor
Industrial Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC,
Case No. 15-45788-mbm.

215900775.1 22144/194655

17-04293-mbm   Doc 45   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 31 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 32 of 35

system, which system shall send notification of the filing to all ECF participants in this adversary proceeding.

Dated:  June 29, 2017

Respectfully submitted,

**CLARK HILL PLC**

*/s/ John R. Stevenson*
John R. Stevenson (P70241)
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan  48009
Telephone: (248) 642-9692
jstevenson@clarkhill.com

*Counsel for United States Steel Corporation*

2

215900775.1 22144/194655
17-04293-mbm  Doc 17   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 32 of 34
17-04293-mbm  Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 33 of 35

# EXHIBIT 5

# Comparison of Reservations of Causes of Action

3

215900775.1 22144/194655

17-04293-mbm   Doc 17   Filed 06/29/17   Entered 06/29/17 11:30:20   Page 33 of 34
17-04293-mbm   Doc 45-5   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 34 of 35

## Side-By-Side Comparison of Reservations of Causes of Action

| Browning v. Levy | Slone v. M2M Int'l, Inc. | In re Lee Steel Corporation, et al. |
|---|---|---|
| In accordance with section 1123(b) of the Bankruptcy Code, the Company shall retain and may enforce any claims, rights, and causes of action that the Debtor or its bankruptcy estate may hold against any person or entity, including, without limitation, claims and causes of action arising under sections 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy Code. | Notwithstanding the confirmation of the Plan, except as stated herein, the Reorganized Debtor shall retain all causes of action which the Debtor and/or the Debtor in Possession may have under the Bankruptcy Code, including, but not limited to, causes of action under Chapter 5 of the Bankruptcy Code. | Pursuant to the Plan and Disclosure Statement, the Debtors for the benefit of the Committee and the Liquidating Trust and its Beneficiaries, will preserve all rights, interest, and standing to investigate and pursue, whether through negotiation or litigation, any and all Causes of Action[1] and Estate Litigation[2]. |

[1] **1.12 "Causes of Action"** means any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to, all rights and causes of action permitted under chapter 5 of the Bankruptcy Code, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, that belong to the Debtors.

[2] **1.35 "Estate Litigation"** means all rights to and proceedings arising from or relating to: (i) all Claims, (ii) objections to Claims, (iii) Causes of Action, including but not limited to, any litigation or claims that can be instituted or asserted by the Estate, the Liquidating Trust, or by any party on behalf of or for the benefit of the Estate or Liquidating Trust, including, but not limited to, preference claims, fraudulent conveyance or avoidance actions, or any other claim of or cause of action of any kind whatsoever arising under chapter 5 of the Bankruptcy Code.

# EXHIBIT F

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                                         Chapter 11

LSC Liquidation, Inc., *et al.*[1]                             Case No. 15-45784-mbm

    Debtors.                                          Hon. Marci B. McIvor

_____/

Gene R. Kohut, solely in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

    Plaintiff,                                          Adv. Proc. No. 17-04293

v.                                                              Hon. Marci B. McIvor

United States Steel Corporation, a
Delaware corporation,

    Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR (I) SUMMARY JUDGMENT ON COUNTS I-III OF THE COMPLAINT AND (II) PARTIAL SUMMARY JUDGMENT ON COUNT IV OF THE COMPLAINT

For the reasons set forth in the accompanying Brief in Support, Plaintiff,

Gene R. Kohut in his capacity as as Liquidating Trustee for the LSC

---

[1] Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor
Industrial Properties, L.L.C., Case No. 15-45785-mbm, and 4L Ventures,
LLC, Case No. 15-45788-mbm.

{00062386.DOCX }                          1

Liquidating Trust respectfully requests that the Court deny Defendant's

Motion [Docket No. 17] in its entirety.

<div align="right">

Respectfully submitted,

WOLFSON BOLTON PLLC
*Attorneys for Plaintiff*

</div>

Dated: July 13, 2017    By:_ /s/ Anthony J. Kochis_____
          Scott A. Wolfson (P53194)
          Anthony J. Kochis (P72020)
       3150 Livernois, Suite 275
       Troy, MI 48083
       Telephone: (248) 247-7105
       Facsimile: (248) 247-7099
       E-Mail: akochis@wolfsonbolton.com

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| LSC Liquidation, Inc., *et al.*[1] | Case No. 15-45784-mbm |
| Debtors. _____/ | Hon. Marci B. McIvor |
| Gene R. Kohut, solely in his capacity as Liquidating Trustee for the LSC Liquidating Trust, | |
| Plaintiff, | Adv. Proc. No. 17-04293 |
| v. | Hon. Marci B. McIvor |
| United States Steel Corporation, a Delaware corporation, | |
| Defendant. _____/ | |

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE**
**TO DEFENDANT'S MOTION FOR (I) SUMMARY JUDGMENT**
**ON COUNTS I-III OF THE COMPLAINT AND (II) PARTIAL**
**SUMMARY JUDGMENT ON COUNT IV OF THE COMPLAINT**

## I.    INTRODUCTION

The elements of *res judicata* have not been satisfied in this case for two

reasons.  First, consistent with Defendant's position that this Court lacks the

---

[1] Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm, and 4L Ventures, LLC, Case No. 15-45788-mbm.

"constitutional authority to enter final judgments or orders on the causes of action asserted in the Complaint,"[2] the Order Confirming Plan was not a final judgment by a Court of competent jurisdiction on the causes of action at issue in this adversary proceeding.  Second, the causes of action at issue in this case could not have been brought as part of plan confirmation because these causes of action require an adversary proceeding under Fed. R. Bankr. P. 7001 while plan confirmation is a contested matter under Fed. R. Bankr. P. 9024.  Therefore, the causes of action at issue here could not have been and were not litigated as part of plan confirmation.

*Res judicata* also does not apply because the Lee Steel plan contains numerous provisions related to the vesting, pursuit, and reservation of the causes of action at issue in this adversary proceeding.  Section 1123(b)(3) of the Bankruptcy Codes does not require any "magic words" to retain causes of action.  The Lee Steel Plan adequately reserves causes of action because it expressly retains preference, fraudulent conveyance, and other avoidance actions under Chapter 5 of the Bankruptcy Code.  Taken as a whole, there can be no doubt that the Lee Steel Plan reserved and vested in the Liquidating Trust the cause of action asserted against Defendant in the Complaint.

---

[2] [Adv. Proc. No. 17-04293, Docket No. 5].

## II. STATEMENT OF FACTS

### A. Debtors' bankruptcy filing and Defendant's proof of claim

Debtors filed for relief under Chapter 11 of Title 11 of the United States

Code, 11 U.S.C. §§ 101, *et seq.,* on April 13, 2015 in the United States

Bankruptcy Court for the Eastern District of Michigan. The Official Committee

of Unsecured Creditors ("Committee") was appointed by the Office of the

United States Trustee on April 23, 2015. [Docket No. 69].[3]

Debtor Lee Steel Corporation's Schedules and Statement of Financial

Affairs were filed on May 13, 2015. [Docket Nos. 128 and 129]. The

Schedules and Statement of Financial Affairs ("SOFA") were amended twice

in July 2015. [Docket Nos. 218 and 225]. As it relates to Defendant, United

States Steel Company, Debtor's Schedules list Defendant as holding an

unsecured claim in the amount of $15,234.75, and Debtor's SOFA lists

Defendant as having received transfers from Debtor during the 90 days

before the petition date totaling $1,036,684.77. [Docket No. 225, pgs. 38 and

72 of 80].

On August 19, 2015, Defendant submitted a proof of claim with Debtor's

claims agent in the amount of $25,628.00. (Exhibit 1). Defendant's proof of

claim **expressly refers to Debtor's schedules,** stating that "Debtor failed to

---

[3] Unless otherwise indicated, docket references are to the main bankruptcy case: Case No. 15-45784.

{00062387.DOCX 2 }

3

include this in scheduled claim." (Exhibit 1). Given that Debtor's Docket Nos.

218 and 225 are combined pleadings that include both Debtor's Schedules

and SOFA, Defendant appears to have reviewed and been aware of the 90-

day preferential transfers that Debtor listed Defendant as having received.

### B.   The Committee Settlement with Debtors' Lender and Derivative Standing.

On September 29, 2016, the Committee filed a motion to approve a

settlement between the Committee, Debtors, and The Huntington National

Bank. [Docket No. 366]. Relevant to Defendant's Motion, the Committee's

settlement motion stated in part:

> 11.   The Settlement Agreement further provides that Debtors will promptly seek court approval for the assignment to and derivative standing of the Committee to pursue, in the Committee's discretion pending confirmation of the proposed plan, all of Debtors' claims and causes of action, the proceeds of which will first be used to pay any unpaid allowed post-petition administrative claims.

> 12. Debtors will then draft a plan of liquidation that will (a) provide that all proceeds of the sales of Debtors' assets, cash, and other assets remaining in Debtors' estates will be used to pay allowed administrative claims and Debtors' and the Committee's professional fees as approved by the Court, with the remainder assigned to a liquidating trust; and (b) assign the remaining claims and causes of actions from the Committee to a liquidating trust. The assets of the liquidating trust will first be used to pay any unpaid remaining allowed post-petition administrative claims,

which Debtors estimate should not exceed
$750,000.00.

[Docket No. 366, p. 3 of 10]. The Committee settlement was approved by the

Court on October 6, 2015. [Docket No. 383]. Thereafter, Debtors and the

Committee entered into a stipulated order granting the Committee derivative

standing to pursue "all of Debtors' claims and causes of action." [Docket Nos.

386 and 388].

## C. Confirmation of Debtors' Plan

On November 24, 2015, the *Combined Joint Plan of Liquidation and*

*Disclosure Statement, September 30, 2015* ("Plan") was confirmed by the

*Order Granting Final Approval of Disclosure Statement and Confirming*

*Debtors' and Committee's Combined Joint Plan of Liquidation* ("Order

Confirming Plan"). [Docket Nos. 370 and 470].

Defendant was served with a copy of the Plan, but appears to have not

voted on the Plan. [Docket Nos. 395 and 457].

## D. The Committee makes demand on Defendant for return of the 90-day transfers

Before the effective date of the Plan, on November 25, 2015, the

Committee sent a demand letter to Defendant requesting return of the 90-day

transfers. (Exhibit 2). Despite using the notice address listed on Defendant's

proof of claim (see Exhibit 1), no response to the demand letter was received.

On December 15, 2015, the Committee re-sent the demand letter, c/o Defendant's general counsel. (Exhibit 3). General counsel to Defendant responded to the undersigned on December 22, 2015 and the parties subsequently discussed the 90-day transfers. (Exhibit 4).

### E. Plan Effective Date

The Effective Date of the Plan occurred on April 1, 2016. [Docket No. 778]. Under the terms of the Plan, on the Effective Date, the "Debtors and the Committee shall transfer and convey all right, title, and interest in the **Causes of Action**, **Estate Litigation**, and the Unsecured Carve-Out to the Liquidating Trust, which Assets shall automatically and irrevocably vest in the Liquidating Trust without further action on the part of the Debtors, the Committee, the Liquidating Trustee, or the Court, and with no reversionary interest in the Debtors or Committee, except as otherwise provided in the Plan." [Docket No. 370, p. 13 of 64] (emphasis added).

The Plan defines "Causes of Action" to mean "any and all actions, causes of action, rights, suits, debts, sums of money, damages, judgments, claims, and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity, or otherwise, including but not limited to, **all rights and causes of action permitted under chapter 5 of the Bankruptcy Code**, based in whole or in part upon any act or omission or other event

occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date, that belong to the Debtors." [Docket No. 370, p. 3 of 64] (emphasis added). The Plan defines "Estate Litigation" to mean "all rights to and proceedings arising from or relating to: (i) all Claims, (ii) objections to Claims, (iii) Causes of Action, including but not limited to, any litigation or claims that can be instituted or asserted by the Estate, the Liquidating Trust, or by any party on behalf of or for the benefit of the Estate or Liquidating Trust, including, but not limited to, **preference claims, fraudulent conveyance or avoidance actions, or any other claim of or cause of action of any kind whatsoever arising under chapter 5 of the Bankruptcy Code**." [Docket No. 370, p. 5 of 64] (emphasis added).

### F. Adversary Proceeding is filed against Defendant

While Defendant and the Committee/Liquidating Trustee, as applicable, had numerous conversations related to the 90-day transfers, the parties were unable to reach a resolution. The Liquidating Trustee filed this adversary proceeding on April 11, 2017. [Adv. Proc. No. 17-04293, Docket No. 1].

### G. Adversary Proceeding Status

Plaintiff and Defendant timely submitted their Rule 26(f) Report on June 13, 2017. [Adv. Proc. No. 17-04293, Docket No. 13]. The Court entered a Scheduling Order on June 27, 2017. [Adv. Proc. No. 17-04293, Docket No.

{00062387.DOCX 2 }

7

16]. Defendant filed its Motion on June 29, 2017. [Adv. Proc. No. 17-04293, Docket No. 17]. Defendant's Motion contends that Defendant is entitled to summary judgment on the basis of *res judicata* and that the Lee Steel Plan failed to adequately reserve the causes of action at issue in this adversary proceeding. [Adv. Proc. No. 17-04293, Docket No. 17].

The parties are required to complete mediation on or before August 14, 2017.

## III. <u>ARGUMENT</u>

### A. **Legal Standard**

Federal Rule of Civil Procedure 56, made applicable to adversary proceedings by Fed. R. Bankr. P. 7056, provides for judgment as a matter of law if a movant shows that there is no genuine dispute as to any material fact. "The central inquiry is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Chudzinski v. Hanif (In re Hanif)*, 530 B.R. 655, 663 (Bankr. E.D. Mich. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). "After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial." *Id.*; *Richards*

*v. Advanced Accessory Sys., LLC (In re Advanced Accessory Sys., LLC)*, 443

B.R. 756, 761-62 (Bankr. E.D. Mich. 2011).

### B.    The elements of *res judicata* are not satisfied.

The four elements of *res judicata* are:

> 1. A final decision on the merits in the first action by a court of competent jurisdiction;
>
> 2. The second action involves the same parties, or their privies, as the first;
>
> 3. The second action raises an issue actually litigated or which should have been litigated in the first action;
>
> 4. An identity of the causes of action

*Sanders Confectionery Prods. v. Heller Fin., Inc.*, 973 F.2d 474, 480 (6th Cir.

1992).   Contrary to Defendant's assertions, all of the elements have not been

satisfied.

### i.    Element 1 – a final decision on the merits by a court of competent jurisdiction.

"For a prior judgment to bar an action on the basis of *res judicata*, the

parties must have been identical in both actions; **the prior judgment must**

**have been rendered by a court of competent jurisdiction; there must be**

**a final judgment on the merits** and both cases must involve the same cause

of action." *King v. S. Cent. Bell Tel. & Tel. Co.*, 790 F.2d 524, 528 (6th Cir.

1986) (emphasis added).   In this case, there was not a final judgment by a

court of competent jurisdiction on the claims raised in this adversary proceeding.

Defendant contends that the "Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim are all claims that could have been heard by this Court prior to confirmation of the Plan." [Adv. Proc. No. 17-04293, Docket No. 17, p. 22 of 34]. Yet, Defendant also contends, both in its *Answer* and *Rule 26(f) Report*, that this Court lacks the "constitutional authority to enter final judgments or orders on the causes of action asserted in the Complaint without the parties' consent and Defendant does not consent to entry of final judgments or orders by this Court." [Adv Proc No. 17-04293, Docket Nos. 5 and 13]. Defendant cannot have it both ways. If this Court cannot enter final judgments in this case, then the first element of *res judicata* is not satisfied.

Defendant likely will contend that the report and recommendation function of this Court to the District Court cures any potential issue. Relying on similar logic, the Sixth Circuit has held, pre-*Stern*, that a confirmed plan of reorganization "may operate to bar both core and non-core proceedings" under principles of *re judicata. See Sanders Confectionery Prods. v. Heller*

*Fin., Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) ("The Fifth and Seventh Circuits[4] overlooked this ability of the district court to issue a necessary decision in a related matter in their decisions that res judicata bars only core proceedings. While the bankruptcy court could not make a final decision in a non-core proceeding, absent the consent of the parties, it could hear the matter and refer it to the district court. Through its bankruptcy jurisdiction, the district court could decide the claim, allowing for a correct adjustment of the relations between all of the parties.") (citations omitted). However, this adjunct theory of jurisdiction (the theory that jurisdiction is constitutional because a bankruptcy court is acting as an adjunct of the district court) did not survive the Supreme Court's recent decisions in *Stern, Bellingham,* and *Wellness.*[5]

*Stern* rejected the adjunct theory of jurisdiction:

> Nor can the bankruptcy courts under the 1984 Act be dismissed as mere adjuncts of Article III courts, any more than could the bankruptcy courts under the 1978 Act. The judicial powers the courts exercise in cases such as this remain the same, and a court exercising such broad powers is no mere adjunct of anyone.

---

[4] There is a split of authority among Circuit Courts on this issue, with the Fifth Circuit and Seventh Circuit rejecting the Sixth Circuit's position and holding that *res judicata* applies only to core claims. *See Howell Hydrocarbons v. Adams*, 897 F.2d 183 (5th Cir. 1990); *Barnett v. Stern*, 909 F.2d 973 (7th Cir. 1990).

[5] And, ironically, Defendant is relying on the cumulative effect of *Stern, Bellingham,* and *Wellness* to support its position that this Court lacks constitutional authority to render a final judgment.


17-04293-mbm Doc 25-1 Filed 07/13/17 Entered 07/13/17 16:39:48 Page 11 of 28

* * *

Vickie additionally argues that the Bankruptcy Court's final judgment was constitutional because bankruptcy courts under the 1984 Act are properly deemed 'adjuncts' of the district courts. We rejected a similar argument in *Northern Pipeline* . . . *and our reasoning there holds true today*.

*Stern v. Marshall*, 564 U.S. 462, 487-488, 500 (2011) (emphasis added; citation to record omitted).

*Bellingham* furthers undermines the application of *res judicata* in this case because the Supreme Court in *Bellingham* affirmed the Ninth Circuit's decision that a bankruptcy court's power "to enter a final judgment [in a fraudulent transfer case] is abrogated." *See Exec. Benefits Ins. Agency v. Arkison*, 702 F.3d 553, 565-66 (9th Cir. 2012) (*aff'd Exec. Bens. Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2166 (2014)).

Nor does *Wellness* support Defendant's *res judicata* argument. Defendant has **not consented** to this Court rendering final judgments or orders. *See Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015) ("Article III is not violated when the parties knowingly and voluntarily consent to adjudication by a bankruptcy judge."); [Docket Nos. 5 and 13].

In summary (and consistent with Defendant's position), this Court lacks the authority to render a final decision on the claims at issue in this adversary proceeding. Accordingly, the Order Confirming Plan was not (and could not

be) a **final judgment by a court of competent jurisdiction** for the purposes

of *res judicata* on the claims at issue in this adversary proceeding.  Given

*Stern's* abrogation of the "adjunct" theory of jurisdiction, the first element of

*res judicata* is not satisfied.

### ii.  Element 2 – the second action involves the same parties or their privies.

Plaintiff agrees that the second element of *res judicata* would be

satisfied if all other elements were satisfied; albeit for a different reason than

Defendant asserts.  Defendant asserts that the second element is satisfied

because the Liquidating Trustee is in privity with the Debtors.  [Docket No. 17,

p. 21 of 34].  In actuality, under the derivative standing order, it was the

Committee, not the Debtors, that held the Chapter 5 causes of action on the

Effective Date.  [Docket Nos. 386 and 388].  That is why ¶ 6.3 of the Plan

specifically states that the Debtors **and the Committee** are transferring and

conveying assets to the Liquidating Trust.  [Docket No. 370, p. 13 of 64].

Nonetheless, the Liquidating Trustee is a successor-in-interest to the Chapter

5 causes of action that were held by the Committee, and the Liquidating

Trustee agrees that privity exists.  *See Sanders Confectionery Prods. v.

Heller Fin., Inc.*, 973 F.2d 474, 481 (6th Cir. 1992) ("Res judicata also bars

those in privity with parties from bringing suit later. Privity in this sense means

a successor in interest to the party, one who controlled the earlier action,  or

{00062387.DOCX 2 }                                13

one whose interests were adequately represented.") (*citing Latham v. Wells Fargo Bank, N.A.*, 896 F.2d 979 (5th Cir. 1990)).

>       iii.    **Element 3 – the second action raises an issue actually litigated or which should have been litigated in the first action.**

The third element of *res judicata* is not satisfied. The avoidance of the transfers was not actually litigated during Plan confirmation. The Liquidating Trustee further denies that avoidance of the transfers should have been (or could have been) litigated as part of Plan confirmation.

The preference and fraudulent transfer claims at issue in this adversary proceeding are proceedings that must be brought by adversary proceeding under Fed. R. Bankr. P. 7001. A confirmation hearing, on the other hand, is a contested matter under Fed. R. Bankr. P. 9024. Because a confirmation hearing is a different type of proceeding from an adversary proceeding, this adversary proceeding does not raise issues that "should have been litigated in the first action." *See Sanders Confectionery Prods.*, *supra*. This distinction has been acknowledged by the Sixth Circuit and other bankruptcy courts in the context of *res judicata*. *See In re Micro-Time Mgmt. Sys.*, 91-2260, 91-2261, 1993 U.S. App. LEXIS 859, at *11 (6th Cir. Jan. 12, 1993) ("[T]he res judicata effect of the order confirming the plan bars claims by creditors that *could have been brought within the context of the confirmation proceedings*.")

(citations omitted; emphasis added); *Sunrise Energy Co. v. Maxus Gas Mktg. (In re Sunpacific Energy Mgmt.)*, 216 B.R. 776, 779 (Bankr. N.D. Tex. 1997) ("Simply put, the preference claim, requiring an adversary proceeding, could not have been brought as part of the confirmation proceeding, a contested matter."); *Peltz v. Worldnet Corp. (In re USN Communs., Inc.)*, 280 B.R. 573, 587 (Bankr. D. Del. 2002) ("[A] preference action is not one that 'could have been brought at the same time as' a prior confirmation hearing for the purposes of *res judicata* because the confirmation process constitutes a contested matter under the Bankruptcy Rules, whereas a preference action must be commenced as an adversary proceeding under Fed. R. Bankr. P. 7001.") (*citing Sunrise Energy Co. v. Maxus Gas Mktg. (In re Sunpacific Energy Mgmt., Inc.)*, 216 B.R. 776, 779 (Bankr. N.D. Tex. 1997)).  The claims in the Complaint were not actually litigated – nor could they have been litigated – in the confirmation context.  Therefore, confirmation of the Plan does not prevent the Liquidating Trustee from prosecuting the causes of action in this adversary proceeding.

### iv. Element 4 – identity of the causes of action.

With respect to the fourth element of *res judicata,* the Sixth Circuit examines whether an identity of the facts creating the right of action and of the evidence necessary to sustain each action exists.  *Westwood Chem. Co.*

*v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981). As set forth above, avoidance

of the transfers was not litigated and could not have been litigated as part of

Plan confirmation. Therefore, there is no identity of causes of action as

between the two actions.

**C.    Even if all of the elements of *res judicata* were satisfied, the causes of action against Defendant were expressly reserved under the Plan.**

*Res judicata* does not apply where a claim is expressly reserved by the

litigant in the earlier bankruptcy proceeding. *Browning v. Levy*, 283 F.3d 761,

774 (6th Cir. 2002) (citing *D & K Props. Crystal Lake v. Mut. Life Ins. Co.*, 112

F.3d 257, 260 (7th Cir. 1997)). In the event that the Court holds that all of the

elements of *res judicata* are satisfied, Defendant's motion would still fail. A

plan of reorganization *may provide for*:[6]

> (A) the settlement or adjustment of any claim or interest belonging to the debtor or to the estate; or
>
> (B) the retention and enforcement by the debtor, by the trustee, or by a representative of the estate appointed for such purpose, of any such claim or interest

11 U.S.C. § 1123(b)(3). The purpose of § 1123(b)(3) is to provide notice of

potential estate recoveries and not notice to potential defendants that they

---

[6] Note that the language of § 1123(b)(3) is permissive and that the statute does not state what "magic words" are required to reserve claims. The entire concept of "reserve it or lose it" is antithetical to the permissive and open-ended language that Congress used in § 1123(b)(3).

{00062387.DOCX 2 }

16

might be sued.  *See Elk Horn Coal Co., LLC v. Conveyor Mfg. & Supply, Inc.*

*(In re Pen Holdings, Inc.)*, 316 B.R. 495, 501 (Bankr. M.D. Tenn. 2004);

*Morris v. Zelch (In re Reg'l Diagnostics, LLC)*, 372 B.R. 3, 14 (Bankr. N.D.

Ohio 2007) (holding that § 1123(b)(3) "codifies the long-recognized power of

preservation, which permits chapter 11 debtors to nullify the res judicata

effect of a confirmation order for claims that are reserved in the plan" and

further noting that the "statute does not identify any particular words that must

be used to reserve the power to pursue claims after confirmation.").

Defendant cites the Sixth Circuit decision in *Browning* and an Eastern

District of Michigan decision in *Slone* to support its assertion that the

reservation of claims in the Lee Steel Plan is insufficient.  However, both

cases are distinguishable on their facts, and the reservation in this case is

adequate because the Plan (i) specifically references the vesting, pursuit, and

retention of preference and fraudulent conveyance claims, (ii) reserves

causes of action under Chapter 5 of the Bankruptcy Code, (iii) references

projected recoveries on avoidance actions in the liquidation analysis; and (iv)

incorporates by reference Debtor's Schedules and SOFA (which detail the

same transfers at issue in this adversary proceeding and which Defendant

appears to have reviewed pre-confirmation in conjunction with submitting its

proof of claim).

### i.   The Lee Steel Plan contains numerous references to the claims at issue in this adversary proceeding.

Defendant wrongly attempts to liken this case to *Browning* and *Slone*

(discussed in detail below) by ignoring all of the relevant Plan provisions

related to vesting, pursuit, and retention of assets in the Liquidating Trust by

pointing solely to one reservation paragraph from Debtor's disclosure

statement.  *See* Defendant's Exhibit 5.  This is because the plaintiffs in

*Browning* and *Slone* were forced to rely on the generic reservation

paragraphs of the respective plans because there were no other provisions

addressing the relevant claims.  In this case, however, there are numerous

provisions of the Plan that deal with the claims at issue in this adversary

proceeding.  By way of example and not limitation:

- Paragraph 6.1 addresses the formation of the Liquidating Trust and what is being transferred into the Liquidating Trust: "On the Effective Date, the Liquidating Trust shall be established for the limited purpose of: (i) administering the **Liquidating Trust Assets**[7], (ii) pursuing **Estate Litigation**; (iii) resolving all Disputed Claims as of the Effective Date, and (iii) making all Distributions provided for under the Plan in respect of Class 3 Allowed Claims and all other Claims that may become Class 3 Allowed Claims

---

[7] "Liquidating Trust Assets" are defined as all of the assets transferred or granted to the Liquidating Trust, consisting of: (i) the **Causes of Action** and **Estate Litigation**; (ii) the Unsecured Carve-Out; and (iii) all remaining Assets of the Debtors, if any, after the Debtors have paid all Statutory Fees due as of the Effective Date, Allowed Administrative Claims, Allowed Priority Claims, and Allowed Priority Tax Claims." [Docket No. 370, p. 6 of 64] (emphasis added).

{00062387.DOCX 2 }                                    18

subsequent to the Effective Date. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to United States Treasury Regulation section 301.7701-4(d). The Liquidating Trust shall be governed under the laws of the State of Michigan." [Docket No. 370, p. 13 of 64] (emphasis added).

- o As set forth above, the definition of "Estate Litigation" expressly references "**preference claims**, **fraudulent conveyance or avoidance actions**, or any other claim or cause of action of any kind whatsoever **arising under chapter 5 of the Bankruptcy Code**." [Docket No. 370, p. 5 of 64].

- o Further, the definition of "Estate Litigation" includes the defined term "Claims," which in turn incorporates the defined term "Schedules."[8] The defined term "Schedules" expressly references Debtor's SOFA, which **both names Defendant and specifically lists each transfer that the Liquidating Trustee now seeks to avoid**. [Docket No. 225]. Again, a genuine issue of material facts exists as to whether Defendant reviewed the SOFA in submitting its proof of claim, which pre-dates the Plan Effective Date by approximately two years.

- Section 5.13 of the Plan, regarding claims of General Unsecured Creditors (of which Defendant is one) states that following "resolution of (A) all **Disputed Claims**[9]; (B) **Causes of Action** and **Estate Litigation** . . . each holder of an Allowed General Unsecured Claim shall receive a Pro Rata Proportion of the **Liquidating Trust Assets** remaining after administration of the Liquidating Trust." [Docket No. 370, p. 12 of 4] (emphasis added).

---

[8] For clarity, the definitional chain is: Estate Litigation -> Claims -> Disputed Claim -> Schedules.

[9] The definition of "Disputed Claim" includes the defined term "Schedules," which is defined to include Debtor's SOFA. [Docket No. 370, pp. 4 and 8 of 64].

{00062387.DOCX 2 }                          19

- Section 6.3 of the Plan, regarding funding of the Liquidating Trust, states that on the Effective Date, "the Debtors and the Committee shall transfer and convey all right, title, and interest in the **Causes of Action, Estate Litigation**, and the Unsecured Carve-Out to the Liquidating Trust . . . ." [Docket No. 370, p. 13 of 64] (emphasis added).

- Section 6.3 further states that upon the "transfer of the **Liquidating Trust Assets**, the Liquidating Trust shall succeed to all of the Debtors' rights, title, and interest in the **Liquidating Trust Assets**, and the Debtors will have no further interest in or with respect to the **Liquidating Trust Assets**." [Docket No. 370, p. 14 of 64] (emphasis added).

- Section 6.4 of the Plan, regarding responsibilities of the Liquidating Trustee, states that the Liquidating Trustee will "commence, continue, prosecute, litigate, and/or settle and compromise **Causes of Action** and **Estate Litigation** against the Debtors and third parties on behalf of the Liquidating Trust and for the benefit of the Beneficiaries thereof." [Docket No. 370, p. 14 of 64] (emphasis added).

- Section 7.2 of the Plan, regarding establishment of a Distribution Date, states that "the Distribution Date shall be a date selected by the Liquidating Trustee as the time reasonably subsequent to completion and final liquidation of the Debtors' Assets and completion and final resolution of **Disputed Claims**, **Causes of Action**, and **Estate Litigation**." [Docket No. 370, p. 18 of 64] (emphasis added).

- Paragraph G of the Disclosure Statement states that "the Debtors for the benefit of the Committee and the Liquidating Trust and its Beneficiaries, will preserve all rights, interest, and standing to investigate and pursue, whether through negotiation or litigation, any and all **Causes of Action** and **Estate Litigation**." [Docket No. 370, p. 30 of 64] (emphasis added).

- Paragraph I of the Disclosure Statement states in part that "all of Debtors' Assets, but for **Causes of Action** and **Estate Litigation**

20

**(all of which will be transferred to the Liquidating Trust upon the Effective Date)** . . . ."  [Docket No. 370, pg. 32 of 64] (emphasis added).

- o Paragraph I of the Disclosure Statement also contains a liquidation analysis related to avoidance actions that projects recoveries between **$2.1 million and $5 million**. [Docket No. 370, p. 33 of 64].  Courts routinely consider disclosure statements to determine whether a claim is reserved.  *See Spicer v. Laguna Madre Oil & Gas II, L.L.C. (in re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 551 (5th Cir. 2011).

- The Liquidating Trust Agreement, which was an exhibit to the Plan, contains numerous references to the claims at issue in this case:

  - o Paragraph 1.1 states that the Liquidating Trust is established to "hold, administer, liquidate, and distribute **Liquidating Trust Assets** and all proceeds and profits therefrom, which are hereby granted to and deposited with the Liquidating Trustee." [Docket No. 370, p. 47 of 64] (emphasis added).

  - o Paragraph 2.2(f) describes the powers and duties of the Liquidating Trustee to include "liquidate and administer assets of the Liquidating Trust, including, but not limited to, **enforcing Causes of Action of the Liquidating Trust and collecting amounts due with respect to such Causes of Action**."  [Docket No. 370, p. 48 of 64] (emphasis added).

  - o Paragraph 2.2(g) describes the powers and duties of the Liquidating Trustee to include "compromise, settle, or abandon any **Causes of Action** of the Liquidating Trust as authorized under the Plan and this Agreement." [Docket No. 370, p. 48 of 64] (emphasis added).

  - o Paragraph 5.1 describes the Liquidating Trustee's right to bring Causes of Action: "The Liquidating Trustee shall have

the right to bring or assert **any Cause of Action** of the Liquidating Trust. The Liquidating Trustee also shall have the right **to continue to defend or prosecute or commence any case** commenced or that could have been commenced prior to the Effective Date." [Docket No. 370, p. 51 of 64] (emphasis added).

o Paragraph 6.1 describes the primary purpose of the Liquidating Trust as "to liquidate the **Liquidating Trust Assets** in an expeditious and commercially prudent manner, and all activities of the Liquidating Trustee will be limited to those activities reasonably necessary to, and consistent with, the accomplishment of that purpose." [Docket No. 370, p. 53 of 64] (emphasis added).

At a minimum, the Lee Steel Plan reserved the claims at issue in this adversary proceeding by reserving "preference claims, fraudulent conveyance or avoidance actions, or any other claim or cause of action of any kind whatsoever arising under chapter 5 of the Bankruptcy Code." [Docket No. 370]. Taken as a whole, there can be no doubt that the claims at issue in this adversary proceeding were vested in the Liquidating Trust and reserved by the Plan. Not only did the Lee Steel Plan enable parties to value the claims being pursued (liquidation analysis), the Lee Steel Plan put parties on notice that preference, fraudulent transfer, and other Chapter 5 claims would be pursued by the Liquidating Trustee on behalf of the Liquidating Trust for the benefit of unsecured creditors (of which Defendant is one).

### ii. The cases cited by Defendant are distinguishable

#### a. *Browning*

The claims at issue in *Browning* were "legal malpractice and other

breaches of duty under Ohio law." *Browning v. Levy*, 283 F.3d 761, 767 (6th

Cir. 2002). The Plan reservation at issue in *Browning* stated:

> In accordance with section 1123(b) of the Bankruptcy
> Code, the Company shall retain and may enforce any
> claims, rights, and causes of action that the Debtor or
> its bankruptcy estate may hold against any person or
> entity, including, without limitation, claims and causes
> of action arising under section 542, 543, 544, 547,
> 548, 550, or 553 of the Bankruptcy Code.

*Browning v. Levy*, 283 F.3d 761, 774-75 (6th Cir. 2002).[10] The Sixth Circuit

held that the reservation was insufficient to reserve the malpractice and

breach of duty claims because "it neither names SSD nor states the factual

basis for the reserved claims." *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir.

2002). Notably, *Browning* did not address the sufficiency required to reserve

avoidance actions under Chapter 5 of the Bankruptcy Code.

Courts in this district and across the country have reasoned that

Chapter 5 avoidance actions are different than the legal malpractice and

---

[10] Again, *Browning* is distinguishable from this case because the blanket
reservation was *the only* provision that the plaintiff could point to in arguing
that the claims were reserved. Compare this case which contains numerous
vesting and retention paragraphs.

{00062387.DOCX 2 }

23

breach of fiduciary duty claims in *Browning* and that retention of Chapter 5

avoidance actions require less specificity.[11] Further, many cases interpreting

---

[11] *See Official Comm. of Unsecured Creditors of Crowley, Milner & Co. v. Callahan (In re Crowley, Milner & Co.)*, 299 B.R. 830, 852 (Bankr. E.D. Mich. 2003) ("Preferential transfers are easily identified transactions, within a definite time frame, with easily identified potential defendants. As such, those potential claims are distinguishable from actions against officers and directors, and the reasoning from those decisions is not applicable to the case before this Court."); *In re Bleu Room Experience, Inc.*, 304 B.R. 309, 314 n.3 (Bankr. E.D. Mich. 2004) ("Courts are split over whether specific reservations of rights are required for pursuing post-confirmation preference actions. Central to the decisions in the preference cases is the fact that the creditors knew or should have known whether they received a payment from the debtor within the preference period."); *Elk Horn Coal Co., LLC v. Conveyor Mfg. & Supply, Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495, 504-05 (Bankr. M.D. Tenn. 2004) ("It is not practicable, especially in larger cases, for the debtor to identify by name in the plan or disclosure statement every entity that may have received a preferential payment. There is no common practice in Chapter 11 cases of even attempting to do so. Nothing in § 1123(b)(3) suggests such specificity is required."); *Peltz v. Worldnet Corp. (In re USN Communs., Inc.)*, 280 B.R. 573, 593 (Bankr. D. Del. 2002) ("[W]ith respect to those creditors who are the potential targets of a preference action, such creditors know, or should know, whether they received a payment from the debtor within the ninety days preceding the petition date."); *Cohen v. Tic Fin. Sys. (In re Ampace Corp.)*, 279 B.R. 145, 160 (Bankr. D. Del. 2002) ("[T]he Bankruptcy Code contemplates that debtors may seek confirmation of their plans prior to litigating all avoidance actions . . . [t]herefore . . . a general reservation in a plan of reorganization indicating the *type* or category of claims to be preserved should be sufficiently specific to provide creditors with notice that their claims may be challenged post-confirmation."); *Fleet Nat'l Bank v. Gray (In re Bankvest Capital Corp.)*, 375 F.3d 51, 59 (1st Cir. 2004) (plan language reserving "Causes of Action," which was defined to include avoidance actions, held to be sufficient); *P.A. Bergner & Co. v. Bank One, N.A. (in re P.A. Bergner & Co.)*, 140 F.3d 1111, 1117 (7th Cir. 1998) ("While there might be some logic in requiring 'specific and unequivocal' language to preserve claims belonging to the estate that have never been raised, the statute itself contains no such requirement. The courts that have spoken of

{00062387.DOCX 2 }                                    24

*Browning* have noted the impracticality of naming all defendants in large

Chapter 11 cases. *See Elk Horn Coal Co., LLC v. Conveyor Mfg. & Supply,*

*Inc. (In re Pen Holdings, Inc.)*, 316 B.R. 495, 504-05 (Bankr. M.D. Tenn.

2004) ("It is not practicable, especially in larger cases, for the debtor to

identify by name in the plan or disclosure statement every entity that may

have received a preferential payment. There is no common practice in

Chapter 11 cases of even attempting to do so."); *Cohen v. Tic Fin. Sys. (In re*

*Ampace Corp.)*, 279 B.R. 145, 159 (Bankr. D. Del. 2002) ("[I]n large chapter

11 cases, the investigation and litigation of all possible avoidance actions to

final judgment can take years. To force the debtor to remain in bankruptcy

until a final determination of all possible preference actions is made would act

as a detriment to both the debtor and its creditors by slowing down the

reorganization process. In most of the large chapter 11 cases in this Court,

the plan of reorganization and/or liquidation is often confirmed before the

debtor and/or a trustee has undertaken a detailed investigation of the

potential preference actions. In large Chapter 11 cases there may be

---

the need for 'specific' and 'unequivocal' language have focused on the requirement that plans unequivocally retain claims of a given type, not on any rule that individual claims must be listed specifically."); *Yaquinto v. Ehrman (In re Hart Oil & Gas)*, Nos. 12-13558 t11, 14-01138 t, 2016 Bankr. LEXIS 4320, at *16 (U.S. Bankr. D.N.M. Dec. 13, 2016) ("a statement in a plan that the proponent reserves 'all § 547 claims' is sufficient. This is the universal rule.") (citations omitted).

{00062387.DOCX 2 }                                         25

hundreds or even thousands of transaction within the 90-day period and considerable time and effort is needed to examine those transactions in light of the numerous defenses provided for in § 547(c).").  This Court may take judicial notice of the fact that this was a large Chapter 11 case, 59 avoidance action adversary proceedings were filed, and many avoidance claims were settled without filing an adversary proceeding.  It would have been impossible to have litigated all of these matters before Plan confirmation, and it is certainly impracticable to name each and every potential defendant under these circumstances.  Accordingly, *Browning* is not applicable to the causes of action at issue in this adversary proceeding (and even if it were, the claims were adequately reserved).

### b.   *Slone*

The claims at issue in *Slone* were preference, fraudulent transfer, breach of contract, unjust enrichment, and conversion.  *Slone v. M2M Int'l, Inc. (in re G-P Plastics, Inc.)*, 320 B.R. 861, 863 (E.D. Mich. 2005). The summary judgment decision of this Court was affirmed by the District Court. *See Slone, supra.*  However, this Court's decision was a narrow one, limited to "the facts of this specific case." (Exhibit 5, p. 57).  Indeed, this Court acknowledged that: (i) "the *Browning* decision is arguably distinguishable from the instant case because *Browning* did not involve a preference action,"

and (ii) in response to the suggestion that a plaintiff must specifically identify every single potential defendant, this Court noted: "I can't possibly believe that that is what *Browning* meant." (Exhibit 5, pp. 56 and 62). It appears that the fatal flaw in *Slone* was that the blanket reservation was "even less specific than the language used in the *Browning* case . . . ." (Exhibit 5, p. 57).

*Slone* is distinguishable from this case because *Slone* dealt with claims other than Chapter 5 avoidance claims and because the Lee Steel Plan contains numerous provisions dealing with the vesting, prosecution, and retention of the claims at issue in this adversary proceeding. The Lee Steel Plan specifically references "preference claims, fraudulent conveyance or avoidance actions." [Docket No. 370, p. 5 of 64]. The reference to preference and fraudulent claims is just as specific (if not more specific) than a statutory reference (*i.e.*, § 547 or § 548) and satisfies both *Browning* and *Slone* because it states the factual basis for the reserved claims.

### IV.   **CONCLUSION**

For all of the reasons set forth above, the elements of *res judicata* have not been satisfied and, even if they were, the claims against Defendant were adequately reserved. Accordingly, Defendant's Motion should be denied.

Respectfully submitted,

WOLFSON BOLTON PLLC
*Attorneys for Plaintiff*

Dated: July 13, 2017

By: /s/ Anthony J. Kochis
      Scott A. Wolfson (P53194)
      Anthony J. Kochis (P72020)
3150 Livernois, Suite 275
Troy, MI 48083
Telephone: (248) 247-7105
Facsimile: (248) 247-7099
E-Mail: akochis@wolfsonbolton.com

## EXHIBIT INDEX

| Exhibit 1 | Defendant's Proof of Claim |
|-----------|----------------------------|
| Exhibit 2 | Demand Letter Sent to Defendant |
| Exhibit 3 | Follow Up Letter to Defendant |
| Exhibit 4 | Response From Defendant re Demand Letter |
| Exhibit 5 | Transcript re *Slone v. M2M International* |

| United States Bankruptcy Court for the Eastern District of Michigan | **PROOF OF CLAIM FORM** |
|---|---|

United States Bankruptcy Court for the Eastern District of Michigan
Lee Steel Corporation Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 4420
Beaverton, OR 97076-4420

**THIS SPACE IS FOR COURT USE ONLY**

| Name of Debtor Against Which Claim is Held: | Case No. of Debtor: |
|---|---|
| LEE STEEL CORPORATION | 15-45784 (MBM) |

Filed: USBC - Eastern District of Michigan
Lee Steel Corporation
15-45784(MBM)

**0000000100**

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C § 503.*

Name and address of creditor (and name and address where notices should be sent if different from creditor):
LSC {CREDITOR.DBF,CREDNUM}CREDNUM # 1000000868******
BAR(23) MAILID *** 000093223824 ***
UNITED STATES STEEL CORP.
ATTN: MICHELLE O'NEILL AND BRIAN MCSHEA
NON PRIME
6800 RELIABLE PARKWAY
CHICAGO, IL 60686

Telephone number:          Email Address:

☐ Check this box to indicate that this claim amends a previously filed claim.

**Court Claim Number:** _____
*(If known)*
Filed on: _____

**RECEIVED**

AUG 1 9 2015

LEGAL SERVICES

Name and address where payment should be sent (if different from above):

Telephone number:          Email Address:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

**THIS SPACE IS FOR COURT USE ONLY**

**5.   Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

1. **Amount of Claim as of Date Case Filed:** $ **25,628.00**

If all or part of your claim is secured, complete Item 4.

If all or part of your claim is entitled to priority, complete item 5.

If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

2. **Basis for Claim:** Double payment of Invoices     *(See instruction #2 on reverse side)*

3. **Last four digits of any number by which creditor identifies debtor:** 2443
   3a. Debtor may have scheduled account as: Debtor failed to include this in
   *(See instruction #3a on reverse side)*     Scheduled claim

☐ Wages, salaries or commissions (up to $12,475), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,775 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(____).

**Amount entitled to priority:**

$ _____

4. **Secured Claim** *(See instruction #4 on reverse side)*
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
Nature of property or right of setoff:  ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe: _____

Value of Property: $_____   Annual Interest Rate _____% ☐ Fixed  or  ☐ Variable
*(when case is filed)*

Amount of arrearage and other charges as of time case filed included in secured claim, if any:
$_____

Basis for perfection: _____

Amount of Secured Claim: $_____   Amount Unsecured: $_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____   *(See instruction #6 on reverse side)*

7. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. *(See instruction #7 on reverse side)*

8. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. *(See instruction #8 on reverse side and definition of "redacted".)*
**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**
If the documents are not available, please explain:

9. **Signature:** *(See Instruction #9 on reverse side)*   Check the appropriate box.
☒ I am the creditor   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their   ☐ I am a guarantor, surety, indorser, or other codebtor.
(Attached a copy of power of attorney, if any)   authorized agent. (See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Brian McShea     Title: Attorney     Company: United States Steel Corporation

Address and telephone number
(if different from notice address above):
600 Grant St., Suite 1500
Pittsburgh, PA 15219
Telephone number: (412)433-2900   email: bmmcshea@uss.com

(Signature)     8/17/2015 (Date)

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Name of Debtor, and Case Number:**
Fill in the name of the Debtor in the bankruptcy case, and the bankruptcy case number.
Case No. 15-45784 – Lee Steel Corporation
Case No. 15-45785 – Taylor Industrial Properties, L.L.C.
Case No. 15-45788 – 4L Ventures, LLC

*If your Claim is against multiple Debtors, complete a separate form for each Debtor.*

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim:**
Check whether the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See Definitions.) If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority. (See Definitions.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9)**
State the value of any goods received by the debtor within 20 days before the date of commencement in which the goods have been sold to the debtor in the ordinary course of the debtor's business.

**7. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**8. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**9. Date and Signature:**
The individual completing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief. Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, attach a complete copy of any power of attorney, and provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the Claims Agent at one of the following addresses:

**If by First-Class Mail:**
Lee Steel Corporation Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 4420
Beaverton, OR 97076-4420

**If by Hand Delivery or Overnight Mail:**
Lee Steel Corporation Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff)..

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax identification, or financial-account number, all but the initials of a minor's name and only the year of any person's state of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

---

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the Claims Agent's system (http://dm.epiq11.com/LSC ) to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq.*), and any applicable orders of the bankruptcy court.



United States Steel Corporation
Law Department
600 Grant Street, Room 1500
Pittsburgh, PA 15219-2800
Tel: 412.433.2900
Fax: 412.433.2843
E-mail: bmmcshea@uss.com

**Brian M. McShea**
Counsel

August 18, 2015

Lee Steel Corporation Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

RE:     Lee Steel Corporation
        Case No. 15-45784 (MBM)
        United States Bankruptcy Court for the Eastern District of Michigan

To Whom It May Concern:

Enclosed please find one original and two copies of United States Steel Corporation's Proof of Claim Form in the above captioned case. Kindly time stamp one of the enclosed copies and return to me in the enclosed, self-addressed stamped envelope.

Respectfully submitted,

Brian M. McShea
Counsel - Commercial

Enclosures



Exhibit 1

The following document U. S. Steel payment to Lee Steel of two invoices totaling $25,628.68, where Lee Steel had subtracted the identical amount from amounts owed to U. S. Steel as a contra/set-off.   As a result U. S. Steel has essentially paid the invoices twice.

<u>Prev</u>     <u>Next</u>

## Lockbox 866800 - U S Steel Receivables LLC - Monthly CD on 01/30/2015

### Check Transaction ID G-2617260

| Lockbox | CHI-866800 | Ledger Date | 01/20/2015 | Amount | $ 211,836.31 |
|---------|-----------|-------------|-----------|--------|-------------|
| | | | | Check Num | 111425 |
| Batch | 2 | Item | 1 | | |

### Transaction-level Keyed Fields

| Remitter Name | LEE STEEL CORPORATION | Total Discount Amt | $ 0.00 |
|---------------|----------------------|-------------------|--------|

### Invoice-level Keyed Fields

| Invoice | Page | Invoice Number | Net Invoice Amount |
|---------|------|----------------|--------------------|
| 1 | 2 | 419589309 | $ 14,972.10 |
| 2 | 2 | 161628220 | $ 11,055.60 |
| 3 | 2 | 161628225 | $ 14,600.25 |
| 4 | 2 | 419589283 | $ 16,582.50 |
| 5 | 2 | 419589098 | $ 30,927.60 |
| 6 | 2 | 419590092 | $ 15,348.30 |
| 7 | 2 | 161631021 | $ 8,981.29 |
| 8 | 2 | 419589802 | $ 17,051.10 |
| 9 | 2 | 419589602 | $ 16,285.50 |
| 10 | 2 | 419589466 | $ 15,790.50 |
| 11 | 2 | 161628766 | $ 8,940.40 |
| 12 | 2 | 161628771 | $ 15,753.85 |
| 13 | 2 | 419589248 | $ 33,277.20 |
| 14 | 2 | 541725435 | $ 17,898.80 |
| 15 | 2 | CONTRA | ($ 25,628.68) |

•Lockbox 866800 - U S Steel Receivables LLC - Monthly CD on 01/30/2015        Page 2 of 2

## Check



*Bank Chicago A/R Advantage.*

Lockbox 866800 - U S Steel Receivables LLC - Monthly CD on 01/30/2015

Page 2 of 3

Page 2. See <u>Back-side Image</u>

Check:  111425  Date:  1/16/15  Vendor: UNITED STATES STEEL CORP. Page 1 of 1

| Voucher | Reference | Date | Amount | Disc | Paid |
|---|---|---|---|---|---|
| 210981 | 419-589309 | 11/17/14 | 14972.10 | 0.00 | 14972.10 |
| 210982 | 161-628220 | 11/17/14 | 11055.60 | 0.00 | 11055.60 |
| 210983 | 161-628225 | 11/17/14 | 14600.25 | 0.00 | 14600.25 |
| 210984 | 419-589283 | 11/17/14 | 16582.50 | 0.00 | 16582.50 |
| 210985 | 419-589098 | 11/17/14 | 30927.60 | 0.00 | 30927.60 |
| 211008 | 419-590092 | 11/20/14 | 15348.30 | 0.00 | 15348.30 |
| 211009 | 161-631021 | 11/20/14 | 8981.29 | 0.00 | 8981.29 |
| 211019 | 419-589802 | 11/19/14 | 17051.10 | 0.00 | 17051.10 |
| 211028 | 419-589602 | 11/18/14 | 16285.50 | 0.00 | 16285.50 |
| 211029 | 419-589466 | 11/18/14 | 15790.50 | 0.00 | 15790.50 |
| 211030 | 161-628766 | 11/17/14 | 8940.40 | 0.00 | 8940.40 |
| 211031 | 161-628771 | 11/17/14 | 15753.85 | 0.00 | 15753.85 |
| 212486 | 419-589248 | 11/17/14 | 33277.20 | 0.00 | 33277.20 |
| 213051 | 541-725435 | 10/27/14 | 17898.80 | 0.00 | 17898.80 |
| 614160 CONTRA | | 12/03/14 | 25628.68 | 0.00 | 25628.68 |

Totals:  211836.31  0.00  211836.31

 **Invoice 221017 - $25,628.68**
Heather Sella    to: Michelle R O'Neill                    04/17/2015 11:32 AM

History:              This message has been replied to.

Invoice 221017 was paid by check 620126345 4/2/15.
The check totaled $25,670.62 due to invoice XN100045001 for $41.94 also being paid on it.

Thanks!
Heather Sella
United States Steel Corporation
Phone: (412) 433-3220
hsella@uss.com

1/16/15 → Contra on Ck. 111425
DED 968151

4/17 →

Pd 4/2/2015



**LEE STEEL CORPORATION**
45525 Grand River Ave
Novi, MI 48374
Phone: 313-925-2100 Fax: 248-354-8060

Invoice #        221017

Page  1

Acct:   1992   412-433-2340

**Sold To:**
UNITED STATES STEEL CORP.
ACCTS. PAYABLE DEPT.
P.O. BOX 267
PITTSBURGH PA   15230

**Ship To:**
C/O USS C/O FORD MOTOR
C/O FLAT ROCK ASSEMBLY C/O
DELACO INTEGRATED TERMINALS
25325 HALL ROAD
WOODHAVEN MI  48183

| Carrier<br>MALT | F.O.B.<br>CUSTOMER | Terms<br>Net 60 | B/L<br>221017 | Shipped<br>3/10/14 | Invoice Date<br>3/10/14 |
|---|---|---|---|---|---|

| Wgt | Type | Description | | Price | Amount |
|---|---|---|---|---|---|
| 46640 | GHD | 0.0276Nom X 0068.4251" X Coil | CWT | 54.9500 | 25628.68 |

CR_COLD_ROLL_SHEET_CTL_C_SHO|P
COLD ROLL MATERIAL AR33 8C347 347B FOR
PROTEC FORD DELACO INTEGRATED
Cust Order # : 20121279
Part Number  : 9675000180
Sales Order  : 204905-1

| Lift | Tag<br>111873-1A | Weight<br>46640 |
|---|---|---|
| | | 46640 |

1/22 → Sent e-mail to K. Sobecki
      re: status

Total Invoice:  $    25628.68

Cancled per S. Bateman/K. Sobecki

PO will be regenerated K. Sobecki

IM11639596 10/27/14 → PO will be regenerated (S. Bateman)
IM11650259 11/13/14 → Order needs rewritten. (D. Holechko)

K. Sobecki - LMIC 2/27
   Sent e-mail 3/2

We will replace all defective material, but seller will not allow any claims for labor or damages resulting from said material. All claims must be made within 10 days of receipt of goods.
We certify that these goods were produced in compliance with all applicable requirements of Sections 6,7 and 12 of the Fair Labor Standards Act, as amended, and of regulations and orders of
the United States Department of Labor issued under Section 14 thereof.

EBJ                    **CUSTOMER INVOICE**

Front Image



Back Image



United States Steel Corporation
Law Department
600 Grant Street, Room 1500
Pittsburgh, PA  15219-2800
Tel: 412.433.2900
Fax: 412.433.2843
E-mail: bmmcshea@uss.com

**Brian M. McShea**
Counsel

August 18, 2015

Lee Steel Corporation Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
10300 SW Allen Blvd
Beaverton, OR 97005

RE:   Lee Steel Corporation
      Case No. 15-45784 (MBM)
      United States Bankruptcy Court for the Eastern District of Michigan

To Whom It May Concern:

Enclosed please find one original and two copies of United States Steel Corporation's
Proof of Claim Form in the above captioned case. Kindly time stamp one of the enclosed copies
and return to me in the enclosed, self-addressed stamped envelope.

Respectfully submitted,

Brian M. McShea
Counsel - Commercial

Enclosures

United States Bankruptcy Court for the Eastern District of Michigan
Lee Steel Corporation Claims Processing Center
c/o Epiq Bankruptcy Solutions, LLC
P.O. Box 4420
Beaverton, OR 97076-4420

| Name of Debtor Against Which Claim is Held: | Case No. of Debtor: |
|---|---|
| LEE STEEL CORPORATION | 15-45784 (MBM) |

**PROOF OF CLAIM FORM**

THIS SPACE IS FOR COURT USE ONLY

NOTE: *This form should not be used to make a claim for an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) arising after the commencement of the case. A "request" for payment of an administrative expense (other than a claim asserted under 11 U.S.C. § 503(b)(9)) may be filed pursuant to 11 U.S.C. § 503.*

Name and address of creditor (and name and address where notices should be sent if different from creditor):

LSC (CREDITOR.DBF,CREDNUM)CREDNUM # 1000000868******
BAR(23) MAILID *** 000093223824 ***
UNITED STATES STEEL CORP.
ATTN: MICHELLE O'NEILL AND BRIAN MCSHEA
NON PRIME
6800 RELIABLE PARKWAY
CHICAGO, IL 60686

Telephone number: _____ Email Address: _____

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim
Number:_____
   *(if known)*
Filed on: _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

Name and address where payment should be sent (if different from above):

THIS SPACE IS FOR COURT USE ONLY

Telephone number: _____ Email Address: _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries or commissions (up to $12,475), earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,775 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(\_\_\_\_).

**Amount entitled to priority:**

$_____

1. Amount of Claim as of Date Case Filed: $ 25,628.00
   If all or part of your claim is secured, complete Item 4.
   If all or part of your claim is entitled to priority, complete item 5.
   If all or part of your claim qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9), complete Item 6.
   ☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of interest or additional charges.

2. Basis for Claim: Double payment of Invoices    (*See instruction #2 on reverse side*)

3. Last four digits of any number by which creditor identifies debtor: 2443
   3a. Debtor may have scheduled account as: Debtor failed to include this in
   (*See instruction #3a on reverse side*)    Scheduled claim

4. Secured Claim (*See instruction #4 on reverse side*)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.
   Nature of property or right of setoff:   ☐ Real Estate   ☐ Motor Vehicle   ☐ Other
   Describe: _____
   Value of Property: $_____ Annual Interest Rate \_\_\_\_\_% ☐ Fixed  or  ☐ Variable
   (when case is filed)
   Amount of arrearage and other charges as of time case filed included in secured claim, if any:
   $_____
   Basis for perfection: _____
   Amount of Secured Claim: $_____   Amount Unsecured: $_____

6. Amount of Claim that qualifies as an Administrative Expense under 11 U.S.C. §503(b)(9): $_____   (*See instruction #6 on reverse side*)

7. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (*See instruction #7 on reverse side*)

8. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (*See instruction #8 on reverse side and definition of "redacted".*)
   DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.
   If the documents are not available, please explain:

9. Signature: (*See Instruction #9 on reverse side*)  Check the appropriate box.
   ☑ I am the creditor   ☐ I am the creditor's authorized agent.   ☐ I am the trustee, or the debtor, or their   ☐ I am a guarantor, surety, indorser, or other codebtor.
   (Attached a copy of power of attorney, if any)   authorized agent. (See Bankruptcy Rule 3004.)   (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.
Print Name: Brian McShea    Title: Attorney    Company: United States Steel Corporation
Address and telephone number
(if different from notice address above):
600 Grant St., Suite 1500
Pittsburgh, PA 15219

B. McS    8/17/2015
(Signature)    (Date)

Telephone number: (412) 433-2900    email: bmmcshea@uss.com



Exhibit 1

The following document U. S. Steel payment to Lee Steel of two invoices totaling $25,628.68, where Lee Steel had subtracted the identical amount from amounts owed to U. S. Steel as a contra/set-off.   As a result U. S. Steel has essentially paid the invoices twice.

Lockbox 866800 - U S Steel Receivables LLC - Monthly CD on 01/30/2015          Page 1 of 2

<u>Prev</u>    <u>Next</u>

## Lockbox 866800 - U S Steel Receivables LLC - Monthly CD on 01/30/2015

### Check Transaction ID G-2617260

| Lockbox | CHI-866800 | Ledger Date | 01/20/2015 | Amount | $ 211,836.31 |
|---------|-----------|-------------|-----------|--------|--------------|
| | | | | Check Num | 111425 |
| Batch | 2 | Item | 1 | | |

### Transaction-level Keyed Fields

| Remitter Name | LEE STEEL CORPORATION | Total Discount Amt | $ 0.00 |
|---------------|----------------------|--------------------|--------|

### Invoice-level Keyed Fields

| Invoice | Page | Invoice Number | Net Invoice Amount |
|---------|------|----------------|--------------------|
| 1 | 2 | 419589309 | $ 14,972.10 |
| 2 | 2 | 161628220 | $ 11,055.60 |
| 3 | 2 | 161628225 | $ 14,600.25 |
| 4 | 2 | 419589283 | $ 16,582.50 |
| 5 | 2 | 419589098 | $ 30,927.60 |
| 6 | 2 | 419590092 | $ 15,348.30 |
| 7 | 2 | 161631021 | $ 8,981.29 |
| 8 | 2 | 419589802 | $ 17,051.10 |
| 9 | 2 | 419589602 | $ 16,285.50 |
| 10 | 2 | 419589466 | $ 15,790.50 |
| 11 | 2 | 161628766 | $ 8,940.40 |
| 12 | 2 | 161628771 | $ 15,753.85 |
| 13 | 2 | 419589248 | $ 33,277.20 |
| 14 | 2 | 541725435 | $ 17,898.80 |
| 15 | 2 | CONTRA | ($ 25,628.68) |

Lockbox 866800 - U S Steel Receivables LLC - Monthly CD on 01/30/2015            Page 2 of 2

## Check



*Bank Chicago A/R Advantage.*



**Invoice 221017 - $25,628.68**

Heather Sella   to: Michelle R O'Neill                    04/17/2015 11:32 AM

History:              This message has been replied to.

Invoice 221017 was paid by check 620126345 4/2/15.
The  check totaled $25,670.62 due to invoice XN100045001 for $41.94 also being paid on it.


Thanks!
Heather Sella
United States Steel Corporation
Phone: (412) 433-3220
hsella@uss.com

1/10/15 → Contra on CK 111425
PED 9168151

4/7 →

Pd 4/2/2015





CORPORATION
45525 Grand River Ave
Novi, MI 48374
Phone: 313-925-2100 Fax: 248-354-8060

Invoice #        221017

Page  1

Acct:    1992  412-433-2340

Sold To:
UNITED STATES STEEL CORP.
ACCTS. PAYABLE DEPT.
P.O. BOX 267
PITTSBURGH PA   15230

Ship To:
C/O USS C/O FORD MOTOR
C/O FLAT ROCK ASSEMBLY C/O
DELACO INTEGRATED TERMINALS
25325 HALL ROAD
WOODHAVEN  MI  48183

| Carrier | F.O.B. | Terms | B/L | Shipped | Invoice Date |
|---|---|---|---|---|---|
| MALT | CUSTOMER | Net 60 | 221017 | 3/10/14 | 3/10/14 |

| Wgt | Type | Description | | Price | Amount |
|---|---|---|---|---|---|
| 46640 | GHD | 0.0276Nom X 0068.4251" X Coil | CWT | 54.9500 | 25628.68 |

CR_COLD_ROLL_SHEET_CTL_C_SHO|P
COLD ROLL MATERIAL AR33 8C347 347B FOR
PROTEC FORD DELACO INTEGRATED
Cust Order # : 20121279
Part Number  : 9675000180
Sales Order  : 204905-1

Lift        Tag            Weight
            111873-1A        46640
                            ─────
                            46640

1/22 → Sent e-mail to K. Sobecki
       re: status

Total Invoice:  $      25628.68

Cancled per S. Bateman/K. Sobecki

PO will be regenerated K. Sobecki

IM1630596 10/27/14 → PO will be regenerated (S. Bateman)
IM1650259 11/13/14 → Order needs rewritten (D. Holechko)

    K. Sobecki - LMIC 2/27
        sent e-mail 3/2

We will replace all defective material, but seller will not allow any claims for labor or damages resulting from said material. All claims must be made within 10 days of receipt of goods. We certify that these goods were produced in compliance with all applicable requirements of Sections 6,7 and 12 of the Fair Labor Standards Act, as amended, and of regulations and orders of the United States Department of Labor issued under Section 14 thereof.
EBJ

**CUSTOMER INVOICE**

Front Image

**United States Steel Corporation**
Pittsburgh, PA 15219

BNY Mellon, N.A
Pittsburgh, PA

0620126345

8-26
430

DO NOT CASH UNLESS WARNING BAND AND CHECK BACKGROUND ARE BLUE, WATERMARK ON BACK, HOLD AT ANGLE TO VIEW.

****************************************************
TWENTY-FIVE THOUSAND SIX HUNDRED SEVENTY and 62/100 ***
DOLLARS*********************************************

04/02/2015

VOID AFTER 90 DAYS

PAY ONLY 25670 G2
SIX SEVEN
TWO FIVE ZERO CTSCTS

#BWNMFFK

TO THE ORDER OF

LEE STEEL CORP
45525 GRAND RIVER AVENUE
NOVI, MI 48374

0044

AUTHORIZED SIGNATURE REQUIRED

Back Image

0485055

FEDERAL RESERVE BOARD OF GOVERNORS REG. CC

For Deposit Only
Huntington Bank
Lee Steel

Lee Steel

ENDORSE CHECK HERE

X

DO NOT WRITE/SIGN/STAMP BELOW THIS LINE
DEPOSITORY BANK ENDORSEMENT

UPS CampusShip: Shipment Label                                    Page 1 of 1

**UPS CampusShip: View/Print Label**

1. **Ensure there are no other shipping or tracking labels attached to your package.** Select the Print button on the print dialog box that appears. Note: If your browser does not support this function select Print from the File menu to print the label.

2. **Fold the printed label at the solid line below.** Place the label in a UPS Shipping Pouch. If you do not have a pouch, affix the folded label using clear plastic shipping tape over the entire label.

3. **GETTING YOUR SHIPMENT TO UPS**
   **Customers with a Daily Pickup**
   Your driver will pickup your shipment(s) as usual.

   **Customers without a Daily Pickup**
   Take your package to any location of The UPS Store®, UPS Access Point(TM) location, UPS Drop Box, UPS Customer Center, UPS Alliances (Office Depot® or Staples®) or Authorized Shipping Outlet near you. Items sent via UPS Return Services(SM) (including via Ground) are also accepted at Drop Boxes. To find the location nearest you, please visit the Resources area of CampusShip and select UPS Locations.
   Schedule a same day or future day Pickup to have a UPS driver pickup all your CampusShip packages.
   Hand the package to any UPS driver in your area.

| UPS Access Point™ | UPS Access Point™ | UPS Access Point™ |
|---|---|---|
| THE UPS STORE | THE UPS STORE | THE UPS STORE |
| 1735 E CARSON ST | 3945 FORBES AVE | 4885 MCKNIGHT RD |
| PITTSBURGH ,PA 15203 | PITTSBURGH ,PA 15213 | PITTSBURGH ,PA 15237 |

FOLD HERE



# W|B   WOLFSON BOLTON PLLC

3150 Livernois, Suite 275
Troy, Michigan  48083
www.wolfsonbolton.com

Anthony J. Kochis
Telephone: (248) 247-7105
Facsimile: (248) 247-7099
E-Mail: akochis@wolfsonbolton.com

November 25, 2015

**Via U.S. Mail**

**SUBJECT TO MRE AND FRE 408**

United States Steel Corp.
6800 Reliable Parkway
Chicago, IL 60686

　　　　Re:　*In re Lee Steel Corporation, et al.*, Case No. 15-45784-mbm, United States
　　　　　　Bankruptcy Court for the Eastern District of Michigan

Dear Sir or Madam,

　　　　Our firm represents the Official Committee of Unsecured Creditors of Lee Steel
Corporation ("Committee"). On April 13, 2015 ("Petition Date"), Lee Steel Corporation,
Taylor Industrial Properties, L.L.C., and 4L Ventures, LLC ("Debtors") filed for relief under
chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States
Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court"). On October 6,
2015, the Bankruptcy Court entered an order granting the Committee authority to initiate
claims on behalf of the Debtors, including avoidance actions arising under Chapter 5 of the
Bankruptcy Code. [Docket No. 388].

　　　　According to the records that we have reviewed, United States Steel Corp. ("Recipient")
received transfers of property from one or more of the Debtors in the aggregate amount of at
least $1,036,684.77 ("Transfers") during the 90 day period before the Petition Date. The
Transfers were made to or for the benefit of Recipient, were made for or on account of
antecedent debt owed by one of the Debtors to Recipient, were made while the applicable
Debtor(s) were insolvent, and enabled Recipient to receive more than it would have received
had the Transfers not been made.

　　　　Accordingly, the Transfers are avoidable and may be recovered from you under
sections 547 and 550 of the Bankruptcy Code. Alternatively, the Transfers may be
avoidable under section 548 of the Bankruptcy Code if the Debtor making the Transfer did
not receive reasonably equivalent value in exchange or under section 549 if the Transfer
occurred after the Petition Date.

　　　　The Committee intends to file adversary proceedings to recover transfers that may
be avoided and recovered for the bankruptcy estate pursuant to sections 547 through 550 of

the Bankruptcy Code in the coming weeks. However, the Committee recognizes merit in settling claims before litigation if the bankruptcy estates can receive adequate value. The Committee is currently willing to settle its claims in exchange for payment of 90% of the Transfers. **Please contact me on or before December 14, 2015 to accept this offer.**

The Committee's investigation into this matter is continuing. Accordingly, the Committee reserves the right to seek additional or other relief if the Committee's investigation reveals information indicating that additional Transfers may be avoidable or that the Committee or Debtors may have other causes of action.

Sincerely,

Anthony J. Kochis



## W|B  WOLFSON BOLTON PLLC

3150 Livernois, Suite 275
Troy, Michigan  48083
www.wolfsonbolton.com

Anthony J. Kochis
Telephone: (248) 247-7105
Facsimile: (248) 247-7099
Email: akochis@wolfsonbolton.com

**Via U.S. Mail**

December 15, 2015

US STEEL CORPORATION
Attn: Ms. Suzanne Rich Folsom
600 GRANT ST., STE. 6100
PITTSBURGH, PA 15219

     **Re:**   *In re LSC Liquidation, Inc., et al.*, Case No. 15-45784-mbm

Dear Ms. Folsom,

     I am enclosing a copy of a demand letter sent from our office to United States Steel Corp. that is dated November 25, 2015.  We have not received a response to the letter, but given the size of the claim, I am forwarding a copy to you.  Please contact me to discuss.

     Sincerely,

     Anthony J. Kochis

Encl.

# W|B  WOLFSON BOLTON PLLC

3150 Livernois, Suite 275
Troy, Michigan 48083
www.wolfsonbolton.com

Anthony J. Kochis
Telephone: (248) 247-7105
Facsimile: (248) 247-7099
E-Mail: akochis@wolfsonbolton.com

November 25, 2015

**Via U.S. Mail**

**SUBJECT TO MRE AND FRE 408**

United States Steel Corp.
6800 Reliable Parkway
Chicago, IL 60686

> **Re:** *In re Lee Steel Corporation, et al.*, Case No. 15-45784-mbm, United States
> Bankruptcy Court for the Eastern District of Michigan

Dear Sir or Madam,

Our firm represents the Official Committee of Unsecured Creditors of Lee Steel Corporation ("Committee"). On April 13, 2015 ("Petition Date"), Lee Steel Corporation, Taylor Industrial Properties, L.L.C., and 4L Ventures, LLC ("Debtors") filed for relief under chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Michigan ("Bankruptcy Court"). On October 6, 2015, the Bankruptcy Court entered an order granting the Committee authority to initiate claims on behalf of the Debtors, including avoidance actions arising under Chapter 5 of the Bankruptcy Code. [Docket No. 388].

According to the records that we have reviewed, United States Steel Corp. ("Recipient") received transfers of property from one or more of the Debtors in the aggregate amount of at least $1,036,684.77 ("Transfers") during the 90 day period before the Petition Date. The Transfers were made to or for the benefit of Recipient, were made for or on account of antecedent debt owed by one of the Debtors to Recipient, were made while the applicable Debtor(s) were insolvent, and enabled Recipient to receive more than it would have received had the Transfers not been made.

Accordingly, the Transfers are avoidable and may be recovered from you under sections 547 and 550 of the Bankruptcy Code. Alternatively, the Transfers may be avoidable under section 548 of the Bankruptcy Code if the Debtor making the Transfer did not receive reasonably equivalent value in exchange or under section 549 if the Transfer occurred after the Petition Date.

The Committee intends to file adversary proceedings to recover transfers that may be avoided and recovered for the bankruptcy estate pursuant to sections 547 through 550 of

the Bankruptcy Code in the coming weeks. However, the Committee recognizes merit in settling claims before litigation if the bankruptcy estates can receive adequate value. The Committee is currently willing to settle its claims in exchange for payment of 90% of the Transfers. **Please contact me on or before December 14, 2015 to accept this offer.**

The Committee's investigation into this matter is continuing. Accordingly, the Committee reserves the right to seek additional or other relief if the Committee's investigation reveals information indicating that additional Transfers may be avoidable or that the Committee or Debtors may have other causes of action.

Sincerely,

Anthony J. Kochis

Cell: (248) 835-2166
Fax:  (248) 247-7099
E-Mail: akochis@wolfsonbolton.com

## W|B WOLFSON BOLTON PLLC

www.wolfsonbolton.com

This email and any attached files contain information intended for the exclusive use of the individual or entity to whom they are addressed and may contain information that is proprietary, privileged, confidential and/or protected from disclosure under applicable law. Nothing in or related to this email, or any attached file, will be deemed to waive or diminish the protection of the attorney-client privilege or the attorney work product rule. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by email or telephone, of any unintended recipients and delete the original message without making any copies.

We are not authorized to enter into any binding agreement on behalf of any of our clients. If this communication contains any settlement proposal, it is for discussion purposes only and does not constitute an offer on behalf of us or any of our clients, and cannot create a contract or legally binding agreement.  The contents of this message are subject to client approval.  All communications are subject to the terms of a prenegotiation agreement, if any.  Any settlement of any matter requires the signature of an authorized representative of our client (other than Wolfson Bolton PLLC) on final definitive documents which have been approved in accordance with our client's procedures.

**From:** Anthony Kochis
**Sent:** Tuesday, December 22, 2015 12:18 PM
**To:** 'Andrew G Thiros'
**Subject:** RE: Lee Steel Corporation Bankruptcy - Demand to United States Steel Corporation ("U. S. Steel")

Andrew,

Nice speaking with you.  Attached is payment information related to the 90 day payments.  I'll speak with the Committee regarding the extension.

Regards,

Anthony J. Kochis
**Wolfson Bolton PLLC**
3150 Livernois, Suite 275
Troy, Michigan  48083
Phone:  (248) 247-7105
Cell: (248) 835-2166
Fax:  (248) 247-7099
E-Mail: akochis@wolfsonbolton.com

## W|B WOLFSON BOLTON PLLC

www.wolfsonbolton.com

This email and any attached files contain information intended for the exclusive use of the individual or entity to whom they are addressed and may contain information that is proprietary, privileged, confidential and/or protected from disclosure under applicable law. Nothing in or related to this email, or any attached file, will be deemed to waive or diminish the protection of the attorney-client privilege or the attorney work product rule. If you are not the intended recipient, you are hereby notified that any viewing, copying, disclosure or distribution of this information may be subject to legal restriction or sanction. Please notify the sender, by email or telephone, of any unintended recipients and delete the original message without making any copies.

We are not authorized to enter into any binding agreement on behalf of any of our clients. If this communication contains any settlement proposal, it is for discussion purposes only and does not constitute an offer on behalf of us or any of our clients, and cannot create a contract or legally binding agreement.  The contents of this message are subject to client approval.  All communications are subject to the terms of a prenegotiation agreement, if any.  Any settlement of any matter requires the signature of an authorized representative of our client (other than Wolfson Bolton PLLC) on final definitive documents which have been approved in accordance with our client's procedures.

**From:** Andrew G Thiros [mailto:AGThiros@uss.com]
**Sent:** Tuesday, December 22, 2015 12:06 PM
**To:** Anthony Kochis
**Subject:** Lee Steel Corporation Bankruptcy - Demand to United States Steel Corporation ("U. S. Steel")

Anthony,

As a follow up to our call this morning, I am providing you with my contact information.  I will be handling this matter on

behalf of U. S. Steel.

U. S. Steel is respectfully requesting thirty (30) days or until January 22, 2016, to respond to the demand letter that was enclosed with your correspondence dated December 15, 2015.

Please provide me with any documentation that you have relative to the alleged Transfers.

Thanks,
Andrew

 **United States Steel Corporation**

**Andrew G. Thiros**
**Counsel**
600 Grant Street, Suite 1500
Pittsburgh, PA  15219-2800
412.433.2983
agthiros@uss.com

**CONFIDENTIALITY NOTICE:** The information contained in this email and any attachments may be confidential, legally privileged and/or exempt from disclosure under applicable law. It has been sent for the sole use of the intended recipient(s). If the reader of this message is not an intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any unauthorized review, use, disclosure, dissemination, distribution, or copying of this communication, or any of its contents, is strictly prohibited. If you have received this communication in error, please reply to the sender and destroy all copies of the message.

 Please consider the environment before printing this email.

3

17-04293-mbm   Doc 25-5   Filed 07/13/17   Entered 07/13/17 16:39:48   Page 2 of 2
17-04293-mbm   Doc 45-8   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 5 of 22

$Cl.$
$1-27-04$

1            UNITED STATES BANKRUPTCY COURT
            EASTERN DISTRICT OF MICHIGAN

2               SOUTHERN DIVISION

3   IN THE MATTER OF,           Case No. 00-58064
                             Adversary No. 02-5418

4   GP PLASTICS               Detroit, Michigan
                             January 13, 2004

5                           11:07 a.m.

   ERIC SLONE,

6

      Plaintiff

7

        v              $02-5418$

8

   M2M INTERNATIONAL,

9

      Defendant.

10

11            MOTION FOR SUMMARY JUDGMENT
          BEFORE THE HONORABLE MARCI B. MCIVOR

12      TRANSCRIPT ORDERED BY: MATTHEW FRANK, ESQ.

13   APPEARANCES:

14   For the Plaintiff:         JEROME D. FRANK, ESQ. (P13634)
                             Jerome D. Frank, P.C.

15                       30833 Northwestern Highway
                             Suite 205

16                       Farmington Hills, MI 48334
                             248-932-1440

17

   For the Defendant:         DANIEL WEINER, ESQ. (P32010)

18                       Schafer & Weiner, PLLC
                             40950 Woodward Avenue

19                       Suite 100
                             Bloomfield Hills, MI 48304

20                       248-540-3340

21   Court Recorder:            Kathleen Wiacek

22   Transcriber:              Deborah Kremlick

23

24

   Proceedings recorded by electronic sound recording, transcript
25   produced by transcription service.



PAGE ___2___

1    (Court in Session)

2         THE CLERK:  Calling case 02-5418, GP Plastics -- or

3    Eric Slone versus M2M International.

4         MR. WEINER:  Ready, Your Honor.

5         MR. FRANK:  Jerome Frank for plaintiff, Your Honor.

6         MR. WEINER:  Daniel Weiner of Schafer & Weiner,

7    counsel for the defendant.

8         THE COURT:  Good morning.

9         MR. WEINER:  Good morning.

10        THE COURT:  Mr. Weiner, this is your motion, go

11   ahead.

12        MR. WEINER:  Yes.  Thank you, Your Honor.

13   Your Honor, this is the hearing on defendant M2M's motion

14   for summary judgment against plaintiff Eric Slone as

15   liquidating agent's complaint in the adversary proceeding.

16   M2M timely filed this motion under Rule 56 in response to an

17   amended complaint filed by Mr. Slone accompanied by a

18   supporting brief.  Mr. Slone filed a responsive and we have

19   filed a reply to that responsive brief filed with the Court on

20   January 8th.

21        Our motion seeks an order dismissing the complaint for

22   three reasons.  Number one, neither the debtor's amended plan

23   of reorganization, nor the confirmation order reserved any

24   claims against M2M under Section 1123(b).  Two, any such

25   claims now asserted against M2M are barred by the doctrine of



1  res judicata.  And three, neither the amended plan nor the

2  confirmation order granted the authority to Mr. Slone to bring

3  suit against M2M and as a result Mr. Slone lacks standing as a

4  party plaintiff.

5       The matter has been briefed, so I would like to highlight

6  the arguments as well as to supplement them on this record.

7  And I'd like to start with some undisputed and critical facts

8  because I think those are very probative to the Court's

9  decision in this matter.

10       Undisputed fact number one, nowhere does the amended plan

11  nor the confirmation order ever, one, mention the name of the

12  defendant M2M.  Two, identify any claim against M2M.  Three,

13  describe the nature of any claim against M2M.  Four, estimate

14  the amount of any claim against M2M.  Five, attempt to

15  preserve any claim against M2M.

16       That's in the record before you.  That's undisputed fact

17  number one.

18       Undisputed fact number two, is that nowhere in the

19  amended plan or in the order confirming the plan, does either

20  document ever grant Mr. Slone the powers of a debtor or a

21  trustee.  Nowhere does it appoint Mr. Slone to file suit as a

22  party plaintiff against M2M.  Nowhere does it authorize Mr.

23  Slone to compromise any suits filed against M2M.  And nowhere

24  does it authorize Mr. Slone even to retain counsel to file

25  suit against M2M.  Mr. Slone is not an appointer.

Case 2:17-cv-13041-NGE-EAS ECF No. 1, PageID.221 Filed 09/15/17 Page 221 of 313



1    Next, to the extent that the Court determines that

2    documents be on the plan and the order, in other words the

3    disclosure statement, the liquidation analysis, items beyond

4    the plan and beyond the order, to the extent the Court is

5    going to consider those, and we think that those are outside

6    the scope here, but in that event, the liquidation analysis

7    prepared and attached to the plan and the disclosure statement

8    attached there, in those documents neither -- excuse me,

9    neither of those documents identify or disclose any of the

10   items I've just placed on the record.

11   Those are the facts and those are undisputed.  Those

12   undisputed facts on this record lead to the legal conclusion

13   that this complaint must be dismissed for any one of the

14   reasons and all of the reasons that I stated.

15   Let's start with 1123(b).  The plaintiff cites no legal

16   authority whatsoever on its own in support of its position

17   that 11 -- that the claims asserted against M2M were somehow

18   preserved under 1123(b).  There's no case law in the

19   plaintiff's brief in support of that proposition.

20   Furthermore, nowhere in the plaintiff's brief do they

21   quarrel with the holdings cited by the defendant M2M or the

22   application of those holdings to this case.  Primarily, but

23   not exclusively the 6th Circuit case in Browning, this bench's

24   case in Crowley, as well as -- or for that matter any other

25   case with a potential exception of the Harstadt case.  Of

Case 2:17-cv-13041-NGE-EAS ECF No. 1, PageID.222 Filed 09/15/17 Page 222 of 313

1 course the <u>Browning</u> case is 6th Circuit.

2 The <u>Harstadt</u> case is the 8th Circuit case. There was

3 some attempt to deal with that in the plaintiff's brief, but I

4 think it's clear when you look at the facts in those -- in

5 that case that still supports our case. <u>Harstadt</u> was a

6 Chapter 11 plan. There was a -- an attempt in that plan to

7 describe the elements of a preference, what a preference was.

8 It wasn't exactly accurate, but there was language

9 describing some of those elements. And it said that the

10 debtor and the committee had not completed a preference

11 analysis. There was no identification of any claim against

12 the defendant, the bank that was sued post-confirmation. And

13 of course post-confirmation a lawsuit was brought against the

14 bank.

15 And the Court in <u>Harstadt</u> determined that the language in

16 that plan under Section 1123 failed to exclude or failed to

17 detail and reserve claims against the bank. There was no

18 specific identification of any claim.

19 And that is substantively identical to the plan in this

20 case. There is no claim described under a preference cause of

21 action which is one count of the plaintiff's complaint.

22 Neither are there any claims even mentioned anywhere regarding

23 the claims denominated as breach of contract, fraud, or

24 conversion. And those are the four counts in the amended

25 complaint before the Court. That's 1123.

Case 2:17-cv-13041-NGE-EAS ECF No. 1, PageID.223 Filed 09/15/17 Page 223 of 313

1    Second argument, the res judicata argument. The only

2 thing that the plaintiff takes issue with is one element of

3 the res judicata argument. There are four that are set forth,

4 but there's only one at issue.

5    And the only one at issue is found in the plaintiff's

6 brief and it's one sentence. And it says, the debtor was not

7 a creditor in the bankruptcy, period. That's Page 6.

8    There's no factual support for that challenge, there is

9 no legal support for that challenge. It's just a naked

10 conclusion without more.

11    But to make sure that we cover that properly, I think the

12 conclusion when you put together the statutory provisions,

13 it's clear that M2M was a creditor in the bankruptcy and that

14 res judicata is satisfied. So I just want to deal with that

15 one element.

16    These are the sections that combine to reach that

17 conclusion. Section 101-10(b), and I'm paraphrasing these, a

18 creditor includes an entity that has a claim against the

19 estate, including under 502(h). 502(h) says a claim accruing

20 from the recovery of property under 550 shall be allowed or

21 disallowed as if it were a claim that arose prior to the

22 filing of the case, like a pre-petition claim.

23    550 of course is relied upon by the plaintiff in

24 connection with its attempt to avoid a -- an alleged

25 preferential transfer or to recover other property. So we




1  have a claim under 502(h) here. And finally, a claim under

2  101-5 in a very very broad definition, includes a right to

3  payment even if the right is unliquidated, contingent,

4  unmatured and disputed.

5      Finally, there is one section that I'd like to supplement

6  and that is 501(d). And 501(d) essentially says that a claim

7  under 502(h) may be filed just like a pre-petition claim.

8      When you put all those together, M2M was clearly a

9  creditor the moment that GP filed the Chapter 11 case. It had

10 at that point a contingent claim. If the debtor had timely

11 filed and properly reserved a -- an avoidance action or any

12 other action that it filed because under -- because otherwise

13 that creditor would not have known. It would not have known

14 it was a creditor, would not have filed a proof of claim going

15 in, and it didn't. The only way it knows is when it gets

16 sued. So that's -- that's -- that's pretty clear.

17     I'd also refer the Court to Rule 3002(c)(3). Quite

18 honestly, Judge, I couldn't tell if that applied to a Chapter

19 11 case or not. I was a little confused by it. It deals with

20 the time that a creditor has to file an unsecured claim

21 following entry of a judgment for recovery of money.

22     And that's a 30 day time period, 30 days after the

23 judgment becomes final, the creditor has to file a claim if it

24 wants to share. I think it applies in a Chapter 11 case. I

25 wasn't that clear on it and I -- I wanted to -- to make that

Case 2:17-cv-13041-NGE-EAS ECF No. 1, PageID.225 Filed 09/15/17 Page 225 of 313

 

1  point on the record. But clearly we have statutory provisions

2  that more than cover it even if it doesn't.

3      Next, with respect to the res judicata issue. This

4  creditor is bound by that plan. In other words 1141(d)(1)(A)

5  applies if this creditor -- if the debtor were to prevail, if

6  Mr. Slone were to prevail, and M2M were to pay money back, and

7  if M2M didn't file a claim, it wouldn't get paid.

8      So it -- because if it doesn't file a claim if that were

9  to happen, I know what we would get, we'd get -- we'd file a

10  motion for payment of claim and the debtor would say no, no,

11  no, you were obligated to file a claim.

12      So clearly no matter how you dice it or slice it, that

13  element of res judicata is satisfied. We could -- if we had a

14  lawsuit today to bring against -- against GP Plastics, we'd

15  get an objection. They'd say sorry, 1141, the debtor has

16  discharged all claims and you didn't bring a claim. So that's

17  -- that's a long response to a one sentence objection, but I

18  wanted to make sure we covered it appropriately.

19      Finally, of course, the plan provides that the provisions

20  of the confirmed plan bind any creditor, whether or not the

21  creditor is impaired or -- or has accepted the plan. Actually

22  that's under 1141.

23      In addition to that, Your Honor, GP treated M2M as a

24  creditor. In this record earlier in the case you will find

25  that the liquidating agent filed an objection to claims and



1    included M2M within that objection. And that is in the

2    record, in fact it was attached as an exhibit to our -- to our

3    motion. And in fact asks for any claim with M2M to be

4    disallowed.

5        Additionally, the miscellaneous provisions are binding on

6    M2M. In a nutshell, it says, the plan would be binding on and

7    inure to the benefit of the debtor, the holders of all allowed

8    claims -- excuse me, of all claims, et cetera. So there's

9    numerous provisions there. It's binding, res judicata is

10   satisfied on all four items.

11       The cases that we primarily rely on, although not

12   exclusively, have language in those plans that were

13   substantively similar, not exactly, but substantively similar

14   to -- or even more detailed than the language in this claim.

15       I'd cite the Court to Page 7 of the Browning opinion. In

16   fact in Browning the language that was claimed to reserve

17   claims against the defendant wasn't even in the plan, it was

18   in the disclosure statement. An order approving a disclosure

19   statement is different than an order approving a plan, but

20   this Court under those contacts even said, it's not enough.

21   Even though it's just in the disclosure statement, we'll look

22   at it and the blanket reservation of claims is not enough to

23   defeat the application of res judicata.

24       And Browning found that the plan neither named the

25   defendant, nor set forth any factual basis for the claims

Case 2:17-cv-13041-NGE-EAS ECF No. 1, PageID.227 Filed 09/15/17 Page 227 of 313



1  alleged to have been reserved. And the <u>Microtime</u> case which

2  is Judge Rhodes' unpublished opinion is relied upon and cited

3  by Judge Shefferly in the <u>Crowley</u> case.

4       Regarding the <u>Crowley</u> case, Judge Shefferly determined

5  that res judicata could be avoided where the plan expressly

6  reserves the right to litigate certain claims. And in that

7  case you even had more specificity here.

8       That case, the language claiming to reserve the -- the --

9  the claim against a defendant, was not in the plan again, it

10  was just in the disclosure statement. But Judge Shefferly

11  said, well, let's look at that even so and there was a broad

12  blanket reservation of claims basically against anyone for

13  almost anything. And it had a reference, parenthetical

14  reference, including claims against officers and directors.

15       It even identified a -- a category of potential

16  defendants. Judge Shefferly found that that was not

17  sufficient.

18       In our case we don't even have that. We don't even have

19  the debtor reserves claims against trade creditors or against

20  XYZ Company for -- for claims that it wants to bring

21  post-petition. In fact even if you look at the schedules, no

22  matter how far the -- your scope is going to be in determining

23  this matter, you can even look in the schedules, you can even

24  look in the liquidation analysis. There's plenty of

25  specificity when the debtor wanted to identify claims.



1    And it's -- it's in the record. So they certainly knew

2   how to do it and could have done it and should have done it

3   which is the type of finality issue that res judicata concerns

4   itself with, if claims were brought or could have been

5   brought.

6       And I think we also have an exhibit to our brief where a

7   demand was made prior to confirmation by the debtor's lawyer,

8   I believe, to M2M saying, we demand that you -- you pay back

9   money, you got money that you shouldn't have or whatever the

10  demand letter says. But that certainly doesn't -- doesn't

11  rescue the plan from the provisions of res judicata and 1123

12  doesn't rescue res judicata in this case.

13      The committee's plan -- it says the committee's plan with

14  the assistance and concurrence of the debtor, that's the plan

15  we're talking about here. But there are some provisions in

16  that plan that add further strength to this argument.

17      In fact they add strength to the next argument which

18  deals with whether or not Mr. Slone as liquidating agent is a

19  proper party claim in the first place. And I think when you

20  look at the plan and you take a fair reading of it and you

21  look at all the provisions and you put them all together, I

22  think it's very clear that Mr. Slone was never granted the

23  authority to litigate, to file lawsuits.

24      He was granted authority to liquidate. And there's a big

25  difference. And if you look at the provisions of the plan,

1  they all support that argument.

2      For example, Paragraph 13 of the plan, title is

3  creditor's committee, that's the sub title of the paragraph.

4  And I'm paraphrasing.  Provides that the committee will --

5  will investigate and pursue Chapter 5 causes of action.  This

6  is under the committee rubric.  There's no identification

7  there even under that of a claim against M2M or a summary even

8  of a factual basis of the claim.

9      Paragraph 16, estate assets.  Essentially that provides

10  this is in the plan as well.  All money collected from Chapter

11  5 causes of action and all monies received from collection of

12  other assets shall be turned over to the liquidating agent for

13  disbursement.

14      Well, clearly if the liquidating agent reserved -- was --

15  was granted the authority to file suit, he wouldn't have to

16  turn over money to himself.  This relates to somebody else

17  filing a lawsuit to get money and turn it over to the

18  liquidating agent.  This is their plan.  Once again there's no

19  identification of any claims or a factual basis summary.

20      The implementation of the plan, Section 5, just lists

21  Chapter 5 recoveries, just -- that's about as specific as it

22  gets.  Again, no mention of M2M or any claims.

23      Now, furthermore with respect to the standing argument.

24  It's not our burden to show you that Mr. Slone doesn't have

25  standing, it's their burden to show that he does.  We are the




1   moving party, I understand that, but the Mako case that we

2   cite and the Crow Brothers case that we cite, Mr. Slone has

3   the burden to establish by clear evidence that he has

4   standing.  And you have a record before you of a plan

5   confirmed long ago and it's not there.

6        I understand Mr. Slone submitted a post-confirmation

7   affidavit that I'm sure is going to be part of his argument,

8   but I'll respond to that when that gets raised.  Because I

9   think that's of no moment whatsoever to this Court's

10  determination, but we'll get to that if they raise it.

11       Other provisions of the plan support our argument.  Plan

12  Pages 15 and 16 refer to causes of action are retained by the

13  reorganized debtor.  Page 13 in Paragraph 17 refers to Chapter

14  5 causes of action brought by the debtor or the committee may

15  be compromised by the debtor or the committee without Court

16  approval.

17       Again, nowhere close to the liquidating agent, that's a

18  separate entity here, or a separate person created by the plan

19  and the turn over provisions I already mentioned.

20       Additional provisions of the plan further support the

21  argument.  Paragraph 13, Page 11.  The committee continues and

22  the committee is authorized to retain its pre-confirmation

23  professionals, talks about the committee.

24       In Paragraph 14, the provision provides that

25  post-confirmation fees and expenses of professionals retained



```
 1  by the debtor or the committee, shall be paid by the
 2  liquidating agent out of the estate assets.  No provision
 3  whatsoever for the liquidating agent who's not a lawyer to
 4  retain counsel to file a lawsuit and even so, it's not even
 5  disclosed, it's not even identified.  You get back to the 1124
 6  res judicata even if you were to go that far.
 7       Also Page 13 and Article 4 of the plan support our
 8  arguments and they are in the record.
 9       In addition, liquidating agent is defined.  The plan
10  defines the liquidating agent, who is he and what does he do
11  and what does he have the authority to do.  That's in
12  Paragraph 14, Page 3.
13       And it means and refers to an agent selected by the
14  committee who will have the responsibility to liquidate the
15  assets of the debtor, and to disburse payments to the holders
16  of claims pursuant to the plan.  And by the way, nothing in
17  the plan ever sets forth explicitly that the committee has
18  selected Mr. Slone.
19       Now that's -- might be a little bit technical, but it's
20  not there.  It says that the liquidating agent shall be the
21  person who is selected by the committee.  There is no
22  committee -- there is no proof or any evidence that the
23  committee selected Mr. Slone.  Mr. Slone just appears as the
24  liquidating agent.
25       And there's no committee meeting, there's no -- there's
```



1   no evidence that that selection process has occurred. So even

2   at that level you don't have a party with standing even if all

3   of the other matters were -- were satisfied.

4       The Court should also note that when it came time for

5   confirmation, as usually happens, proposed confirmation orders

6   get modified. There's no less than five modifications in that

7   confirmation order. Not one of them deals with the

8   liquidating agent, or the standing, or the reservation of

9   claims, or 1123 or anything. So there's plenty of chance to

10   do it and this plan is old.

11       Finally, I'd like to briefly address a matter that I

12   don't think is before the Court procedurally properly, but I

13   -- I want to include a response because it was raised. There

14   is a -- a casual request, or a short request for authority to

15   modify the plan. That comes at the end of the plaintiff's

16   brief.

17       I don't think that's before the Court today, but I would

18   like to respond because I don't know how the Court's going to

19   rule. Number one, Mr. Slone who is the moving party for that

20   informal perhaps motion to modify, lacks standing to do that.

21   Because under 1127 only the proponent of the plan or the

22   reorganized debtor has the right to seek a modification. Mr.

23   Slone is neither. He can't even ask, number one.

24       Number two, because it's clear from the plan the

25   proponent -- plan says the proponent is the committee with the

1    assistance and concurrence of the debtor. Committee has not

2    asked for this, the debtor has not asked for this. The

3    liquidating agent has asked for it and he has no standing.

4         Furthermore, of course, there is no showing -- first --

5    second of all, there's no notice to anybody. This is a

6    post-confirmation modification is a request, it has to be made

7    under Rule 9013 and 9014 by motion.

8         The Court -- the Code says that there must be notice and

9    a hearing which is a defined term -- defined phrase under

10   Section 102. Which says -- means that such notice is

11   appropriate in particular circumstances. There's no notice to

12   anyone else here.

13        And the suggestion or the statement in the brief is, they

14   want to modify the plan to identify the claim against them as

15   well. It's not my plan, but it would seem to me that that

16   might lead to a conclusion that the debtor would not want,

17   seeking to identify claims that were not disclosed in the plan

18   in the first place to creditors that may have similar

19   positions.

20        But in any event -- and finally, they would also have to

21   demonstrate that the plan has not been substantially

22   consummated. And there's nothing -- this is a long time and

23   I'm sure a lot of activity, the Court's more familiar with the

24   docket sheet, I have the docket sheet, it's pretty thick. And

25   there have been a lot of activities post-confirmation.

1    But in any event, I don't think -- even if the Court were

2    to consider that, an amendment is futile. Because res

3    judicata has the concept of primarily of finality. And there

4    is no way around the elements of res judicata to say, now we

5    want to go back and identify claims.

6        So I don't think that works. And I think this record is

7    pretty clear before this Court today, and it's -- I don't

8    think there's anything else that -- that is -- is appropriate

9    even to consider. So I'd like to just reserve the opportunity

10   to respond to plaintiff's argument as well.

11       THE COURT: Thank you very much. Just one second,

12   Mr. Frank.

13       (Court in Recess at 11:36 a.m.; Resume at 11:38 a.m.)

14       THE CLERK: Recalling the case 02-5418, Eric Slone

15   versus M2M International.

16       MR. FRANK: Good morning, Your Honor.

17       THE COURT: Good morning, Mr. Frank.

18       MR. FRANK: Your Honor, I want to thank Mr. Weiner

19   for pointing out all the inadequacies in my pleadings and

20   briefs and plans.

21       I'd like to make a bit of a preface because I think it is

22   appropriate. I -- I truly recognize the reality of the

23   Browning decision as set forth by the 6th Circuit. But I

24   think it's important to note that the language that was used

25   in this plan was the same language that has been used in plans

1  since October 1st, I believe, of 1979 when the Code went into

2  effect.

3      And this analysis that was done in _Browning_, is a new

4  analysis. And I think that there's been a lot of criticism of

5  _Browning_. I'm not stating that this Court should ignore

6  _Browning_, it certainly doesn't have that ability. But I have

7  a feeling, a very strong feeling, that _Browning_ will evolve in

8  some manner because it has to.

9      Because I think we're looking at issues that we never had

10  before. Issues like when must plans be filed. Because

11  obviously to the extent that _Browning_ would be interpreted

12  into the Nth degree, which I think in part is suggested by the

13  defendant here, each and every potential cause of action that

14  meets and survive the Chapter 11 confirmation plan would have

15  to be identified in the plan itself and that's rather time

16  consuming.

17      The interplay between plans and disclosure statements

18  certainly prior to _Browning_ no one ever saw this as a -- a

19  plan disclosure, they see these things as disclosure statement

20  disclosures. So these things will happen.

21      And as I get on to my argument, I will ask the Court to

22  carefully follow Judge Shefferly's decision in _Crowley_ because

23  my interpretation is quite a bit different than the -- than

24  Mr. Weiner's. And I believe Mr. Shefferly wisely identifies

25  in _Crowley_ limits on _Browning_, improper limits on _Browning_.

1    Browning after all does evolve out of what is commonly

2    now referred to as the hide the ball cases. And all the cases

3    say Browning, that have been cited, really are nothing more

4    than a hide the ball case and in certain respects Browning too

5    is a hide the ball case as identified by 6th Circuit. By hide

6    the ball, I just simply mean that when the debtor goes out and

7    solicits approval of the Chapter 11 plan, the debtor is

8    required to give information to the creditors to vote on, to

9    determine whether that plan is proper.

10    The hide the ball cases if you will, are all cases where

11    they are not liquidations. The debtor says I'm going to give

12    the debtors X, Y, or Z or a percentage of X, Y, or Z and in

13    the disclosure statement the debtor never discloses to the

14    creditors, so it never gives them the information that there's

15    these assets that are hidden, that ball is hidden.

16    And that if the debtor then proceeds after confirmation,

17    what happens is, the debtor in essence gets a windfall. You

18    know, the debtor gets the -- the value of it not going to the

19    creditors. I think that context is important because you find

20    that language even in Browning, very strongly in Browning.

21    Factually, I think the record should reflect what this

22    case is about. We have $118,000 preference action of which I

23    don't believe there's much of a defense. These were payments

24    made within 90 days of the bankruptcy for an account of an

25    antecedent debt. There were no -- there was no future value

1  or new value given, the transaction had been over and done.

2      That 118,000 preference action is a post-petition claim.

3  It is not a claim that existed as of the date you filed the

4  bankruptcy.  It arises out of the filing, but it certainly is

5  not a claim that can be disclosed as an asset in the schedules

6  because it doesn't exist yet.  And I've never seen any

7  preference actions disclosed.

8      The other claim is a more serious claim in certain

9  respects.  I'm not saying $118,000 preference claim is not

10  serious, but the other claim is a conversion action

11  essentially.

12      That action is for $210,000.  And I don't think the

13  pleadings before the Court other than the complaint itself,

14  adequately identify them, so I will spend a little time on

15  that.

16      GP Plastics was a manufacturer of plastic parts for the

17  auto industry.  Specifically in the context of this matter,

18  they made parts out of plastic that were used in the steering

19  wheel assembly used in the Chrysler mini vans and Dodge mini

20  vans.  They were made out of plastic.

21      M2M is a company that manufactures molds.  And I learned

22  in this case that the way these type of products are produced,

23  you have a core which was produced by M2M, and then you have

24  an insert into that core.  And it is the insert that wears out

25  over a period of time, that's where the plastic part is --

1 however that's made, and I don't understand it, but it's made

2 through the use of this insert.

3 The inserts wear out. And the $210,000 was the money

4 paid by GP Plastics pre-petition for an insert to be used

5 after the existing one wore out. This was a spare insert, if

6 you will, and they have a useful life and that time is coming.

7 That insert is fitted, and I learned this actually from

8 the defendant's President who explained it in a deposition.

9 That insert must be fitted into the core. And the final

10 fitting takes place during what's normally known in the auto

11 industry as the down time, usually Christmas, New Year's is

12 the more typical down time, sometime in the summer when

13 there's a change over there's a down time.

14 And at that time what happens is, the core is removed,

15 sent back to M2M, or whoever company is doing it, the insert

16 is properly fitted to make sure it fits absolutely properly.

17 So when we get to the time of the filing of the bankruptcy we

18 have no claim, GP has absolutely no claim against M2M as to

19 the insert. It's bought, it's paid for, the insert is

20 properly sitting in M2M's office or building or facility.

21 That's where it's supposed to be on that date.

22 Later on in the bankruptcy proceeding, it became clear

23 that there wasn't going to be down time. There wasn't going

24 to be down time because GP was liquidating. GP initially

25 instructed its then Attorney Thomas Morris, who I guess

1  continues as debtor's attorney, to get it back because M2M

2  wasn't responding to the phone calls and other requests made

3  by the debtor personnel, all right.

4      And Mr. Morris sends a letter saying, will you please

5  give us our insert back, we want to sell it.  So it probably

6  -- it didn't say we want to sell it, but that is the idea,

7  sell it as a package.

8      That request was ignored.  As the case progressed, I made

9  the request on behalf of the committee and the estate.

10  There's an unusual order entered in this case for unusual

11  reasons where the committee who I was then representing was

12  authorized to act on behalf of the estate and in the estate's

13  interest because there was a difficulty operationally and

14  structurally with the debtor and what was going on at that

15  time.  And that order was entered by Judge Shapero.

16      That request was ignored.  And without getting into the

17  merits of it, I still to this day don't understand why it was

18  ignored, there hasn't been a satisfactory explanation.

19      We are now in a situation naturally, that if the relief

20  is granted by this Court, there will be a windfall.  The

21  windfall will be to M2M.  And that windfall will be to the

22  detriment of the creditors who get the benefit of the

23  distributions and this claim.

24      The Court essentially, and I'm just going to address

25  really the <u>Browning</u> issue first.  I will get to the standing

1 | issue.

2 | But the Court has basically three choices. The Court can

3 | choose to extend Browning and it would be an extension in this

4 | case because Browning does not apply to all causes of action,

5 | it doesn't say that. And it certainly doesn't appear to apply

6 | to any post-petition causes of action and here we have two

7 | purely post-petition causes of action.

8 | Nor does Browning extend to assets or claims or causes of

9 | action that were relied upon by the creditors when they voted

10 | on the plan. And I'll get back to Browning in a second.

11 | The second alternative the Court has, is to follow Judge

12 | Shefferly's decision in Crowley. On Page 35 of that decision,

13 | Judge Shefferly looked at preferential transfers as -- as an

14 | issue, as a post-petition claim. As opposed to what was in

15 | Crowley which was pretty much square with Browning.

16 | These were pre-petition claims that went to the essence

17 | of the cause of the bankruptcy itself. Browning uses that

18 | language. That's what they mean by related to the case. The

19 | bad acts or alleged bad acts gave rise to the -- to the entire

20 | bankruptcy. Same thing in Crowley, same thing in Browning.

21 | But what Judge Shefferly does is in Crowley is, is he

22 | addresses the issue that has actually been raised by Mr.

23 | Weiner here today which is you don't name names. Mr. Weiner

24 | argues that I have to come forward with cases that say that

25 | you don't have to name names.

1    Well, the difficulty with that all is, that this is brand

2    new.  In fact this very plan and disclosure statement which is

3    a combined plan and disclosure statement in reality was

4    actually initially filed prior to the Browning decision.  But

5    Browning stands on its own today.  There will be progeny,

6    we'll find out what it means.

7    But to say that it is the burden of the plaintiff who is

8    not the moving party to establish cases saying that you don't

9    have to, you can get away with not naming names, it is, I

10   think, an improper burden on us at this point at this juncture

11   in the Browning doctrine, if you will.

12   And what Judge Shefferly cues in on this, is in Page 35

13   of -- of Crowley is not that it's absolutely necessary because

14   there is adequate 3rd Circuit decision saying you don't have

15   to name the names.  The key is did the creditors rely upon

16   these assets.  Were the assets disclosed and Judge Shefferly

17   specifically identifies preference claims, so long as they

18   show up in the liquidation analysis, to be the type of claims

19   that would normally be disclosed, that were relied upon the

20   creditors for distribution.

21   And that by the way, Your Honor, is why we provided Mr.

22   Slone's affidavit.  Now at the time this plan, combined plan

23   and disclosure statement were filed, no one would have

24   attached the name and no one did attach the name of every

25   single possible preferred creditor or other defendants, it

1  just wasn't customary.

2        And if the Court looks at the affidavit, which really has

3  Mr. Slone's -- Mr. Slone is an accountant. So these are his

4  worksheets that then give rise to the liquidation analysis.

5  The Court will see that there are three or four single spaced

6  page after page list after list of preferred creditors. This

7  was a fairly large case.

8        That document was not attached to the disclosure

9  statement, but the conclusion derived out of it, the analysis

10  on a conservative basis of what these preference claims are

11  and what their value was attached. And the worksheets show

12  that this does -- M2M's preference, or alleged preference runs

13  right through to the information provided in the disclosure

14  statement.

15        The same with regard to the $210,000 cause of action,

16  although listed as a receivable, this is a -- an accountant's

17  category. But that was also taken into account when the

18  disclosure statement attached the liquidation analysis and

19  then advised the creditors what they might expect and what it

20  would be based upon.

21        The third alternative is for this Court to grant leave to

22  modify the plan in accordance with Section 1127(b). And it's

23  an interesting issue.

24        I can certainly state, and I'll state it a number of

25  times, the burden in this motion is defendant's, not

1 plaintiff's. And I don't think that Mr. Weiner is properly

2 shifting the burden to us.

3     But the applicability of 1127(b) in the context of this

4 case has to be seen in new lights because of Browning which

5 I'll get back to. But in the nuts and bolts, there has been

6 no distribution as of yet except to some of the priority

7 claimants.

8     The largest single asset of the debtor is yet to be sold

9 which is the real estate, although hopefully that will be

10 consummated in March. And because of that, this plan has not

11 yet been substantially consummated. It will be eventually,

12 but not as of yet, it's still in the process.

13     Now, will 1127(b) be futile? I don't think so, the

14 modification. I had a great deal of difficulty following Mr.

15 Weiner's argument as it pertained to the futility side of it

16 which is not the subsequent consolidation -- the substantial

17 consummation, but rather why would any creditor who is going

18 to get a benefit out of this possibly want to vote against it.

19 It would absolutely make no sense, it's just illogical.

20     Now, why does this have to be seen in a new light? Well,

21 I -- I just don't believe until Browning which is fairly new,

22 anyone had ever really seen in full a Chapter 11 proceeding

23 being viewed essentially as a piece of litigation.

24     And the reason why I raise the amendment proposal is,

25 that if you look at Browning and the related company cases

1  what they're really saying in essence is, a Chapter 11 case

2  has the elements, if you will, of a lawsuit and therefore

3  compulsory rejoinder, isn't that really what they're saying.

4      You have to identify and address all your claims or you

5  lose them.  It's a -- very much of a litigation approach which

6  certainly makes sense from a Circuit Court that hears

7  litigation.  Bankruptcy is a little bit as we know of a hybrid

8  of an administrative remedy and with elements of litigation.

9      So that in that context, just like leave that would be

10 granted to amend a complaint to cure a deficiency, which is

11 really alleged here, that if not cured would create a windfall

12 to the other side, but if cured would just essentially do

13 what's right which is preserve an asset.  I think that would

14 be a helpful thing to do.

15     Now when I received Mr. -- the motion, I thought about

16 filing a motion to modify under 1127(b).  And I thought of two

17 reasons not to.

18     One, it's extremely expensive.  If it has to be done, it

19 has to be done, but doing a plan modification requires sending

20 this thing out to vote and having a number of hearings before

21 the Court.  And the -- and I just say this from my experience

22 which is long in this field, the fielding of quite a -- I

23 wouldn't be surprised to get 100, 150 phone calls from

24 creditors because this won't make any sense to them when they

25 see it, but it will have to be explained.

1      You know, it's a plan modification and plans are supposed

2  to talk about how much money you're going to get and why and

3  this plan modification because of the way _Browning_ construes

4  plans, is going to say there are more assets for you, but it

5  has nothing to do with how much money you're going to get per

6  se, no one is asking you to take more or less.  This will

7  allow you to get more -- it's just an unusual circumstance,

8  but _Browning_ is an unusual case after 30 years.

9      And I would implore the Court that if all else fails on

10  my side, the Court grant to modify to -- not to decrease or

11  increase distributions under the plan, but rather just simply

12  to identify much more specifically this and any other cause of

13  action that could be around.

14      Going back to _Browning_, and this pervades _Harstadt_ and

15  all other cases relied upon by plaintiff -- I mean defendant,

16  excuse me.  _Browning_ identifies two basic issues.  One, that

17  after all the allegation that was made gave rise to the

18  bankruptcy itself, it was integral, it was related, and should

19  have been -- been disclosed.  And two, there was no disclosure

20  apparently of the asset at all in the disclosure statement.

21      I will acknowledge that's the weaker argument, but I have

22  a very strong feeling that the 6th Circuit when it heard that

23  case might not have been aware of the significance of a

24  liquidating 11.  Because I just grant the Court that they said

25  that, I will say it's illogical and that's been the criticism

1   of -- of <u>Browning</u> by the various experts because it just -- it

2   really doesn't make sense.  Why give a windfall to one party

3   when all the money is going to go to the creditors.

4       And using -- I don't think that was the intent of the

5   <u>Browning</u> Court, it's certainly not stated.  The 3rd Circuit

6   and other cases relied upon again were all -- that they do --

7   they're all hide the ball cases with the exception of -- of

8   <u>Saunders</u>, but in <u>Saunders</u> you have a specific order entered in

9   that case that released that entity -- that defendant entity,

10  it's a specific release, it is very affirmative in that case,

11  it's really different.

12      But in the hide the ball cases, shame on the debtor if

13  you will.  And no -- you know, if these cases aren't for the

14  benefit of the creditor, then shame on the debtor and I

15  understand that.  But -- but to take -- to take the proceeds

16  of assets away from the creditors is something that just

17  doesn't make a lot of sense particularly when they relied upon

18  it all to benefit someone who, and I -- I don't mean to be

19  harsh, but if the allegations in this -- for purposes of this

20  motion are in the best -- are in the best light of the

21  non-moving party plaintiff, then one has to take the position

22  they have a wrongdoer, someone who actually took assets and

23  wouldn't turn them over is going to get a windfall to the

24  detriment of the creditors.  I don't think that was the intent

25  in <u>Browning</u>.

1    Secondly, in Browning in here as opposed to Browning and

2    the other cases, these were all pre-petition claims.  Our case

3    -- our claims are post-petition cases.  Judge Shefferly in

4    Crowley identifies the post-petition nature of a preference

5    action so long as the proceeds are indirectly, if you will,

6    disclosed to the creditors to be sufficient to take this out

7    of Browning.

8        And I think Browning should be somewhat narrowly

9    construed to the extent the Court can do so.  Otherwise you

10   really have a situation as you would in this case where the

11   creditors are hurt by case law that seems to be trying to

12   achieve a benefit for them.  I don't think that's the result

13   that we want.

14       And thirdly, and with all due respect, I do disagree with

15   Mr. Weiner's analysis of M2M's position.  M2M is not a

16   claimant and not a creditor of this case.  And if one is to

17   strictly apply res judicata, for them to utilize it, they had

18   to have been a claimant in this case.

19       I follow the statutory analysis done by Mr. Weiner with

20   only one problem.  There is no claim under 502 until they pay

21   back the preference.  That wasn't done.  It's like saying that

22   an attorney for a debtor would be a claimant of the debtor

23   because the debtor -- a contingent or unliquidated claimant of

24   the debtor because the debtor may some day have the ability or

25   choose to file malpractice action against its own attorney.

 1  It wasn't done, it hadn't been done.

 2      If the debtor was aware, I suppose, at some point at the

 3  time of the filing of the case that M2M was going to hold on

 4  to that insert and never give it back, we'd have a different

 5  situation.  But I can assure the Court that the debtor wasn't

 6  aware of that.

 7      And I'm being a bit redundant, but I want to quote some

 8  language out of Browning.  That is supported in -- also used

 9  by Judge Shefferly in Crowley.  And that language is that the

10  debtor -- the plan did not enable the value of the claims to

11  be taken into account in the disposition of the debtor's

12  assets.

13      The purpose of the Slone affidavit is to say that no,

14  that issue -- that threshold cannot be met by the defendant

15  because it was taken into account -- into account when the

16  disclosure statement was sent out and when the liquidation

17  analysis was provided.

18      As to the standing issue, as I understand it, as I read

19  it, and as I drafted this, I drafted actually the plan with

20  Mr. Morris, a liquidating agent is an agent on behalf of a --

21  that's why they're called agents, on behalf of a third party

22  to do certain acts.  Mr. Slone, Page 25 of the plan makes it

23  pretty clear he's there to pursue claims.  He's pursuing

24  claims on behalf of those two parties that proposed this plan,

25  the creditor's committee and the debtor.

1      He does, is and will continue to act as an agent on

2  behalf of the disclosed principle.  Why do we create

3  liquidating agents which are really quite common?  For a very

4  simple reason, there is no reason to have to continue to

5  employ officers and/or possibly directors of reorganized

6  debtors that are in liquidation, it's a waste of money and

7  time.

8      So we appoint a liquidating agent and I think Mr. Weiner

9  is a little off base about the requirement of us to come

10  forward with evidence of his employment by the committee.  I

11  think inherent in the plan, which after all was a plan

12  proposed by the committee itself, when that plan proposed by

13  the committee signed by as I recall on behalf of the

14  committee, suggests that Mr. Slone be the liquidating agent, I

15  think that's enough evidence to establish his appointment by

16  the committee.  I don't know how else and what other way to do

17  that other than in the plan they filed where they name Mr.

18  Slone.

19      The _Mako_ case which is relied upon by Mr. Weiner for lack

20  of standing, frankly I don't think has any applicability

21  whatsoever to this case.  In _Mako_, M-a-k-o, you have a plan

22  and disclosure statement and then what you have is a third

23  party who shows up after the plan is confirmed who then funds

24  that plan under some circumstances.

25      Nothing in the plan speaks of this individual, nothing in

Case 2:17-cv-13041-NGE-EAS ECF No. 1, PageID.250 Filed 09/15/17 Page 250 of 313

1  the plan talks about this individual. And the Court held that

2  this individual can't simply decide on his own to step in and

3  take over all debtor's causes of action. There is no

4  provision for it anywhere, he's not mentioned.

5        And in fact I believe the companion case of the same

6  circuit, In Re: Sweetwater, I believe is the decision, comes

7  to the opposite conclusion when Mako was raised and you have a

8  liquidating agent identified in the plan to pursue claims on

9  behalf of the reorganized debtor.

10        But since Mr. Slone happens to be the last officer of the

11  corporation, if the standing issue is going to interfere with

12  pursuing the case, we would ask leave orally for Mr. Slone

13  simply to -- for us to substitute GP on behalf of Mr. Slone,

14  have the principle instead of the agent and that would cure

15  the problem. Mr. Slone is still the Chief Financial Officer

16  of the debtor, although he doesn't take salary at all because

17  he is the liquidating agent.

18        The -- the issue with regard to the debtor treating M2M

19  as a creditor, I don't recall frankly being in the brief, but

20  I can address it, I think. I'm assuming Mr. Weiner is -- is

21  reciting the truth that there was a claim objection against

22  M2M.

23        I prepared the claim objection and I assume what took

24  place is we had a very short period of time to meet the claims

25  objection time period and we did an omnibus objection. We did

17-04293-mbm   Doc 25-6   Filed 07/13/17   Entered 07/13/17 16:39:48   Page 33 of 33
17-04293-mbm   Doc 45-10   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 6 of 14

1   a number of them and one was for all preferred creditors.  And

2   probably just didn't have the time, it didn't create a claim.

3   The filing of a claim objection doesn't mean someone has a

4   claim, it just seems that they'd have one disallowed and

5   preferential transfer -- transfers -- transferees are not

6   entitled to receive payment on a claim unless the preference

7   is determined.  So that's -- it was just an omnibus thing and

8   they showed up on the list of a couple hundred creditors.

9        Well, the Court has been unusually silent.  I'm not used

10  to silence from the Court particularly on an issue that I

11  think is --

12            THE COURT:  No, I --

13            MR. FRANK:  I'm sure that -- I'm sure you

14  reviewed --

15            THE COURT:  I've read all the pleadings, you know,

16  I'm very interested.  I think your -- I think your arguments

17  -- I think that the _Browning_ decision and the scope is going

18  to have to be litigated.  So I'm -- I'm listening, truly, I'm

19  not sleeping.  I'm interested in what you have to say.

20            MR. FRANK:  No, I didn't think you were.

21            THE COURT:  But I don't have any questions factually

22  because I -- I did -- I think that the facts are fairly clear.

23  And I'm interested in your legal arguments.

24            MR. FRANK:  Well, good.

25            THE COURT:  And I -- I -- I have no questions

1  because I've -- I've reviewed all the pleadings and I'm just

2  listening to what you have to say. Go -- go ahead.

3      MR. FRANK: Oh, you know something? I forgot one

4  thing and I'm sorry. I had another reason for not filing the

5  modification issue. I didn't think it would have been heard

6  prior to the request -- the request to modify would not

7  necessarily have been -- I doubt that it would have been

8  necessarily heard prior to this hearing.

9      And then the question would be until the modification

10  were allowed it didn't solve the problem anyway. So, may be

11  -- may have been a bad judgment call on my side, I shouldn't

12  acknowledge those things, I suppose, on the record. But I --

13  these were issues I thought about and I really thought the

14  expense was -- was quite high.

15      And it will be interesting to see what happens with

16  Browning, although one never knows. You know, you look back,

17  Your Honor, and there's two major cases that just sat there

18  for years. Grosslight which is still there which I'm not sure

19  any of us ever understood and has never been amplified and

20  just kind of sits there. And the idea of a separate estate

21  for joint creditors always seems to be an unusual

22  interpretation of the Bankruptcy Code.

23      And the other one is, oddly enough as I listen to them

24  very carefully, these bad faith cases. Because of course the

25  -- the case law is very old. It never really did evolve out

1  of the 6th Circuit for many reasons.  So, you know, these

2  things do happen at times.

3      I take it you have no questions and --

4          THE COURT:  No, I don't -- I don't have any

5  questions.  Thank you very much.

6          MR. FRANK:  You're welcome.

7          THE COURT:  Mr. Weiner.

8          MR. WEINER:  Thank you, Your Honor.  Your Honor, I'd

9  like to respond to some of the arguments of Mr. Frank.  And

10  I'd like to start with the observation that Mr. Frank may

11  believe that he has a good adversary proceeding and that it is

12  a -- it's a winner and that he will prevail on all of those

13  claims.

14      I don't want my -- I'm not going to address the

15  allegations here, it's neither the time nor the place, other

16  than to say that the claims are vigorously contested and the

17  allegations are denied.

18      But it really doesn't matter.  You don't consider the --

19  the principles of res judicata depending upon whether or not a

20  subsequent claim is a winner or is a loser.  Just like a

21  motion for a statute of limitations does not address whether

22  or not the plaintiff would have won or would have lost or

23  should it.  Because there is a time to consider those claims,

24  that's what the lawsuit is about.  That's what the period of

25  time before you identify those claims is about.

1    The purpose of a statute of limitations by analogy or res

2 judicata in this case, is one of finality. And it trumps

3 whatever the great arguments there may or may not be in the

4 underlying litigation because it is a principle of repose.

5    So it really doesn't matter whether -- and the Court

6 certainly hasn't adjudicated the adversary proceeding. All it

7 is right now is an unliquidated claim that we think loses.

8 But you can't -- if I follow the argument, the argument sort

9 of said, Judge, we have a great case and I want you to buy

10 that conclusion in the adversary.

11    Let's assume that. Let's assume we're going to win. Now

12 let's argue why that's not a good result. You might as well

13 tear up res judicata, you might as well tear up the statute of

14 limitations, or -- or doctrines that impose finality. Because

15 you will always go back and try to say, wait a second, this

16 isn't a good result. Equitable, Your Honor, it's not

17 equitable.

18    We have principles of law here. Res judicata, I don't

19 know where it -- when it started, but it's been around, I'm

20 sure, for hundreds of years, or a couple hundred years.

21 Principles of res judicata were here long before _Browning_ and

22 long before the cases relied on in _Browning_ that have been

23 around for 10 years, long before _Browning_.

24    _Browning_ and res judicata, those principles are nothing

25 new, they've always been there. It's not like all of a sudden

1  the 6th Circuit just made a -- a ruling.

2      But the principles of res judicata are there long before,

3  irrespective of the outcome of a potential adversary

4  proceeding. So any -- the approach that it's a -- that

5  there's a windfall isn't really relevant to the issue before

6  you.

7      And furthermore, and I've forgotten what case it's in,

8  any time a defendant wins a motion for statute of limitations,

9  the defendant doesn't have to pay, no matter what -- what the

10  claim was, even if the claim was good. That's all already

11  taken into account in the doctrine. That's why there are

12  statutes of limitations or res judicata.

13      So in this case -- I forgot the point I was trying to

14  make. In this case you can't import a conclusion into the --

15  into the analysis. And even if you think about that, you

16  know, if there is a windfall in -- in a case like this, if

17  there is, just for argument's purpose, the debtor is the one

18  that gave it.

19      The creditor didn't take anything. The debtor had

20  obligations, was supposed to do something according to our

21  argument, didn't. But windfall it, what do you mean windfall?

22  That's just the result, it's a consequence of the debtor's

23  actions or inactions, that's all that that is, that's the way

24  it's supposed to work. It's not a good or bad or windfall or

25  creditor's damage because in that case we could be here in

1  front of this case in this Court forever as long as -- long

2  after a plan is confirmed the debtor says, you know what, I

3  want to raise another claim here.

4     So it will never end. Just what Mr. Frank mentioned, the

5  issue of expense. I don't think that's relevant to anything.

6  But you know what, if you go forward with a modification and

7  going into Mr. Slone's post-confirmation affidavit, we'll have

8  depositions, we'll ask what documents he relied on, we will

9  try to interpret an undated exhibit that has been attached to

10 his affidavit. What were you thinking? What did you intend?

11 It will never end.

12     So I think that sort of equitable windfall don't make us

13 go there, Judge, it's bad for the creditors argument, doesn't

14 fly.

15     Next, I would not take a broad brush and say all the

16 Browning cases and the progeny are hide the ball cases.

17 There's a big difference between dicta and a holding. And you

18 can go into these cases and say well, I kind of think that

19 these cases all come from a certain situation or a different

20 situation.

21     I won't read the -- the holdings, but they're there

22 clearly in the cases. So, res judicata and 1123(d) have

23 nothing to do with whether or not a debtor has a confirmation

24 strategist, discloses or not -- keeps a claim or doesn't keep

25 a claim, or discloses a claim or doesn't disclose a claim.

1    In fact you might argue that for a creditor to vote on a

2 disclosure statement it ought to know if the debtor plans to

3 sue it. You know, there's -- but -- but it's not -- it's not

4 an appropriate focus to say, nor is it an appropriate focus to

5 say, Judge, we've been doing this forever.

6    There are many plans that say different provisions. And

7 the fact of the matter is, it took somebody to decide to go up

8 to the 6th Circuit in Browning, but if -- once you look at

9 Browning, you can see -- you can see cases back 10 plus years.

10    And if you want to go -- if you want to consider the

11 argument that says -- Mr. Frank's argument says, gee, I've

12 been doing this a long time and we've really kind of never had

13 this issue, back to 1979 or whatever, look at 1123(d)(2).

14 1123(d)(2) of the Code which has been around for quite a while

15 is real specific. I'm missing it, one moment, please. Yeah,

16 I'm sorry, Judge, I didn't (b)(3)? Thank you. (B)(3).

17    1129 -- thank you, Mr. Frank, (b)(3) specifies that a

18 plan may provide for the settlement or adjustment of any claim

19 or interest belonging to the debtor or the estate, or the

20 retention and enforcement by the debtor, by the trustee, or by

21 a representative of the estate appointed for such purpose of

22 any such claim or interest.

23    The statute isn't a new statute. Such claim or interest

24 refers to a claim or interest that the plan may either say

25 it's settled, or it's reserved. That's what I think (b)(3),

 1  (a) and (b) mean.  So this is -- res judicata is nothing new
 2  and neither is the statute.

 3      Furthermore, the principles of res judicata apply to
 4  final orders, final judgments.  An order of confirmation is
 5  that.  It's a far broader doctrine than applies and to now say
 6  well, we do have a practice in the Bankruptcy Court that way.
 7  A, I don't particularly agree with the accuracy of it as a
 8  universal statement, but B, it -- it does in vitiate res
 9  judicata.  That's there whether we're in the Bankruptcy Court
10  or we're not.  Because it is a final order and Judge Rhodes
11  has ruled on that in the AP liquidating case.

12      With respect to the claims, Mr. Frank's position is that
13  the -- in order for my -- our arguments to prevail the claims
14  have to be pre-petition claims.  And he says that these are
15  post-petition claims.

16      Again, it takes us in the wrong direction.  There's a
17  confirmation order.  A confirmation order is the -- is the --
18  the defining moment in the -- hopefully in the conclusion of a
19  Chapter 11 case, that's where it's measured.

20      So I don't see Browning say this holding is limited to a
21  pre-petition cause of action nor does Crowley.  And Crowley, I
22  believe, was a -- I'm not sure off the top whether it was pre
23  or post, had a lot of different claims.

24      But that's reading something into a holding of a -- of a
25  case that just like -- that's not there, just like the claim

1  isn't reserved in the plan or in the order. So, either it's

2  there or it's not and there's no factual dispute.

3      This preference -- the -- the conversion claim that Mr.

4  Frank indicated was the more serious one, some time

5  post-petition if they -- if they wanted to put -- they knew

6  about it, it wasn't raised. I mean you can't say, well, gee,

7  we just kind of practiced this way, we never did it, and it's

8  a bad result if you let the -- if you grant the defendant's

9  motion. That's not anywhere.

10     I do want to address briefly a -- an argument that Mr.

11  Frank made with respect to the affidavit, so we can have that

12  here. And that -- that relies on the -- what I think was the

13  argument that somehow as long as -- well tell you what the

14  value -- as long as the debtor tells you what the value of the

15  claims are, that's all we -- I'm paraphrasing it, or it's my

16  understanding, the argument is that you have to -- you have to

17  tell the creditors what the value of the claims are. You

18  don't have to go into specifics.

19     That may impact on whether a creditor wants to vote yes

20  or no, but once again, has nothing to do with res judicata,

21  that's separate. Res judicata applies and 1123 says in order

22  to save you from res judicata, here's what you need to do.

23  You need to identify those claims.

24     So if you look at Mr. Slone's affidavit attached to the

25  plaintiff's brief, and even to just go down this slope for a

1   moment, which again I don't think is relevant to -- should not

2   be considered by the Court, but if it is, here's why even that

3   argument doesn't work. And I think we're very far afield here

4   with the -- with the law, controlling law is, however.

5        If you look at the affidavit of Mr. Slone and the exhibit

6   attached, you'll find a liquidation analysis. And I'm looking

7   at the page for the record that has assets on the left hand

8   portion and identifies a spreadsheet a number of columns. And

9   according to what I have so the record is clear, it is the

10  third page following the affidavit. First page says Exhibit

11  1, second page is the liquidation analysis with a column

12  entitled liabilities. And the third is the one that says

13  assets, that's the one I'm referring to.

14       And this is the source of the argument in the affidavit

15  that there is value -- that there are claims and the value of

16  the claims have been identified. Paragraph 2 of the affidavit

17  says defendant got a preference of 118,000. And Paragraph 3

18  says, and I'm paraphrasing, the debtor paid $210,000 for a

19  cavity, that's what Mr. Frank related during his argument that

20  is the basis of this conversion claim. And then the affidavit

21  goes a little bit further. And it further says that the

22  calculations took those claims into consideration.

23       If you look at the asset page, you have a line -- you

24  have -- you have -- you have a line for accounts receivable-

25  trade/claims. I don't know what that is, trade issues/claims.

1  There's nothing relating to breach of contract as a count in

2  the complaint, or conversion as a count in the complaint, or

3  fraud as a count in the complaint.

4      And then if you go further down several lines from the

5  bottom, you'll see estimated recoveries from preferences. And

6  you see a number that does not -- is not broken out into any

7  particular amount.

8      And then you have specific estimated net recoveries from

9  identified people. If I were representing those I would have

10  a harder time on this argument. Well, that doesn't really

11  tell us very much.

12      And if you look then at Exhibit 2, that's where really it

13  further tells you nothing, or would tell a creditor nothing if

14  the argument is that as long as you disclose the value, res

15  judicata goes out the window because the principle here is to

16  tell the creditors of the value which is not what Crowley said

17  or Browning says.

18      But if you look at Exhibit 2 and it's the page

19  immediately behind it, it's a handwritten page. And number

20  one -- you know, February 6, 2004, says it's his. We don't

21  know when it was prepared. It says liquidation analysis, I

22  think if I'm reading it right, 4-30-02.

23      And if you look back at the typewritten liquidation

24  analysis, it's 29 Apr 2002, so I presume that relates there.

25  But there is no evidence here as to when this was ever

Case 2:17-cv-13041-NGE-EAS ECF No. 1, PageID.262 Filed 09/15/17 Page 262 of 313

1   prepared.

2       Now, I -- if you -- if you look at this, if the Court's

3   going to consider it, there are, if you look in the -- there

4   are three columns as I can read them, pre, post, and total.

5   Under the column of pre, you will see under a category that

6   looks like DCX, something that I -- I --

7               THE COURT:  Mr. Weiner.

8               MR. WEINER:  Yes, Ma'am.

9               THE COURT:  In the interest of moving this along --

10              MR. WEINER:  Yes.

11              THE COURT:  The Court is not considering this

12  particular document for any purpose at all.

13              MR. WEINER:  Okay.  Thank you.  May I have a moment?

14              THE COURT:  Yes, you may.

15              MR. WEINER:  Your Honor, I'm -- I'm finished with

16  the argument at this time.  I -- I did want to acknowledge

17  Ryan Holliman of my office who is sitting at counsel table, I

18  meant to do that in the beginning, but I was anxious to get

19  going and I ran right past it.  Mr. Holliman did significant

20  work on this case and I just wanted to acknowledge that

21  assistance.

22              THE COURT:  Well, thank you, welcome.  Mr. Frank, do

23  you have anything to add briefly?

24              MR. FRANK:  Just one little point and I did forget

25  it before.  On the res judicata effect that Mr. Weiner argued

1  with regard to the absolute finality of the order confirming

2  the plan.

3      I think that is incorrect. The Bankruptcy Code is still

4  there. Section 1127(b) provides for modification, it's

5  certainly discretionary with the Court and votes have to be

6  taken. But if a modified plan is approved and an order is

7  entered, that order is confirming a plan as modified and that

8  that -- that modified plan and the order confirming that

9  modified plan does indeed trump the earlier order modifying

10  the original plan because -- I mean the original order

11  allowing the -- confirming the original plan because it's no

12  longer the original plan, you now have an amended plan that's

13  been confirmed.

14      So I don't think there's anything inconsistent with the

15  entry of an order confirming a modified plan and the fact that

16  the earlier order confirming the plan could under Browning be

17  deemed to be preclusive. And I think it then becomes

18  unpreclusive. There's nothing in Browning that says that you

19  can't modify the plan to do these things and there's nothing

20  in any of the other cases they've cited. Thank you.

21      THE COURT: Let me -- let me just ask you a quick

22  question. With regards to, you know, the -- I'll get to the

23  modification of the plan.

24      But given the limitations, the time limitations under

25  546, if the purpose of amended -- the time -- this issue of

1  two years to bring a preference action after the order for --

2  two years after the entry of the order for relief, wouldn't

3  even if the Court were to modify a plan, if the purpose of the

4  modification was to allow the debtor to bring certain causes

5  of action, I could be wrong here, I'm not that familiar with

6  all this, but wouldn't it be pointless?  I mean aren't you

7  going to run into statute of limitations issues?

8          MR. FRANK:  No, I don't think so.  Because -- and

9  again no one's looked at the plan modification context in this

10  matter, but we have now -- the 6th Circuit has re-cast what a

11  plan is.  It's something a little different than we all

12  thought it was.

13      I say no for a very simple reason.  And I'll give you the

14  exact analogy.  The two years is the statute of limitations.

15  I file a lawsuit.  I file a lawsuit within the running of the

16  statute of limitations.

17      We later find out for reasons known or unknown that one

18  of the parties was wrong.  Perhaps we didn't have standing,

19  something happened.  That's something that can be cured and is

20  always retroactive back to the filing of the original

21  complaint.

22      So even though the time of the amendment may be well

23  beyond the running of the statute of limitations, it does

24  always relate back to the date of the filing of the complaint,

25  his would mean the defendant was served.  So that's how I've

1  analogized it.

2     But, you're right. I mean <u>Browning</u> is a new thing. Is

3  it conceivable that a Court, if you were so to rule in my

4  favor, is it conceivable that a District Court may reverse

5  you? Absolutely. That's always a distinct possibility, we

6  don't know.

7     Does -- is this logical? Should the law make sense in

8  this world at times? I think so. There's a -- a threat in

9  here of purpose behind all of this. And there was no

10  detrimental reliance by the way by the defendant in this case

11  for not bringing it. So that's why I argue it so strenuously.

12     And -- and I do disagree with Mr. Weiner. There is ample

13  language in each and every case quite affirmative about the --

14  the hide the ball aspect of it and the failure to disclose to

15  creditors. I mean the language is throughout each and every

16  case. But -- that's my position, Your Honor.

17          THE COURT: Okay. Thank you. I want to tell you

18  both, I really appreciate your oral arguments. The Court is

19  going to issue an opinion and I don't want you to think that,

20  you know, the arguments were unnecessary. I kind of had, you

21  know, two endings to the story.

22     But I found this case very difficult because I -- for a

23  couple of reasons. I think the res judicata effect of a

24  confirmation order is a difficult issue, partly because of the

25  <u>Browning</u> decision, and the scope has not been clearly

1    delineated, it's a fairly recent case. And partly because

2    while I agree with Mr. Weiner that res judicata is a concept

3    of finality, and if it applies, doesn't matter whether

4    somebody gets a windfall.

5        In those cases, the Court is always trying to balance the

6    potential of a windfall with finality and that's why it has

7    four prongs. And Courts look very carefully to make sure that

8    claims -- it's not just -- finality can only occur if every

9    claim that could have been litigated was litigated. So that

10   there's some concept of fairness.

11       If those -- if all those elements are met, then too bad

12   if a party receives a windfall. But the res judicata, if it

13   -- if it exists, it's true, but it's difficult to apply

14   sometimes because it will necessarily result in a windfall.

15   And I think those cases you have to look at and be very

16   careful to make sure that -- that the principle of finality

17   applies in this case.

18       And that being said, the Court in this case is granting

19   summary judgment to defendant M2M for the reasons that the

20   claims asserted by debtor against M2M are barred by res

21   judicata and because the debtor did not sufficiently reserve

22   the right to pursue those claims in its amended combined plan

23   of reorganization and disclosure statement.

24       The factual background of this case is that the debtor

25   was a supplier of molded plastic parts to the automotive

1  industry.  Prior to the filing of bankruptcy, the debtor was a
2  wholly owned subsidiary of Inmold, Inc.  The debtor and Inmold
3  filed separate Chapter 11 bankruptcy petitions on November
4  28th, 2000.  The debtor filed its schedules and statement of
5  financial affairs on December 20th, 2000.  The debtor ceased
6  its operations in July of 2001.

7      On June 6th, 2002, the Unsecured Creditor's Committee of
8  the debtor submitted an amended combined plan of
9  reorganization and disclosure statement.  Eric Slone, the
10  liquidating agent acting as debtor's Chief Financial Officer
11  signed the plan and disclosure statement on behalf of the
12  debtor.

13      The plan was confirmed on September 27th, 2002, almost
14  two full years after the petition was filed.  On November
15  28th, 2002, two years after debtor filed its petition, the
16  debtor filed a complaint against M2M seeking to recover one
17  alleged preference payment in the amount of $118,000.  On or
18  about March 3rd, 2003, the debtor filed an amended complaint
19  which includes counts for fraudulent transfer, conversion, and
20  breach of contract.

21      And the Court does want to note that in filing the
22  amended complaint there was actually some issues raised to one
23  of the counts.  The debtor made a very strong argument that
24  all of it was so intertwined that's why you could amend after
25  the two years had passed.

1    M2M filed this motion for summary judgment alleging that

2  plaintiff cannot recover against M2M and summary judgment in

3  favor of M2M is appropriate because one, the debtor did not

4  retain these causes of action as required by 11 USC Section

5  1123.  Two, the claims are barred by res judicata.  And three,

6  neither the debtor transferred, nor the Court authorized any

7  transfer to the liquidating agent of the debtor's right to

8  bring these causes of action against M2M.

9    The debtors contrarily argues that summary judgment is

10  not appropriate because the claims were preserved in the plan,

11  res judicata does not bar the claims asserted against M2M, and

12  a liquidating agent has standing to bring this action.  In the

13  alternative, the liquidating agent requests that this Court

14  grant him a leave to modify the plan to allow for the pursuit

15  of claims against M2M.

16    Summary judgment is appropriate only when there's no

17  genuine issue as to any -- genuine issue as to any material

18  fact and the moving party is entitled to judgment of law.  The

19  movant has the initial burden of showing the absence of a

20  genuine issue of material fact.  Once the movant meets the

21  burden, the non-movant must confirm with the specific facts

22  for trial.

23    This Court is finding that there are no genuine issues of

24  fact and as a matter of law defendant is entitled to summary

25  judgment.

1    The Court finds that the pivotal issue in this case is

2  whether plaintiff is barred by res judicata and whether there

3  was -- whether there was a sufficient reservation of rights in

4  the plan and in the order confirming plan.  Pursuant to 11 USC

5  Section 1141(a), the effect of plan confirmation is to bind

6  all parties to the terms of a plan of reorganization.

7    Confirmation of a plan of reorganization by the

8  Bankruptcy Court has the effect of a judgment by the District

9  Court and res judicata principles bar re-litigation of any

10  issues raised or that could have been raised in the

11  confirmation of proceedings.

12    The four elements of res judicata are, and this is just

13  quoting, the elements are standard, but they're quoted from

14  the Crowley case.

15    "A final decision on the merits by a Court of competent

16  jurisdiction.  Two, a subsequent action between the same

17  parties or their privies.  Three, an issue in the subsequent

18  action which was litigation or which should have been

19  litigated in the prior action.  And four, an identity of

20  causes of action".

21    If the debtor expressly reserves a cause of action in the

22  plan, that cause of action is excepted from the operation of

23  res judicata.  M2M argues that each of the four elements of

24  res judicata have been satisfied in this case and that the

25  debtor did not expressly reserve a cause of action against M2M

1 | in its plan.

2 | Plaintiff essentially concedes that three out of the four

3 | elements of res judicata have been met. The only serious

4 | contention was with regards to the element having to do with

5 | privity of the parties.

6 | The Court agrees with the creditor here, with M2M, that

7 | under the various Code sections cited by the creditor, that

8 | M2M and plaintiff as successor to debtor were themselves party

9 | to the bankruptcy proceeding prior to confirmation. The

10 | debtor's schedules listed M2M as a creditor.

11 | Section 502(h) provides, "that a claim arising from a

12 | recovery of property under Section 550 shall be allowed or

13 | disallowed, the same as if such claim had arisen before the

14 | date of filing of the petition".

15 | And Section 550 in turn allows recovery of avoided

16 | transfers, including transfers avoided as preference. The

17 | bottom line is that as the creditor, as M2M argued here, that

18 | from the moment the debtor filed its bankruptcy petition, the

19 | Court finds that the defendant had an unliquid -- an

20 | unliquidated contingent and disputed claim allowable under

21 | Section 502.

22 | Therefore the Court finds that M2M is a creditor of the

23 | estate -- estate under Section 101-10 and Section 502(h) of

24 | the Code and plaintiff's complaint is barred by res judicata.

25 | However, as stated, the document of res judicata does not even

1 | really come into play if the right to reserve claims was

2 | expressly reserved by the debtor in its plan of

3 | reorganization.

4 | This principle comes out of 11 USC Section 1123(b)(3)(B)

5 | which states:

6 | "Subject to sub section (a) of this section, a plan may

7 | provide for the retention and enforcement by the debtor, by

8 | the trustee, or by a representative of the estate appointed

9 | for such purpose of any claim or interest. The failure of a

10 | plan to provide for the retention and enforcement of claims by

11 | the debtor under 1123(b) results in the loss of the claim".

12 | Lots of cases state that, but specifically that's stated

13 | at Harstadt v First American Bank, 39 F 3d 898.

14 | "The claim, however, must be specifically reserved. A

15 | general reservation of rights is insufficient to preserve the

16 | claims".

17 | The problem arises, of course, is that Courts are really

18 | divided in the United States and in the circuits on how

19 | specific the language of retention and enforcement must be

20 | under 1123(b)(3)(B) to adequately reserve a cause of action

21 | for adjudication at a later date.

22 | Two cases that deal with this issue very well, and I'm

23 | going to talk about them a little bit more. Are a case called

24 | Cohen v TIC Financial Systems, 279 BR 145. The Crowley case

25 | decided by Judge Shefferly at 299 BR 847. And a case called

1 | Pelts v Worldnet Corporation, 280 BR 573.

2 |    Those cases all are very careful about the specific

3 | causes of action. The different -- the different nature of

4 | causes of action which may arise, and -- and treat them --

5 | actually treat different causes of action differently.

6 |    However, the 6th Circuit Court of Appeals in Browning v

7 | Levy, 283 F 3d 761, has decided the issue of what constitutes

8 | a sufficient reservation of rights in the context of the res

9 | judicata effect of a confirmed plan on a -- in the context of

10 | a debtor's post-petition malpractice claim against a law firm.

11 |    In the Browning case the debtor argued that its plan of

12 | reorganization reserved the debtor's right to pursue an action

13 | against the law firm with the following language. And this

14 | was the specific language in the plan.

15 |    "In accordance with Section 1123(b) of the Bankruptcy

16 | Code, the company shall retain and may enforce any claims,

17 | rights, and causes of action that the debtor or its bankruptcy

18 | estate may hold against any person or entity, including

19 | without limitation, claims and causes of action arising under

20 | Section 542, 543, 544, 547, 548, 550, or 553 of the Bankruptcy

21 | Code".

22 |    The Bankruptcy Court found that this language was not

23 | sufficient to defeat the application of res judicata to its

24 | claims against the law firm. See also In Re: Crowley and the

25 | Harstadt decision.

1       The _Browning_ decision, the Court feels that the _Browning_

2   decision clearly is binding on this Court with regards to

3   Counts 2, 3, and 4 of plaintiff's complaint.  Those are the

4   counts for conversion, fraudulent conveyance, and breach of

5   contract.

6       However, the _Browning_ decision is arguably

7   distinguishable from the instant case because _Browning_ did not

8   involve a preference action.  And based on the case law around

9   the district, and the case law -- and Judge Shefferly's

10  opinion, there are sound policy reasons for holding that a

11  reservation of rights clause may not be so carefully crafted

12  when the actions to be preserved are preference actions.

13      In Re: Crowley, the Court discussed two decisions that

14  I've already given the cites for, the _Pelts v Worldnet_

15  decision, and the _Cohen_ cases.  And in _Crowley_ the Court

16  summarized those Courts' view on preference action as follows:

17      "Central to both Courts' conclusion that the reservation

18  was sufficient in those cases was the fact that creditors who

19  are the potential targets of a preference action, know or

20  should know whether they received a payment from the debtor

21  within the preference period.  The Courts thus concluded that

22  a subsequent action is not barred by a prior confirmation

23  hearing where the disclosure statement and plan contain a

24  general reservation of the right to pursue preference actions

25  plus confirmation.  Preferential transfers are easily



1 identified transactions within a definite time frame with

2 easily identified potential defendants".

3     The Court in <u>Crowley</u> went on to say:

4     "As such, those potential claims are distinguishable from

5 the actions against officers and directors. And the reasoning

6 from those decisions is not applicable to the case before this

7 Court".

8     Notwithstanding the fact that the Court finds the logic

9 of the <u>Pelts</u> and <u>Cohen</u> cases compelling, the Court holds on

10 the facts of this specific case and the arguments that were

11 presented today, that plaintiff's amended plan of

12 reorganization failed to reserve the right to bring even a

13 preference action against defendant M2M.

14     In this case the debtor's plan contained the following

15 language in its reservation of rights clause. "The language

16 was notwithstanding the confirmation of the plan except as

17 stated herein, the reorganized debtor shall retain all causes

18 of action which the debtor and the debtor in possession may

19 have under the Bankruptcy Code, including but not limited to

20 causes of action under Chapter 5 of the Bankruptcy Code".

21     This language is even less specific than the language

22 used in the <u>Browning</u> case in that it didn't specifically

23 delineate Chapter 5 causes of action and is not specific

24 enough to reserve the rights of -- of the debtor.

25     The plaintiff does not rely solely on the above language

1   to reserve the debtor's -- to -- claiming that that's not the

2   sole grounds in which it preserved its rights against M2M.

3   The plaintiff argues that the above quoted language must be

4   read along with the following language found throughout -- the

5   other language throughout the plan.

6       I'm not going to read it, but specifically they were the

7   -- they were provisions in Section 13, 16, and 18 of the plan

8   which all specifically mentioned the rights of the liquidating

9   agents.  And in Section 5 of the plan which also said,

10  implementation of the plan, the liquidating agent with the

11  cooperation of the committee, intends to pursue the collection

12  and liquidation of miscellaneous assets that will remain after

13  the completion of the asset sales such as Chapter 5 recoveries

14  and causes of action.

15      Plaintiff also alleges that Exhibit B to the plan clearly

16  describes the claims that debtor holds against M2M and

17  contemplates distributions to creditors.  The plaintiff also

18  in its brief refers to the attachment of an asset analysis

19  pointing out two specific entries which read trade

20  issues/claims and estimated recoveries from plaintiff.

21      The liquidation agent, plaintiff also argues that

22  worksheets under the liquidation analysis compiled by the --

23  by plaintiff contemplates a $210,715 claim against M2M for

24  conversion, breach of contract, and $118,441.60 preference

25  action.



1    The Court finds that the language set forth in Paragraphs

2  13, 16, 18, and in Section 5 of the plan is not specific

3  enough to support the policy between -- on Section 1123 which

4  is to put potential defendants like M2M on notice that a suit

5  might be filed against them and to provide an end date for the

6  potential liability if an entity is not identified as a

7  potential defendant.

8    Additionally, the Court finds that the reference in

9  Exhibit B to the plan to trade issues/claims and estimated

10  recovery is not specific enough to put M2M and others on

11  notice of potential actions against them.  The references to

12  trade issues/claims and estimated recoveries constitute two

13  lines of a 29 list of potential assets and do not specifically

14  mention M2M as a potential defendant.

15    Had defendant in this case had knowledge of a potential

16  action, defendant may well have filed a claim to protect its

17  interest.  The defendant did not do so because the defendant

18  really had no knowledge and the Court had reviewed the letter

19  that was attached as an exhibit.

20    And that letter really dealt with the return of the whole

21  cavity.  It didn't -- it said, there's a problem, you have a

22  cavity, we've already paid for it.  But the Court finds that

23  that kind of contact was insufficient to put this -- this M2M

24  on notice that there was a cause of action for a preference

25  much less a cause of action for fraudulent conveyance or

1   conversion.

2       Another fact which in this case mitigates the finding

3   that plaintiff properly preserved its rights, is the length of

4   time between the filing of the petition and the filing of the

5   plan.  The cases which hold that a broad reservation of

6   rights, and this is something which did -- like with you, Mr.

7   Frank, troubled me, the cases which hold that a broad

8   reservation of rights clause is sufficient to preserve a cause

9   of action for preferences, argued that this is hard to do

10  because it may delay confirmation if the debtor is required in

11  a large case to specifically identify all of its preference

12  actions prior to filing a plan.

13      This may be true when the plan confirmation occurs

14  relatively soon after the petition is filed, but in this case

15  confirmation occurred only two months prior to the date on

16  which plaintiff by statute under 11 USC 546 was going to have

17  to file its preference actions.  When the actual confirmation

18  of the plan occurs so close to the date by which the -- by

19  statute, the -- the plaintiff is going to have to bring its

20  actions, the Court finds that that really mitigates against an

21  argument that oh, gee, we didn't have time.

22      And in this case, the Court thinks that the plaintiff

23  could have identified with more specificity its causes of

24  action given that it had almost two years between the time the

25  plan was filed and when it was ultimately concerned.

1    For all those reasons, the Court finds that the elements

2  of res judicata have been satisfied and that the debtor did

3  not sufficiently reserve its right to pursue the claims

4  against M2M. Therefore, summary judgment in favor of M2M

5  should be granted.

6    In anticipation of the Court granting summary judgment in

7  favor of M2M, the plaintiff has requested alternatively that

8  he be allowed to modify the plan to reserve a cause of action

9  against -- to restructure it to reserve a cause of action

10  against M2M.

11    On this issue, I agree with -- first, that the Court had

12  problems with this because 1127(b) which deals with

13  post-confirmation modification requires some evidence with

14  regards to the consummation of the plan. The Court couldn't

15  make a ruling on this issue today anyway because there's --

16  the Court has no knowledge of how -- how far along in the

17  process this is.

18    But more significantly, the Court agrees with M2M here

19  that there is a specific procedure which must be filed in

20  order to amend a plan post-confirmation. And the Court simply

21  cannot grant a request that's filed in response to a motion

22  for summary judgment.

23    And certainly if after the Court's ruling, that's

24  something that the -- and Mr. Frank, I think you took the --

25  it is an expensive procedure and until you heard what the



1  Court was going to do today, it certainly made no sense.  But

2  that's a determination you're going to have to make after the

3  Court's -- the Court's ruling.

4      So I mean certainly the right is available under 1127 to

5  file a post-confirmation plan modification, but the Court is

6  ruling that that issue -- the Court is not ruling on that

7  issue but leaves the debtor free to choose to do that.

8      So for all these reasons, the Court holds that M2M's

9  motion for summary judgment is granted.  The Court does not --

10 because the Court has found on other grounds that -- that

11 defendant is entitled to summary judgment, the Court is not

12 going to address of whether plaintiff had any authority or not

13 to bring the causes of action.  It's unnecessary for the Court

14 to reach that issue.

15     But thank you again.  I did appreciate the arguments.  I

16 repeat that I think this is a very interesting issue because

17 it does place a very difficult burden on plaintiffs if they

18 have to identify -- specifically identify every single

19 potential defendant.

20     And I can't possibly believe that that is what Browning

21 meant.  But on the facts of this case, the Court -- and -- and

22 Browning as its been interpreted and on Judge Rhodes'

23 decision, and even Judge Shefferly's decision in Crowley, the

24 Court is compelled on the facts of this case to grant -- grant

25 defendant's motion for summary judgment, but I appreciate the

1   arguments.

2           MR. FRANK: Your Honor, I think it goes beyond that.

3   I'm not speaking as an advocate at this point, but I think not

4   only could it be argued that you have to identify the

5   defendants, you have to identify each and every cause of

6   action against those defendants because that seems to be

7   stated in Browning.

8           THE COURT: Right. And that --

9           MR. FRANK: So you wouldn't even be limited to that.

10  I -- I don't know what's going to happen in the future. Your

11  Honor, just to clarify one thing. And obviously I have to

12  discuss this with my client and I certainly absent an appeal,

13  that I understand the Court's opinion as to the preference

14  action.

15      But there is an independent state cause of action that

16  could exist where the statute of limitations has not run, I

17  think, on conversion. If I were to file a motion for plan

18  modification, I would hope I would not be deemed to be in

19  contempt of this Court's order based upon what would be

20  entered today. I -- that's what I'm asking.

21          THE COURT: Oh, no. I think -- I think that under

22  1127 that -- that you have --

23          MR. FRANK: We can go for it.

24          THE COURT: Following the procedures if you -- you

25  know, you determine that -- that there are causes of action



PAGE ____ 64 ___

1  that needed to be preserved and there's grounds and there

2  hasn't been -- you know, there's a bunch of hurdles to get

3  over, but feel free. It's certainly not -- I wouldn't find

4  that --

5              MR. FRANK: Two hundred and ten thousand bucks is a

6  lot of money.

7              THE COURT: That's -- that's true. As a procedural

8  matter there -- is this case just scheduled for trial, I think

9  on Monday. Obviously that is now not going to go.

10             THE CLERK: Today.

11             THE COURT: But the -- the final pre-trial --

12             THE CLERK: The pre-trial was this afternoon.

13             THE COURT: -- was this afternoon. And part of the

14  reason -- when a case is complicated, I really don't like to

15  give the parties the -- I -- I would prefer not to have issued

16  a bench opinion, I would like to have heard the argument, but

17  I -- I felt time was of the essence here given that it's

18  scheduled for trial and that the parties were entitled to a

19  decision.

20       So I did, like I said, I wrote the story with two

21  different endings. And -- and based on everything, made my

22  conclusions as -- that the defendant is entitled to summary

23  judgment.

24       But there's really no need for you to attend the

25  pre-trial conference obviously this afternoon since defendant

1  has prevailed. So --

2          MR. FRANK: Thank you, Your Honor.

3          THE COURT: So thank you and feel free to do what

4  you need to do.

5          MR. WEINER: Administratively, Judge, will the Court

6  prepare an order or shall I?

7          THE COURT: The Court can prepare an order. It will

8  be very straightforward and -- and we'll just go through each

9  count and indicate that summary judgment -- the Court will

10  prepare an order and we'll do so within the next couple of

11  days.

12          MR. WEINER: Thank you very much for all the time

13  you gave us today.

14          THE COURT: Thank you very much. I appreciated your

15  arguments.

16          THE CLERK: All rise.

17          (Court Adjourned at 12:56 p.m.)

18

19

20

21

22

23

24

25

1

2

3

4

5

6   We certify that the foregoing is a correct transcript from the

7   electronic sound recording of the proceedings in the

8   above-entitled matter.

9

10   *Deborah L. Kremlick*          Date:  2-6-04

     Deborah L. Kremlick, CER-4872

11   Kathleen Wiacek, CSR-2918

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# EXHIBIT G

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                                  Chapter 11

LSC Liquidation, Inc., *et al.*[1]                      Case No. 15-45784-mbm

      Debtors.                          Hon. Marci B. McIvor

_____/

Gene R. Kohut, solely in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

      Plaintiff,                         Adv. Proc. No. 17-04293-mbm

v.                                                      Hon. Marci B. McIvor

United States Steel Corporation, a
Delaware corporation,

      Defendant.

_____/

### REPLY TO PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION FOR (I) SUMMARY JUDGMENT ON COUNTS I-III OF THE COMPLAINT AND (II) PARTIAL SUMMARY JUDGMENT ON COUNT IV OF THE COMPLAINT

Defendant, United States Steel Corporation ("U.S. Steel" or "Defendant"),

replies to the response (Dkt. No. 25) (the "Response") of Plaintiff to Defendant's

---

[1] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor Industrial Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC, Case No. 15-45788-mbm.

216029554.3 22144/194655
17-04293-mbm   Doc 35   Filed 08/24/17   Entered 08/24/17 12:47:31   Page 1 of 19
17-04293-mbm   Doc 45-13   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 2 of 20

Motion For (I) Summary Judgment On Counts I-III Of The Complaint And (II) Partial Summary Judgment On Count IV Of The Complaint (Dkt. No. 17) (the "Motion").[2]

## I.   The Elements of *Res Judicata* Have Been Met.

1.    Contrary to Plaintiff's assertions in his Response, the elements of *res judicata* have been met.

### A.   The Confirmation Order Was A Final Order For *Res Judicata* Purposes.

2.    Plaintiff argues that the first element of *res judicata*—that the Confirmation Order is a final decision on the merits by a court of competent jurisdiction—is not met because Defendant has asserted that this Court lacks the constitutional authority to enter a final judgment in the adversary proceeding without the consent of the parties.[3]   This argument is without merit for at least

---

[2] Capitalized terms used but not defined herein and defined in the Motion shall have the meanings ascribed to such terms in the Motion.

[3] The Court may also conclude that it has the constitutional authority to enter a final judgment in this adversary proceeding without the consent of the parties because Plaintiff asserts a preference claim against Defendant, and Plaintiff has objected to Defendant's filed proof of claim under § 502(d) of the Bankruptcy Code.   Courts have found that they have constitutional authority to enter final orders in preference actions and fraudulent conveyance actions against creditors. *See, e.g.*, *Post-Confirmation Comm. v. Tomball Forest, Ltd. (In re Bison Bldg. Holdings, Inc.)*, 473 B.R. 168 (Bankr. S.D. Tex. 2012) (bankruptcy court has constitutional authority to enter final order in preference action because preference actions stem from the bankruptcy itself); *Mason v. Ivey*, 498 B.R. 540 (M.D.N.C. 2013) (bankruptcy court has constitutional authority to enter final judgment on fraudulent conveyance claim when defendant filed proof of claim; § 502(d) renders

2

21692955.3 22144/194655
17-04293-mbm   Doc 35   Filed 08/24/17   Entered 08/24/17 12:47:31   Page 2 of 19
17-04293-mbm   Doc 45-13   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 3 of 20

three reasons.

> **1.   The Question Of Whether The Bankruptcy Court Has The Constitutional Authority To Enter A Final Order In This Adversary Proceeding Has No Bearing On Whether The Confirmation Order Is A Final Judgment For *Res Judicata* Purposes.**

3.    The question of whether the Bankruptcy Court has the constitutional authority under *Stern v. Marshall*, 564 U.S. 462 (2011) to enter a final judgment in this adversary proceeding has no bearing on whether the Confirmation Order is a final judgment for *res judicata* purposes.[4]  This question—whether the Bankruptcy Court has the constitutional authority to enter a final judgment in a post-confirmation adversary proceeding—is not at issue in the plan confirmation process.  It is only at issue if an action is commenced in the bankruptcy court to adjudicate a claim, as is the case in this adversary proceeding.   Accordingly, Plaintiff's argument that that the Confirmation Order is not a final decision on the merits by a court of competent jurisdiction because Defendant has asserted that this Court lacks the constitutional authority to enter a final judgment in the adversary

---

fraudulent conveyance claim part of claims resolution process).   If the Court concludes that it has the constitutional authority to enter a final judgment in this adversary proceeding, Plaintiff's argument is moot.

[4] In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court held that a bankruptcy court (a non-Article III court) does not have constitutional authority to enter a final judgment on a debtor's state-law counterclaim that is not resolved in the process of ruling on the creditor's proof of claim. *Id.* at 503.

3

216029554.3.22144/194655
17-04293-mbm   Doc 35   Filed 08/24/17   Entered 08/24/17 12:47:31   Page 3 of 19
17-04293-mbm   Doc 45-13   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 4 of 20

proceeding without the consent of the parties must fail.[5]

### 2. The Court Had Constitutional Authority Under *Stern* To Enter The Confirmation Order.

4.      In *Stern*, the Supreme Court explicitly ruled that a bankruptcy court has authority to enter a final judgment where "the action at issue stems from the bankruptcy itself." *Id.* at 499. Because the Confirmation Order "stems from the bankruptcy itself," it was a final decision on the merits by a court of competent jurisdiction.[6]

### 3. Non-Core Proceedings May Be Barred By The *Res Judicata* Effect Of A Confirmed Plan.

5.      Furthermore, non-core proceedings may be barred by the *res judicata* effect of a confirmed plan. *Browning* itself dealt with malpractice and breach of duty claims that would have been non-core proceedings.[7] They were, nonetheless,

---

[5] Plaintiff also asserts that Defendant's lack of consent in this adversary proceeding to have the Court enter a final judgment supports its position. However, Defendant's choice to not consent to have the Court enter a final judgment in this adversary proceeding has no bearing on whether the claims could have been determined by the Court over 20 months ago when the Plan was confirmed.

[6] Furthermore, the Sixth Circuit has reiterated post-*Stern* that "[c]onfirmation of a plan of reorganization by the bankruptcy court **has the effect of a judgment by the district court**...." *In re Settlement Facility Dow Corning Trust*, 670 Fed. Appx. 887, 889 (6th Cir. Nov. 23, 2016) (quoting *In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991)) (emphasis added). It is indisputable that the district court could have determined the preference claim and the fraudulent transfer claim.

[7] *Browning v. Levy*, 283 F.3d 761, 773 (6th Cir. 2002).

4

found to be barred by *res judicata*.[8]  The Supreme Court's ruling in *Stern* had no

bearing on this rule.[9]

> ### B.   It Is Immaterial For Purposes Of *Res Judicata* That Adjudication Of The Claims At Issue Require An Adversary Proceeding Whereas Plan Confirmation Is A Contested Matter.

6.   In his Response, Plaintiff argues that the third element of *res judicata*

is not met since a plan confirmation is a contested matter and the preference and

fraudulent transfer claims at issue in this adversary proceeding are claims that must

be brought by adversary proceeding.   This argument is without merit.   It is

immaterial for purposes of *res judicata* that the adjudication of the causes of action

at issue here require an adversary proceeding while a plan confirmation is a

contested matter.   Numerous courts in this District have found causes of action

initiated in adversary proceedings barred by *res judicata*.[10]

---

[8] *See also Official Committee of Unsecured Creditors of Crowley, Milner & Co. v. Callahan (In re Crowley, Milner & Co.)*, 299 B.R. 830, 852 (Bankr. E.D. Mich. 2003) (finding breach of fiduciary duty claims barred by *res judicata*).

[9] *See, e.g., Groupwell International (HK) Limited v. Gourmet Express, LLC*, 2013 WL 309177 No. 4:09-CV-00094-M, *3 (W.D. Ky. Jan. 25, 2013) (post-*Stern*, finding confirmation order is final judgment rendered on the merits for purpose of *res judicata* concerning breach of contract claim).

[10] *See, e.g., Slone v. M2M International, Inc. (In re G-P Plastics, Inc.)*, 320 B.R. 861 (E.D. Mich. 2005) (affirming this Court's determination that plaintiff's claims brought in adversary proceeding were barred by doctrine of *res judicata*); *Crowley*, 299 B.R. at 852 (breach of fiduciary duty claims against debtor's officers brought in adversary proceeding barred by *res judicata*); *Official Committee of Unsecured Creditors v. Qwest Communication Corp. (In re A.P. Liquidating Co.)*, 283 B.R. 456 (Bankr. E.D. Mich. 2002) (finding that adversary proceeding should be

5

21692951.3 32144/194655
17-04293-mbm   Doc 35   Filed 08/24/17   Entered 08/24/17 12:47:31   Page 5 of 19
17-04293-mbm   Doc 45-13   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 6 of 20

C.    **Plaintiff's Argument That The Fourth Element Is Not Met Is Likewise Without Merit.**

7.    Plaintiff asserts that the fourth element of *res judicata*—that there be an identity of claim—is not met since "avoidance of the transfers was not litigated and could not have been litigated as part of the Plan confirmation." As discussed in the Motion, the avoidance claims could have been litigated by this Court prior to the confirmation of the Plan. Accordingly, Plaintiff's argument to the contrary is without merit.

II.    **The Preference Claim, The Fraudulent Transfer Claim, And The Recovery Claim Were Not "Expressly Reserved" Under The Plan.**

8.    Plaintiff's arguments that the reservation in this case was adequate are likewise unavailing.

A.    **The Fact That The Plan May Specifically References The Vesting, Pursuit, And Retention Of Preference And Fraudulent Conveyance Claims Generally Does Not Render The Reservation Specific Enough To Avoid The *Res Judicata* Effect Of The Confirmation Order.**

9.    In the Sixth Circuit, claims must be "expressly reserved" in order to avoid the *res judicata* effect of a confirmation order.[11] This entails giving creditors sufficient information concerning such claims to enable creditors to be able to take into account the value of such claims in determining whether to vote to reject or

---

dismissed since plaintiffs' claims are barred by the *res judicata* effect of the confirmed plan).

[11] *In re Micro-Time Management Systems, Inc.*, Nos. 91-2260, 91-2261, 1993 WL 7524, at *3 (6th Cir. Jan. 12, 1993) (citations omitted).

6

216029554.3.22144/194655
17-04293-mbm    Doc 35    Filed 08/24/17    Entered 08/24/17 12:47:31    Page 6 of 19
17-04293-mbm    Doc 45-13    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 7 of 20

accept the plan.[12]  Reserving preference and fraudulent transfer claims generally, as was done in the Combined Plan and Disclosure Statement, did not give creditors sufficient information about the Preference Claim, the Fraudulent Transfer Claim, and the Recovery Claim against U.S. Steel to enable creditors to take into account the value such claims in determining whether to vote to reject or accept the Plan.

10.     Furthermore, nothing in *Browning* suggests that reserving categories of claims is sufficient to avoid the *res judicata* effect of confirmation. Significantly, the Sixth Circuit did not say in *Browning* that the malpractice and breach of duty claims at issue would have been preserved if the plan reserved malpractice and breach of duty claims generally.  Nor would they have been since such a reservation would not give creditors sufficient information about the specific malpractice and breach of duty claims asserted against the defendant.

11.     Moreover, at least three cases[13] cited by Plaintiff in which courts have permitted preference claims to be generally reserved have been identified by bankruptcy courts and district courts **within this Circuit** as being contrary to the Sixth Circuit's holding in *Browning*.[14]

---

[12] *See, e.g., Browning*, 283 F.3d at 775; *Slone*, 320 B.R. at 868.

[13] *In re Pen Holdings, Inc.*, 316 B.R. 495 (Bankr. M.D. Tenn. 2004); *In re USN Communications, Inc.*, 280 B.R. 573 (Bankr. D. Del. 2002); and *In re Ampace Corp.*, 279 B.R. 145 (Bankr. D. Del. 2002).

[14] *See, e.g., Kaye v. Carlisle Tire & Wheel Co.*, No. 3:07-00336, 2008 WL 821521, *5-6 (M.D. Tenn. March 27, 2008) (finding Sixth Circuit held in *Browning* that "absent an express reservation in a confirmed plan or related disclosure statement

7

21692851 3 33144/194655
17-04293-mbm   Doc 35   Filed 08/24/17   Entered 08/24/17 12:47:31   Page 7 of 19
17-04293-mbm   Doc 45-13   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 8 of 20

12.   The binding precedent in *Browning* requires more specificity than the reservation of preference claims and fraudulent transfer claims generally in the Combined Plan and Disclosure Statement.[15]

**B.    The Liquidation Analysis Included In The Disclosure Statement Does Not Render The Reservation Specific Enough Under *Browning*.**

13.   Plaintiff asserts that the projected recoveries on avoidance actions in the liquidation analysis in the Disclosure Statement supports his position that the Preference Claim and the Fraudulent Transfer Claim against U.S. Steel were reserved in this case.

14.   This question—whether projected recoveries on avoidance actions in a liquidation analysis provides sufficient detail to satisfy the specificity requirement of *Browning*—was addressed by the District Court in *Slone*.   In

---

of the right to bring *specific* actions against *identified* defendants, the res judicata doctrine bars any new claims" and deeming *Browning* "applicable and binding" on issue of whether § 547 and § 548 claims are adequately reserved in plan and disclosure statement, notwithstanding plaintiff/appellant's reliance on *Pen Holdings*); *In re SmarTalk Teleservices, Inc. Securities Litigation*, 487 F. Supp. 2d 914, 925 n. 3 (E.D. Ohio 2007) (finding *USN Communications* and *Ampace* "contrary to the Sixth Circuit's decision in *Browning*"); *Slone*, 320 B.R. at 869 ("While these other courts [*USN Communications* and *Ampace*] may have disagreed with *Browning*, their decisions – unlike *Browning* – do not control this appeal."); *Crowley*, 299 B.R. at 851-52 (identifying *USN Communications* and *Ampace* as courts that have "rejected the specificity requirement of Browning" but noting that "this Court is constrained to follow the binding precedent in Browning").
[15] *See Kaye*, 2008 WL 821521, *5-6; *SmarTalk Teleservices*, 487 F. Supp. 2d at 925 n. 3; *Slone*, 299 B.R. at 851-52; *Crowley*, 299 B.R. at 851-52.

8

considering and rejecting the plaintiff's arguments that the liquidation analysis,

which accompanied the plan in *Slone*, rendered *Browning* inapposite, the District

Court stated, in relevant part, as follows:

> A review of the liquidation analysis by this Court does not support
> Slone's arguments.  Notably, there is no mention of M2M in the
> liquidation analysis.  This analysis only provides general figures.  For
> example, it states that G&P had $425,016 of accounts receivable in its
> "Trade Issues/ Claims" category, translating into a cash value of
> $49,571 or 11.7%.  This analysis also reveals that G&P could obtain
> an estimated $425,000 or 85% of its "estimated recoveries from
> preferences."  But, the analysis fails to provide any level of specificity
> with regard to the specific claims against M2M.  *See In re Crowley*,
> 299 B.R. 850 (liquidation analysis did not set forth specific claims
> against defendant or what those claims might be in event of
> liquidation).  **As such, this Court declines to conclude that the**
> **creditors and other parties in interest would have been able to**
> **deduce from this document that there were causes of action**
> **against [the Defendant] which would be "pursued post-**
> **confirmation and that would create a measurable value for**
> **creditors and other parties in interest."**  *Id*. at 850.

*Slone*, 320 B.R. at 869 (citations to record omitted) (emphasis added).  Like the

liquidation analysis in *Slone*, the liquidation analysis in the Disclosure Statement

"only provides general figures" and "fails to provide any level of specificity" with

regard to the specific claims against U.S. Steel.  As such, the liquidation analysis in

the Disclosure Statement "does not salvage [Plaintiff's] claims from the doctrine of

res judicata."  *Id*. at 869.

9

216929554.3 23144/194655
17-04293-mbm  Doc 35  Filed 08/24/17  Entered 08/24/17 12:47:31  Page 9 of 19
17-04293-mbm  Doc 45-13  Filed 09/14/17  Entered 09/14/17 16:48:27  Page 10 of 20

**C.** **The Transfers To U.S. Steel In The Debtor's Statement Of Financial Affairs Are Not Incorporated Into The Plan.**

15.     The Combined Plan and Disclosure Statement does not incorporate by reference the transfers to U.S. Steel listed in the Debtor's Statement of Financial Affairs. The Debtor's Statement of Financial Affairs is only incorporated into the defined term "Disputed Claims," which means, in relevant part "a Claim or any portion thereof...." Plan Article 1.26. "Claim" means, in relevant part, "any claim **against the Debtors**...." Plan Article 1.14 (emphasis added). Thus, the Debtor's Statement of Financial Affairs is only incorporated into the Plan, if at all, as it pertains to claims **against the Debtors**. The transfers to U.S. Steel listed in the Debtor's Statement of Financial Affairs do not pertain to any claims against the Debtors. Accordingly, the transfers to U.S. Steel are not incorporated in the Plan.[16]

**D.** **Courts In This District Have Considered And Rejected Plaintiff's Argument That *Browning* Is Inapplicable Due To Alleged Impracticableness Of Naming Potential Defendants In A Plan Or Disclosure Statement.**

16.     Plaintiff argues that *Browning* is not applicable to the causes of action at issue in this adversary proceeding since this was a "large Chapter 11 case, 59 avoidance action adversary proceedings were filed, and many avoidance claims were settled without filing an adversary proceeding." Thus, he asserts, it would

---

[16] Thus, the Court need not decide in adjudicating this Motion whether a preference claim would be "expressly reserved" under *Browning* if a plan incorporated transfers listed in a debtor's statement of financial affairs.

10

21502855413-32144/194655
17-04293-mbm   Doc 35   Filed 08/24/17   Entered 08/24/17 12:47:31   Page 10 of 19
17-04293-mbm   Doc 45-13   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 11 of 20

have been "certainly impracticable" to name each potential defendant under these circumstances.[17] This argument too was raised by the plaintiff in *Slone* and rejected by the District Court.[18] There is no exception to the "*Browning* requirement" for "large Chapter 11 cases."

17. Indeed, plan proponents in much larger cases in this District than this case have not found it "impracticable" to meet the "*Browning* requirement" by listing specific causes of action and identified parties in their plans. *See, e.g.*, Excerpt (pp. 1-6 of 1,102) from *Amended Exhibit A to First Amended Joint Plan of Collins & Aikman Corporation and its Debtor Subsidiaries* (Dkt. No. 3979 in Case No. 05-55927 (SWR)) (listing potential parties to retained causes of action), attached hereto as **Exhibit A**.

---

[17] Response at pp. 26.

[18] *Slone*, 320 B.R. at 869 ("Slone also advances the argument that the *Browning* requirement (i.e., the Plan must contain specific causes of action against identified parties) is onerous. This, according to him, clearly suggests that *Browning* should not control the outcome of this case.")

11

21602855.3.32140/194655
17-04293-mbm Doc 35 Filed 08/24/17 Entered 08/24/17 12:47:31 Page 11 of 19
17-04293-mbm Doc 45-13 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 12 of 20

## Conclusion

WHEREFORE, U.S. Steel respectfully requests that the Court either (i) submit proposed findings of fact and conclusions of law to the District Court finding that U.S. Steel is entitled to summary judgment on Counts I-III of the Complaint and partial summary judgment on Count IV of the Complaint based on *res judicata*, or, if the Court determines that is has constitutional authority to enter a final judgment in this adversary proceeding, (ii) enter an order granting the Motion.

Dated:  August 24, 2017                    Respectfully submitted,


                                           **CLARK HILL PLC**

                                           */s/ John R. Stevenson*
                                           Joel D. Applebaum (P36774)
                                           John R. Stevenson (P70241)
                                           151 S. Old Woodward Avenue, Suite 200
                                           Birmingham, Michigan 48009
                                           (248) 642-9692
                                           japplebaum@clarkhill.com
                                           jstevenson@clarkhill.com

                                           *Counsel for United States Steel Corporation*

12

215020554.3.22144/194655
17-04293-mbm   Doc 35   Filed 08/24/17   Entered 08/24/17 12:47:31   Page 12 of 19
17-04293-mbm   Doc 45-13   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 13 of 20

# EXHIBIT A

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| COLLINS & AIKMAN CORPORATION, et al.[1] | ) | Case No. 05-55927 (SWR) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |
| | ) | (Tax Identification #13-3489233) |
| | ) | |
| | ) | Honorable Steven W. Rhodes |

---

## AMENDED EXHIBIT A

### TO

### FIRST AMENDED JOINT PLAN OF
### COLLINS & AIKMAN CORPORATION AND ITS DEBTOR SUBSIDIARIES

---

[1] The Debtors in the jointly administered cases include: Collins & Aikman Corporation; Amco Convertible Fabrics, Inc., Case No. 05-55949; Becker Group, LLC (d/b/a/ Collins & Aikman Premier Mold), Case No. 05-55977; Brut Plastics, Inc., Case No. 05-55957; Collins & Aikman (Gibraltar) Limited, Case No. 05-55989; Collins & Aikman Accessory Mats, Inc. (f/k/a the Akro Corporation), Case No. 05-55952; Collins & Aikman Asset Services, Inc., Case No. 05-55959; Collins & Aikman Automotive (Argentina), Inc. (f/k/a Textron Automotive (Argentina), Inc.), Case No. 05-55965; Collins & Aikman Automotive (Asia), Inc. (f/k/a Textron Automotive (Asia), Inc.), Case No. 05-55991; Collins & Aikman Automotive Exteriors, Inc. (f/k/a Textron Automotive Exteriors, Inc.), Case No. 05-55958; Collins & Aikman Automotive Interiors, Inc. (f/k/a Textron Automotive Interiors, Inc.), Case No. 05-55956; Collins & Aikman Automotive International, Inc., Case No. 05-55980; Collins & Aikman Automotive International Services, Inc. (f/k/a Textron Automotive International Services, Inc.), Case No. 05-55985; Collins & Aikman Automotive Mats, LLC, Case No. 05-55969; Collins & Aikman Automotive Overseas Investment, Inc. (f/k/a Textron Automotive Overseas Investment, Inc.), Case No. 05-55978; Collins & Aikman Automotive Services, LLC, Case No. 05-55981; Collins & Aikman Canada Domestic Holding Company, Case No. 05-55930; Collins & Aikman Carpet & Acoustics (MI), Inc., Case No. 05-55982; Collins & Aikman Carpet & Acoustics (TN), Inc., Case No. 05-55984; Collins & Aikman Development Company, Case No. 05-55943; Collins & Aikman Europe, Inc., Case No. 05-55971; Collins & Aikman Fabrics, Inc. (d/b/a Joan Automotive Industries, Inc.), Case No. 05-55963; Collins & Aikman Intellimold, Inc. (d/b/a M&C Advanced Processes, Inc.), Case No. 05-55976; Collins & Aikman Interiors, Inc., Case No. 05-55970; Collins & Aikman International Corporation, Case No. 05-55951; Collins & Aikman Plastics, Inc., Case No. 05-55960; Collins & Aikman Products Co., Case No. 05-55932; Collins & Aikman Properties, Inc., Case No. 05-55964; Comet Acoustics, Inc., Case No. 05-55972; CW Management Corporation, Case No. 05-55979; Dura Convertible Systems, Inc., Case No. 05-55942; Gamble Development Company, Case No. 05-55974; JPS Automotive, Inc. (d/b/a PACJ, Inc.), Case No. 05-55935; New Baltimore Holdings, LLC, Case No. 05-55992; Owosso Thermal Forming, LLC, Case No. 05-55946; Southwest Laminates, Inc. (d/b/a Southwest Fabric Laminators Inc.), Case No. 05-55948; Wickes Asset Management, Inc., Case No. 05-55962; and Wickes Manufacturing Company, Case No. 05-55968.

05-55927-swr   Doc 3979   Filed 01/25/07   Entered 01/25/07 01:03:45   Page 1 of 1102
17-04293-mbm   Doc 35   Filed 08/24/17   Entered 08/24/17 12:47:31   Page 14 of 19
17-04293-mbm   Doc 45-13   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 15 of 20

**CATEGORIES
OF
RETAINED CAUSES OF ACTION**

| | |
|---|---|
| (1) | Causes of Action against vendors, suppliers of goods or services, or other parties for overpayments, back charges, duplicate payments, improper holdbacks, deposits, warranties, guarantees, indemnities or setoff |
| (2) | Causes of Action against utilities, vendors, suppliers of services or goods, or other parties for wrongful or improper termination, suspension of services or supply of goods, or failure to meet other contractual or regulatory obligations |
| (3) | Causes of Action against vendors, suppliers of goods or services, or other parties for failure to fully perform or to condition performance on additional requirements under contracts with any one or more of the Debtors before the assumption or rejection of the subject contracts |
| (4) | Causes of Action for any liens, including mechanic's, artisan's, materialmen's, possessory or statutory liens held by any one or more of the Debtors |
| (5) | Causes of Action for payments, deposits, holdbacks, reserves or other amounts owed by any creditor, lessor, utility, supplier, vendor, insurer, factor, lender, bondholder, lessor or other party |
| (6) | Causes of Action against any current or former director, officer, employee or agent of the Debtors arising out of employment related matters, including Causes of Action regarding intellectual property, confidentiality obligations, employment contracts, wage and benefit overpayments, travel, contractual covenants, or employee fraud or wrongdoing |
| (7) | Causes of Action against any professional services provider or any other party arising out of financial reporting |
| (8) | Causes of Action arising out of environmental or contaminant exposure matters against landlords, lessors, environmental consultants, environmental agencies or suppliers of environmental services or goods |
| (9) | Causes of Action against insurance carriers, reinsurance carriers, underwriters or surety bond issuers relating to coverage, indemnity, contribution, reimbursement or other matters; |
| (10) | Counterclaims and defenses relating to notes, bonds or other contract obligations |
| (11) | Causes of Action against local, state, federal and foreign taxing authorities for refunds of overpayments or other payments |
| (12) | Causes of Action against attorneys, accountants, consultants or other professional service providers relating to services rendered |
| (13) | Contract, tort or equitable Causes of Action that may exist or subsequently arise |
| (14) | Any intracompany or intercompany Causes of Action |
| (15) | Causes of Action of the Debtors arising under section 362 of the Bankruptcy Code |
| (16) | Equitable subordination Causes of Action arising under section 510 of the Bankruptcy Code or other applicable law |
| (17) | Turnover Causes of Action arising under sections 542 or 543 of the Bankruptcy Code |
| (18) | Causes of Action arising under chapter 5 of the Bankruptcy Code, including preferences under section 547 of the Bankruptcy Code |
| (19) | Causes of Action against any union arising from, among other things, state or federal law or under a collective bargaining agreement, including any wrongful or illegal acts, any wrongful termination, suspension of performance, defamation or failure to meet other contract or regulatory obligations |
| (20) | Causes of Action for unfair competition, interference with contract or potential business advantage, conversion, infringement of intellectual property or other business tort claims |

K&E 11538454.5

05-55927-swr    Doc 3979    Filed 01/25/07    Entered 01/25/07 01:03:45    Page 2 of 1102
17-04293-mbm    Doc 35    Filed 08/24/17    Entered 08/24/17 12:47:31    Page 15 of 19
17-04293-mbm    Doc 45-13    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 16 of 20

**POTENTIAL PARTIES**
**TO**
**RETAINED CAUSES OF ACTION**

**(Non-Released Parties)**

| Non-Released Party | Causes of Action |
|---|---|
| 1 PLUS INTERNATIONAL<br>PATENT & TRADEMARK ATTORNEYS<br>SKK BLDG 5TH FL MINATO KU<br>TOKYO 105-0004 JAPAN | (1) (2) (3) (5) (13) (18) |
| 1098869 ONTARIO INC<br>DBA B B BARGOONS (1996)<br>ATTN: ACCOUNTS PAYABLE<br>8201 KEELE STREET UNITS 1-3<br>ONTARIO CONCORD CANADA | (1) (2) (3) (5) (13) (17) (18) |
| 10-MILER INC<br>D/B/A MOSSBROWNCOM<br>ATTN: ACCOUNTS PAYABLE<br>106 WATER STREET<br>ST PAUL MN 55107 | (13) (17) (18) |
| 16 INDUSTRIAL DRIVE LLC<br>MCNEILL TAYLOR & GALLO<br>PO BOX 815<br>180 LOTUS ST<br>DOVER NH | (1) (2) (3) (5) (10) (13) (15) (18) |
| 16 INDUSTRIAL DRIVE LLC<br>210 COMMERCE WAY STE 100<br>PORTSMOUTH NH 03801 | (1) (2) (3) (5) (10) (13) (18) |
| 1649313 ONTARIO INC<br>CP 369<br>5552 COUNTY ROAD #9<br>ST ISIDORE ONTARIO K0C 2B0 CANADA | (13) (15) (18) |
| 165 MILNER HOLDINGS LTD<br>1120 FINCH AVE WEST<br>SUITE 100<br>TORONTO ONTARIO M3J 3H7 CANADA | (5) (10) (13) (15) (18) |
| 19 & MOUND SERVICE<br>19 & MOUND SERVICE<br>42986 MOUND RD<br>STERLING HTS MI 48314 | (1) (2) (3) (5) (13) (18) |
| 1ST TEAM STAFFING SERVICES INC<br>5517 SELMA AVE<br>BALTIMORE MD 21227 | (1) (2) (3) (5) (13) (18) |

K 11538454.5

05-55927-swr Doc 3979 Filed 01/25/07 Entered 01/25/07 01:03:45 Page 3 of 1102
17-04293-mbm Doc 35 Filed 08/24/17 Entered 08/24/17 12:47:31 Page 16 of 19
17-04293-mbm Doc 45-13 Filed 09/14/17 Entered 09/14/17 16:48:27 Page 17 of 20

**POTENTIAL PARTIES**
**TO**
**RETAINED CAUSES OF ACTION**

(Non-Released Parties)

| Non-Released Party | Causes of Action |
|---|---|
| 21ST CENTURY HARD ARMOR PROTECTION INC<br>16710 HEDGECROFT #106<br>HOUSTON TX 77060 | (13) (17) (18) |
| 21ST CENTURY NEWSPAPERS SFS<br>1551 E LINCLOLN STE 142<br>MADISON HEIGHTS MI 48071-4159 | (1) (2) (3) (5) (13) (18) |
| 24 7 JANITORIAL SERVICES INC<br>PO BOX 88<br>DOVER NH 03821 | (1) (2) (3) (5) (13) (18) |
| 3 D PROTOTYPE DESIGN INC<br>205 BOULLEE ST<br>NEW HAMBURG ONTARIO N3A 2K3 CANADA | (1) (2) (3) (5) (13) (18) |
| 3 DIMENSIONAL SERVICES<br>2547 PRODUCT DRIVE<br>ROCHESTER HILLS MI 48309 | (13) (15) (18) |
| 300 BELOW INC<br>2999 E PKWY DR<br>DECATUR IL 62526 | (1) (2) (3) (5) (13) (18) |
| 391395 ONTARIO LTD<br>DBA BENNETT TOOLS<br>388 SPINNAKER WAY<br>CONCORD, ONTARIO ONTARIO L4K4W1 CANADA | (13) (17) (18) |
| 3D PROTOTYPE DESIGN INC<br>205 BOULLEE STREET<br>NEW HAMBURG ONTARIO N3A 2K3 CANADA | (13) (15) (18) |
| 3D SALES<br>2026 S PARKER<br>MARINE CITY MI 48039 | (1) (2) (3) (5) (13) (18) |
| 3-DIMENSIONAL SERVICES GROUP | (5) (10) (13) (18) |
| 3G SERVICES<br>23984 CEDAR RIDGE CT<br>BROWNSTOWN MI 48174 | (13) (15) (18) |

K 11538454.5

05-55927-swr    Doc 3979    Filed 01/25/07    Entered 01/25/07 01:03:45    Page 4 of 1102
17-04293-mbm    Doc 35    Filed 08/24/17    Entered 08/24/17 12:47:31    Page 17 of 19
17-04293-mbm    Doc 45-13    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 18 of 20

**POTENTIAL PARTIES**
**TO**
**RETAINED CAUSES OF ACTION**

**(Non-Released Parties)**

| Non-Released Party | Causes of Action |
|---|---|
| 3M<br>2807 PAYSPHERE CIR<br>CHICAGO IL 60674-0000 | (1) (2) (3) (5) (13) (15) (18) |
| 3M AUTOMOTIVE & CHEMICALS<br>PO BOX 371227<br>PITTSBURGH PA 15250-7227 | (1) (2) (3) (5) (13) (18) |
| 3M AUTOMOTIVE DIVISON<br>PO BOX 96444<br>CHICAGO IL 60693-6444 | (1) (2) (3) (5) (13) (18) |
| 3M AUTOMOTIVE MARKET CENTER<br>FRANK LOFTUS<br>GENERAL MANAGER<br>19460 VICTOR PARKWAY<br>LIVONIA MI 48152 | (5) (13) (18) |
| 3M CO<br>ATTN: GINA NELSON<br>BLDG 0042<br>904 BUSH AVENUE<br>ST PAUL MN 55106-3873 | (13) (17) (18) |
| 3PEC<br>5621 SHIRLEY PORK DR<br>BESSEMER AL 35022 | (1) (2) (3) (5) (13) (18) |
| 3RD PARTY PD BY MITSUBISHI<br>PO BOX 4060<br>ISELIN NJ 8830 | (13) (17) (18) |
| 4 ALL MEMORY<br>655 LEFFINGWELL AVE<br>ST LOUIS MO 63122 | (1) (2) (3) (5) (13) (15) (17) (18) |
| 4 POINT LIFT SYSTEMS<br>PO BOX 906<br>MOLINE IL 61266-0906 | (1) (2) (3) (5) (13) (18) |
| 407 ETR<br>6300 STEELES AVE WEST<br>WOODBRIDGE ONTARIO L4H 1J1 CANADA | (1) (2) (3) (5) (13) (18) |

K 11538454.5

05-55927-swr   Doc 3979   Filed 01/25/07   Entered 01/25/07 01:03:45   Page 5 of 1102
17-04293-mbm   Doc 35   Filed 08/24/17   Entered 08/24/17 12:47:31   Page 18 of 19
17-04293-mbm   Doc 45-13   Filed 09/14/17   Entered 09/14/17 16:48:27   Page 19 of 20

POTENTIAL PARTIES
TO
RETAINED CAUSES OF ACTION

(Non-Released Parties)

| Non-Released Party | Causes of Action |
|---|---|
| 4-WHEEL DRIVE DIVERSIFIED INC<br>222 ILLINOIS AVE<br>MAUMEE OH 43537 | (13) (17) (18) |
| 5 B'S INC | (5) (10) (13) (18) |
| 74 INDUSTRIAL DRIVE LLC<br>PO BOX 949<br>NO CHELSFORD MA 01863 | (1) (2) (3) (5) (13) (15) (18) |
| 7529 SALISBURY ROAD ASSOC<br>CRAIG S PROVORNY ESQ<br>HEROLD AND HAINES PA<br>25 INDEPENDENCE BLVD<br>WARREN NJ 07059-6747 | (13) (15) (18) |
| 801 AEC DRIVE<br>WOOD DALE IL 60191 | (1) (2) (3) (5) (13) (18) |
| 9008 GROUP INC<br>DBA/ENTERPRISE COMMUNICATIONS<br>1999 WEST 190TH STREET<br>TORRANCE CA 90504 | (13) (17) (18) |
| 9063-3207 QUEBEC INC<br>DBA MP REMBOURREUR<br>857 NOTRE-DAME<br>ST-CHRYSOSTOME QUEBEC  CANADA | (13) (17) (18) |
| A & B TOP & TEXTILE<br>6555 GARDEN RD STE 9<br>RIVIERA BEACH FL 33404 | (13) (17) (18) |
| A & G CHEMICAL & SUPPLY CO INC<br>620 DIXIE HWY<br>CHICAGO HGTS IL 60411 | (13) (17) (18) |
| A & G SUPPLY LTD<br>827 FAIRWEATHER PLACE<br>VERNON<br> V1T 9B5 CANADA | (13) (17) (18) |
| A & J BAR & JANITL SPLY<br>501 NORTH BLACKHORSE PIKE<br>RUNNEMEDE, NJ 08078 | (13) (17) (18) |

K 11538454.5

05-55927-swr    Doc 3979    Filed 01/25/07    Entered 01/25/07 01:03:45    Page 6 of 1102
17-04293-mbm    Doc 35    Filed 08/24/17    Entered 08/24/17 12:47:31    Page 19 of 19
17-04293-mbm    Doc 45-13    Filed 09/14/17    Entered 09/14/17 16:48:27    Page 20 of 20

# EXHIBIT H

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

LSC Liquidation, Inc., et al.[1]                       Case No. 15-45784-MBM
                                                       Chapter 11
_____Debtor. /                     Hon. Marci B. McIvor
Gene R. Kohut, solely in his capacity
as Liquidating Trustee for the
LSC Liquidating Trust,

                        Plaintiff,
vs.                                                    Adv. Pro. No.  17-04293

United States Steel Corporation, a
Delaware Corporation,

_____Defendant.  /

**ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

For the reasons set forth on the record at a hearing held on August 29, 2017;

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is

DENIED.

**Signed on August 31, 2017**



/s/ **Marci B. McIvor**
_____

**Marci B. McIvor**
**United States Bankruptcy Judge**

_____

[1]The Debtors include Lee Steel Corporation, later known as LSC Liquidation, Inc., (Case No. 15-45784), Taylor Industrial Properties, L.L.C. (Case No. 15-45785), and 4L Properties, LLC, (Case No. 15-45788).

Official Form 417A (12/15)

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

In re:                                                    Chapter 11

LSC Liquidation, Inc., *et al*.[1]                        Case No. 15-45784-mbm

        Debtors.                                Hon. Marci B. McIvor

_____/

Gene R. Kohut, solely in his
capacity as Liquidating Trustee
for the LSC Liquidating Trust,

        Plaintiff,                              Adv. Proc. No. 17-04293-mbm

v.                                                        Hon. Marci B. McIvor

United States Steel Corporation, a
Delaware corporation,

        Defendant.

_____/

### NOTICE OF APPEAL AND STATEMENT OF
### ELECTION

### Part 1: Identify the appellant(s)

1. Name(s) of appellant(s):  **United States Steel Corporation**

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of
this appeal:

For appeals in an adversary proceeding.          For appeals in a bankruptcy case and not in an
                                                 adversary proceeding.
☐ Plaintiff
                                                 ☐ Debtor
**X** Defendant
                                                 ☐ Creditor
☐ Other (describe)

_____

[1] The Debtors include LSC Liquidation, Inc., Case No. 15-45784-mbm; Taylor Industrial
Properties, L.L.C., Case No. 15-45785-mbm; and 4L Ventures, LLC, Case No. 15-45788-mbm.

Official Form 417A (12/15)

_____          ☐ Trustee

                                        ☐ Other (describe)

                                        _____

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed from: **Order Denying Defendant's Motion for Summary Judgment (Dkt. No. 38)**

2. State the date on which the judgment, order, or decree was entered: **August 31, 2017**

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Party: Defendant/Appellant          Attorneys:          John R. Stevenson (P70241)
   United States Steel Corporation                          Clark Hill PLC
                                                            151 S. Old Woodward Ave, Ste 200
                                                            Birmingham, MI 48009
                                                            (248) 988-5891

                                                            Joel D. Applebaum (P36774)
                                                            Clark Hill PLC
                                                            151 S. Old Woodward Ave, Ste 200
                                                            Birmingham, MI 48009
                                                            (248) 988-5883

2. Party: Plaintiff/Appellee           Attorneys:          Anthony J. Kochis (P72020)
   Gene R. Kohut, solely in his                             Wolfson Bolton PLLC
   capacity as Liquidating Trustee for                     3150 Livernois, Suite 275
   the LSC Liquidating Trust                                Troy, MI 48083
                                                            (248) 247-7105

                                                            Scott A. Wolfson (P53194)
                                                            Wolfson Bolton PLLC
                                                            3150 Livernois, Suite 275
                                                            Troy, MI 48083
                                                            (248) 247-7103

Official Form 417A (12/15)

## Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

**X** Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

## Part 5: Sign below

Dated:  September 14, 2017                     Respectfully submitted,

### CLARK HILL PLC

*/s/ John R. Stevenson*
Joel D. Applebaum (P36774)
John R. Stevenson (P70241)
151 S. Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 642-9692
japplebaum@clarkhill.com
jstevenson@clarkhill.com

*Counsel for United States Steel Corporation*

Fee waiver notice: If appellant is a child support creditor or its representative and appellant has filed the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.

# EXHIBIT 1

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

LSC Liquidation, Inc., et al.[1]

_____ Debtor. /

Gene R. Kohut, solely in his capacity
as Liquidating Trustee for the
LSC Liquidating Trust,

                    Plaintiff,

vs.

United States Steel Corporation, a
Delaware Corporation,

_____ Defendant. /

Case No. 15-45784-MBM
Chapter 11
Hon. Marci B. McIvor

Adv. Pro. No. 17-04293

### ORDER DENYING DEFENDANT'S MOTION
### FOR SUMMARY JUDGMENT

For the reasons set forth on the record at a hearing held on August 29, 2017;

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is

DENIED.

**Signed on August 31, 2017**



/s/ **Marci B. McIvor**
_____

**Marci B. McIvor**
**United States Bankruptcy Judge**

_____

[1]The Debtors include Lee Steel Corporation, later known as LSC Liquidation, Inc., (Case
No. 15-45784), Taylor Industrial Properties, L.L.C. (Case No. 15-45785), and 4L Properties,
LLC, (Case No. 15-45788).

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In the matter of:

LSC Liquidation, Inc., et al.[1]                               Case No. 15-45784-MBM
                                                               Chapter 11
_____ Debtor.  /                           Hon. Marci B. McIvor
Gene R. Kohut, solely in his capacity
as Liquidating Trustee for the
LSC Liquidating Trust,

                          Plaintiff,
vs.                                                            Adv. Pro. No.  17-04293

United States Steel Corporation, a
Delaware Corporation,

_____ Defendant.  /

**ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT**

For the reasons set forth on the record at a hearing held on August 29, 2017;

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is

DENIED.

**Signed on August 31, 2017**



/s/ Marci B. McIvor
**Marci B. McIvor**
**United States Bankruptcy Judge**

_____

[1]The Debtors include Lee Steel Corporation, later known as LSC Liquidation, Inc., (Case No. 15-45784), Taylor Industrial Properties, L.L.C. (Case No. 15-45785), and 4L Properties, LLC, (Case No. 15-45788).

| United States District Court<br>Eastern District of Michigan | Bankruptcy Matter<br>Civil Case Cover Sheet | District Court Label |

**In re:**

**LSC Liquidation, Inc.,** *et al.*                    **Case No.: 15-45784**

                    **Debtors.**
_____/

Gene R. Kohut, solely in his                    **Adv. No.: 17-04293**
capacity as Liquidating Trustee
for the LSC Liquidating Trust

                    **Appellee,**

**v.**

United States Steel Corporation

                    **Appellant.**

---

**CAUSE OF ACTION/NATURE OF SUIT:**    (This matter is referred to the district court for the following reasons)

|      |                              |                                                     |
|------|------------------------------|-----------------------------------------------------|
|  **X**  | [422] 28 U.S.C. 158          | Bankruptcy Appeal                                   |
|  **X**  | [422] 28 U.S.C. 158          | Motion for Leave to Appeal                          |
| ____ | [423] 28 U.S.C. 157(d)       | Motion for Withdrawal of Reference                  |
| ____ | [423] 28 U.S.C. 157(c) (1)   | Proposed Findings of Fact and Conclusions of Law    |
| ____ | [423] 28 U.S.C. 158 (c) (a)  | Order of Contempt                                   |

CLARK HILL PLC

By: /s/ John R. Stevenson
Joel D. Applebaum (P36774)
John R. Stevenson (P70241)
151 S. Old Woodward Ave, Suite 200
Birmingham, MI  48009
(248) 642-9692
japplebaum@clarkhill.com
jstevenson@clarkhill.com

Counsel for United States Steel Corporation

Date: September 14, 2017

216211728.1 22144/194655

**Name and Address of Interested Parties**

Anthony J. Kochis (P72020)
Scott A. Wolfson (P53194)
Wolfson Bolton PLLC
3150 Livernois, Suite 275
Troy, MI 48083
(248) 247-7100
akochis@wolfsonbolton.com
swolfson@wolfsonbolton.com

Counsel for Plaintiff